**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**WEST PALM BEACH DIVISION**

**CASE NO.: 9:20-cv-_____**

**LA DOLFINA S.A. LLC,
a Florida limited liability company, and
ADOLFO CAMBIASO, individually**

       **Plaintiff,**

**v.**

**D. ALAN MEEKER, individually,
a/k/a ALAN MEEKER,
a/k/a DAVID ALAN MEEKER,
CRESTVIEW FARM, LLC,
a Texas limited liability company, and
CRESTVIEW GENETICS, LLC,
a Nevada limited liability company,**

       **Defendants.**

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs La Dolfina S.A. LLC ("La Dolfina") and Adolfo Cambiaso ("Mr. Cambiaso"),

as and for their Complaint against Defendants D. Alan Meeker a/k/a Alan Meeker a/k/a David

Alan Meeker ("Meeker"), Crestview Farm, LLC ("Crestview Farm") and Crestview Genetics,

LLC ("Crestview Genetics") (Crestview Farm and Crestview Genetics, collectively the

"Crestview Defendants") state as follows:

## Allegations Common to All Counts

### Nature of the Action

1.      This matter concerns the unauthorized cloning and sale by Defendants of unique and invaluable horses and genetic material owned by Plaintiffs and used in the sport of polo.[1]

2.      The polo pony clones at issue derived from the genetic stock of poly ponies owned by Plaintiff La Dolfina's parent La Dolfina S.A., an Argentine company ("La Dolfina S.A."), which polo ponies are world-renown for their unique and superior athletic abilities, intellectual acumen, temperament, and vastly superior performance in the sport of high-goal polo. Mr. Cambiaso and his wife are the sole owners of La Dolfina S.A. and Mr. Cambiaso owns individually some of the horses and genetic material relevant hereto.

3.      The Defendants herein previously entered into certain contractual relationships with Plaintiffs or are otherwise subject to certain obligations and duties regarding from business relationships regarding the cloning, marketing and sale internationally of certain polo ponies owned by Plaintiffs.

4.      Recently, it has come to the attention of Plaintiffs that Defendant Meeker, individually and through his alter-ego Defendant Crestview Farm, and utilizing the resources and facilities of Defendant Crestview Genetics, has:

> a)      engaged in the unauthorized misappropriation of certain genetic material derived from La Dolfina's renown polo ponies;
>
> b)      has cloned certain of those polo ponies;
>
> c)      has sold some of those clone progeny; and

---

[1] Horses utilized as equine athletes in the modern sport of polo are commonly called "polo ponies" though not pony-size at all.

     d)      imminently intends to sell and ship more of that unauthorized, cloned progeny to locations outside the jurisdiction of this Court and outside of the United States.

5.     These actions by Meeker and the Crestview Defendants are either or both direct breaches of the contracts between the parties, and, or alternatively, are breaches of certain duties and obligations that arose from the cloning business venture amongst the Plaintiffs and Defendant Meeker and the Crestview Defendants.

6.     The past breaches and and present intentions of Defendants Meeker the Crestview Defendants to further breach the contractual and fiduciary duties between Plaintiffs and those Defendants have already caused, and threaten to further cause irreparable harm to the La Dolfina and Cambiaso genetic line of polo ponies, as well as to the professional performance of the owner of La Dolfina, Adolfo Cambiaso.   Mr. Cambiaso is a professional 10 goal polo player, the highest ranking, and he, his La Dolfina horses and his La Dolfina stable and team are widely regarded as the very best amongst the best in the sport of polo.

7.     The unauthorized cloning of La Dolfina  and Cambiaso horses and international sale of the clones threatens to irreparably harm the ability of La Dolfina and Mr. Cambiaso to successfully compete and win at the highest levels of polo, as well as threatens to dilute and irretrievably distribute the unique and irreplaceable genetic material found in the La Dolfina polo pony lineages and constitutes unauthorized possession and distribution of genetic material owned by Mr. Cambiaso through his La Dolfina S.A entity.   For clarity, these injuries are not readily curable with later economic damage awards.

8.     The within Complaint therefore not only seeks to recover for breaches of contractual and fiduciary duties, but also seeks, together with an accompanying motion, an immediate preliminary injunction and writ of replevin to prevent the further and irretrievable and irreparable dilution and

dissemination of the La Dolfina genetic pool by the unauthorized activities of Defendant Meeker, whether alone or by and through the other Crestview Defendants and other Crestview-related entities or affiliates.

9.      Plaintiffs have attempted to resolve this matter amicably; however and despite demand, the Defendants have failed to cease and desist their unauthorized misappropriation of the La Dolfina genetic material.

10.     The within lawsuit follows.

### Parties, Jurisdiction and Venue

11.     Plaintiff La Dolfina S.A., LLC ("La Dolfina") is a Florida limited liability company with offices in Palm Beach County, Florida, and is the assignee of La Dolfina, S.A., an Argentine entity, with respect to all matters against the Defendants set forth herein.

12.     Plaintiff Aldolfo Cambiaso is a Argentina national, with an address in Palm Beach County, Florida who plays polo professionally at the highest level in Wellington, Palm Beach County, Florida.

13.     Alan Meeker a/k/a D. Alan Meeker, a/k/a David Alan Meeker("Meeker") is a citizen and resident of Tarrant County, Texas, having an address at 4770 Bryant Irvin Court, Suite 400, Fort Worth, TX 76107.  Meeker, both individually, as well as through and by use of the entities Crestview Farms, LLC, Crestview Genetics, LLC, and Crestview Farm Aiken, LLC, conducted business with La Dolfina and Mr. Cambiaso in the State of Florida and have committed the aforesaid breaches and tortious acts having an effect on La Dolfina and Mr. Cambiaso in Florida. Further, Meeker conducted related cloning business in Palm Beach County, Florida during periods relevant hereto, such as with Chris Young and Overbrook Farm, LLC, which cloning business

became part of the representations and material terms of the contractual obligations of Defendants with Plaintiffs.

14.     Defendant Crestview Farm, LLC ("Crestview Farm") is incorporated in Texas as a Texas limited liability company having an address and principal place of business at 4770 Bryant Irvin Court, Suite 400, Fort Worth, TX 76107.   Meeker was at all times relevant hereto, the sole Member of Crestview Farm and manager of Crestview Farm, and so dominates and controls Crestview Farm to such an extent that the independent existence of Crestview Farm is in fact non-existent and that Meeker was in fact the the alter ego Crestview Farm. At all times relevant hereto, Meeker deliberately used the corporate form of Crestview Farm fraudulently or for improper purposes, and as more fully set forth herein below, formed or used the corporate form, including but not limited to being a mere device or sham and used to commit fraud and to frustrate La Dolfina and Mr. Cambiaso and which caused and threaten to further cause injury to Plaintiffs.   Further, Crestview Farm conducted related cloning business in Palm Beach County, Florida during periods relevant hereto, such as with Chris Young and Overbrook Farm, LLC, which cloning business became part of the representations and material terms of the contractual obligations of Defendants with Plaintiffs.

