# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| CRESTVIEW GENETICS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:16-CV-00295-A |
| CHRIS YOUNG and | § | |
| OVERBROOK FARM, LLC, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIM

Plaintiff, Crestview Genetics, LLC ("Crestview"), files its answer to the counterclaim of defendants, Chris Young ("Young") and Overbrook Farm, LLC ("Overbrook Farm") (collectively, "Overbrook"), and would respectfully show the Court the following:

## ANSWER TO OVERBROOK'S COUNTERCLAIM

### I.
### BACKGROUND FACTS

1. The first paragraph of the counterclaim purports to incorporate by reference all the "allegations in [the] answer." Because the answer is simply a response to Crestview's claims it should not contain separate allegations related to a counterclaim. To the extent there are any allegations in Overbrook's answer that are contrary to Crestview's claims, Crestview denies all such allegations.

2. Crestview admits the allegations in paragraph 2.

3. Crestview admits the allegations in paragraph 3 that: Overbrook bred, owned, and raced Storm Cat, a championship thoroughbred; Storm Cat was a grandson of the world-renowned thoroughbred, Secretariat; Storm Cat has also been known as the leading North American sire in 1999 and 2000; and Storm Cat had a breeding career that was legendary

throughout the equine world, which career extended over twenty years. Crestview denies the allegations that: "all of this was done by Overbrook;" since the mid-1980s, Overbrook has become known as the home and owner of Storm Cat; Storm Cat's reputation and affiliation with Overbrook has been used by its owner, Overbrook, as a valuable trademark throughout the life of Storm Cat and thereafter. Crestview denies knowledge of information sufficient to form a belief as to the allegations and, therefore, denies, that: all of the work in making Storm Cat a leading sire was done by Overbrook; over the course of Storm Cat's breeding career, his offspring have earned in excess of $128,000,000.00; sales proceeds of Storm Cat's offspring of 452 yearlings have had combined sales of more than $319,000,000.00, including 91 yearlings that brought $1,000,000.00 or more; and, the fame of Storm Cat and his association with Overbrook is evidenced by literally hundreds of articles and advertisements in multiple equine publications having worldwide distribution, such as *Bloodhorse*.

4. Crestview denies knowledge of information sufficient to form a belief as to the allegations in paragraph 4 of the Counterclaim that in the library of the University of Kentucky there is a depiction of the then principal of Overbrook Farm—its founder, William T. Young (Young's grandfather)—standing beside Storm Cat in the artwork in a paddock on Overbrook's farm; and, therefore, such allegations are denied.

5. Crestview denies the allegations in paragraph 5.

6. Crestview admits the allegations in paragraph 6 of the Counterclaim that Overbrook currently leases its barns and pastures and its facilities to third parties who are in the horse industry; and that these lessees utilize these facilities for their equine breeding and the raising of horses. Crestview denies the remainder of the allegations in paragraph 6.

7. Crestview denies the allegations in paragraph 7.

8. Crestview denies that Meeker initiated discussions with Overbrook; otherwise, Crestview admits the allegations in paragraph 8.

9. Crestview admits the allegations in paragraph 9 of the Counterclaim that: a personal meeting between Meeker and Young occurred on or about February 20, 2013 in Wellington, Florida; they discussed the possibility of cloning Storm Cat; and, no written agreement exists between the parties. Crestview denies the remaining allegations in paragraph 9.

10. Crestview admits the allegations in paragraph 10 of the Counterclaim that: Overbrook euthanized Storm Cat in 2013 due to his declining health and under the supervision of Storm Cat's longtime veterinarians, at least one tissue sample was taken from Storm Cat and sent to Crestview. Crestview denies knowledge or information sufficient to form a belief as to the allegations that one set was sent to the Gluck Equine Research Center at the University of Kentucky, in Lexington, Kentucky. Crestview denies the remaining allegations in paragraph 10.

11. Crestview admits the allegation in paragraph 11 of the Counterclaim that, in 2014, it cloned Storm Cat's cell tissues and cloned 2 foals, which foaled in 2015, but denies the allegations that it did so "surreptitiously" and "[w]ithout any such agreement or approval from Overbook." Crestview admits the allegation that one foal lived, and the other foal was euthanized. Crestview denies knowledge of information sufficient to form a belief as to the allegation that, in 2015, Young was referred to a *Vanity Fair* magazine article in which Meeker had announced that Crestview had successfully cloned Storm Cat. Crestview denies the allegations remaining in paragraph 11.

