# Exhibit 7

## AGREEMENT

This AGREEMENT (the "Agreement"), dated November 8, 2010, (the "Effective Date") is entered into between Crestview Genetics LLC, a Nevada limited liability company ("Crestview") and ViaGen, Inc., an Arizona corporation ("ViaGen"), each of which may be referred to herein as a "Party" and collectively as "Parties".

### RECITALS

WHEREAS, ViaGen has developed and established certain procedures, methodologies, patents and processes with respect to various technologies for the artificial cloning of cattle and horses (collectively, all of such procedures, methodologies, patents, processes and technologies necessary for the cloning of cattle and horses, the "Technology");

WHEREAS, Crestview desires ViaGen to provide certain services to Crestview and its affiliates, including teaching, educating and informing Crestview's and its affiliates' scientists, partners, consultants and advisors with respect to, and providing access to, the Technology for cloning cattle and horses in the Argentine Republic ("Argentina"); and

WHEREAS, In consideration for certain services and the rights described in Section 3, Crestview will pay ViaGen a royalty payment for each cloning contract or agreement entered into by Crestview or the affiliated company or laboratory in Argentina.

NOW THEREFORE, In consideration of the mutual promises and covenants contained in this Agreement, and other good and valid consideration, the receipt and sufficiency of which are hereby acknowledged, Crestview and ViaGen (collectively, the "Parties") hereby agree as follows:

1.  Agreement Term. The term of this Agreement shall commence on the date hereof and, unless earlier terminated in accordance with the provisions of this Agreement, continue until (i) five (5) years from the Effective Date or until Crestview or its affiliates cease all activities related to cloning and the use of all of the Technology in Argentina, whichever is later (the "Term"). At any time during the Term, the Term of the Agreement may be extended upon the mutual written agreement of the Parties.

2.  The Services. ViaGen shall provide the following services to Crestview:

    a.  ViaGen shall in Argentina (the "Territory"), train, educate, inform, demonstrate, exhibit and otherwise make known how to use the Technology to clone cattle and horses (the "Cloning Services") to Crestview's or its affiliates' employees, consultants, and advisors who are obligated to maintain the confidential nature of such Technology and who need to know such Technology for the purposes of this Agreement (the "Crestview Personnel"). Crestview shall reimburse ViaGen for the cost of travel for ViaGen employees ("ViaGen Personnel") to train the Crestview Personnel in Argentina. Technology shall be deemed the Confidential Information of ViaGen, and subject to the obligations and restrictions set forth in Section 6 herein.

    b.  ViaGen shall provide a list to Crestview with respect to what equipment, facilities and other instruments or devices (the "Equipment") are necessary for Cloning Services and, if necessary, assist Crestview or the Crestview Personnel in locating suppliers or sources for the Equipment.

    c.  ViaGen shall, upon reasonable notice, provide access to its facilities in all of its offices, laboratories and locations for the Crestview Personnel to observe the Cloning Services and the use of the Technology.

    d.  At least once each month, ViaGen shall provide access to its employees and personnel for questioning by the Crestview Personnel with respect to questions regarding Cloning Services, the implementation of the Technology and the use of the Equipment.

    e.  ViaGen shall share with Crestview and the Crestview Personnel any updates, improvements or advancements in the Technology that improves Cloning Services and related procedures.

    The Cloning Services set forth in Section 2(a)-(c) above are the "Initial Cloning Services" and shall be provided only for the first six (6) months of the Agreement. The Cloning Services set forth in Section 2(d)-(e) above are the "Ongoing Cloning Services" and shall be provided during the remainder of the Term of the Agreement, or any extension thereof. Crestview shall share with ViaGen any updates, improvements or advancements in the Technology that improves Cloning Services and related procedures that Crestview discovers while using the Technology during the Term.

    During the Term of the Agreement, Crestview and its affiliates shall not recruit, solicit, attempt to hire, or hire any ViaGen Personnel, whether as employees of Crestview or its affiliates, or as consultants or advisors thereto, in any capacity relating to the use of the Technology for cloning cattle or horses.

