## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### WEST PALM BEACH DIVISION

### CASE NO.: 9:20-cv-82231-AMC/DLB

**LA DOLFINA S.A. LLC,**
**a Florida limited liability company, and**
**ADOLFO CAMBIASO, individually**

       **Plaintiff,**

**v.**

**D. ALAN MEEKER, individually,**
**a/k/a ALAN MEEKER,**
**a/k/a DAVID ALAN MEEKER,**
**CRESTVIEW FARM, LLC,**
**a Texas limited liability company, and**
**CRESTVIEW GENETICS, LLC,**
**a Nevada limited liability company,**

       **Defendants.**

_____/

### RESPONSE OF PLAINTIFFS TO
### DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Pursuant to the January 2, 2021 Order of the Court [DE 29], Plaintiffs La Dolfina S.A. LLC ("La Dolfina") and Adolfo Cambiaso ("Mr. Cambiaso") (collectively, "Movants"), address, *ad seratim,* the Rule 12(b)(2) and then the Rule 12(b)(6) arguments of the Motion to Dismiss by Defendants [DE 37].

### Part I

### 12(b)(2) Response

#### I.    Relevant Procedural History.

Plaintiffs filed their initial Complaint [DE 1] on December 8, 2020, and an Expedited Motion for Preliminary Injunction [DE 4] on December 11, 2020.  During this time, service was on-going, and after interim ruling with instruction from the Court, Plaintiff filed its Ex Parte Expedited Motion for Temporary Restraining Order ("the "TRO

Motion") [DE 14] and for Expedited Discovery [DE 15] on December 18, 2020.  The Court then set a hearing for December 21, 2021 upon those Motions.  [DE 16].

Slightly over 3 hours before the TRO Motion Hearing, Defendants filed a Motion to Dismiss for Lack of Jurisdiction [DE 18].  Upon commencing the TRO Motion Hearing on December 21, 2020, the Court granted Plaintiffs' request for an opportunity to respond to the last-minute dismissal filing and continued the Hearing until January 4, 2021 and set a briefing schedule.

Plaintiffs filed their First Amended Complaint ("FAC") [DE 22] on December 24, 2020 and renewed its Motion for a TRO and for Expedited Discovery [DE 26, 28].   The FAC gave this Court original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337, by virtue of the allegations of Defendants' violations of the Lanham Act, 15 U.S.C. § 1125(a)(1) and violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, et seq., as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  This Court also has original subject matter jurisdiction pursuant to 22 U.S.C. §§ 2201 and 2202 and pursuant to Fed.R.Civ.Pro. 57.

On January 2, 2021, the Court entered an Omnibus Order resolving the motions mooted by the filing of the FAC and resetting the TRO hearing and briefing deadlines. [DE 29].  That Order allowed Defendants D. Alan Meeker ("Meeker"), Crestview Farm, LLC ("Farm") and Crestview Genetics, LLC ("Genetics") an opportunity to file an answer or combined response to Plaintiffs' First Amended Complaint [DE 22], and a combined response to Plaintiffs' Renewed Motion for Preliminary Injunction[1] [DE 26] and Plaintiffs' Renewed Motion for Expedited Discovery in Aid of its Motion for a Preliminary Injunction [DE 28].[2]

In lieu of filing a combined response, Defendants filed the within Motion to Dismiss First Amended Complaint [DE 37], raising both Rule 12(b)(2) and Rule 12(b)(6) grounds, and then subsequently filed a separate Response in Opposition to Plaintiff's Motion for Injunctive Relief [DE 38].

---

[1] Captioned as an Ex Parte Renewed Motion for Issuance of a Temporary Restraining Order (the "TRO Motion").

[2] Whether  the Court intended "combined" to modify both motions [DE 26 and 28] or "Defendants", the Defendants have now filed an aggregate of 55 pages of response briefing to the FAC and the TRO Motion.

The Response to Plaintiffs' Motion for Expedited Discovery in [DE 28] has been filed, and Plaintiffs filed a Reply; therefore Plaintiffs' Motion [DE 28] is ripe should therefore be immediately granted because the TRO Hearing is pending on January 29, 2021.

All of the Defendants have been served and are represented in this matter. The Defendants are all indispensable parties to the claims of the First Amended Complaint ("FAC") and have admitted that the claims herein are "inextricably intertwined" and involve an assignment of Farm's alleged rights under the 2009 Agreement to Genetics. [See DE 18 *8].

## II.    Summary of the Response to Rule 12(b)(2) Motion.

The essence of Defendants' Motion to Dismiss on Rule 12(b)(2) grounds is captured by the specious statement by Defendants "*that nothing important happened in Florida*." [DE 37 *20]. The Affidavits attached to this Response, as well as the Affidavits and Exhibits attached to the FAC provide sufficient evidence that Defendants had very significant contacts with Florida, both specifically with respect to the underlying transactions and occurrences, and generally with respect to systematically and repeatedly conducting other business activities in Florida. As a result of the repeated and far-from-minimal contacts by Defendants with Florida, there is nothing manifestly unjust by Defendants now having to defend this lawsuit here. Defendants are not being haled into Florida; rather, Defendants came here repeatedly to conduct all sorts business voluntarily.

While not specifically addressed by Defendants, venue is proper in this District. The majority of substantial and important transactions, occurrences, breaches, and omissions arising out of and relevant to the present dispute occurred in Florida. See 28 U.S.C. § 1391. This action is also before this Court as a proper venue, because this is a venue where this action could have been brought and where, on balance, all of the considerations properly favor Florida. Further, Defendants may, as they see fit, pursue any claims they feel have merit against Plaintiffs here. 28 U.S.C. §§ 1404, 1406(a); Rule 19(a), Rule 20.

### III.     Facts Establishing Personal Jurisdiction Over the Defendants.

Attached and incorporated herein are Affidavits by Adolfo Cambiaso, attached hereto as **Exhibit 2**,  Juan Carlo DiCaro, attached hereto as **Exhibit 11**, Manager of La Dolfina S.A. and La Dolfina S.A. LLC, Robert Zedda, attached hereto as **Exhibit 7**, Robert P. Jornayvaz III, attached hereto as **Exhibit 3**, and David Paradice, attached hereto as **Exhibit 5**.  All of those individuals aver, under penalty of perjury, as to the repeated and systematic business activities of the Defendants in Florida, which activities by Defendants relate both to the agreements at issue in this litigation and to the conduct of business in general in Florida.  Additionally attached and incorporated herein are public statements in the national media by Defendants, such as in *Vanity Fair* magazine, the CBS program *60 Minutes*, *National Geographic*, and *Facebook*, for example, in which Defendants both market and advertise their cloning services in Florida, and all of which were accessible in Florida because of the national nature of the media, as well as reasonably relied upon by Plaintiffs in their course of dealing with Defendants in Florida. See Summary of Averments from Affidavits Establishing Personal Jurisdiction Over the Defendants, attached hereto as **Exhibit 13**.

1.   **Statements, Admissions, Acts and Omissions in Florida by Defendant Alan Meeker, individually or on behalf of the other Defendants specific to the underlying transactions and as to repeated contacts with Florida.**

The attached Affidavits, and their internal exhibit attachments, contain statements, admissions and descriptions of acts and omissions by Defendants that are highly relevant to the within Response and are hereby incorporated by reference.

2.   **Defendants fail to rebut the Admission of Assignment of Farm's purported 2009 Agreement rights to Genetics, which subjects all Defendants to personal jurisdiction in Florida.**

The attached Affidavits and Exhibits reveal, at length, that the negotiations and performance of the 2009 and 2012 Agreements, and related acts and omissions and breaches by Defendants occurred in Florida.

Specifically, Defendants have judicially admitted that: "*In the meanwhile, Farm assigned the right to possess or create certain clones to genetics….*" [DE 18 *8]. Defendants have also injected herein the issues of: (a) performance and location of

4

performance of the 2009 Agreement [DE 18-1, ¶¶ 7, 8, 9]; and (b) that this matter involves horse cloning business [DE 18 * 8] involving the 2009 Agreement.

By admitting the 2009 Agreement rights assignment from Farm to Genetics, and taking the aforesaid positions regarding the inter-relatedness of the 2009 and 2019 Agreements, which constitute judicial admissions of a party,[3] Defendants have therefore destroyed diversity of the parties in this NDTX case because Defendants have made Genetics, which has an alien member from the United Arab Emirates, as an indispensable party.

As well, Defendant Farm previously admitted that the 2009 and the 2019 Agreements and issues surrounding those Agreements are **inextricably intertwined**, arguing [DE 18 at*8-9, emphasis added]:

> In brief, **this is a matter involving two horse cloning and breeding businesses** and their multi-decade misfortune of having tried to go into business with Adolfo Cambiaso. In 2009, Farm and Mr. Cambiaso entered into a Cloning Agreement (the "**2009 Agreement**") that gave Farm the right to clone certain horses supposedly belonging to Mr. Cambiaso.
>
> ***
>
> Naturally, Mr. Cambiaso's activities eventually created a mess that has **been difficult to untangle.** In an attempt to clear up some of the issues, Mr. Cambiaso, La Dolfina S.A., and Genetics executed a **side letter agreement (the "2019 Side Letter").** The 2019 Side Letter provides Genetics with rights to breed and clone specified horses and recognizes Genetics' ownership of the clone Storm Cat 02, subject to a license agreement with a third party that was expressly made an exhibit to the 2019 Side Letter.[4]

To resolve all of these complexities and interlocking Agreements and parties, the instant matter embraces *all* of the related transactions, necessary parties and issues, all of which concern the unauthorized cloning and sale by Defendants of unique and invaluable

---

[3] See, e.g.: *Cormack v. North Broward  Hospital District,* Case 0:08-cv-61367-JIC (S.D.Fla. August 28, 2009) *6-7 ("In its prior order, the Court concluded that the documents do not contain legal conclusions by the EEOC, but rather **consist mostly of the position statement made by then counsel** for Defendant to the EEOC in response to Plaintiff's charge of discrimination.  **These statements are therefore statements attributed to a party opponent** and are not hearsay.") [emphasis added]

[4] This admission itself contains a misrepresentation in that the license agreement with the third party was rather a Settlement Agreement with the owners of Storm Cat, did not provide ownership of Storm Cat 02 to Genetics, put only allowed Genetics a very limited license to use Storm Cat 02 genetic material.

horses and genetic material owned by Plaintiffs and used in the sport of polo.  In the sport of polo, the quality of the horses ridden by the player of a team are the most significant part of the success of the player and the team.  Defendant Meeker himself has admitted this fact in a December 2016 interview, explaining: "It's 70% to 80% the horse, and everyone, including Cambiaso, will tell you this."[5]

**IV.     The Court has Subject Matter Jurisdiction over the Defendants.**

This Court now has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337, by virtue of the allegations of Defendants' violations of the Lanham Act, 15 U.S.C. § 1125(a)(1) and violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, et seq., as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  This Court also has original subject matter jurisdiction pursuant to 22 U.S.C. §§ 2201 and 2202 and pursuant to Fed.R.Civ.Pro. 57 because Plaintiffs also seek declaratory relief herein.  This original subject matter jurisdiction of the Court is based on federal questions and supplemental jurisdiction presented in the First Amended Complaint thereby rendering moot Defendants' arguments to dismiss for failure of complete diversity among the parties and absence of other bases for subject matter jurisdiction.