15.     Defendant Crestview Genetics, LLC ("Crestview Genetics") is incorporated in Nevada as a Nevada limited liability company, having an address and principal place of business at 4770 Bryant Irvin Court, Suite 400, Fort Worth, TX 76107.   Meeker was at all times relevant hereto, the sole Member of Crestview Genetics and manager of Crestview Genetics, and so dominates and controls Crestview Genetics to such an extent that the independent existence of Crestview Genetics is in fact non-existent and that Meeker was in fact the the alter ego Crestview Genetics. At all times relevant hereto, Meeker deliberately formed and used the corporate form of Crestview

Genetics fraudulently or for improper purposes, and as more fully set forth herein below, formed and used the corporate form, including but not limited to being a mere device or sham and being used to commit fraud and to frustrate La Dolfina and Mr. Cambiaso and which caused and threaten to further cause injury to Plaintiffs. Further, Crestview Genetics conducted related cloning business in Palm Beach County, Florida during periods relevant hereto, such as with Chris Young and Overbrook Farm, LLC, which cloning business became part of the representations and material terms of the contractual obligations of Defendants with Plaintiffs.

16.     The misrepresentations of Meeker and the Crestview Defendants set forth herein were made by Meeker and Crestview Farm in Wellington, Palm Beach County, Florida.   Further, the misconduct and breaches by Meeker and Crestview Farm have had an effect on Plaintiffs in Palm Beach County, Florida[2] as well as elsewhere.

17.     Further, Defendant Meeker has previously availed himself of the privilege of conducting other business in Florida, registering his company, in which he is the Chief Executive Officer and Manager, TOTAL DIAGNOSTIX II, LLC ("Total Diagonostix"), a Tennessee limited liability company, under FLDOS filing # M15000007588 to conduct business in Florida, on December 23, 2015.   Meeker subsequently and repeatedly filed annual reports in Florida listing Meeker as a manager of that Florida company from 2015 through 2018. Defendant Meeker has also availed himself of the privilege of conducting further business in Florida, registering his company, in which he is the Chief Executive Officer and Manager, CQUENTIA NGS, LLC ("Cquentia"), a Texas limited liability company, under FLDOS filing # M18000001107 to conduct business in Florida, on January 31, 2108.   Meeker subsequently and repeatedly has filed annual reports in

---

[2] Wellington, Palm Beach County, Florida, is home to the high-goal polo tournament which occur annually January through April, in which La Dolfina, its horses and Mr. Cambiaso have appeared and competed for over two decades.

Florida listing Meeker as a manager of that Florida company from 2018 through the present. Meeker and his Total Diagonistix and Cquentia companies have recently been sued in both Florida state and federal courts for claims including but not limited to fraud, civil theft, unjust enrichment, and for breach of contract.[3]

18.      In addition to the non-economic damages sought herein, Plaintiffs seek damages in excess of $ 75,000, exclusive of attorney's fees and costs.

19.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000 exclusive of interests and costs.   Plaintiffs also seek declaratory relief herein and therefore this Court additionally had subject matter jurisdiction pursuant to 22 U.S.C. §§ 2201 and 2202 and pursuant to Fed.R.Civ.Pro. 57.

20.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the parties each conduct business within this State and are subject to personal jurisdiction in this Court.

## The Cloning Idea in 2006

21.      The La Dolfina interest in cloning polo ponies arose out of an unfortunate and mortal injury to Mr. Cambiaso's favorite horse, an agile chestnut stallion named "Aiken Cura."   During a tie-break period (chukker) of the 2006 Campeonato Argentino Abierto de Polo, a high-goal, professional polo tournament which Mr. Cambiaso and La Dolfina had been playing in, Aiken Cura collapsed with a broken limb when returning to the side of the field in Palermo, Bueno Aires,

---

[3] Meekerr's Cquentia was recently subject to a *qui tam* lawsuit for False Claim Act violations for Anti-Kickback and Stark Law violations in *United States ex rel. Piñon v. CQuentia Series LLC d/b/a CQuentia Labs, Total Diagnostix, LLC, and Decatur Hospital Authority, d/b/a Wise Regional Health Systems.*   Meeker is the Chief Executive Officer of the Cquentia Labs conglomerate and his attorney involved in the facts herein, Mr. Ross, is Cquentia's General Counsel.
See:   http://www.cquentia.com/about-cquentia/our-team/

Argentina.   When Mr. Cambiaso felt the horse begin to limp beneath him, he leapt out of his saddle and threw his blue-and-white helmet to the ground in anguish.   "Save this one whatever it takes!" he had pleaded, covering his face with his gloves.   But the leg had to be amputated below the knee, and eventually Mr. Cambiaso, whose team won the Argentine Open that year and has won this most- prestigious of high-goal tournaments an additional twelve times[4], was forced to euthanize his beloved Aiken Cura.

22.     Before euthanizing Aiken Cura, Mr. Cambiaso requested veterinarians obtain a skin sample from the horse and put the sample into a deep freeze to store in a Buenos Aires laboratory.

23.     Mr. Cambiaso, who together with his La Dolfina team, relies heavily on the abilities of his equine athletic partners on the field of play, remembers his thinking that day: "I just thought maybe, someday, I could do something with the cells."

## The Horse Cloning Initiative

24.     Three years later, in 2009, Defendant Meeker, who is a Texas oilman with an amateur interest in cloning, approached La Dolfina and Cambiaso and offered to enter into a joint business venture to clone, market and sell some of La Dolfina's best polo ponies, using genetic material taken from those polo ponies.   Many of the discussions with La Dolfina and Mr. Cambiaso and misrepresentations by Defendants regarding the Cloning Initiative occurred in Wellington, Palm Beach County, Florida.   Further, much of the agreement amongst the parties was made in Palm Beach County, Florida.

25.     Meeker and Cambiaso thus subsequently entered into The Horse Cloning Contract (the "Cloning Initiative Agreement"), attached hereto as **Exhibit 1,** as an expression of the intentions

---

[4] La Dolfina has won the Argentine Open seven consecutive times up to 2019.   The 2020 Argentine Open is presently being contested.

of the parties with regard to cloning, and as an expression of the intention of the parties that further, mutual agreements were contemplated between the parties regarding the cloning initiative.

26.    The Cloning Initiative Agreement was drafted on or about June 15, 2009 by Meeker's attorneys.   That document was premised on the assumptions that:

> WHEREAS, Owner is the owner of certain mares and also owns full rights to the tissue of Aiken Currah, a deceased stallion, which tissue is currently in cryogenic stasis;
>
> WHEREAS, Crestview is currently involved in the use of advanced biotechnologies in the cloning of horses;
>
> WHEREAS, Owner and Crestview wish to enter into an arrangement for the purpose of jointly producing, marketing and selling cloned animals;
>
> WHEREAS, in furtherance of the foregoing, Owner is willing to provide tissue from certain mares and from Aiken Currah in accordance with the terms and conditions set forth hereinbelow.

27.    The document was thus was premised upon the underlying assumptions and premises of Meeker and Mr. Cambiaso that:

> 1)    The genetic donor polo pony mares and the tissue of Aiken Cura (misspelled Aiken Currah in the Contract) were owned by Mr. Cambiaso;
>
> 2)    Meeker through his Crestview Farm, LLC entity was then "involved in the use of advanced technologies in the cloning of horses";
>
> 3)    A joint "arrangement" was later to be entered into between the parties; and
>
> 4)    Mr. Cambiaso would provide genetic tissue from Aiken Cura and other polo pony mares according the terms of the Contract.