12. Crestview denies the allegations in paragraph 12 that further discussions in an effort to reach an agreement to govern cloning and commercial activities consequent thereto were had, but the Parties reached an impasse. Crestview admits the allegation that Overbrook made demand on Crestview to cease using the name/mark "STORM CAT," to destroy all cell

cultures, and to castrate the remaining live foal, but denies that Overbrook had the right to make such demand.

13. Crestview admits the allegation in paragraph 13 of the Counterclaim that it initiated litigation; but, otherwise, Crestview denies the allegation in paragraph 13.

14. Crestview admits the allegation in paragraph 14, but denies that Overbrook had the right to make such demand.

15. Crestview admits the allegation in paragraph 15 only to the extent that Crestview admits that it recently filed an Intent to Use ("ITU") trademark application with the United States Patent and Trademark Office ("PTO"), serial number 87001382, for the service mark "STORM CAT," and that the mark is for "veterinarian services, breeding, and stud services for horses." Crestview denies the remainder of the allegations in paragraph 15.

16. Crestview denies the allegations in paragraph 16.

17. Crestview denies the allegations in paragraph 17.

18. Crestview denies the allegations in paragraph 18.

19. In response to paragraph 19, Crestview admits the veracity of the allegations it has made, but denies the characterization by Overbrook of those allegations.

20. Crestview admits only that it has the capacity to clone Storm Cat. The remaining allegations in paragraph 20 are conclusory, speculative, vague, and ambiguous (*e.g.* "commercialization"); and, therefore, Crestview denies knowledge of information sufficient to form a belief as to the truth of the allegations, and such allegations are denied for that reason.

## II.
## DEFENDANT'S COUNTERCLAIMS

### A. *Declaratory Judgment*

21. In response to paragraph 21, Crestview repeats and re-alleges responses to the allegations contained in each of the foregoing paragraphs as if set forth herein verbatim.

22. Crestview admits the allegations in paragraph 22, but denies that Overbrook is entitled to the requested relief.

23. Crestview denies the allegations in paragraph 23.

24. Crestview denies that Overbrook is entitled to the requested relief contained in paragraph 24.

25. Crestview denies that Overbrook is entitled to the requested relief contained in paragraph 25.

26. Crestview denies that Overbrook is entitled to the requested relief contained in paragraph 26.

27. Crestview denies that Overbrook is entitled to the requested relief contained in paragraph 27.

28. Crestview denies that Overbrook is entitled to the requested relief contained in paragraph 28.

### B. *Breach of Contract of Bailment*

29. In response to paragraph 29, Crestview repeats and re-alleges responses to the allegations contained in each of the foregoing paragraphs as if set forth herein verbatim.

30. Crestview denies the allegations in paragraph 30.

31. Crestview admits to having had communications with Overbrook, including reaching an oral agreement; but, otherwise, Crestview denies the allegations in paragraph 31.

32. Crestview denies the allegations in paragraph 32.

33. Crestview denies the allegations in paragraph 33.

34. Crestview denies the allegations in paragraph 34.

35. Crestview denies that Overbrook is entitled the relief it requests in paragraph 35.

36. Crestview admits only that Overbrook sent it a demand letter, but Crestview denies the remaining allegations in paragraph 36.

37. Crestview admits only that Overbrook is represented by counsel in this litigation, but denies knowledge sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 37.

38. Crestview denies that Overbrook is entitled to the requested relief contained in paragraph 38.

## C.  *Conversion*

39. In response to paragraph 39, Crestview repeats and re-alleges responses to the allegations contained in each of the foregoing paragraphs as if set forth herein verbatim.

40. Crestview denies the allegation in paragraph 40.

41. Crestview denies the allegation in paragraph 41.

42. Crestview denies the allegation in paragraph 42.

43. Crestview denies that Overbrook is entitled to the requested relief contained in paragraph 43.

44. Crestview denies that Overbrook is entitled to the requested relief contained in paragraph 44.

45. Crestview denies the allegations contained in paragraph 45.

46. Crestview denies the allegations in paragraph 46.

### D. *Accounting*

47. In response to paragraph 47, Crestview repeats and re-alleges responses to the allegations contained in each of the foregoing paragraphs as if set forth herein verbatim.