3.  Exclusive Rights.

    a.  Production Rights; During the Term of this Agreement, Crestview will have exclusive rights to use the Technology to make, use and sell cloned horses and cloned cattle in Argentina.

1

    b.   ViaGen Equine Sales Obligation: During the Term of this agreement if ViaGen is contacted to provide or has inquiries related to the provision of Cloning Services for horses from

        i.   ViaGen's clients located in Argentina or are Argentine citizens.

        ii.   Persons or entities that to the knowledge of ViaGen after reasonable inquiry reside in or are Argentine citizens or entities that are based in Argentina, or

        iii.   Entities that to the knowledge of ViaGen after reasonable inquiry are owned or controlled by such persons described in (ii) above, in each case whether or not their animals are in Argentina, ViaGen will direct or refer such contracts or inquiries to Crestview.

    c.   Crestview Equine Sales Obligation: During the Term of this Agreement if Crestview is contacted to provide or has inquires related to the provision of Cloning Services from

        i.   ViaGen's clients located outside of Argentina,

        ii.   Persons or entities that to the knowledge of Crestview after reasonable inquiry are based outside of Argentina, Crestview will direct or refer such contracts or inquiries to ViaGen.

    d.   In addition, during the Term of this Agreement, ViaGen will not negotiate, initiate or enter into discussions with respect to or execute, directly or indirectly, any contracts or any other licenses, sublicenses, contracts or agreements for or otherwise transfer any rights to use, implement or deploy the Technology for use in Cloning Services in Argentina and will not provide to any party other than Crestview, its affiliates, the Crestview Personnel and their authorized representatives the Initial Cloning Services or the Ongoing Cloning Services, or any other services similar to the Initial Cloning Services or the Ongoing Cloning Services, in Argentina.

4.   Consideration. Crestview and its affiliates are required to inform ViaGen each time that it or its affiliates executes a contract or agreement to provide Cloning Services (each, a "Cloning Contract").

    a.   For each Cloning Contract for the production of horses ("Equine Cloning Contract") that Crestview or its affiliates enters into, Crestview will pay the greater of (i) $5,000.00 or (ii) ten percent (10%) of the total fee that it actually receives from such Equine Cloning Contract to ViaGen within 15 days of the date that Crestview actually receives the first payment pursuant to the applicable Equine Cloning Contract. In the event Crestview fails to make any such payment to ViaGen, such failure shall constitute a material breach of Crestview's obligations under this Agreement. If Crestview fails to cure such breach within thirty (30) days after receipt of written notice from ViaGen notifying Crestview of such breach, then ViaGen shall have the right to terminate this Agreement upon subsequent written notice to Crestview.

    b.   For each Cloning Contract for the production of cattle ("Cattle Cloning Contract") that Crestview or its affiliates enters into, Crestview will pay ten percent (10%) of the fee that it actually receives from such Cloning Contract to ViaGen within 15 days of the date that Crestview actually receives such payment pursuant to the applicable Cloning Contract. In the event Crestview fails to make any such payment to ViaGen, such failure shall constitute a material breach of Crestview's obligations under this Agreement. If Crestview fails to cure such breach within thirty (30) days after receipt of written notice from ViaGen notifying Crestview of such breach, then ViaGen shall have the right to terminate this Agreement upon subsequent written notice to Crestview.

    c.   Crestview or its affiliates shall structure each of its Cloning Contracts such that a deposit is required contemporaneously with the execution of any Cloning Contract. Such deposit shall be equal to or in excess of ViaGen's consideration under this Section 4 for each such Cloning Contract.

    d.   Crestview shall provide ViaGen at least every six (6) months with a sales and order forecast for Cloning Contracts for the subsequent twelve (12) month period.

5.   Affiliates. For the purposes of this Agreement, the term "affiliate" shall mean any legal entity (such as a corporation, partnership, or limited liability company) that controls, is controlled by, or is under common control with a Party. For the purposes of this definition, the term "control" means (i) beneficial ownership of at least fifty percent (50%) of the voting securities of a corporation or other business organization with voting securities or (ii) a fifty percent (50%) or greater interest in the net assets or profits of a partnership or other business organization without voting securities.