Defendants spend considerable time, through the Rule 12(b)(6) portion of their Motion to Dismiss arguing that Plaintiffs fail to state causes of action under the two sections of the Lanham Act and under the Defend Trade Secrets Act.  Taken on their face, Defendants' arguments go to the merits of those federal claims, credibility of the witnesses, and inferences from the facts, all of which are not the provenance of the Court at this motion to dismiss stage and should not be reached by the Court.  See, e.g.: *Ice Portal, Inc. v. VFM Leonardo, Inc.,* No. 09-60230-CIV, 2010 WL 2351463 (S.D.Fla. June 11, 2010) ("credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge...").  The Court must accept as true all of the allegations of the FAC.  *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th ir. 2008); *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,* 593 F.3d 1249, 1257 (11th Cir. 2010) [citation omitted].  ("Where the plaintiff's complaint and

---

[5] *Six cloned horses help rider win prestigious polo match*, by Jon Cohen, Dec. 13, 2016.
Source: https://www.sciencemag.org/news/2016/12/six-cloned-horses-help-rider-win-prestigious-polo-match

supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff"). At this motion to dismiss stage, and as discussed below in the 12(b)(6) Response, the federal claims are sufficiently pled to overcome Defendants' arguments.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. See *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 (2007). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc*., 520 F.3d 1308, 1309 (11th Cir. 2008) (citation omitted). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely.'" *Twombly*, supra, 550 U.S. at 556 [citation omitted].

With those considerations in mind, respectfully, the FAC sufficiently sets forth the federal claims allowing the Court to exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1331. C.f. *Nashville R. Co. v. Mottley,* 211 U.S. 149 (1908).

## V.      Under Rules 12(g) and 12(h), Meeker waived his challenge to personal jurisdiction based upon his alter-egos Farm and Genetics.

Putting aside the substantial, credible evidence of Meeker's alter-ego relationship with Farm and Genetics, pursuant to Rules 12(g) and 12(h), Meeker has waived his challenge to such allegations establishing personal jurisdiction over him through that status.   It is only in the January 14, 2021 Motion to Dismiss the FAC do any of the Defendants, including Meeker, first present to the Court the new argument challenging personal jurisdiction as averred in the alter-ego allegations of the FAC.  [DE 37 *23].

That argument and Rule 12(b)(2) defense were available to Defendants when Defendants filed their initial Motion to Dismiss the initial Complaint on December 21, 2020 [DE 18].  "A challenge to personal jurisdiction is abandoned when a defendant fails to raise the issue in either a responsive pleading or Rule 12 motion." *Salareno v. Johnson & Johnson, Inc.,*  Case 1:18-cv-23643-UU  (S.D.Fla. June 7, 2019) *4.

While the FAC added additional facts and averments supporting the federal questions and other claims commencing at Count XIV, the FAC left essentially *unchanged* from the initial Complaint the alter-ego allegations related to Meeker and Crestview Farm and Crestview Genetics. [Compare DE 1 ¶¶ 5, 14-15, 54, 114 and 127 with DE 22 ¶ 20-21, 57, 148, and 161].

Consequently, the filing of the FAC did not excuse Defendants from Rule 12(b) because "[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to amendment." *Wright & Miller*, 5C Fed. Prac. & Proc. Civ. § 1388 (3d ed.) In accord, *Chen v. Cayman Arts, Inc.,* No. 10-80236-CIV, 2011 WL 1085646, at *2 (S.D. Fla. Mar. 21, 2011) (striking second motion to dismiss as improper under Rule 12(g)); *Barfoot v. Dolgencorp, LLC*, Case No. 15-24662-CIV-ALTONAGA/O'Sullivan, 2016 WL 6330588, at *1 (S.D. Fla. Feb. 5, 2016) (denying motion to strike, pursuant to Rule 12(g), based upon earlier filing of motion to dismiss). It is likewise irrelevant if Defendants were certain this Court would have dismissed the initial Complaint under their first motion. See, e.g.: *Technolglass, LLC v. RC Home Showcase, Inc.,* Case 1:16-cv-24328-RNS (S.D.Fla. October 6, 2017) (also denying a motion to dismiss for grounds not raised in prior motion to dismiss "However, Rule 12(h) does not otherwise authorize a party to assert a defense it neglected to include in a previous Rule 12(b) motion based upon the mistaken belief that the court would take certain actions that ultimately it did not.").

Finally, to the extent Meeker somehow attempts to parse out that either or both Farm and Genetics advanced the argument derivatively for the benefit of Meeker, though nowhere is such argument to be found, such derivative argument should not be availing. "While it is true that, in certain circumstances, an individual cannot be held personally liable for corporate acts ds if the corporation is not found liable, this 'derivative argument' does not apply to issues regarding personal jurisdiction." *Hernandez v. Art Deco Supermarket,* Case No. 13-20705-CIV-M ORENO (S.D.Fla. July 23, 2015) *3, citing *TC. v. USA Fin*., 415 Fed.Appx. 970,975 at n.3 (11th Cir. 2011).

Defendants therefore should not be excused by this Court from the requirements of Rule 12(g)(2) from pleading all available grounds for dismissal available to Defendants at the first instance on December 21, 2020. See, e.g.: *766347 Ontario, Ltd. v. Zurich Capital*

*Mkts., Inc.*, 274 F. Supp. 2d 926, 930 (N.D. Ill. 2003) ("Rule 12(g) generally precludes a defendant from bringing successive motions to dismiss raising arguments that the defendant failed to raise at the first available opportunity."); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.,* No. 02 C 4356, 2008 WL 2178150, at *3 (N.D. Ill. May 22, 2008) (same). The Court should not now entertain this particular argument attacking personal jurisdiction based on the alter-ego allegations because Defendants have previously waived that argument under Rule 12(h) by failing to advance the argument at the first instance the argument was available to Defendants, as required by Rule 12(g).[6]

In sum, the case law is clear in this District that under Rules 12(g) and 12(h), Defendants have waived their alter-ego sufficiency of the pleadings ground to dismiss.

## VI.    The Court has Personal Jurisdiction Over the Defendants.

In the First Amended Complaint, allegations supporting both general and personal specific jurisdiction are present. *Bryant v. Hasbro, Inc.*, No. 8: 18-cv-1336-T-36CPT (M.D. Fla. May 22, 2019). (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).   Those jurisdictional allegations, now challenged by the Motion to Dismiss the FAC [DE 37], are now further supported by the attached Affidavits and Exhibits of **DE 41, DE 28, DE 26 and DE 14,** all of which are incorporated herein.

The Due Process Clause is satisfied if the defendant has "minimum contacts" with the forum state such that "the exercise of . . . jurisdiction over [the] defendant" does not "offend `traditional notions of fair play and substantial justice.'" *Id*. (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)).  "A plaintiff seeking to obtain jurisdiction over a nonresident defendant initially need only allege sufficient facts to make out a prima facie case of jurisdiction."  *Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1214 (11th Cir. 1999).

The Court, in undertaking an analysis, answers the question of whether personal jurisdiction exists over a non-resident defendant through a two-step analysis. *Internet Sol. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). First, the Court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's

---

[6] This is particularly true because Plaintiffs relied upon Meeker's statements that all actions of Farm and Genetics were on his behalf.  See, e.g.:   The  video on Facebook of *a National Geographic* 10 November 2018 interview of Meeker, wherein  Meeker refers to the cloning of polo ponies business in the first-person "I" the entire time and, significantly at the very end of the video, he states *"I wanted to license their genetics."*

long-arm statute. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000*)*. Second, if the Court determines that the forum state's long-arm statute has been satisfied, then the Curt must decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Id*.

    **A.  Plaintiffs Establish the Court's General Jurisdiction over Defendants.**

In the First Amended Complaint, Plaintiffs have pled sufficient facts to establish a prima facie case of general personal jurisdiction over Defendants. Under Florida's long-arm statute, the Court may exercise general personal jurisdiction over any defendant "who is engaged in substantial and not isolated activity within this state... whether or not the claim arises from that activity." F.S. § 48.193(2).  A Florida court can exercise general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in "substantial and not isolated activity" in Florida.  *Gubarev v. Buzzfeed*, Inc., 253 F. Supp. 3d 1149 (S.D. Fla. 2017) (citing *Atmos Nation LLC v. Alibaba Grp. Holding*, LLC, Case No. 0:15-cv-62104, 2016 WL 1028332, at *2 (S.D. Fla. Mar. 15, 2016)).

The reach of the general jurisdiction provision of the Florida long-arm statute is coextensive with the limits of the Due Process Clause, so the Court need only ascertain whether its exercise of jurisdiction over the Defendants "would exceed constitutional bounds." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010)). The Due Process clause permits personal jurisdiction so long as the nonresident defendant has certain minimum contacts with the forum such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

"To the extent not contradicted by the defendant's affidavits, the court should accept the facts alleged in the complaint as true." *Sutherland v. Sato Glob. Sols., Inc.*, No. 17-cv-61596-WPD, 2018 WL 3109627, at *3 (S.D. Fla. Apr. 10, 2018) (citing *Posner v. Essex* 1371*1371 Ins. Co., Ltd., 178 F.3d 1209, 1214 (11th Cir. 1999)). Notably,  "[i]n the event of a conflict, all reasonable inferences should be made in favor of the plaintiff." *Id*.

Herein the First Amended Complaint, Plaintiffs establish that Mr. Meeker, Farm and Genetics have engaged in continuous and substantial activity in Florida  to allow the Court to exercise general jurisdiction over Defendants under § 48.193(2).  [DE 22 ¶¶ 14-24].  See e.g. *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1362 (11th Cir.2006) (holding a foreign resort had continuous systematic contacts with Florida where the resort maintained numerous separate commercial relationships with Florida-based entities).

Defendants operated, conducted, engaged in, and carried on significant and ongoing business in Palm Beach County, Florida. Mr. Meeker has held himself out to be the Manager, representative, agent and sole decision-maker for Farm and Genetics. [DE 22-1 ¶¶ 11, 13].[7]  Mr. Meeker, Farm, Genetics, and their attorneys held several meetings at the J-5 Equestrian Farm in Wellington, Palm Beach County Florida negotiating and contracting the 2009 Agreement and 2019 Side Letter Agreement. [DE 22-1 ¶¶  2-4; DE 22-3 ¶¶ 13-15]. See EX 13 and list the affidavits individually – Nero, Ernesto, Bob, Robertito, AC, DiCaro, David

Mr. Meeker, Farm, and Genetics repeatedly conducted business with Robert P. Jornayvaz, Plaintiffs, and other individuals in Wellington, Palm Beach County, Florida, and not just about the within cloning business, but as to other business endeavors. *Affidavit of Robert Jornayvaz* [DE 22-1 ¶¶ 5, 12].  Mr. Meeker, for himself and as an agent and representative of Farm and Genetics, repeatedly, and on several occasions held meetings and negotiations with Plaintiffs Adolfo Cambiaso and La Dolfina in Wellington, Palm Beach County, Florida negotiating the 2009 Agreement and 2019 Side Letter Agreement. [DE 22-1 ¶ 8]. EX 13

Mr. Meeker, on behalf of himself and Genetics and Farm, conducted a "tremendous amount of business concerning equine cloning" in Wellington, Palm Beach County, Florida. [DE 22-1 ¶ 9].  Mr. Meeker, on behalf of himself and Genetics and Farm, solicited others to purchase clones in Wellington, Palm Beach County, Florida. [DE 22-1 ¶ 9].  Mr. Meeker solicited Robert P. Jornayvaz III and others to raise money for CQuentia, a genetics technology company owned by Mr. Meeker, based upon the previous success of Mr.