28.    The parties did not intend the Cloning Initiative Agreement to be the final expression of the terms of the cloning business endeavor. Drafted by Meeker's attorneys, the Contract lacks an "entire agreement" or integration clause, and reads more akin to a letter of intent, contingent on the cloning technology actually working and requiring further preconditions and agreements:

- in paragraphs 1 and 2, requiring the successful cloning to occur;

- in paragraph 3, requiring further negotiation to establish a mutually acceptable cloning program only if the cloning was successful, to wit:

> 3.   Further Cooperation.  Upon the successful production of one or more clones, Owner and Crestview agree to negotiate in good faith to establish a mutually acceptable program providing for the endorsement and marketing of clones and Crestview's cloning program.  Pending any such agreement Crestview shall be entitled to identify the name of the original animal and Owner to potential purchasers.

- also in paragraph 3, providing that until the negotiation and establishment of a mutually acceptable program, La Dolfina, and not Meeker, was to continue to be considered the owner of the original animal;

- requiring, in paragraph 4, further mutual agreement between the parties as to sales price and terms; and

- requiring, in paragraph 5, requiring further mutual agreement prior to any "second edition" of cloned polo ponies.

29.    Mr. Cambiaso, an Argentine for whom English is not his native language, did not participate in the drafting of this English-only document, which was not translated by Meeker's attorneys.   Mr. Cambiaso and La Dolfina were not given an opportunity to review the Contract with their attorneys. Mr. Cambiaso understood from the concurrent misrepresentations by Meeker and Crestview Farm, that Mr. Cambiaso was executing the Cloning Initiative Agreement on behalf of La Dolfina, which was at all times relevant hereto the owner of the relevant original horse Aiken Cura. Further, while the horse "Aiken Cura" and its genetic material was and is owned by Mr. Cambiaso, other of the   horses later involved were owned by La Dolfina.

30.    The cloning technology ultimately proved successful, and between January 6, 2010 and January 2, 2011, certain of Mr. Cambiaso and La Dolfina polo pony clones were born in Argentina.

## Defendants' Misrepresentations

31.     Concurrently with the negotiation and execution of the Cloning Initiative Agreement, numerous representations were made by Meeker, individually and through his Crestview Farm, LLC, that La Dolfina and Mr. Cambiaso through his interest in La Dolfina, were to be considered the owner of the original polo ponies (and their genetic material) that were and might in the future be subject to cloning and that Meeker understood that only limited rights were granted to Meeker.

32.     Meeker and the Crestview Defendants represented that they would not clone any La Dolfina or Cambiaso horses outside of express, mutual agreements between the parties. This representation turned out to be false.

33.     This was also the same sort of misrepresentation that Defendants made to others at about the same time.   For example, another business partner in a related cloning venture regarding the grandson progeny "Storm Cat 02" of the great racehorse "Secretariat" sued Crestview Genetics in 2016, alleging that Crestview Genetics created further Storm Cat clones to commercialize that stallion without the mutual and express written consent of the owner of Storm Cat.[5] **See Exhibit 2 hereto,** at ¶¶ 1 through 21 of the Storm Cat Owner's Counterclaim, commencing at page 20 therein.

34.     In that litigation, the owner only found out about the misappropriation of the Storm Cat genetic material and unauthorized cloning after an article expose' about the cloning in the magazine *Vanity Fair* was brought to the attention of the owner of Storm Cat.[6] See **Exhibit 2.**

---

[5] According to a federal court filing by Crestview Genetics, Storm Cat's clones would mate with with polo mares and other elite mares from competitive horse show provenance."

[6] When the owner of Storm Cat made demand upon Crestview Genetics to cease and desist, Crestview commenced litigation against Overbrook and its individual owner in an effort to suppress and avoid compliance with that demand. Also during that time in 2016, Crestview filed a Patent and Trademark Intent to Use the Storm Cat mark, purporting to be the owner of the Storm Cat mark when Storm Cat had been owned and stood for stud by its owner since the 1980s.

35.    Meeker and the Crestview Defendants also made the same sort representations in Florida to La Dolfina, Mr. Cambiaso and others during the period 2010 through 2019 during numerous meetings in Wellington, Palm Beach County, Florida leading up to and including the negotiations and execution of the 2019 Side Letter Agreement.   Defendants made promises that they would undertake only the mutually-agreed upon use of the genetic material to create only clones authorized and agreed upon by the parties.

36.    These representations were consistent with the purpose and intent of the 2009 and 2019 agreements and business relationship, which was to promote the very limited cloning and distribution of a very small number of La Dolfina polo pony clones.   These representations were also consistent with the sport of polo, where it is widely considered that a player's success is more than 50% attributable to the quality of his polo pony string, and in the case of La Dolfina, where a powerful and valuable brand had been built by Mr. Cambiaso based upon the competitive successes of Mr. Cambiaso himself and La Dolfina.

37.    However, as became clear to Plaintiffs only now, Defendants had and have no intention of honoring those representations and those representations were in fact false, made only to induce Plaintiffs to enter into the contractual relationships set forth herein.

38.    Additionally, in 2019, Meeker also represented to La Dolfina and Cambiaso, while in Palm Beach County, Florida and alsoat that time of the negotiation and execution of that document, that Meeker and Crestview Farm possessed the technology and experience to effect the purpose and intent of the parties as first expressed in 2009.

39.    La Dolfina and Mr. Cambiaso only later learned that, despite the June 2009 and July 2019 representations by Meeker in the Cloning Initiative Agreement and the 2019 Side Letter Agreement, at that time, Meeker and his Crestview Farm did not actually possess the technological

expertise to actually clone a polo pony and were not the actual *owners* of the Storm Cat stallion Clone.

40.     Therefore, both the 2009 Cloning Initiative Agreement and the 2019 Sidle Letter Agreement are void *ab initio* because of the fraudulent misrepresentations of Meeker, Crestview Farm and Crestview Genetics.

41.     Meeker and Crestview Farm falsely represented to Plaintiffs in 2009 that they possessed the technology and experience to produce polo pony clones.  However, Meeker and Crestview Farm did not actually obtain that technology and ability until November 8, 2010, which was over 16 months after the Cloning Initiative Agreement was drafted on June 15, 2009.

42.     Only in late 2010 did Meeker and Crestview Farm eventually locate an Arizona company, ViaGen, Inc., and enter into a technology and services Agreement (the "ViaGen Agreement") in order that Meeker, through his newly-created Crestview Genetics, LLC entity, could actually perform any of Meeker's obligations under the Contract. **Exhibit 3 hereto.**

43.     In fact, neither Meeker nor Crestview Farm ever performed under the Cloning Initiative Agreement because the 2010 ViaGen Agreement grants Crestview Genetics, LLC, not Crestview Farm, LLC and not Meeker, a license to use the ViaGen cloning technology.

44.     Therefore, from the inception of the Cloning Initiative Agreement and at all times thereafter, neither Crestview Farm nor Meeker have ever been able to perform under the 2009 Cloning Initiative Agreement.