48. Crestview admits only that making a "profit" was a goal of the parties' agreement and that Crestview has complied with the agreement; otherwise, Crestview denies the allegations in paragraph 48 of the Counterclaim and that Overbrook is entitled to the requested relief contained in paragraph 48.

### E. *Common Law Trademark Infringement or Unfair Competition under the Lanham Act*

49. In response to paragraph 49, Crestview repeats and re-alleges responses to the allegations contained in each of the foregoing paragraphs as if set forth herein verbatim.

50. Crestview denies the allegations in paragraph 50.

51. Crestview denies knowledge of information sufficient to form a belief as to the allegations in paragraph 51.

52. Crestview denies the allegations in paragraph 52.

53. Crestview denies the allegations in paragraph 53.

54. Crestview denies the allegation in paragraph 54.

55. Crestview denies the allegation in paragraph 55.

56. Crestview denies the allegation in paragraph 56.

57. Crestview denies the allegations in paragraph 57.

58. Crestview denies the allegations in paragraph 58.

59. Crestview denies that Overbrook is entitled to the relief it requests in paragraph 59.

60. Crestview denies that Overbrook is entitled to the relief it requests in paragraph 60.

61. Crestview denies the allegations in paragraph 61.

62. Crestview denies the allegations in paragraph 62.

63. Crestview denies that Overbrook is entitled to the relief it requests in paragraph 63.

64. Crestview denies the allegations in paragraph 64.

### F. *Fraud on the Patent and Trademark Office*

65. In response to paragraph 65, Crestview repeats and re-alleges responses to the allegations contained in each of the foregoing paragraphs as if set forth herein verbatim.

66. Crestview admits the allegation in paragraph 66.

67. Crestview admits the allegation in paragraph 67.

68. Crestview denies the allegations in paragraph 68.

69. Crestview denies the allegations in paragraph 69.

70. Crestview denies the allegations in paragraph 70.

71. Crestview denies the allegations in paragraph 71.

72. Crestview denies the allegation in paragraph 72.

73. Crestview denies the allegations in paragraph 73.

## III.
## CONDITIONS PRECEDENT

74. Crestview denies that all conditions precedent to all claims in the Counterclaim have occurred, been met, been waived, or otherwise been satisfied.

## IV.
## JURY TRIAL DEMANDED

75. Crestview admits that Overbrook and Young demand a jury on all issues so triable.

## V.
## PRAYER

76. Crestview denies that either Overbrook or Young is entitled to any of the relief sought in their prayer.

## VI.
## AFFIRMATIVE AND OTHER DEFENSES

77. Overbrook's Counterclaim fails to state a claim upon which relief can be granted.

78. Overbrook's claims are barred in whole or in part by the doctrines of waiver and/or estoppel.

79. Overbrook's claims are barred in whole or in part by its unclean hands.

## VII.
## REQUESTED RELIEF ON OVERBROOK'S CLAIMS

Crestview requests that this Court grant it the following relief as to Overbrook's claims:

    a.    That an order be entered in Crestview's favor on all counts/claims for relief asserted in Overbrook's Counterclaim;

    b.    That Overbrook's Counterclaims be dismissed with prejudice;

    c.    That the cost of this action, including attorney's fees, be assessed against Overbrook;

    d.    Award Crestview all of the relief sought in its claim against Overbrook; and,

    e.    Such other and further relief as this Court deems appropriate.

Respectfully submitted,

*[signature]*

Lars L. Berg
State Bar No. 00787072
William N. Warren
State Bar No. 786331
Mallory A. Schuit
State Bar No. 24078212
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280

Lewis T Stevens
lstevens@lstevenslaw.com
LAW OFFICES OF LEWIS T STEVENS
131 East Exchange Avenue, No 204
Fort Worth, TX 76164
Telephone: (817) 332-4466
Facsimile: (817) 332-4476

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

This is to certify that on this 10th day of November 2016, a true and correct copy of the foregoing document was served upon the following counsel of record as follows:

***Email mswindle@whitakerchalk.com***
Mack Ed Swindle
WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas *76102*

***Email: kherd@gpalaw.com***
Kevin G Herd
GOODRICH POSTNIKOFF & ASSOCIATES, LLP
801 Cherry Street, Suite 1010
Fort Worth, TX 76102

*[signature]*

Lars L. Berg