6.   Confidential Information.

    a.   Designation. In connection with this Agreement, the Parties may provide to each other Confidential Information, including but not limited to each Party's know-how, invention disclosures, proprietary materials and/or technologies, economic information, business or research strategies, trade secrets and material embodiments thereof. As used herein, "Confidential Information" means any information of a confidential or proprietary nature disclosed by a Party to this Agreement to the other Party (a) in written form marked "confidential," or (b) in oral form if disclosed to the receiving Party under circumstances reasonably indicating its confidential nature.

2



Notwithstanding the above, Technology shared by ViaGen with Crestview Personnel pursuant to Section 2 of this Agreement, shall be considered Confidential Information of ViaGen, subject to the obligations, exceptions and restrictions set forth in this Section 6.

b.   Obligations. The Receiving Party shall (i) maintain Confidential Information in strict confidence, except that the Receiving Party may disclose or permit the disclosure of any Confidential Information to its directors, officers, employees, consultants, affiliates and advisors who are obligated to maintain the confidential nature of such Confidential Information and who need to know such Confidential Information for the purposes of this Agreement; (ii) use such Confidential Information solely for the purposes of this Agreement; and (iii) allow its trustees or directors, officers, employees, consultants, affiliates and advisors to reproduce the Confidential Information only to the extent necessary for the purposes of this Agreement, with all such reproductions being considered Confidential Information. In the event either Party fails to abide by its obligations under this Section 6, such failure shall constitute a material breach of that Party's ("Breaching Party") obligations under this Agreement and the other Party ("Notifying Party") shall have the right to terminate this Agreement upon written notice thereof to the Breaching Party, subject to the following notice and cure provision: If the Breaching Party fails to cure such breach within thirty (30) days after receipt of written notice from the Notifying Party of such breach, then the Notifying Party shall have the right to terminate this Agreement upon subsequent written notice to the Breaching Party.

c.   Exceptions. The obligations of the Receiving Party under Section 6(b) above shall not apply to the extent that the Receiving Party can demonstrate that certain Confidential Information (i) was available to the public prior to the time of its disclosure under this Agreement; (ii) become available to the public after the time of its disclosure under this Agreement through means other than an unauthorized disclosure resulting from an act or omission by the Receiving Party; (iii) was independently developed or discovered by the Receiving Party without use of the Confidential Information; (iv) is or was disclosed to the Receiving Party at any time, whether prior to or after the time of its disclosure under this Agreement by a third party having no fiduciary relationship with the Disclosing Party and having no obligation of confidentiality with respect to such Confidential Information; or (v) is required to be disclosed to comply with applicable laws or regulations, or with a court or administrative order, provided that the Disclosing Party receives reasonable prior written notice of such disclosure, and the Receiving Party cooperates with the Disclosing Party in the event the Disclosing Party elects to legally contest and avoid such disclosure.

d.   Ownership and Return. The Receiving Party acknowledges that the Disclosing Party (or any third party entrusting its own information to the Disclosing Party) claims ownership of its Confidential Information in the possession of the Receiving Party. Upon the expiration or termination of this Agreement, and at the request of the Disclosing Party, the Receiving Party shall return to the Disclosing Party all originals, copies, and summaries of documents, materials, and other tangible manifestations of Confidential Information in the possession or control of the Receiving Party, except that the Receiving Party may retain one copy of the Confidential Information in the possession of its legal counsel solely for the purpose of monitoring its obligations under this Agreement.