---

[7] All Affidavits and agreements referenced herein have been attached as Exhibits to the First Amended Complaint [DE 22] and incorporated into the First Amended Complaint

Meeker and Genetics cloning initiatives with La Dolfina and Cambiaso. [DE 22-1 ¶ 10].
Mr. Meeker himself states in an August 2015 Vanity Fair article that in Palm Beach
County, Florida, Mr. Meeker met at length with Ernesto Gutierrez regarding the equine
genetics business of Farm and Genetics. [DE 22-1 ¶ 12]. See also EX 13.

Mr. Meeker, Farm, and Genetics have misappropriated Plaintiffs' proprietary
equine genetic material, created unauthorized clones therefrom, and sold them in Florida.
[DE 22 ¶¶ 74-90]. Additionally, Mr. Meeker, Farm and Genetics conducted extensive and
ongoing cloning-related business in Palm Beach County, Florida during periods relevant
hereto, with Plaintiffs, as well as with Chris Young and Overbrook Farm, LLC. *Amended
Complaint ¶¶17*. From 2015 – 2018, TOTAL DIAGNOSTIX II, LLC was registered with
Florida Secretary of State listing Mr. Meeker as manager of that Florida Company. Mr.
Meeker has conducted and continues to conduct business in Florida as CEO and Manager
of CQUENTIA NGS, LLC, registered with the Florida Secretary of State from 2018
through the present [DE 22] *Amended Complaint ¶¶ 18.*

### B. The Court has Specific Jurisdiction over Defendants

#### 1. Plaintiffs Establish Jurisdiction Under the Florida Long-Arm Statute.

Under Florida's long-arm statute, a court may exercise specific personal jurisdiction
over a non-resident defendant who engaged in one of the enumerated acts listed under
Florida Statute section 48.193(1)(a). *Miller v. Gizmodo Media Group, LLC*, 383 F. Supp.
3d 1365 (S.D.Fla. 2019) [citation and internal quotation marks omitted]. These provisions
are satisfied when a nonresident defendant personally or through an agent commits one of
the enumerated acts in § 48.193(1)(a) and a cause of action arises out of that act.

Under § 48.193(1)(a)(1) a nonresident defendant satisfies Florida's long-arm
statute by "[o]perating, conducting, engaging in, or carrying on a business or business
venture in this state or having an office or agency in this state." In this case, Plaintiffs have
established a prima facie case for this Court to exercise specific jurisdiction over
Defendants under § 48.193(1)(a)(1). Defendants operated, conducted, engaged in, and
carried on significant and ongoing business in Palm Beach County, Florida. Mr. Meeker
has held himself out to be the sole decision-maker for Farm and Genetics. [22-1 ¶11, 13].
Mr. Meeker, Farm, Genetics, and their attorneys held several meetings at the J-5 Equestrian
Farm in Wellington, Palm Beach County Florida negotiating and contracting the 2009

Agreement and 2019 Side Letter Agreement. [DE 22-1 ¶¶ 2-4, DE 22-3 ¶¶ 13-15]. Mr. Meeker, Farm, and Genetics repeatedly conducted business with Robert P. Jornayvaz and other individuals in Wellington, Palm Beach County, Florida. [DE 22-1 ¶¶ 5, 12]. EX. 13

Mr. Meeker, for himself and as an agent and representative of Farm and Genetics, repeatedly, and on several occasions held meetings and negotiations with Plaintiffs Adolfo Cambiaso and La Dolfina in Wellington, Palm Beach County, Florida negotiating the 2009 Agreement and 2019 Side Letter Agreement. [DE 22-1 ¶ 8]. Mr. Meeker, on behalf of himself and Genetics and Farm, conducted a "tremendous amount of business concerning equine cloning" in Wellington, Palm Beach County, Florida. [22-1¶9]. Mr. Meeker, on behalf of himself and Genetics and Farm, solicited others to purchase clones and foals of clones in Wellington, Palm Beach County, Florida. [22-1¶9]. Ex 13

Under § 48.193(1)(a)(2), a nonresident defendant satisfies Florida's long-arm statute by "[c]omitting a tortious act within this state." Florida's federal courts—the Eleventh Circuit and the District Courts for the Northern, Middle, and Southern Districts— have held that in-state injury alone confers jurisdiction under § 48.193(1)(a)(2). See *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir. 1999) (holding that instate injury alone is enough under Florida Statutes § 48.193(1)(a)(2)). See also *Int'l Harvester Co. v. Mann*, 460 So. 2d 580, 581 (Fla. Dist. Ct. App. 1st 1984) (holding that the plaintiff needs to merely assert that an injury occurred in Florida); *Wood v. Wall*, 666 So. 2d 984, 986 (Fla. Dist. Ct. App. 3d 1996) ("Because [defendants] are alleged to have committed purposeful, non-fortuitous, intentional tortious acts on [the plaintiff] located in Florida, [the defendants] are deemed to have subjected themselves to the long-arm jurisdiction of Florida courts . . . ."). Plaintiffs have established a prima facie case for this Court to exercise specific jurisdiction over Defendants under § 48.193(1)(a)(2).

Not only have Plaintiffs pled that Defendants committed tortious acts causing injury to Plaintiffs in Florida, but Defendants, solicited others to purchase clones and foals of clones from Adolfo Cambiaso and La Dolfina horses in Wellington, Florida. [DE 22-1 ¶ 9].

Further, Defendants' tortious acts in Florida injured and threaten to further injury Plaintiffs in Florida. Plaintiffs have alleged Defendants have committed tortious acts in Florida (making fraudulent misrepresentations and Lanham Act and Defense of Trade

Secret Act violations), causing injury to Plaintiffs here in Florida (selling clones to Plaintiffs' competitor in Florida, diluting and distributing proprietary genetic material here and injuring Plaintiffs' competitive advantage and business reputation in Florida) while conducting or soliciting cloning sales and services in Florida. [DE 22 ¶¶ 25, 40, 100, 227-232, 257-261, 304, 315].

Under § 48.193(1)(a)(6)(a) a nonresident defendant satisfies Florida's long-arm statute by "[c]ausing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury…  the defendant was engaged in solicitation or service activities within this state." Plaintiffs have established a prima facie case for this Court to exercise specific jurisdiction over Defendants under § 48.193(1)(6)(a). Plaintiff La Dolfina S.A. LLC is a Florida Limited Liability Company and the assignee of all of the claims herein including the rights to enforce Defendants' covenants and representations in the 2009 and 2019 Agreements. Further, Plaintiffs have alleged performance of the covenants and restrictions made by and binding Defendants in the 2009 and 2019 Agreements was owed in Wellington, Florida, an epicenter of competitive polo for four months of each year, to wit: Defendants were bound from misappropriating Plaintiffs' proprietary equine genetic material and selling clones World-wide, including Florida.  Defendants have now violated those covenants and restrictions. [22-1]; [22-2]; [22-3]; [22-4]; **Figure 1** of First Amended Complaint.  [DE 22 ¶¶ 12, 28]

Thus, Plaintiffs have established a prima facie case for this Court to exercise specific jurisdiction over Defendants under Florida's long-arm statute pursuant to §48.193(1)(a)(1), § 48.193(1)(a)(2) and § 48.193(1)(a)(6)(a).

### 2. Plaintiffs Establish Defendants Have Sufficient Minimum Contacts with Florida to Satisfy Due Process.

In Defendants' Motion to Dismiss [DE 18], Defendants propose that their due process rights would be violated if the Court were to exercise jurisdiction over Defendants. Simply stated, Defendants position is not justified or accurate.  However, in specific personal jurisdiction cases, the Eleventh Circuit applies a three-part due process test examining whether: (1) the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) the nonresident defendant purposefully availed

himself of the privilege of conducting activities within the forum state, thereby invoking the benefit of the forum state's laws; and (3) the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Miller v. Gizmodo Media Group, LLC*, 383 F. Supp. 3d 1365, 1372 (S.D. Fla. 2019) (citing See *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id*.

### i.  Relatedness

"[A] fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum." *Id*. (internal quotation marks and citations omitted). Mr. Meeker, Farm, Genetics, and their attorneys held several meetings at the J-5 Equestrian Farm in Wellington, Palm Beach County Florida negotiating and contracting the 2009 Agreement and 2019 Side Letter Agreement.  [22-1  ¶¶ 2-4] and see [22-3 ¶¶ 13-15]. Mr. Meeker, for himself and as an agent and representative of Farm and Genetics, repeatedly, and on several occasions held meetings and negotiations with Plaintiffs Adolfo Cambiaso and La Dolfina in Wellington, Palm Beach County, Florida negotiating the 2009 Agreement and 2019 Side Letter Agreement. [22-1 *¶8]*. EX 13 Mr. Meeker, on behalf of himself and Genetics and Farm, solicited others to purchase clones in Wellington, Palm Beach County, Florida. [DE 22 ¶¶ 219, 251]; [22-1 ¶9]. Here, there is a direct causal relationship between Mr. Meeker, Farm, Genetics, Florida and Plaintiffs' Claims. Plaintiffs' claims directly relate to and stem from the meetings, negotiations, and agreements made between La Dolfina, Mr. Cambiaso, Mr. Meeker, Farm and Genetics in Palm Beach County, Florida.

### ii.  Purposeful Availment

Under the minimum contacts test for purposeful availment, the Court assess the nonresident defendant's contacts with the forum state and to determine whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357 (11th Cir.

2013) (internal citations omitted). In performing this analysis, the Court shall identify all contacts between a nonresident defendant and a forum state and ask whether, individually or collectively, those contacts satisfy these criteria. *Id*. Defendants contacts with Florida are directly related to Plaintiffs claims against Defendants.

On numerous occasions spanning over a decade from 2009-2019, Mr. Meeker, Farm, Genetics, and their attorneys came to Florida to negotiate and discuss the agreements at issue in this lawsuit with Cambiaso and La Dolfina. [DE 22-1 ¶¶ 2-4] Namely, Mr. Meeker, Farm, Genetics, held repeated meetings with Mr. Cambiaso and La Dolfina at the J-5 Equestrian Farm in Wellington, Palm Beach County Florida negotiating and contracting the 2009 Agreement and 2019 Side Letter Agreement. [DE 22-1 ¶¶ 2-4] . Mr. Meeker, for himself and as an agent and representative of Farm and Genetics, repeatedly, and on numerous occasions held meetings and negotiations with Plaintiffs Adolfo Cambiaso and La Dolfina in Wellington, Palm Beach County, Florida negotiating the 2009 Agreement and 2019 Side Letter Agreement. [DE 22-1 ¶¶ 2-4]. Further, Mr. Meeker, on behalf of himself and Genetics and Farm, conducted a "tremendous amount of business concerning equine cloning" in Wellington, Palm Beach County, Florida. [DE 22-1 ¶ 9] . Mr. Meeker, on behalf of himself and Genetics and Farm, solicited others to purchase clones and foals of clones in Wellington, Palm Beach County, Florida. [DE 22-1 ¶ 9] *Ex 13*.