45.     Therefore not only was the Cloning Initiative Agreement void *ab initio* because of the fraudulent misrepresentations by Meeker and Crestview Farm, that document was immediately breached by Crestview Farm and Meeker because they never did have the ability to undertake any of the performance for which they were obligated under that document.

46.     With no performance possible by Crestview Farm and Mr. Meeker under the Cloning Initiative Agreement, there was no consideration given La Dolfina and Mr. Cambiaso when that document was executed.   Therefore, that document fails as a contract for lack of consideration.

47.     Further, on July 29, 2019, Plaintiffs and Defendant Crestview Genetics entered into the 2019 Side Letter Agreement, **Exhibit 4 hereto**, whereby Defendants Meeker and Crestview Genetics purportedly contributed as consideration the ownership and cloning rights to the valuable "Storm Cat 02" racehorse clone.   Discussed further herein below, Plaintiffs have come to understand that at the time of the 2019 Side Letter Agreement, Meeker and Crestview Genetics did not actually own Storm Cat 02 and its genetic material, but only had a limited license to use, on a very restrictive schedule, the Storm Cat 02 clone.

48.     Because Meeker and Crestview Genetics did not actually own Storm Cat 02, despite their express representations to the contrary to induce Plaintiffs to execute the Side Letter Agreement, those Defendants neither put in the full consideration required under the Side Letter Agreement, nor were able to perform under the Side Letter Agreement.

49.     Had La Dolfina and Mr. Cambiaso known in June of 2019 that Meeker, Crestview Farm and Crestview Genetics did not then possess the cloning technology and experience in cloning equines, and that Meeker and Crestview Genetics did not own the Storm Cat 02 clone and did not possess unlimited rights to use the Storm Cat genetic material and to freely produce Storm Cat clones, La Dolfina and Cambiaso would not have entered into the 2009 Cloning Initiative Agreement and the 2019 Side Letter Agreement.

**Defendants' Scheme to Steal Valuable Equine Genetic Material**

50.     Only now has the deliberate plan by Meeker and the Crestview Defendants to steal genetic material from rightful owners become clear to La Dolfina and Mr. Cambiaso.

51.    The present scheme by the Defendants under color of purported contract is not the first time that Meeker and the Crestview Defendants have attempted to misappropriate and use in an unauthorized matter highly valuable and unique equine genetic material.

### The "Storm Cat" Steal

52.    Just as in the present case, Meeker and Crestview Genetics previously coveted a unique and famous equine genetic bloodline and spared no effort to wrongfully strip away the rightful ownership of the genetic material from the owners of the famous racehorse, Storm Cat.[7]

53.    Meeker once wrote about the Storm Cat genetic material,  "… I see going after all the markets in the US and abroad outside of Jockey Club breeding/intended use.  The sport horse worlds and polo world will want those genetics."

54.    Meeker, by and through his alter-ego Crestview Genetics, then embarked on an aggressive scheme to misappropriate from the owner, the genetic material of the famous racehorse Storm Cat, a grandson of of the World-renown thoroughbred racehorse "Secretariat."

55.    In that case, Defendants Meeker and Crestview Genetics misappropriated Storm Cat genetic material from the owners of the original Storm Cat and created an unauthorized clone of Storm Cat, named "Storm Cat 02."   **Exhibit 2.**

56.    In that federal litigation, Crestview Genetics and Meeker did not tell the owner of Strom Cat about such misconduct.   The owner of Storm Cat found out about the misappropriation of the

---

[7] The bloodline of Storm Cat is very valuable because of Secretariat's successes and the subsequent successes of Storm Cat progeny.   For example, as of 2016, Storm Cat progeny had earned an aggregate of over $ 128,000,000 in winning race purses, have sold for an aggregate of over $ 319,000,000 over 452 yearlings (averaging over $ 705,750 per yearling) with 91 Storm Cat yearlings selling for over $ 1,000,000.

Defendant Crestview Genetics has itself admitted in a prior federal lawsuit that Storm Cat was "a championship thoroughbred; Strom Cat was a grandson of the world-renowned thoroughbred, Secretariat; Storm Cat has also been known as the leading North American sire in 1999 and 2000; and Storm Cat had a breeding career that was legendary throughout the equine world, which career extended over twenty years."

Storm Cat genetic material and unauthorized cloning only after an article expose' about the cloning in the magazine *Vanity Fair* was brought to the attention of the owner of Storm Cat. See **Exhibit 2.**

57.    The owner of Storm Cat, Overbrook Farm, LLC, had previously informed Meeker and Crestview Genetics that "We never discussed giving Crestview ownership of the genetic material, but simply a right to produce, with our approval, a certain number of clones with the material." **Exhibit 2.**

58.    Meeker and Crestview Genetics nevertheless misappropriated the Storm Cat genetic material and produced a clone of Storm Cat.

59.    Also as part of Meeker's scheme in the Storm Cat misappropriation and cloning, in 2016 Crestview also attempted to misappropriate the Storm Cat trademark.   At that time, Meeker and Crestview Genetics filed with the U.S. Patent and Trademark Office an Intent to Use the Storm Cat mark, purporting to be the owner of the Storm Cat mark, despite the fact that Storm Cat had been owned and stood for stud by its owner Overbrook Farm, LLC since the 1980s.   **Exhibit 2.**

60.    When the owner of Storm Cat found out about the unauthorized Storm Cat clone from *Vanity Fair* and then made demand upon Defendants Meeker and Crestview Genetics to cease and desist, Crestview decided that the best defense to their malfeasance was to commence litigation against Overbrook and its individual owner in an effort to suppress and avoid compliance with that cease and desist demand.

61.    Ultimately, Meeker and Crestview Genetics were forced to concede that they did not own either the Storm Cat genetic material nor the right to trademark Storm Cat marks.   In the Storm Cat Settlement Agreement reached in April, 2017, Crestview conceded its misappropriation of the

genetic material and withdrew, in perpetuity, its intent to use application with the U.S. Patent and Trademark Office.

62.     In return, under the Storm Cat Settlement Agreement, Meeker and Crestview Genetics received very limited rights which were defined as (1) a *limited license* "to use" certain Storm Cat genetic material for limited cloning, and (2) certain "*licensed rights*" with respect to the Storm Cat mark, which limited rights were renewable in 5 year increments.   **Exhibit 5.**

63.     Significant to the present case, none of the Defendants received *ownership* of Storm Cat genetic material or the initial unauthorized Storm Cat clone created by Meeker and Crestview Genetics.

64.     For clarity, in the Storm Cat litigation, Meeker and Crestview: (1) misappropriated genetic material from a famous and valuable horse; (2) created an unauthorized clone of that horse; (3) with the intent to market the clone and its progeny and genetic material throughout the World;   (4) when confronted with the malfeasance, commenced litigation to block the owner's rights; and (5) was later forced to relinquish Meeker and Crestview Genetics' specious claims to Storm Cat and settle for strictly limited rights.