7.   Representations, Warranties and Covenants.

a.   Representations, Warranties and Covenants of ViaGen. ViaGen represents and warrants that, as of the Effective Date: (i) ViaGen is a corporation, duly organized, validly existing and in good standing under the laws of its state of incorporation, and (ii) the execution, delivery and performance of this Agreement have been duly authorized by all necessary corporate action on the part of ViaGen.

b.   Representations, Warranties and Covenants of Crestview. Crestview represents, warrants and covenants that: (i) Crestview is a limited liability company, duly organized, validly existing and in good standing under the laws of its state of formation; (ii) the execution, delivery and performance of this Agreement has been duly authorized by all necessary company action on the part of Crestview; and (iii) Crestview will not use or practice any of the Technology outside the Territory.

c.   Nothing in this Agreement shall be construed as conferring, by implication, estoppel or otherwise, any license or rights under any patents of ViaGen.

d.   Disclaimer. EXCEPT AS EXPRESSLY PROVIDED FOR IN THIS AGREEMENT, NEITHER PARTY MAKES, AND EACH PARTY HEREBY DISCLAIMS, ANY AND ALL REPRESENTATIONS AND WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE SUBJECT MATTER OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT AND ANY WARRANTY ARISING OUT OF PRIOR COURSE OF DEALING AND USAGE OF TRADE.

e.   In the event either Party breaches any of its representations, warranties, or covenants under this Section 7 such failure shall constitute a material breach of that Party's ("Breaching Party") obligations under this Agreement and the other Party shall have the right to terminate this Agreement upon written notice thereof to the first Party.

3

subject to the following notice and cure provision: If the Breaching Party fails to cure such breach within thirty (30) days after receipt of written notice from the Notifying Party of such breach, then the Notifying Party shall have the right to terminate this Agreement upon subsequent written notice to the Breaching Party.

8. **Indemnification**

   a. **Indemnity.** Crestview shall indemnify, defend and hold harmless ViaGen and its respective directors, officers, trustees, employees, agents, affiliates and consultants (each an "Indemnitee") from and against any and all liabilities, damages, losses, costs or expenses (including reasonable attorneys' and professional fees and other expenses of litigation and/or arbitration) (a "Liability") resulting from or arising out of a claim, suit or proceeding brought by a third party against an Indemnitee arising out of or related to (a) a material breach by Crestview of any of its covenants, representations or warranties set forth in this Agreement, and (b) the provision of Cloning Services by or on behalf of Crestview, its affiliates, their customers and end users, except to the extent such claim, suit or proceeding is directly caused by the negligence or willful misconduct of ViaGen.

   b. **Procedure.** For purposes of Section 3(a), the Indemnitee shall give prompt written notice to Crestview of any claims, suits or proceedings by third parties which may give rise to any claim for which indemnification may be required under this Section 8; provided, however, that failure to give such notice shall not relieve Crestview of its obligation to provide indemnification hereunder except, if and to the extent that such failure materially and adversely affects the ability of Crestview to defend the applicable claim, suit or proceeding. Crestview shall be entitled to assume the defense and control of any such claim at its own cost and expense; provided, however, that the Indemnitee shall have the right to be represented by its own counsel at its own cost in such matters. Neither Crestview nor the Indemnitee shall settle or dispose of any such matter in any manner which would adversely affect the rights or interests of the other party (including the obligation to indemnify hereunder) without the prior written consent of the other party, which shall not be unreasonably withheld or delayed. Each party shall reasonably cooperate with the other party and its counsel in the course of the defense of any such suit, claim or demand, such cooperation to include without limitation using reasonable efforts to provide or make available documents, information and witnesses.

9. **Use of Name.** During the Term of this Agreement. Crestview is granted the right to use the name ViaGen in the naming of its operation solely in Argentina if it so chooses, such names (collectively the "Marks") may include, without limitation. "ViaGen Argentina" or "Crestview ViaGen".

   a. **Use.** Crestview will use the Marks only in accordance with this Agreement and will not: (i) claim any ownership in or contest ViaGen's ownership or registration of the Marks, or register the Marks in any class or in any country, regardless of whether ViaGen has registered them; and (ii) use the Marks in connection with the establishment of a domain name or otherwise on the internet or any other electronic means of communication, existing or developed in the future, without ViaGen's approval, which may not be unreasonably withheld or delayed.

   b. **Duties Upon Termination.** In the event this Agreement is terminated by ViaGen pursuant to Sections 4(a), 6(b) or 7(c), Crestview shall, at its sole cost and expense, (i) immediately cease and desist from using the Marks in or as a part of its corporate, partnership or other business entity or trade name; and (ii) immediately cease and desist from using anything that resembles or is deceptively or confusingly similar to the Marks in any manner or for any purpose

10. **Fees and Expenses.** Except as otherwise provided herein, Each Party shall be responsible for its own fees and expenses during the Term and neither Party shall have any right to recover any such fees and expenses the other Party, unless pursuant to a written agreement between the Parties.