Because Defendants repeatedly and on several occasions met with Plaintiffs in Florida to negotiate and discuss the cloning Agreements that are the basis for this lawsuit, and  because Defendants undertook significant business operations within Florida including the solicitation of business and customers, Defendants have purposefully availed themselves with Florida such that Mr. Meeker, Farm and Genetics should reasonably anticipate being hauled into court in Florida.

### iii.   Fair Play and Substantial Justice

The exercise personal jurisdiction over Mr. Meeker, Farm and Genetics in Florida also comports with fair play and substantial justice. See *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). This analysis consists of four factors: (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; and (4) "the judicial system's interest in

resolving the dispute." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1359 (11th Cir. 2013).

Mr. Meeker, Farm, and Genetics are at home here, conduct other business, and clearly have ample financial resources and would not be burdened financially by having to litigate this case in Florida. Mr. Meeker also resides at least part-time in Florida, at a single family, one bedroom his condominium at 2211 Las Casitas Drive, in Wellington, Palm Beach County, Florida. [DE 22¶ 19]. Ex 13.

The three unauthorized Cuartetera clones were sold to a buyer in Florida, and were located here in Wellington Florida, until at least December 22, 2020 as stated in the Certificate of Veterinary Inspection issued on December 19, 2020. See *Affidavit of Taryn Harnett, attached hereto as* **Exhibit 6**. Di Caro Affidavit as well. These clones are depicted in a December 2020 photograph taken at the 62 acre equestrian facility belonging to Park Place Polo and Mr. Borodin, located at 370 South Road, Wellington, Florida 33414. See **<u>Figure 1</u>** of the First Amended Complaint [DE 22 ¶ 77. ].

Mr. Meeker, as a manager of yet another of his companies, previously conducted other business in Florida with a Florida company, J-5 Construction , LLC, for the renovation of that condominium. [DE 22 ¶ 19]. Further, Mr. Meeker, on behalf of himself and Genetics and Farm, solicited others to purchase clones and foals of clones in Wellington, Palm Beach County, Florida. [DE 22-1 *Affidavit of Robert P. Jornayvaz III* ¶9] and **Exhibit 3,** *Second Supplemental Affidavit or Robert P. Jornayvaz III*: Attachment 2. *Ex 13.* Several of the clones have already been competed in polo tournaments in Palm Beach County, Florida and so the impact of Defendants' breaches of the Agreements is here.[8]

Based on the substantial and not isolated contacts and particular acts, omissions and breaches of the underlying transactions occurred in Florida and under the jurisdiction of this Court.

---

[8] See, e.g.: *The Best Playing Pony and Her Chicken – Part 2:* "When B09 [9th Clone of Cuartetera] went to Valiente, she got very nervous since she was always in a stall just like the rest of them. She was not used to this way of life. She had to have that chicken all the way through the U.S. Open final [in Wellington Florida], when she won best-playing pony. There's a famous photo of her at the awards ceremony with a chicken sitting on her back."
Source: https://polochannel.com/the-best-playing-pony-and-her-chicken-part-2/

Moreover, Plaintiffs have an undeniable interest in efficiently resolving the dispute in the forum where most of the agreements were negotiated, Plaintiffs maintain property, and where Plaintiffs routinely met with Defendants.  See *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1359 (11th Cir. 2013).  As well, performance of the covenants and restrictions by Defendants in the Agreements was due in Florida, and violations of the Lanham Act and Defend Trade Secrets Act occurred here in Florida.

## VII.    The Court has supplemental jurisdiction as well.

Defendants make this argument under 28 U.S.C. § 1367(b)(3), arguing that the Court should dismiss the federal claims under the Lanham Act and Defend Trade Secrets Act, and thereafter decline to exercise supplemental jurisdiction.  [DE 37 *42].  There are, however, multiple flaws with this argument, and so the Court should, respectfully, reject this argument.

First, to dismiss the federal question claims, Defendants wrongfully entreat this Court to decide, as a matter of law, that under no reading of the federal claims of the FAC can Plaintiff have plausibly stated federal causes of action.  Discussed previously, these are not determinations appropriate for the Court at this juncture. *Ice Portal, Inc.,* supra, 2010 WL 2351463 ("credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge...").  Defendants *do not deny* that the state law claims arise out the same set of facts and circumstances as the Lanham Act and Defend Trade Secrets Act claims. [DE 37 *42].  Therefore, prima facie, and accepting all allegations of the FAC as true, this Court possesses supplemental jurisdiction over all of the state law claims, which "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Second, Defendants completely fail to address that supplemental jurisdiction is appropriate because Defendants have admitted [DE 18 *8] that there has been an assignment of Farm's alleged rights under the 2009 Agreement to Genetics.  Therefore, both Farm and Genetics are indispensable parties to this action as averred by the FAC. Rule 19(a).  Because the FAC no longer relies upon diversity jurisdiction, and relies upon the original jurisdiction over the federal questions raised by Counts XIV, XV and XVI of the FAC, this Court possesses supplemental jurisdiction over all the state law claims

without the limitation of 28 U.S.C. § 1367(b) applying.    That argument is also no longer available to Defendants because they failed to raise that argument in the within Motion, see Rules 12(g) and 12(h), while "[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a).

In sum, Plaintiffs have adequately established a pima facie basis that this Court now has original subject matter jurisdiction and that it is appropriate that the Court exercise supplemental jurisdiction over the state law claims of the FAC.

**VIII.  Venue before this Court is appropriate, just and fair.**

Entirely absent from Defendants' jurisdictional analysis is any rebuttal to the proper venue allegations of the FAC, wherein venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) because this is a Judicial District in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated or is a Judicial District in which any defendant is subject to the court's personal jurisdiction with respect to the claims of the FAC. [DE 22 ¶¶ 15-23, 39, 81, 87, 218, 220, 223, 250, 252, 255 and 314].

When the Court considers the substantial justice and interests of the states, as well as the due process concerns in the context that venue before this Court is the most appropriate location to resolve all of the competing claims of all of the parties, all of whom are currently represented and have counsel appearing before this Court, then it becomes even more clear that it is entirely appropriate and just and fair that this Court exercise personal, original and supplemental jurisdiction over Defendants. See 28 U.S.C. §1391(b)(2).   Notably, Defendants have not not pled nor provided evidence that a substantial part of the events giving rise to its claim occurred anywhere else such that venue would be more appropriate elsewhere. 28 U.S.C. § 1391(b)(3).

Venue is generally determined under 28 U.S.C. § 1391(b), which provides in that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

While there is a related action in the Northern District of Texas [see DE 30] (the "NDTX case") filed by just Farm related to just the 2009 Agreement, filed when Farm rushed to the courthouse in the midst of settlement negotiations to file an improper anticipatory action,[9] it is also true that: (1) no NDTX case defendant (Mr. Cambiaso, La Dolfina S.A. and La Dolfina S.A. LLC) resides in Texas; (2) no substantial part of the events or omissions giving rise to the claim occurred in Texas; (3) no substantial part of property that is the subject of the action is situated in Texas; and (4) no defendant is subject to the NDTX court's personal jurisdiction with respect to this action.   Therefore, Mr. Cambiaso, La Dolfina S.A. and La Dolfina S.A. LLC have filed, as their initial response to that action, a Motion to Dismiss for Lack of Personal Jurisdiction.   The crux of  Mr. Cambiaso, La Dolfina S.A. and La Dolfina S.A. LLC filings in the NDTX case is that the NDTX Court does not possess any grounds for the exercise of personal jurisdiction over them, and there are no other grounds for original jurisdiction of that NDTX Court.  Copies of those filings are attached hereto as **Composite Exhibit 8.**

There is also a later-filed Texas state action (the "Tarrant case" or the "removed case") [see DE 30], filed by Genetics only based upon only the 2019 Agreement. Notably, that Tarrant case also has claims arising out of the misrepresentation to Plaintiffs by Defendants of the relationship of Genetics with the race horse "Storm Cat" that are part of the common nexus of facts underlying the claims of the FAC. [see DE 22 ¶¶ 17, 32, 38, 42, 50-52, 55-67, 71, 73, 103-106, 140 and 202 and DE 22-1 ¶¶ 23-26].   The Tarrant case has now been removed to the Northern District of Texas, where it is now subject to a Motion to Transfer or Dismiss pursuant to 28 U.S.C. 1391(a) and Rules 12(b)(2) and 12(b)(7). Copies of those filings are attached as **Composite Exhibit 9.**   The crux of the Notice of Removal of the Tarrant case was that, while removal first to NDTX was required

---

[9] See, e.g.: *Chaban Wellness, Inc. v. Sundesa, LLC,*  Case 1:15-cv-21497-MGC (S.D.Fla. July 27, 2015) * 3 ("The anticipatory suit exception to the first-filed rule applies when one party, on notice of a potential lawsuit, files a declaratory judgment action in its home forum." *Collegiate Licensing Co. v. American Cas. Co. of Reading, Pa.,* 713 F.3d 71, 79 (11th Cir. 2013). At its discretion, a district court may "refuse to enforce the first-to-file rule where forum shopping motivated the first-filed action or the first-filed action constitutes an improper anticipatory filing made under threat of an imminent suit." *AT&T,* 2014 WL 4052803 at *4 (quoting *Schwarz v. Nat'l Van Lines, Inc.,* 317 F. Supp. 2d 829, 833 (N.D. Ill. 2004).

by 28 U.S.C. § 1446, the SDFL is the proper venue for litigating that case because all of the parties are served, represented and at issue over all of the agreements here in the SDFL. Immediately after removal, Mr. Cambiaso, La Dolfina S.A. and La Dolfina S.A. LLC then filed their Motion to Transfer or Dismiss, setting forth the bases for venue more properly lying in the SDLF, and, while contemporaneously bringing a rule 12(b)(2) motion in NDTX, noting that the NDTX Court need not address personal jurisdiction before transferring to SDFL.  Copies of those filings are attached hereto as **Composite Exhibit 10.**

In both the NDTX case and the removed Tarrant case, neither Mr. Cambiaso nor La Dolfina S.A. LLC have been served, nor have their counsel filed Appearances.  Only in the within SDFL case have all the parties been served and represented, and all the disputes regarding both the 2009 and 2019 Agreements at issue**.** [DE 30].  Defendants do not address these considerations at all when assessing the propriety of personal jurisdiction.

IX. **Defendants have waived personal jurisdiction by seeking affirmative relief, actively litigating and providing merits-based evidence.**

As a final concern, Defendants seek affirmative relief, in the form of dismissal pursuant to Rule 12(b)(6), while at the same time actively litigating and advancing by briefing to the Court and providing evidence [DE 38, 38-1] arguments on the merits of their opposition to Plaintiff's Motion for Temporary Injunction.   Given such requests for affirmative relief by the Court and active participation in the proceedings, the Court could reasonably conclude that: Defendants have waived their objections to personal jurisdiction. " *Salareno,* supra, Case 1:18-cv-23643-UU  *4.