65.     In the present case, it appears history is repeating itself.

<b>The "Aiken Cura" Steal -</b>

<b><u>Defendants Create and Sell Unauthorized Polo Pony Clones</u></b>

66.     La Dolfina and Mr. Cambiaso have  just learned that in the Fall of 2020, Meeker began the unauthorized creation and selling of La Dolfina clones to third parties under color of the 2009 Cloning Initiative Agreement. Specifically, on November 18, 2020 (the "November 18th Correspondence"), Meeker's counsel admitted, in paragraph #2 of correspondence to La Dolfina **[Exhibit 6 hereto]**, that:

> Crestview Farm has created several cloned foals under its continuing rights under the 2009 Agreement, and has sold three of them to a third party for more than the minimum price mentioned in the 2009 Agreement or as later agreed by the parties.

67.     In that November 18, 2020 correspondence, **Exhibit 6,** Meeker's counsel then identified the La Dolfina donor polo ponies and further took the position that:

> Crestview Farm's rights under the 2009 Agreement are completely separate and superior to any rights held by Adolfo under the 2019 Settlement Agreement with Crestview Genetics, LLC (a separate entity from Crestview Farm with different owners).

68.     From Meeker's correspondence and in subsequent conversations with his attorneys, it has become clear to La Dolfina that Meeker has disavowed all of Meeker's subsequent representations and contractual and fiduciary obligations under his 2010 through 2019 cloning business dealings with La Dolfina and rely solely upon the 2009 Cloning Initiative Agreement, over-reaching based upon an inception concept, just as Defendants did with the owners of Storm Cat.

69.     However, the 2009 document does not impart to Meeker, nor to Crestview Farm, the rights claimed by Meeker to the La Dolfina clones and to any genetic material owned by La Dolfina and by Mr. Cambiaso.

70.     Defendants' unauthorized misappropriation and use of equine genetic material belonging to La Dolfina and Mr. Cambiaso forms a familiar pattern also seen in the Storm Cat litigation – Defendants making misrepresentations, then grabbing highly unique and valuable equine genetic material from their rightful owners, producing unauthorized clones, and then marketing the clones and material throughout the World for profit.

**Defendants Make Unreasonable Demands**
**Threaten Litigation and Criminal Prosecution**

71.     Meeker and the Crestview Defendants seek to take further advantage of the chaotic and labyrinthine corporate maze they have created.   This time, they have dispatched correspondence on December 7, 2020 to Mr. Cambiaso and La Dolfina S.A. in Argentina, threatening criminal prosecution in Argentina (the December 7th Correspondence") unless certain, very complex actions, are not taken by Plaintiffs in 24 hours or less.

72.     The December 7th Correspondence was issued in bad faith by Defendants Meeker and Crestview Genetics in that the Correspondence (1) during a labor holiday, gives no more than 24 hours for Plaintiffs to complete compliance with a complex series of demands involving delicate genetic material and clones that are not readily accessible and transportable; and (2) was issued while Plaintiffs are in the midst of the final games of the Argentine Open[8], thus ensuring that Plaintiffs would not be able to cogently meet, discuss, respond or act in compliance with the December 7th Correspondence.   Clearly this Correspondence was issued in bad faith, with no intent to engage in meaningful dialogue or reach resolution, while at the same time threatening prosecution.

73.     To the extent that the 2019 Side Letter Agreement, **Exhibit 4**, is purported to be the "separate agreement" vaguely described in the 2019 Settlement Agreement, the Side Letter Agreement requires Crestview Genetics to continue to perform certain obligations, such as the substantial settlement payments by Crestview Genetics to Chris Young and Overbrook Farm, LLC. Those obligated settlement payments from Crestview Genetics to Young and Overbrook Farm are

---

[8] As of this writing, Plaintiffs are in pursuit of their 13th Argentine Open Championship, for which the final games are less than one week away, and are not available to consider and consult regarding response to the December 7th correspondence, let alone respond in 24 hours or less demanded in that Correspondence.

material terms of the 2019 Settlement Agreement, whereby Crestview Genetics was to have access to clones from a cloned stallion named "Storm Cat 02", which, under paragraph 7 of Schedule II of the purported Side Letter Agreement, were "owned" by Crestview Genetics and semen was to be delivered to La Dolfina and Mr. Cambiaso for use in their own natural breeding program.

74.     As a material inducement to Plaintiffs to enter into the 2019 Side Letter Agreement, Crestview Genetics represented in paragraph 6 of the Side Letter Agreement that "Crestview Genetics LLC is the owner of any and all clones derived from the cloned stallion 'Storm Cat 02.'"

75.     That was a material misrepresentation by Crestview Genetics.  Pursuant to the April 17, 2017 Settlement Agreement reached between the owners of Storm Cat and Crestview Genetics, attached hereto as **Exhibit 5,** Crestview Genetics was only granted the limited "right to use" an initial clone of Storm Cat, and that such "right to use" was contingent upon repeated, very large cash payments to be made by Crestview Genetics to Overbrook, the owner of the original Storm Cat.  **Exhibit 5, ¶¶** 6 and 10 therein.

76.     This misrepresentation by Crestview Genetics is material in that, despite representation to the contrary by Crestview Genetics to Plaintiffs, Plaintiffs are not guaranteed that Crestview Genetics may continue to lawfully deliver the Storm Cat 02 semen to Plaintiffs andis consequently a material breach by Crestview Genetics of the 2019 Side Letter Agreement.

77.     Because of this material breach of the 2019 Side Letter Agreement, Crestview Genetics cannot make claims against Plaintiffs by relying on a breach of the Side Letter Agreement.

78.     Further, as set forth herein above, the 2009 and 2019 agreements are therefore either or both (1) **void ab** initio because of the fraudulent inducement by Defendants; (2) voidable because of the fraudulent performance by Defendants; (3) fail for lack of consideration; and / or (4) have been materially breached through failure to perform by Defendants.

79.     Additionally, the wrongful appropriation and unauthorized cloning by Meeker, whether or not through Crestview Farm, is (5) a further breach of the 2009 document because it is beyond the scope of what was agreed upon in 2009.

80.     All conditions precedent to this Action have either been waived, excused or performed.

## Count I

## Preliminary and Permanent Injunctions

81.     Plaintiffs repeat and reallege against all Defendants the allegations of  ¶¶ 1 through 80 of the General Allegations.

82.     The genetic material belonging to La Dolfina and Mr. Cambiaso horses and the clone progeny of those horses is highly unique. The strict limitations on the cloning and distribution of the clones is necessary to ensure the continued viability and quality of the cloned genetic lines, as well as to sustain the market demand and market value of the genetic copies of the La Dolfina polo ponies.

83.     Defendants have also removed, unauthorized, equine genetic material belonging to Plaintiffs and others from the Republic of Argentina and brought that material to the United States.

84.     The unauthorized misappropriation of the La Dolfina horses' genetic material, unauthorized cloning, unauthorized sale and unauthorized World-wide distribution of the La Dolfina and Mr. Cambiaso clones by Defendants as alleged herein has caused and will continue to cause La Dolfina and Mr. Cambiaso irreparable and immediate injury, loss, and damages, for which there is no adequate remedy at law.

85.     No adequate remedy at law exists that can fully protect Plaintiffs from damages, Plaintiffs will continue to suffer if Meeker, Crestview Farm, Crestview Genetics, and all entities, individuals,

parents, subsidiaries, affiliates thereof, are permitted to continue to misappropriate and clone the La Dolfina or Mr. Cambiaso horses and market and sell the clones and / or their genetic material.