11. **Termination; Effect of Termination; Survival.** This Agreement may be terminated by the express written consent of both Parties, or as otherwise provided herein, unless the Term has expired, in which case this Agreement will terminate upon the expiration of such Term. Sections 4 (Consideration) (to the extent provided therein), 6 (Confidential Information) (to the extent provided therein), 7 (Representations, Warranties and Covenants) (to the extent provided therein), 8 (Indemnification), 11 (Termination; Effect of Termination; Survival), and 12-16 shall survive any expiration or termination of this Agreement. All other provisions of this Agreement shall be of no further force and effect upon such expiration or termination of this Agreement. Notwithstanding the foregoing, expiration or termination of this Agreement shall not release either Party from any obligation that has accrued prior to such expiration or termination, including without limitation any obligation to pay any amount which became due and payable under the terms and conditions of this Agreement prior to such expiration or termination.

12. **Amendments; Waivers.** This Agreement may be amended only by agreement in writing by the Parties. No waiver of any provision nor consent to any exception to the terms of this Agreement shall be effective unless in writing and signed by the Party to be bound and then only to the specific purpose, extent and instance so provided.

13. **Further Assurances.** At any time or time to time after the date hereof Crestview, on the one hand, and ViaGen, on the other hand, agree to cooperate with each other, and at the reasonable request of the other Party, to execute and deliver any further

4

instruments or documents and to take all such further action as the other Party may reasonably request in order to evidence or effectuate the intent of the Parties hereunder.

14. **Counterparts.** This Agreement may be executed in any number counterpart, and each such counterpart hereof shall be deemed to be an original instrument, but all such counterparts together shall constitute but one agreement.

15. **Headings.** The headings of the sections of this Agreement have been inserted for convenience of reference only and shall not be deemed to be part of this Agreement.

16. **Fiduciary or other Duties.** Except as otherwise provided for herein, including without limitation confidentiality obligations under Section 6, ViaGen agrees that Crestview and its affiliates shall have no fiduciary or other similar duty to ViaGen or any of its subsidiaries as a result of this Agreement or any of the actions or rights contemplated herein.

17. **Assignment.** Crestview may assign its rights under the Agreement without the express written agreement of Viagen solely to an Affiliate of Crestview's doing business in Argentina, otherwise, no Party may assign its rights or delegate its obligations under this Agreement without the express written consent of the other Party, except to a successor in connection with the merger, consolidation, or sale of all or substantially all of the assigning Party's assets or that portion of its business to which this Agreement relates.

18. **Governing Law; Submission to Jurisdiction.** This Agreement shall be governed by, and shall be construed and interpreted in accordance with, the laws of the State of Texas. Each of the Parties hereto hereby (i) irrevocably submits to the exclusive jurisdiction of the courts of the State of Texas and (ii) agrees that any actions brought regarding this Agreement or to enforce any rights contained herein or arising hereunder shall be brought in the courts of the State of Texas. Nothing in this Agreement shall affect any right that any Party may otherwise have to bring any action or proceeding to enforce any final adjudicated awards in the courts of any jurisdiction.

19. **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings, whether written or oral, between the Parties with respect to the subject matter hereof. There are no representations, understandings or agreements relating to the Agreement that are not fully expressed in this Agreement.

IN WITNESS WHEREOF, the Parties have entered into this Agreement as of the day first above set forth.

CRESTVIEW GENETICS, LLC

By: _____

Name: Alu Meeker

Title: Manager

VIAGEN, INC.

By: _____

Name: MARK WALTON

Title: PRESIDENT

5