X. **Defendants drafted the 2009 and 2019 Agreements and failed to include a mandatory forum selection clause for alternative jurisdiction and venue.**

For all their present protestations that the SDFL is not the proper court in which to appear, Defendants never took any affirmative act, while admittedly repeatedly conducting business in Florida [DE 37-1], to specify an alternative mandatory forum. During the long period of time that the parties were engaged in business, and as the drafters of the relevant Agreements, Defendants have enjoyed every opportunity to include a mandatory forum selection clause, specifying some other jurisdiction and venue, in either or both the 2009 and 2019 Agreements.   The Eleventh Circuit enforces "only those clauses that

unambiguously designate the forum in which the parties must enforce their rights under the contract." *Florida Polk County v. Prison Health Servs., Inc.*, 170 F.3d 1081, 1083 n.8 (11th Cir. 1999)

In the present dispute, Defendants took no affirmative steps to avoid the jurisdiction of Florida while admittedly conducting business in Florida [DE 37-1 ¶¶ 10, 1112, 13, 14]. Further, there are no implied or de facto jurisdictional restrictions in the 2009 and 2019 Agreements *preventing* this Court from exercising jurisdiction over the parties to those Agreements.  Compare to *Cornett v. Carrithers*, 465 F. App'x 841 (11th Cir. 2012) (per curiam) (recognizing de facto or implied jurisdictional restrictions, holding that a forum-selection clause mandating venue in a county with no physical federal courthouse effectively precludes suit in federal district court).  Under those circumstances, and given those missed opportunities to specifically avoid Florida jurisdiction, Defendants have again waived their opportunity to challenge personal jurisdiction in Florida.

Even under a forum non-conveniens analysis, and even assuming arguendo that there was another forum available, Florida is an adequate alternative forum to litigate the current disputes between the parties. "An alternative forum is adequate if it provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiffs' injuries." *King v. Cessna Aircraft Co.,* 562 F.3d 1374, 1382 (11th Cir. 2009). "An adequate forum need not be a perfect forum." *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001).  An alternative forum is "available" to a plaintiff "when the foreign court can assert jurisdiction over the litigation sought to be transferred." *Leon v. Millon Air, Inc.,* 251 F.3d 1305, 1311 (11th Cir. 2001).

Herein the SDFL, the governing law is Florida state law and there is ongoing litigation between these parties about transactions that have a substantial nexus to Florida. Thus, to the extent Defendants argue that some other forum, such as Texas, is appropriate, the remedies available in the alternative forum is identical to the remedies available here in Florida.  Consequently, the Court should conclude that the SDFL is both an adequate and available forum to Defendants, particularly when Defendants failed to specify any other alternative forum or fora, despite adequate opportunity as both the drafters of the relevant Agreements and the intervening ten (10) years between the Agreements.

**XI.     Conclusion – this Court properly possesses and should exercise original, personal and supplemental jurisdiction.**

From that litigation history and the attached filings, the Court can and should respectfully conclude that SDFL is the proper, just and fair jurisdiction and venue for the ligation of all of the disputes amongst all of the parties.[10]  Defendants fail to address these concerns at all in their discussion of the due process, substantial justice and interests of the several states considerations relevant to personal jurisdiction.   While Defendants have now waived those arguments pursuant to Rules 12(g) and 12(h), the merits of Plaintiffs' position remains as independent grounds for the Court to exercise original, personal and supplemental jurisdiction over the Defendants and all of the claims.

**Part II**

**12(b)(6) Response**

**I.     Threshold Issue – Defendants now raise 12(b)(6) grounds to dismiss Counts I through XIII which were previously available but not raised before.**

As a matter of both law and procedure, the filing of an amended complaint does not excuse Defendants from the requirements of Rule 12(g).   Counts I through XIII have not changed from the initial Complaint [DE 1] to the First Amended Complaint [DE 22], while facts relevant to the additional counts XIV through XX were only added to the General Allegations.     Therefore, Defendants gave waived their 12(b)(6) challenge to Counts I through XIII by failing to assert those challenges in their initial Motion to Dismiss [DE 18], which raised only jurisdictional challenges.   The  Rule 12(b)(6) defenses now before the Court for the first time in the Motion to Dismiss the FAC on January 14, 2021 [DE 27] were all available to Defendants when Defendants filed their initial Motion to Dismiss the initial Complaint on December 21, 2020 [DE 18].

The filing of the FAC did not excuse Defendants from Rule 12(b) because "[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to amendment." *Wright & Miller*, supra, 5C Fed. Prac. & Proc. Civ. § 1388; *Chen,* supra*.,* No.  10-80236-CIV, 2011 WL 1085646, at *2  (striking second motion to dismiss as improper under Rule 12(g));

---

[10] Indeed, the Defendants here may attempt to assert in the SDFL whatever legally cognizable counterclaims and defenses which they believe have proper merit.

*Barfoot,* supra, Case No. 15-24662-CIV-ALTONAGA/O'Sullivan (denying motion to strike, pursuant to Rule 12(g), based upon earlier filing of motion to dismiss).

Respectfully, Defendants Rule 12(b)(6) Motion should be denied as to Counts I through XIII for failure to raise those defenses when first available. Rule 12(g) and Rule 12(h).

## II.   Pleading Standard, Generally.

Defendants' remaining arguments for dismissal of the FAC are brought under Rule 12(b)(6). "A motion to dismiss a complaint should not be granted unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *St. Joseph's Hospital, Inc. v. Hospital Corp. of America*, 795 F.2d 948, 953 (11 Cir. 1986); *Bradberry v. Pinellas County,* 789 F.2d 1513, 1515 (11th Cir. 1986). On a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts its factual allegations as true. See *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc*., 835 F.2d 270, 272 (11th Cir. 1988)). Pursuant to *Twombly,* supra, to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." 550 U.S. at 555.

Plaintiffs address Defendants' arguments *ad seriatim:*

## III.   The FAC is not an improper pleading.

As with many complex business relationship disputes, covering the relevant facts requires a certain amount of terrain. In this case, the relevant factual and legal allegations are further intertwined because the Defendants have treated their individual and corporate forms as fungible, making personal representations as to business ownership and freely assigning contractual rights without hesitancy. See **Exhibit 7**, Third Affidavit of Roberto Zedda ¶ ¶ 8, 9, 10; **Exhibit 2**, Second Affidavit of Adolfo Cambiaso, ¶ ¶ 7, 8, 9 as well as the many public, national media statements of Meeker in *Vanity Fair* magazine, attached hereto as **Exhibit 12**, the CBS program *60 Minutes*[11], *National Geographic*.

---

[11] https://www.cbsnews.com/news/adolfo-cambiaso-the-clones-of-polo-60-minutes/

Although the various counts in the Amended Complaint reincorporate many of the preceding allegations, the Amended Complaint does not rise to the level of a "condemn[able]" shotgun pleading. *David*, 516F.3d at 979. In comparison, the quintessential shotgun pleading "begin [s] with a long list of general allegations, most of which are immaterial to most of the claims for relief," *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998), names multiple defendants, all of whom are charged in each count with no distinction made among the defendants, *Magluta*, 256 F.3d at 1284, and reincorporates allegations of preceding counts such that "each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies," *Id.*

The Defendants are joined together in the Counts because, as reflected in the FAC, and in the Affidavits accompanying this Response, Plaintiff avers that Farm and Genetics are alter-egos of Meeker, who during the relevant business dealings with Plaintiff and others, did not make any distinction between Crestview Genetics and Crestview Farm and himself. In global media Meeker makes public statements using the first-person "I" to discuss "his" equine cloning and polo endeavors rather than adhere or respect any of the corporate entities. For example, in the video interview and story by National Geographic, Meeker talks about his polo ambitions and the piece ends with his statement "I wanted to license the genetics". Meeker so dominated and controlled the Crestview entities to such an extent that they were non-existent in his business negotiations and performances. Other introducing Meeker's lawyer, Meeker never introduced or included a single officer, partner or owner of Farm or Genetics in any negotiations, and Meeker appeared to have sole decision making power and appeared to dominate and control these entities entirely to the point that they were non-existent in the business dealings with Plaintiff. *Exhibit 7, Third Affidavit of Roberto Zedda ¶ 9; Exhibit 2, Second Affidavit of Adolfo Cambiaso, ¶ 8.*

Thus, by averring in the FAC a piercing of the corporate veil through an alter-ego theory of existence, the FAC may be read that each count is alleged at each Defendant individually. A complaint against multiple defendants may be "read as making the same allegation against each defendant individually," so long as the "factual allegations [] give each defendant 'fair notice' of the nature of the claim and the 'grounds' on which the

claim rests." *George & Co., LLC v. Alibaba.com, Inc.*, No. 2:10-cv-719-FtM-29DNF, 2011 WL 6181940, at *2 (M.D. Fla. Dec. 13, 2011) [citations omitted].

Therefore "[t]he Amended Complaint's incorporation by reference of preceding paragraphs does not create an inscrutable tangle of facts and claims that would render the Amended Complaint a shotgun pleading. Most counts do not reincorporate all preceding paragraphs but instead reincorporate the general allegations and some of the allegations from the preceding count or counts. … Because the causes of action are closely related, many of their incorporated allegations are relevant to the subsequent claims. … While not all of the facts realleged are necessarily pertinent to every claim, it is not 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief,' *Anderson*, 77 F.3d at 366, nor must Defendants wade through 'rambling irrelevancies' in an attempt to answer the Amended Complaint, *Magluta*, 256F.3d at 1284." *Gubanonva v. Miami Beach Owner, LLC,* Case 1:12-cv-22319-UU (S.D.Fla. Dec. 3, 2013) *10-11.

Herein the FAC, the Court and Defendants are able to ascertain exactly what facts form the basis of each of Plaintiffs' claims. Accordingly, the Court should reject Defendants' argument that the FAC is an impermissible "shotgun pleading." See *Watts v. City of Port St. Lucie, Fla*., No.2:15-CV-14192,2015 WL 7736532, at *5 (S.D. Fla. Nov. 30, 2015) ("Although some counts of Plaintiff's Complaint do incorporate paragraphs in previous counts by reference, it is not an impermissible 'shotgun pleading,' because it does so only for convenience, and the Court is able to ascertain which paragraphs are relevant to each of the claims."), cited with approval by Judge Marra in *Thomas v. Tyco Int'l Mgmt. Co., LLC,* Case 9:16-cv-80501-KAM (S.D.Fla. March 31, 2017) *18 (denying motion to dismiss an alleged shotgun pleading).

IV.   **The FAC satisfies Rule 9(b).**

A.   **The common law claims satisfy Rule 9(b).**

The 2009 Agreement [DE 22-1] and attached to the FAC, drafted by Defendants, does not contain an "entire agreement" or integration clause. Plaintiffs pled that there were numerous representations made by Defendants prior to the execution of the 2009 Agreement to induce Mr. Cambiaso to enter into the 2009 Agreement [DE 22 ¶¶ 35-52], including but not limited to: (1) that Farm possessed the requisite cloning expertise and

technology to successfully clone horses; (2) that La Dolfina and Mr. Cambiaso were to be considered the owner of the original polo ponies (and their genetic material); (3) that Meeker acknowledged that only limited rights to cloning samples were granted to Meeker; (4) that Meeker and the Crestview Defendants would not clone any La Dolfina or Cambiaso horses outside of express, mutual agreements between the parties, and (5) that Meeker "owned" the Storm Cat clone and rights to clone further that clone.  Those representations and others turned out to be false. [DE 22 ¶¶ 35-52].

The FAC therefore satisfies the particularity requirement of Rule 9(b) because the FAC alleges "facts as to time, place ,and substance of the  defendant's  alleged  fraud, specifically  the  details  of  the  defendants'  allegedly fraudulent  acts,  when  they occurred,  and  who  engaged  in  them." *Hopper  v.  Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) (citation and internal quotation marks omitted).