86.     The relief sought by Plaintiffs is further necessary to prevent and restrain the ongoing violations of law described herein.

87.     The balance of equities additionally favor Plaintiffs and is in the public interest.

WHEREFORE, Plaintiffs seek a preliminary injunction, to be made permanent at the conclusion of this case, against Defendants Meeker, Crestview Farm, Crestview Genetics, and against all entities, individuals, parents, subsidiaries, affiliates thereof, enjoining those individuals and entities, from continuing to misappropriate and clone the La Dolfina and Mr. Cambiaso horses and genetic material, and from marketing and selling the clones and genetic material.

## Count II
## Prejudgment Writ of Replevin

88.     Plaintiffs repeat and reallege against all Defendants the allegations of  ¶¶ 1 through 80 of the General Allegations.

89.     This is a claim for prejudgment Writ of Replevin pursuant to F.S. § 78.01 *et seq.* and Fed.R.Civ.Pro. 64.

90.     The claimed property is (1) all of the unique genetic material from any and all horses owned and/or controlled by La Dolfina and/or Mr. Cambiaso; and (3) all born clones from that unique genetic material; and (4) all clones of La Dolfina and Mr. Cambiaso presently in gestation as created by Defendants.

91.     Plaintiffs are entitled to the claimed property because the 2009 Cloning Initiative Agreement was void *ab initio*, breached by Defendants, lacked consideration, and because Defendants misappropriated the genetic material belonging to La Dolfina and Mr. Cambiaso.

92.     To the extent the 2009 document is found to be valid, Plaintiffs are nevertheless entitled to the claimed property because Defendants exceeded the authorized use of the genetic material belonging to La Dolfina and Mr. Cambiaso.

93.     The claimed property has not been taken for a tax, assessment or fine pursuant to law.

94.     The claimed property has not been taken under an execution or attachment against the property of Plaintiffs or if taken, is exempt.

95.     The claimed property is being wrongfully detained, used and sold by Defendants.

        WHEREFORE, pursuant to F.S. §78.01 *et seq.,* this Court should therefore issue a prejudgment Writ of Replevin requiring the Defendants to immediately *turn over* all of the claimed property to the sole possession, custody and control of La Dolfina.

### Count III

### Fraudulent Inducement
### Regarding the 2009 Agreement

96.     Plaintiffs repeat and reallege against Defendants Meeker and Crestview Farm the allegations of ¶¶ 1 through 80 of the General Allegations.

97.     Based on Defendants' representations in 2009 regarding the possession of the technology and experience to clone the La Dolfina horses, and reasonably and justifiably relying on those representations, Plaintiffs entered into the 2009 Cloning Initiative Agreement, provided Meeker, Crestview Farms, and their parents, subsidiaries, agents and representatives, access to and possession of the unique genetic material from select La Dolfina and Cambiaso polo ponies.

98.     At the time Defendants negotiated with Plaintiffs and entered into the 2009 Cloning Initiative Agreement, Meeker and Crestview Farm did not actually possess the technology and experience to produce the clones which were the subject of that 2009 document.

99.     Further, at the same time, Defendants intended to misappropriate the genetic material from select La Dolfina and Cambiaso polo ponies and create and sell unauthorized clones therefrom. Defendants hid this intent from Plaintiffs during the negotiation and execution of the 2009 Agreement.

100.    At the time Defendants hid their intent from Plaintiffs, Defendants knew that such intent, if expressed, would discourage Plaintiffs from entering into the 2009 Agreement and providing access to the polo pony genetic material of Aiken Cura and other of Plaintiffs' valuable polo pony string.

101.    At the time of these misrepresentations and omissions, Defendants knew them to be false and misleading and intended to be false and misleading to Plaintiffs.

102.    Further, Defendants' attorneys drafted the 2009 Agreement to be false and misleading, and without providing a translation into Spanish.   Defendants then represented to Plaintiffs that the 2009 Agreement embodied what the parties had negotiated, when it did not.

103.    Plaintiffs reasonably relied upon Defendants' prior false representations and omission when entering into the 2009 Agreement.

104.    As a direct and proximate result of those misrepresentations and omissions by Defendants Meeker and Crestview Farm, Plaintiffs have been damaged and continue to be damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants Meeker and Crestview Farm, including but not limited to actual and incidental damages and return of all clones and genetic material, prejudgment and post judgment interest, attorney's fees and costs as allowed by law, and such other relief the Court finds just and proper.

## Count IV

### Fraudulent Inducement
### Regarding the 2019 Side Letter Agreement

105.    Plaintiff repeats and realleges against Defendants Meeker and Crestview Genetics the allegations of ¶¶ 1 through 80 of the General Allegations.

106.    Based on Meeker's and Crestview Genetics' representations in 2019 regarding their ownership of the Storm Cat clone and unrestricted use of the clone and the genetic material therefrom, and justifiably relying on those representations, Plaintiffs entered into the 2019 Side Letter Agreement.

107.    At the time Defendants negotiated with Plaintiffs and entered into the 2019 Side Letter Agreement, Meeker and Crestview Farm did not actually possess the technology and experience to produce the clones which were the subject of the 2019 Side Letter Agreement

108.    Further, at the same time, Defendants intended to misappropriate the genetic material from select La Dolfina and Cambiaso polo ponies and create and sell unauthorized clones therefrom. Defendants hid this intent from Plaintiffs during the negotiation and execution of the 2019 Side Letter Agreement.

109.    At the time Defendants hid their intent from Plaintiffs, Defendants knew that such intent, if expressed, would discourage Plaintiffs from entering into the 2019 Side Letter Agreement and providing access to the polo pony genetic material of Aiken Cura and other of Plaintiffs' valuable polo pony string.

110.    At the time of these misrepresentations and omissions, Defendants knew them to be false and misleading and intended to be false and misleading to Plaintiffs.

111.    Plaintiff reasonably relied upon Defendants' prior false representations and omission when entering into the 2019 Agreement.

112.    As a direct and proximate result of those misrepresentations and omissions by Defendants Meeker and Crestview Genetics, Plaintiffs have been damaged and continue to be damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants Meeker and Crestview Genetics, including but not limited to actual and incidental damages and return of all clones and genetic material, prejudgment and post judgment interest, attorney's fees and costs as allowed by law, and such other relief the Court finds just and proper.

### Count V

### Breach of Contract
### Regarding the 2009 Agreement

113.    Plaintiffs repeat and reallege against Defendants Meeker and Crestview Farm the allegations of ¶¶ 1 through 80 of the General Allegations.

114.    Plaintiffs Cambiaso and La Dolfina and Defendants Meeker and his alter-ego Crestview Farm entered into   the 2009 Cloning Initiative Agreement.

115.    The 2009 Agreement was premised upon the representation that Meeker, who controls and dominates the operations of Crestview Farm, and Crestview were experienced "in the use of advanced biotechnologies in the cloning of horses" and possessed those technologies.

116.    The 2009 Agreement did not convey ownership of any Cambiaso or La Dolfina horses. That Agreement only allowed Crestview Farm, as provided in ¶ 1, very limited access and license for Crestview "to select four mares from Owner's stock *for the purpose of extracting tissue samples for cloning*." [emphasis added].