However, the pleading need not be perfect, just sufficient to alert the Defendants s to the allegations of misconduct Defendants face. See. e.g.: *Seltzer v. FWM Laboratories Inc.,*  Case no. 09-61771-CIV-COHN/SELTZER (S.D.Fla. March 29, 2010) *8. ("The Complaint alleges that the advertisement in question took place six months prior to the filing of the Complaint. Compl. ¶16). The Complaint describes the allegedly false advertising claims regarding the risk-free period and the relevant omissions regarding the time calculation for cancellation. Compl.  ¶¶  10-14.  **These critical paragraphs sufficiently alert Defendant to the precise misconduct with which it is charged in this case**.  The Court will deny the motion to dismiss on the issue of pleading fraud with particularity.") [emphasis added].   Further, "Rule 9(b) 'permits states of mind, including knowledge, to be pled generally.'" *Drew Estate Holding Co., LLC v. Fantasia Distribution, Inc.,* No. 11–21900–CIV, 2012 WL 234105 at *5 (quoting *West Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 88 (11th Cir. 2008))

Cogently applying Rule 9(b) as interpreted in this District, then, the FAC satisfies Rule 9(b).

**B.  Rule 9(b) does not apply to the Lanham Act, nor the Defend Trade Secrets Act claims.**

      **a.   The Lanham Act.**

Defendants next argue that the Lanham Act claim fails to satisfy the heightened pleading standard set forth in Rule 9(b). However, the Eleventh Circuit has not yet decided whether Rule 9(b) applies to Lanham Act claims based in fraud. See *USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC,* 15-CIV-80352-BLOOM/Valle, 2016 WL 4254257, at *2 (S.D. Fla. Feb. 16, 2016); *Thermolife International LLC v. Vital Pharmaceuticals Incorporated,* Case No. 0:19-cv-61380-BB (S.D.Fla. October 8, 2019) *5 (" Thus, the Court declines to expand Rule 9(b) absent instruction from the Eleventh Circuit or persuasive guidance from its sister districts. As such, the Complaint need not satisfy Rule 9(b)'s heightened pleading standard.").

**b. The Defend Trade Secrets Act.**

While a "plaintiff is required to identify with reasonable particularity the trade secrets at issue before proceeding with discovery ... to satisfy this requirement at the dismissal stage in federal court, the plaintiff need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016) (per curiam). As well, "the question of whether information constitutes a trade secret is a question of fact normally resolved by a jury after full presentation of evidence." *Trinity Graphic USA, Inc. v. Tervis Tumbler Co.,* 320 F.Supp. 3d 1285, 1293 (M.D.Fla. 2018), citing *Lear Siegler, Inc., v. Ark-Ell Springs, Inc*., 569 F.2d 286, 289 (5th Cir. 1978) and stating further "The misappropriation allegations, whether or not Defendant Tervis's actions were improper and met the statutory definition of "misappropriation" are also questions of fact that cannot be resolved on a motion to dismiss. The Amended Complaint contains detailed allegations that Tervis misappropriated Plaintiff's trade secrets by acquiring them through improper means and disclosing them to third parties. [docket citations omitted] Finally, Plaintiff satisfies its pleading burden pursuant to Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is to ensure defendants have 'notice of the conduct complained of,' so they have 'sufficient information to formulate a defense.' *Wagner v. First Horizon Pharm. Corp*., 464 F.3d 1273, 1277 (11th Cir. 2006). Essentially, a plaintiff satisfies Rule 9(b) by alleging' who, what, when, where, and how.' *Garfield v. NDC Health Corp*., 466 F.3d 1255, 1262 (11th Cir. 2006). Here, the Amended Complaint satisfies the pleading requirements of Rule 9(b)."

In the FAC, Plaintiffs have substantially averred that Plaintiffs considered the equine genetic material of the specific polo ponies confidential and proprietary, and took reasonable and considerable efforts to keep confidential and withhold from the public that equine genetic material from certain, specific polo horses and to specifically include such limitations in their contracts and that at the time, Defendants did so without the consent of Plaintiffs, having reason to know (and admitting in global media) that Defendants had a duty to limit the use of the equine genetic material.[12] [DE 22 ¶¶ 262-284; DE 22-3 ¶¶ 6-12, 22-4]. Plaintiffs then also allege what specific acts Defendants have undertaken actions to misappropriate, sell and release that equine genetic material to the public.[DE 22 ¶¶ 4, 22, 69, 77, 87, 88, 91, 94, 96, 129, 173, 192, 212, 242, 296, 310; DE 22-10, DE 22-11].

At this motion to dismiss stage, Plaintiffs have alleged sufficient facts to plausibly state a cause of action under the DTSA. Respectfully, the Court should not dismiss the FAC. See. e.g.: *Grow Fin. Fed. Credit Union v. GTE Fed. Credit Union* Case No: 8:17-cv-1239-T-30JS (M.D.Fla. August 15, 2017) 2017 U.S. Dist. LEXIS 129612 *3 (denying Rule 9(b) motion to dismiss DTSA claim). Similar result found in *Sentry Data Systems, Inc. v. CVS Health,* 361 F. Supp. 3d 1279, 1293 (S.D.Fla. 2018).

Therefore, the Motion to Dismiss the FAC as an improper shotgun or inadequately pled under Rule 9(b) should be denied.

**C. The Agreements are "unambiguous" and "undermine" the federal claims.**

On the face of this argument by Defendants, it is not a a legally cognizable ground to dismiss under Rule 12(b)(6) because it is rather a general denial. Further, matters of interpretation of contract, particularly when such contracts may contain latent ambiguities such as the definition of the word "license" in the 2009 and 2019 Agreements, are not appropriate for determination at the motion to dismiss stage. See, e.g.: *Barrington v. Gryphon Inv., Inc.*, 32 So. 3d 668, 671 (Fla. 2d. DCA 2010) ("When an agreement contains a latent ambiguity …. the issue of the correct interpretation of the agreement is an issue of fact which precludes summary judgment.") [citations and quotations omitted]. It

---

[12] F.S. § 688.002 defines "Misappropriation" as including the "[d]isclosure or use of a trade secret of another without express or implied consent by a person who … [a]t the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was … [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or [d]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use...." Fla. Stat. § 688.002(2).

is well settled that contract interpretation is a question of law. Questions of fact arise only when an ambiguity in a contract forces the court to examine extrinsic evidence of the parties' intent. *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995).

Given the parties' conflicting interpretations of their respective obligations under the Agreements, Defendants' arguments are premature and the within motion should therefore be denied.   "[T]he Court 'may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment.'" *Geter v. Galardi S. Enters., Inc.,* 43 F. Supp. 3d 1322, 1328-29 (S.D. Fla. 2014)(quoting *McKissack v. Swire Pac. Holdings, Inc.*, No. 09–22086–CIV, 2011 WL 1233370, at *3 (S.D.Fla. Mar. 31, 2011)); see also *Managed Care Solutions, Inc. v. Cmty. Health Sys., Inc.,* No. 10–60170–CIV, 2011 WL 6024572, at *8 (S.D.Fla. Dec. 2, 2011)("A determination of the proper interpretation of the contract should be decided at the summary judgment stage, not in a ruling on a[ ] motion to dismiss."); *Ben-Yishay  v. Mastercraft Dev., LLC*, 553 F. Supp. 2d 1360, 1373 (S.D. Fla. 2008)("The proper interpretation of this [contractual] provision is not a matter that can be resolved on a motion to dismiss for failure to state a claim. Interpretation of a clear and unambiguous contractual provision is a question of law properly decided on summary judgment.").

### D.  Plaintiffs have sufficiently pled a Lanham Act claim.

#### 1.  Plaintiffs have standing.

In Counts XIV and XV, Plaintiffs assert claims under The Lanham Act.    Section 43(a)(1)(A) of the Lanham Act is codified at 15 U.S.C. § 1125(a)(1)(A) and section 43(a)(1)(B) of the Lanham Act is codified at 15 U.S.C. § 1125(a)(1)(B).  A claim under 15 U.S.C. §1125(a)(1)(A) is known as a "false association " claim.   A claim under 15 U.S.C. § 1125(a)(1)(B) is known as a "false advertising" claim.  In Count XIV, Plaintiffs bring a claim for false advertising, and in Count XV, a claim for false association.

Defendants confuse the standing requirements under the earlier sections of the Lanham Act, such as for trademark infringement (which Plaintiffs do not bring in the FAC).  Unlike the previous statutory provisions, § 1125(a) confers standing more broadly.

First, § 1125(a)(1) specifically provides standing to "*any person who believes that he or she is or is likely to be damaged by such act*" as false advertising or false association.[13] :

Second, § 1125(a)(1) has been interpreted by the Supreme Court to allow standing where a plaintiff pleads "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark 1nt 'l,Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395, 188 L. Ed. 2d 392 (2014); *Kroma Makeup E U v. Boldface Licensing & Branding, Inc., No.* 6:14-CV-1551-ORL, 2015 WL1708757, at *5 (M.D. Fla. Apr. 15, 2015) (applying  the *Lexmark* test*,* which requires courts to determine (i) whether the plaintiff falls within the zone-of-interests of the statutory provision, and (ii) whether plaintiff's injuries were proximately caused by the defendant's wrongful conduct).  Therefore, when traveling under § 1125(a)(1)(A) and (B), which grants standing to "*any person who believes that he or she is or is likely to be damaged by such act*" as false association or false advertising.  Plaintiffs are not required to assert a protected mark.

A false advertising claim does not require interests in a trademark. Specifically, "[a] Lanham Act false advertising claim arises when [a]ny person who, on or in connection with any goods ... uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods[.]" *Tartell v. South Florida Sinus and Allergy Center*, 2013 WL 11971024 at Fn.2 , S.D. Florida (2013); *Suntree Techs, Inc,. v Ecosense Intern. Inc.,* 693

---

[13] § 1125(a)(1) provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

**shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.**  [emphasis added].

F.3d 1338, 1348-49 (11th Cir. 2012) (internal quotations omitted).  *See also Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015) (listing the five elements of a false advertising claim, none of which requires plaintiff to own a trademark). Regarding the false association claim, section 1125(a)(1)(A) "applies to several different categories or types of violations." *Trump Plaza of Palm Beaches Condominium Assn v.  Rosenthal*, No. 08-80408-CIV., 2009 WL 1812743, at *3 (June 24, 2009 S.D. Fla.).

Although a claim under the "false designation of origin" language of section 1125(a)(1)(A) requires a plaintiff to have a mark, *e.g. Custom Mfg. v. Midway Services, Inc.*, 508 F.3d 641 (11th Cir. 2007), a claim under the language in section 1125(a)(1)(A) which is based on a "false or misleading representation of fact" that the plaintiff "sponsors[ ] or approv[es]" the defendant's activities does not require a trademark, at least where the plaintiff is a celebrity like Mr. Cambiaso. *See* 5 *McCarthy on Trademarks and Unfair Competition* Section 28:15 (5th ed.) (showing that the plaintiff's celebrity status serves in lieu of a formal trademark, as the defendant is falsely representing that the celebrity is endorsing the defendant's product).