117.    The balance of the 2009 Agreement provided only for access to genetic material, such as that of Aiken Cura, sale of clones and the number of clones to be made.   The 2009 Agreement was not a purchase by Defendants of polo ponies, or clones, or genetic material, from Mr. Cambiaso or La Dolfina.[9]

118.    The 2009 Agreement also contemplated further performance by Crestview of the production of "one or more clones" as required by ¶ 3 of the 2009 Agreement.

119.    As well, ¶ 4 had a condition precedent, that Crestview Farm successfully produce clones.

120.    Crestview Farm did not ever produce "one or more clones."   According to the representations of Defendants' counsel, as well as the ViaGen Technology Agreement, Crestview Genetics created clones.

121.    However, and again according to the express admission of Defendants' counsel in the December 7th Correspondence Crestview Farm's contractual obligations and Crestview Genetics' obligations are subject to separate documents governing separate entities.

122.    Accepting that admission, then Meeker and Crestview Farm have not ever performed under the 2009 Agreement and thus have breached the Agreement.

123.    Further, because Crestview Farm did not ever obtain the "advanced biotechnology" to clone the polo ponies, which were both underlying condition precedent to the performance by Mr. Cambiaso and La Dolfina, the 2009 Agreement was first breached by Meeker and Crestview Farm. Therefore, any performance that might have been required under the 2009 Agreement by Cambiaso and La Dolfina is excused.

---

[9] Defendants' current mischaracterization of the 2009 Agreement as a "purchase and sale" of famous equine genetic material and clones is reminiscent of the similar attempts at mischaracterization by Meeker of the agreement with Storm Cat's owners, which Meeker was subsequently forced to abandon.

124.   Additionally, Defendants did not ever establish "an acceptable breeding program providing for the endorsement and marketing of clones and Crestview's cloning program" as required by ¶ 3 of the 2009 Agreement.

125.   By breaching the aforesaid provisions of the 2009 Agreement in the manner and method by which they did so, Defendants also breached the implied covenant of good faith and fair dealing implicit in those provisions of the 2009 Agreement.

WHEREFORE, Plaintiffs demand judgment against Defendants Meeker and Crestview Farm, including but not limited to actual and incidental damages and return of all clones and genetic material, prejudgment and post judgment interest, attorney's fees and costs as allowed by law, and such other relief the Court finds just and proper.

## Count VI

### Breach of Contract
### Regarding the 2019 Side Letter Agreement

126.   Plaintiffs repeat and reallege against Defendants Meeker and Crestview Genetics the allegations of ¶¶ 1 through 80 of the General Allegations.

127.   Plaintiffs Mr. Cambiaso and La Dolfina and Defendants Meeker and his alter-ego Crestview Genetics entered into the 2019 Side Letter Agreement along with other parties thereto.

128.   The 2019 Side Letter Agreement was premised upon the representation that Meeker, who controls and  dominates the operations of Crestview Farm, and Crestview were experienced "in the use of advanced biotechnologies in the cloning of horses" and possessed that technologies.

129.   The 2009 Agreement also contemplated further performance by Crestview of the production of "one or more clones."

130.    Crestview Farm did not ever produce "one or more clones."   According to the representations of Defendants' counsel, as well as the ViaGen Technology Agreement, Crestview Genetics created clones.   However, and again according to the express admission of Defendants' counsel in the December 7th Correspondence Crestview Farm's contractual obligations and Crestview Genetics' obligations are subject to separate documents governing separate entities.

131.    Accepting that admission, then Meeker and Crestview Farm have not ever performed under the 2009 Agreement and thus have breached the Agreement.

132.    Further, because Crestview Farm did not ever obtain the "advanced biotechnology" to clone the polo ponies, which were both underlying condition precedent to the performance by Mr. Cambiaso and La Dolfina, the 2009 Agreement was first breached by Meeker and Crestview Farm. Therefore, any performance that might have been required under the 2009 Agreement by Cambiaso and La Dolfina is excused.

133.    By breaching the aforesaid provisions of the 2019 Side Letter Agreement in the manner and method by which they did so, Defendants also breached the implied covenant of good faith and fair dealing implicit in those provisions of the 2019 Side Letter Agreement.

WHEREFORE, Plaintiffs demand judgment against Defendants Meeker and Crestview Genetics, including but not limited to actual and incidental damages and return of all clones and genetic material, prejudgment and post judgment interest, attorney's fees and costs as allowed by law, and such other relief the Court finds just and proper.

**Count VII**

**Breach of Bailment Contracts
Regarding the 2009 Agreement
and 2019 Side Letter Agreement**

134.   Plaintiffs repeat and reallege against all Defendants the allegations of ¶¶ 1 through 80 of the General Allegations.

135.   Both the 2009 and 2019 Agreements gave possession to Defendants of Plaintiffs' genetic material for strictly limited purposes and under strictly limited parameters.

136.   Plaintiffs' genetic material and any clones therefrom were thus delivered to Defendants only temporarily, with redelivery or delivery to a third party later contemplated, such as by sale of the clones to third parties.

137.   The 2009 and 2019 Agreements, as well as can be implied from the conduct of the parties during this time period, created only a a bailment for the mutual benefit of the parties in return for the benefits flowing from the fact of bailment.

138.   Further, Defendants were charged with the exercise of care, to preserve the value of the bailed genetic material and clones, for example, by not engaging in unauthorized production and sale which would dilute the valuable genetic bloodlines.

139.   Defendants nonetheless exceeded the scope of their authorized bailment and misappropriated Plaintiffs' genetic material and produced and sold unauthorized clones.[10]

140.   As a direct and proximate consequence of these breaches of the conditions of bailment under both the 2009 and 2019 Agreements, Plaintiffs have been injured.

WHEREFORE, Plaintiffs demand judgment against all Defendants, including but not limited to actual and incidental damages and return of all clones and genetic material, prejudgment

---

[10]  Much in the same pattern of conduct as in the matter of Storm Cat.

and post judgment interest, attorney's fees and costs as allowed by law, and such other relief the Court finds just and proper.

## Count VIII

## Breach of Fiduciary Duties

141.    Plaintiffs repeat and reallege against all Defendants the allegations of ¶¶ 1 through 80 of the General Allegations.

142.    Under the 2009 and 2019 Agreements, Defendants represented that they possessed and were experienced in the use of advanced biotechnologies in the cloning of horses and Plaintiffs relied upon Plaintiffs and their expertise.   As such equine cloning experts, Defendants enjoyed a superior position to Plaintiffs during the negotiation and performance of those Agreements. Therefore, Defendants enjoyed a special relationship with Plaintiffs and specifically agreed to that relationship.

143.    Meeker and Crestview specifically solicited that special relationship and all Defendants have benefitted from their superior position in that relationship, while Plaintiffs relied upon Defendants to act on Plaintiffs' behalf and to look out for Plaintiffs' best interests in the discharge of the Defendants' roles in the cloning initiative.   The Defendants thus had a fiduciary relationship with Plaintiffs.