Also, contrary to Defendants' conclusory assertions, the 2009 Agreement does not allow Mr. Meeker to unilaterally sell clones thereby providing it protection against Section 43(a) claims. Horse Cloning Agreement (¶3 – establishment of a mutually acceptable breeding program for the endorsement and marketing of clones– did not occur; ¶ 4. – Mr. Cambiaso to determine sales price of clones and joint determination of final sales prices and terms -– a condition precedent never fulfilled; ¶. 5 -  mutual agreement of a second edition of clones which never occurred). Moreover, as is evident from Mr. Gutierrez's Affidavit, his payment to Mr. Meeker after their meeting in Wellington extinguished the 2009 Agreement as Mr. Cambiaso and Mr. Meeker decided to no longer sell clones. Thus, Defendants purported rights under this Agreement do not exist. See also, Reply of Plaintiffs' to Response of Defendants to Plaintiffs' Motion for Temporary Restraining Order (pages 5-10 regarding the agreements at issue) being filed simultaneously herewith.

**2.  Plaintiffs successfully state claims under both § 1125(a)(1)(A) and (B).**[14]

Within the FAC, Plaintiffs specifically allege that Defendants' misrepresentation that the clones being sold were being produced and sold with Plaintiffs' authorization and agreement, and that the clones were affiliated with Plaintiffs because the clones have the same name as Plaintiffs' renowned "Cuartetera" polo pony, "have caused caused has caused and will continue to cause actual confusion in the marketplace, resulting in loss of goodwill and profits, and harming and threatening to further harm the business reputation of Plaintiffs as exclusively possessing their exclusive polo horse blood lines as the premier and most successful competitors in the sport of polo", and "has resulted in injury to Plaintiffs' commercial interests, reputation, competitive advantage, and goodwill."  [DE 22 ¶¶ 25, 40, 100, 226, 232, 265, 258, 272, 286, 303 and 315].

For example, Plaintiffs have pled in ¶¶ 210 213 of the FAC [DE 22] that Defendants are misrepresenting the nature, characteristics, qualities or origin of the clones:

> 210. Defendants represented to the Castagnolas that Defendants owned and were authorized to produce clones from Plaintiffs' horses, to wit *"You should buy one of my new Colibri or Aiken Cura clones! I'm making new Lapa clones too. ... I have babies of Cuartetera"* **Figure 2** **herein, and Exhibits 10 and 11,** *Affidavit of Camila Castagnola* and *Affidavit of Bartolome Castagnola.*
> 211. Those statements by Defendants were literally false because none of the Agreements expressly granted Defendants a right to advertise and sell those clones and clone foals.
> 212. Defendants further represented to the public, in response to a member of the public's inquiry  *"Si, you have Cuartetera??"* that Defendants had already produced and sold clones of Cuartetera: *"No, they are all spoken for."*  That statement was misleading by implying that Defendants had authorization to create and sell to the public clones of Plaintiffs'' renown Cuartetera polo horse.
> 213. By these representations, as well as others in the public media, the advertisements and statements of Defendants were (1) false or misleading, and (2) deceived or had the capacity to deceive the public.  Defendants did not have the authorization of Plaintiffs to create, advertise and sell into the public market clones and cloned foals of Plaintiffs' renown polo horses. The aforesaid statements and advertising to the public by Defendants therefore were both false or misleading and deceived or had the capacity to deceive the public that the clones and cloned foals offered for sale by Defendants were authorized clones of Plaintiffs' horses, possessing the

---

[14] As well as for Count XVIII for Violation of the Florida Uniform Secrets Act– F.S. §§ 685.001 et seq. commercial appropriation of name and identity.

same abilities as Plaintiffs' original horses by way of genetics and training by Plaintiffs' polo trainers and Mr. Cambiaso.[15]

Likewise, within the FAC, Plaintiffs specifically alleged the false endorsement claims made by Defendants [DE 22 ¶¶ 7, 158, 238, 239-245, 248, 250-254, 291 and 299]. For example, Plaintiffs have pled in ¶ 238 of the FAC [DE 22]:

> 238. The Defendants have made the aforesaid statements, set forth in the General Allegations, to the public by using Plaintiffs' names and the names of Plaintiffs' horses that Plaintiffs have endorsed Defendants as authorized sellers of clones of Plaintiffs' original, unique polo horses by specifically naming the horses Aiken Cura, Cuartetera, Colibri and Lapa.  See **Exhibits 6 and 7 hereto,** *Affidavits of Bartolome Castagnola and Camila Castagnola.*

While in ¶ 242 of the FAC [DE 22], Plaintiffs have also pled:

> 242. For example, when Defendants represented to the Castagnolas that *"You should buy one of my new Colibri or Aiken Cura clones!  I'm making new Lapa clones too. ... I have babies of Cuartetera"* **Figure 2 herein, and Exhibits 10 and 11,** *Affidavit of Camila Castagnola* and *Affidavit of Bartolome Castagnola,* Defendants falsely implied an endorsement of the cloning and sale by Plaintiffs when such endorsement did not exist.

Whether or not the clones sold by Defendants were or were not from Cuartetera or another of Plaintiffs' horses is not dispositive, because the performance of the clones is also, as even Meeker admits, a product of the special training by Plaintiffs, which would only be given by Plaintiffs to authorized clones.   Defendants do not anywhere rebut the statements [DE 22-11 ¶ 12] by Mr. Castagnola, another of the highest-rated polo players in the World, that:

> 12.    I personally know that a top professional polo player, such as myself or Mr. Cambiaso, considers their polo horses to be of utmost importance to a player's professional success.  The loss of control of the genetic material or clones from such a player's top polo horses creates damage to a player and his team that cannot ever be repaired, because both the competition now has the same horses and there are more of the same horses available to compete against the owner of the original horses. Once the genetic material

---

[15] [footnote 19 in the FAC]: Mr. Meeker has publicly opined that Cambiaso's ponies are highly prized, and those involved in training and showing their clones consider their involvement a great privilege, and care is taken to have the clones trained and handled by the same people involved in the original horse training. Telephone interview of Alan Meeker by Lewis T. Stevens with Alan Meeker on behalf of Crestview Genetics on March 14, 2016. https://uknowledge.uky.edu/cgi/viewcontent.cgi?article=1157&context=kjeanrl

and the clones are released, unrestricted, into the World market, they cannot
be reobtained or restricted in use, cloning or breeding.

In that context, even if the clones sold were from Cuartetera, Defendants have conveyed
the false impression to the polo community, who would believe that if the clones were for
sale, that Defendants were selling only authorized clones, and only with the permission of
Plaintiffs.  See, e.g.: DE 22-10, DE 22-11, Affidavits of the Castagnolas.  Thus, Defendants
have made the statement that Cuartetera clones are for sale, which, while literally true,
creates the false impression that the clones were created with permission and were for sale
with the authority of Plaintiffs, when Plaintiffs have pleaded such is not the case. [DE 22
¶¶ 75-76].

Finally, Plaintiffs allege the 2009 Agreement was breached by Defendants, alleging
that Defendants did not ever establish "an acceptable breeding program providing for the
endorsement and marketing of clones and Crestview's cloning program" as required by ¶
3 of the 2009 Agreement." [DE 22 ¶ 158].

Accordingly, both Mr. Cambiaso and La Dolfina S.A. have standing to sue
Defendants under  § 1125(a)(1) and Plaintiffs have successfully stated claims under both
15 U.S.C. § 1125(a)(1)(B) and 15 U.S.C. §1125(a)(1)(A) by alleging false or misleading
misrepresentations as to the nature, characteristics, qualities or origin of the polo pony
clones, *Black Diamond Land Mgmt LLC v. Twin Pines Coal Inc.,* 707 F. App'x 576, 580
(11th Cir. 2017), and have made statements that are either or both "literally false" or were
"literally true or ambiguous but which implicitly convey a false impression, are misleading
in context, or are likely to deceive consumers."  *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.,*
910 F.2d 1186, 1196 (11th Cir. 2018).

**V.      Plaintiffs have sufficiently stated a claim under the Defend Trade Secrets Act.**

Plaintiff adopts and repeats here the previous argument addressing Rule 9(b) and
the DTSA.

**A. Plaintiffs have standing as Owners.**

Set forth in the previously-filed second Affidavit of Robert Zedda [DE 22-4],
Plaintiff La Dolfina S.A. LLC is the assignee of La Dolfina S.A.'s rights under the
Agreements, and La Dolfina is the registered owner of the relevant horses, while Mr.
Cambiaso is himself a Plaintiff for any horses not owned by La Dolfina.  Therefore,

Plaintiffs are the owners of the original horses and clones therefrom.   The ownership stems from the actual ownership of both the original horses and the clones.   The genetic material of the original horses is of course incorporated into the clones, but it is the actual ownership of the original horses and the clones that is as significant.   The 2009 and 2019 Agreements do not impart any ownership to Defendants of the original horses or the clones therefrom.

In point of fact, Ernest Gutierrez avers in his Affidavit attached to this Response, that (1) any rights Defendants claim under the 2009 Agreement were terminated when Mr. Meeker accepted $ 1,533,000 to terminate the 2009 Agreement, be repaid his investment, and start the Argentina Crestview Genetics SRL entity operation; and (2) the agreement of Mr. Meeker in Argentina and elsewhere was always to refrain from selling clones of La Dolfina and Cambiaso horses to the public. See *Affidavit of Ernesto Gutierrez Conte*, **Exhibit 1**.

To summarize, then, the parties dispute the most salient trade-secret issues under the DTSA claim: (1) whether the clones in question constitute "trade secrets" in the first place; (2) whether Plaintiffs are the owners of the trade secrets; (3) whether Plaintiffs took reasonable steps to protect that information; and (4) whether the information was actually misappropriated.  Indeed, the only pertinent fact the parties agree on is that three of the clones have been sold to a third party.   The balance of the issues remain hotly contested questions of fact for the jury, not questions of law for the Court at this stage.  *Trinity Graphic USA, Inc.* supra, 320 F.Supp. 3d at 1293; *Wagner,* supra, 464 F.3d at 1277 (11th Cir. 2006).

**B. Plaintiffs have stated causes of action under the DTSA, and the facial attacks upon the underlying facts are premature at this stage.**

In the FAC, Plaintiffs have substantially averred that Plaintiffs considered the clones of the specific polo ponies confidential and proprietary, and  took reasonable and considerable efforts to keep confidential and withhold from the public those clones because they contain equine genetic material from certain, specific polo horses, and further took measures in the Agreements to specifically include such limitations.  Plaintiffs further aver that because of these Agreements, Defendants had reason to know and did know that Defendants were not permitted to sell the clones without the consent of Plaintiffs,  and that that Defendants had a duty to limit the use and distribution of the equine genetic material

as contained within the clones. [DE 22 ¶¶ 262-284; DE 22-3 ¶¶ 6-12, 22-4]. Plaintiffs then also allege what specific acts Defendants have undertaken to misappropriate, sell and release the clones containing the equine genetic material to the public.[DE 22 ¶¶ 4, 22, 69, 77, 87, 88, 91, 94, 96, 129, 173, 192, 212, 242, 296, 310; DE 22-10, DE 22-11].