144.    By the aforesaid acts and omissions of and by the Defendants, those Defendants breached their duty of loyalty to Plaintiffs which obligated the Defendants to use reasonable and due diligence and care in the use of the genetic material and cloning and marketing and sale of the clones, so as to preserve Plaintiffs' rights as a member of the cloning initiative.

145.    The Defendants owed those fiduciary duties to Plaintiffs by virtue of the the Defendants' professed superior knowledge in equine cloning technology, for which Plaintiffs reposed much

trust in those Defendants, and upon which Plaintiffs relied in choosing to enter into the 2009 and 2019 Agreements and contribute genetic material of a vastly superior caliber.

146. As a result of the aforesaid acts and omissions by the Defendants and the consequent breaches of fiduciary duties to Plaintiffs, Plaintiffs gave sustained damages, including but not limited to deprivation of the value of its genetic material, dilution of Plaintiffs' brand and other irreparable harm, as well as non-monetary and monetary damages.

WHEREFORE, Plaintiffs demand judgment against all Defendants, including but not limited to actual and incidental damages and return of all clones and genetic material, prejudgment and post judgment interest, attorney's fees and costs as allowed by law, and such other relief the Court finds just and proper.

## Count IX

## Unjust Enrichment and Disgorgement

147. Plaintiffs repeat and reallege against all Defendants the allegations of ¶¶ 1 through 80 of the General Allegations.

148. Defendants have now received and enjoyed possession and use of Plaintiffs' equine genetic material and clones therefrom, and their breeding and earning capacity without paying for same and while having exceeded the strict limits of Defendants' very limited bailment of that genetic material and clones.

149. In contrast, Plaintiffs have been denied possession of the genetic material, have seen their brand and genetic bloodlines diluted, have been denied their share of any proceeds from sale, have been subject to unreasonable demands, and cannot fully be compensated for such harm that is irreparable.

150.    Under these circumstances, it is therefore inequitable for Defendants to retain the genetic material, and the clones to allow the cloning and retain  breeding earnings from the clones or genetic material without compensating Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against all Defendants, including but not limited to actual and incidental damages, prejudgment and post judgment interest, attorney's fees and costs as allowed by law, and such other relief the Court finds just and proper.

### Count X
### Conversion

151.    Plaintiffs repeat and reallege against all Defendants the allegations of ¶¶ 1 through 80 of the General Allegations.

152.    As set forth herein, the  Defendants have exceeded the scope of their authorized use of Plaintiffs' equine genetic material and clones therefrom.   Defendants have claimed ownership of clones from that genetic material and have specifically admitted selling the clones into the public market and have retained all proceeds therefrom.

153.    Defendants have thus converted the equine genetic property and clone progeny therefrom to Defendants' own exclusive use and exclusive benefit.

154.    The Defendants accepted the investment of Plaintiffs' equine genetic material into the cloning initiative with the understanding and agreement that such contribution was for limited purpose and use, and was not a purchase and sale of that material.   Nevertheless, Defendants have converted that genetic material and the cloned progeny therefrom to their own use, thus permanently depriving Plaintiff of those assets.

155.    As a result of such conversion, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs demand judgment against all Defendants, including but not limited to actual and incidental damages and return of all clones and genetic material, prejudgment and post judgment interest, attorney's fees and costs as allowed by law, and such other relief the Court finds just and proper.

## Count XI
### Equitable Accounting

156.    Plaintiffs repeat and reallege against all Defendants the allegations of ¶¶ 1 through 80 of the General Allegations

157.    By virtue of Defendants' possession and use of Plaintiffs' genetic material and operation of the biotechnology to effect the cloning therefrom, and as required by the 2009 and 2019 Agreements, Defendants were required to keep and disclose accurate records to account for the use of Plaintiffs' genetic material and the clones therefrom, and the revenues derived from all financial activity regarding same.

158.    Defendants have not shared this information with Plaintiffs despite Plaintiffs' demand, while admitting that Defendants have sold and plan to imminently sell, clones from Plaintiffs' equine genetic material in to the public market.

159.    Under the aforesaid circumstances, Defendants should be ordered to account to Plaintiffs for the use of Plaintiffs' genetic material the clones therefrom, and the revenues derived from all financial activity regarding same.

WHEREFORE, Plaintiff demands judgment against Defendants requiring an accounting to Plaintiffs of the use of Plaintiffs' genetic material the clones therefrom, and the revenues derived from all financial activity regarding same.

**Count XII**

**Imposition of a Constructive Trust**

160.    Plaintiffs repeat and reallege against all Defendants the allegations of ¶¶ 1 through 80 of the General Allegations.

161.    As set forth herein, the Defendants have exceeded the scope of their authorized use of Plaintiffs' equine genetic material and clones therefrom and Defendants have have claimed ownership of clones from that genetic material and have specifically admitted selling the clones into the public market and have retained all proceeds therefrom.

162.    Defendants have thus converted the equine genetic property and clone progeny therefrom to Defendants' own exclusive use and exclusive benefit, permanently depriving Plaintiff of those assets.

163.    As a result of such conversion, Plaintiffs have been damaged.

164.    Should the Court order Defendants to return the genetic material and clones, and any proceeds derived therefrom to Plaintiff, in order to secure Defendants' performance, Plaintiffs seek a constructive trust upon all of the membership interest of Crestview Genetics, LLC held by Defendants, whether directly or indirectly so held.

165.    The imposition of such a constructive trust is to serve as a method of securing Defendants' performance of such an Order of the Court, and not as an additional award of damages.

WHEREFORE, Plaintiffs demand the imposition of a constructive trust, in favor of Plaintiffs, upon all of the membership interest of Crestview Genetics, LLC held by Defendants, whether held directly or indirectly through a third party.

## Count XIII

## Declaratory Judgment

166.    Plaintiffs repeat and reallege against all Defendants the allegations of ¶¶ 1 through 80 of the General Allegations.

167.    The parties are in doubt concerning their respective rights to Plaintiffs' equine genetic material and horses under ¶¶ 1, 2 and 4 of the 2009 Cloning Initiative Agreement.

168.    The parties are further in doubt concerning their respective rights to Plaintiffs' equine genetic material and clones under ¶ 7 of the 2019 Side Letter Agreement as to whether Defendant Crestview Farm, or some other entity, was the actual owner of Storm Cat 02 and whether such entity had unlimited right to use the genetic material of Strom Cat 02.

169.    Therefore, there is a bonafide, actual, present and practical need for a declaration of the Court as to the rights and remedies of the court with respect to both the 2009 and 2019 Agreements.

WHEREFORE, Plaintiffs seek declaratory judgement or such other remedy as the Court may deem proper, to resolve the rights and remedies of the parties under the Agreements.

## <u>Jury Demand</u>

Plaintiffs hereby request trial by jury on all matters so triable as of right.

Respectfully submitted,

CHAPMAN LAW GROUP, PLC,

*Avery S. Chapman*
Avery S. Chapman, Esq.
FL Bar No. 517321
12008 South Shore Blvd.
Suite 105

Wellington, Florida 33414
Tel. 561.753.5996
Facsimile 561.828.2852
asc@chapmanlawgroup.net
grg@chapmanlawgroup.net
teh@chapmanlawgroup.net


*Attorneys for La Dolfina, S.A. LLC and
Adolfo Cambiaso*