These are precisely the kinds of factual disputes that jurors are best-equipped to resolve. See *Marlite, Inc. v. Eckenrod*, No. 09-22607-CIV, 2011 WL 39130, at *5 (S.D. Fla. Jan. 5, 2011), aff'd sub nom. *Marlite, Inc. v. Am. Canas*, 453 F. App'x 938 (11th Cir. 2012) ("Whether a particular type of information constitutes a trade secret is a question of fact."). Further, whether the measures Plaintiffs employed to protect its trade secrets were reasonable is a highly "fact-intensive inquiry" not susceptible of straightforward resolution at summary judgment. See *Balearia Caribbean, Corp. v. Calvo*, No. 16-23300-CIV, 2018 WL 6261497, at *4 (S.D. Fla. Aug. 22, 2018).

Respectfully, the Court should not dismiss the FAC. See. e.g.: *Grow Fin. Fed. Credit Union,* supra, 2017 U.S. Dist. LEXIS 129612 *3 (denying Rule 9(b) motion to dismiss DTSA claim; similar result found in *Sentry Data Systems, Inc.,* supra, 361 F. Supp. 3d at 1293. Therefore, the Motion to Dismiss the FAC as an improper shotgun or inadequately pled under Rule 9(b) should be denied.

## VI.    The State law claims are adequately pled and Defendants have waived their 12(b)(6) defenses.

These arguments have been set forth herein above and need not be repeated herein. In this catch-all argument, Defendants commingle undeveloped arguments that, taken as a whole, are either mere denials or mere factual conclusions, but none of which raise cognizable grounds to dismiss in their present form, if at all. Finally, many, if not all, of these grounds related to Counts I through XIII were available to Defendants at the time of their filing last month of their initial Motion to Dismiss [DE 18] the initial Complaint [DE 1] and so have been waived. Rule 12(g) and Rule 12(h). The filing of the FAC does not affect that waiver. *Wright & Miller*, supra, 5C Fed. Prac. & Proc. Civ. § 1388; *Chen,* supra*.,* No. 10-80236-CIV, 2011 WL 1085646, at *2; *Barfoot,* supra, Case No. 15-24662-CIV-ALTONAGA/O'Sullivan.

## VII.   The Preliminary Injunction Claims are proper.

37

Fed. R. Civ. P. 8(e) provides that "[p]leadings must be construed so as to do justice." The FAC contains two separate, non-duplicative injunction claims, which seek distinct remedies. Count I is aimed at the original misconduct by enjoining Defendants from the selling of clones without authorization, while Count XIX seeks to enjoin the removal of the clones from the jurisdiction of this Court to avoid the spoliation by removal of relevant evidence. The latter has already happened. See *Affidavit of Taryn Hartnett*, attached as **Exhibit 6,** records of the Florida Department of Consumer Affairs confirming the three (3) Cuartetera clones were removed from Wellington, Florida on December 22, 2020, which is *after* Plaintiffs filed the within action and also *after* Defendants filed their NDTX action.[16] Di Caro Aff.

The Court is conducting the hearing on the TRO on January 29, 2021 and so Counts I and XIX stand essentially as motions for that temporary relief, as well as requests for time. Thus those claims put Defendants on notice of their exposure. Finally, redundancy alone is not a basis for dismissal under Rule 12(b)(6). See *Kenneth F. Hackett & Assocs., Inc. v. GE Cap. Info.Tech. Solutions, Inc.,* 744 F.Supp.2d 1305, 1310 (S.D.Fla.2010) (Altonaga, J.). Nor does mere redundancy require the Court to strike a claim. See *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D.Fla.2002) ("District courts have broad discretion in disposing of motions to strike under Fed.R.Civ.P. 12(f).").

## VIII.   The Fraudulent Inducement Claim is not time-barred.

Defendants do not state which claims they purport to be time-barred, but from their statutory citations, it appears they argue a 4 year statute of limitations period. Without more particularly detail, Plaintiffs are left guessing what portion of the FAC Defendants claim is time-barred. Further, the Affidavits, as well as Meeker's own admissions, are clear that the misconduct regarding the cloning by Plaintiffs, whether under the 2009 or 2019 Agreements, only started to occur in the last 3 years. Therefore, Plaintiffs' claims are timely against a four year period of limitations. Further, to the extent discovery later reveals that Defendants fraudulently concealed earlier misconduct (such as prior

---

[16] The Eleventh Circuit has instructed that a district court may consider extrinsic evidence in ruling on a motion to dismiss "if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd.,* 600 F.3d at 1337; see also *Brown v. Brock*, 169 F. App'x 579, 582 (11th Cir. 2006).

production and sale of clones without authorization), then Plaintiffs' claims on such concealed conduct would be permissible.   The Eleventh Circuit has explained that "[f]raudulent concealment requires the defendants to engage in the willful concealment of the cause of action using fraudulent means to achieve that concealment." *Raie v. Cheminova, Inc.,* 336 F.3d 1278, 1282 n.1 (11 Cir. 2003) (citing *Berisford,* 667 So. 2d at 811); see also *Nardone v. Reynolds*, 333 So. 2d 25, 39 (Fla. 1976) ("the statute of limitations will be tolled when it can be shown that fraud has been perpetrated on the injured party sufficient to place him in ignorance of his right to a cause of action or to prevent him for discovering his injury."), modified on other grounds, *Tanner v. Hertog,* 618 So. 2d 177 (Fla. 1993).

**IX.    Plaintiffs adequately state a claim for breach of fiduciary duty.**

In the FAC, Plaintiffs have pled Defendants enjoyed a superior position to Plaintiffs during the negotiation and performance of the Agreements as experts in field of equine genetic cloning, and as business partners with Plaintiffs.  [DE 22 ¶¶ 176-177, 254].  Further, the Affidavits of Mr. Cambiaso and Mr. Gutierrez EXHIBITS clearly demonstrate that Mr. Meeker enjoyed a special relationship with Plaintiffs, wherein Plaintiffs reposed great trust and confidence in Mr. Meeker, who specifically agreed to that relationship.

Plaintiffs further plead that "Meeker and Crestview specifically solicited that special relationship and all Defendants have benefitted from their superior position in that relationship, while Plaintiffs relied upon Defendants to act on Plaintiffs' behalf and to look out for Plaintiffs' best interests in the discharge of the Defendants' roles in the cloning initiative and the protection of Plaintiffs' unique and successful polo bloodlines.  The Defendants thus had a fiduciary relationship with Plaintiffs."  A fiduciary relationship and concomitant duties of the highest loyalty have thus been adequately stated by Plaintiffs. See, e.g.:  *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002) ("A fiduciary relationship may be implied by law, and such relationships are 'premised upon the specific factual situation surrounding the transaction and the relationship of the parties.'") [quoting *Capital Bank v. MVB,* Inc., 644 So. 2d 515, 518 (Fla. 3d DCA 1994)].  See also Florida Contract and Business Jury Instructions 451.1 through 451.5.  The claim is thus adequately pled.

**X.    Plaintiffs adequately state a claim for equitable accounting.**

A fiduciary relationship having been established, then as Defendants concede, Plaintiffs are entitled to an accounting.  Further, as the Court can appreciate, and as Defendants again concede, this was a very complex series of transactions and relationships. Under the circumstances of the special relationship created therein, Defendants are the only parties with the laboratory and clone sales records.   Further, Plaintiffs have plead the existence of irreparable harm, which is not, by its nature, compensable at law. [DE 22 ¶¶ 6, 7, 9, 89, 90, 110-113, 118, 180, 183, 216, 232, 248, 272, 286 and 303].

"Under Florida law, a party seeking an equitable accounting must show the existence of a fiduciary relationship or a complex transaction and must demonstrate that the remedy at law is inadequate." *Kee v. Nat'l Reserve Life Ins. Co.,* 918 F.2d 1538, 1540 (11th Cir. 1990) (citing, e.g., F.*A. Chastain Constr., Inc. v. Pratt,* 146 So. 2d 910, 913 (Fla. 3d DCA 1962)).   Here, Plaintiffs have sufficiently alleged that they had a fiduciary relationship with Defendants, that the transactions at issue are complex, and that Plaintiffs' legal remedy is inadequate, given the irreparable harm.

## XI.   The spoliation claim is stated sufficiently, and spoliation has occurred.

In Florida under Civil Jury Instruction 301.11, Plaintiffs are entitled to an adverse inference instruction when evidence has gone missing and Defendants had a duty to maintain or preserve the evidence, when the court has determined that there was a duty to maintain or preserve the missing evidence at issue and the party invoking the presumption has established to the satisfaction of the court that the absence of the missing evidence hinders the other party's ability to establish its claim or defense. See *Pub. Health Tr. of Dade Cty. v. Valcin*, 507 So.2d 596 (Fla.1987).  By its nature, then, a claim of spoliation is a cause of action, for which the remedy is an adverse inference instruction at Jury trial. Plaintiffs have pled the missing three (3) Cuatertara clones, and recent public records reveal the three clones are now outside of Florida.  See **Exhibit 6,** *Affidavit of Taryn Hartnett***.** In Florida, a duty to preserve evidence can arise "when a party should reasonably foresee litigation." *League of Women Voters v. Detzner,* 172 So. 3d 363 (Fla. 2015) (citing *Am. Hospitality Mgmt. Co. of Minn. v. Hettiger,* 904 So. 2d 547, 549 (Fla. 4th DCA 2005).  Given that the clones were sampled for EIA testing after the NDTX and this lawsuit were commenced, there is no doubt Defendants reasonably anticipated litigation.

Finally, the reluctance of Defendants to answer the charge and provide the requested information, instead running to the courthouse in the midst of settlement discussions (see DiCaro Affidavit from the removed Tarrant County, Texas case, now removed to the NDTX, attached hereto as **Exhibit 11**), leads to the Query: *What are Defendants afraid to show Plaintiffs and the Court?* In any event, Plaintiffs' cause is adequately stated.

For the aforesaid reasons and evidence, Plaintiffs respectfully request the Court deny Defendants' Motion to Dismiss.

Respectfully submitted,

CHAPMAN LAW GROUP, PLC,

*Avery S. Chapman*

Avery S. Chapman, Esq.
FL Bar No. 517321
12008 South Shore Blvd.
Suite 105
Wellington, Florida 33414
Tel. 561.753.5996
Facsimile 561.828.2852
asc@chapmanlawgroup.net
grg@chapmanlawgroup.net
teh@chapmanlawgroup.net

*Attorneys for La Dolfina, S.A. LLC*
*and Adolfo Cambiaso*

**<u>Certificate of Service</u>**

I HEREBY CERTIFY that on the date appearing on the first page of this document, I electronically filed the foregoing with the document with the Clerk of the Court using the CM/ECF filing system, which will then serve all counsel of record or pro se parties on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

CHAPMAN LAW GROUP, PLC

*Avery S. Chapman*
Avery S. Chapman, Esq.

**Service List**
La Dolfina, S.A., LLC, et al. v. D. Alan Meeker, et al.
CASE NO. 9:20-cv-82231-AMC/DLB

Gary A. Woodfield, Esq.
Haile, Shaw & Pfaffenberger, P.A.
660 U.S. Highway One
Third Floor
North Palm Beach, FL 33408
561-627-8100
Fax: 561-622-7603
Email: gwoodfield@haileshaw.com
*Counsel for Defendant Crestview Farm LLC*

*Counsel for D. Alan Meeker, individually, also known as Alan Meeker also known as David Alan Meeker*

Ryan Dwight O'Quinn, Esq.
DLA Piper LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131
305-423-8553
Fax: 305-675-0807
Email: ryan.oquinn@dlapiper.com
*Counsel for Defendant Crestview Genetics LLC*