# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO.: 9:20-cv-82231-AMC

LA DOLFINA S.A. LLC, a Florida limited liability
company, and
ADOLFO CAMBIASO, individually,

    Plaintiffs,

v.

D. ALAN MEEKER, individually,
a/k/a ALAN MEEKER or DAVID ALAN
MEEKER,
CRESTVIEW FARM, LLC, a Texas limited
liability company, and
CRESTVIEW GENETICS, LLC, a Nevada limited
liability company,

    Defendants.

## AFFIDAVIT OF JULIO ERNESTO GUTIERREZ CONTE

I, Julio Ernesto Gutierrez Conte, being of full age and otherwise sui generis, hereby state the following:

1. Unless otherwise stated herein, I make this Affidavit based upon facts of which I have personal knowledge.

2. I reside in Isla Colon, Bocas del Toro, Panama and I am known informally as Ernesto Gutierrez.

3. I am an Argentinian businessman and during the past 30 years I have founded and built several companies, being shareholder and manager.

1

4. Those companies were dedicated to international logistics (such as Depositos Fiscales SA, Express SA, Terminal Puerto de Buenos Aires SA, and Zona Franca La Plata SA); agriculture and cattle (such as Labaca SA, La Hayde SA, United Agro SA, Cabania Don Panos SA, ARG Natural Beef SA, and United Bio Diesel SA). During the last years I have founded and managed, American International Airports and Airports Argentina 2000 SA, a holding company dedicated to the administration, operation and development of airports. Currently it operates more than 50 airports worldwide (Argentina, Uruguay, Peru, Brazil, Italy, Armenia, etc.) with global income of more than $2 billion US and movement of more than 100 million passengers. I have also been President of the Cámara Argentina de Depositos Fiscales, President, of the Federation of Foreign Trade Service Operators (FOCEX), Director of the Chamber of Commerce of the Argentine Republic, President of ACI (Airport International Council) that concentrates 95% of all airports in the world and President of the Private Sector of the Americas, an entity dependent on the Organization of American States (OAS).

5. Currently I run a family business dedicated to real estate, digital technology, biotechnology, cattle, polo horse breeding, retail, mining, hospitality and investments.

6. For more than 30 years, I have also been dedicated to animal reproduction topics, starting with artificial insemination, embryonic transfer and finally cloning. With the team of scientists we had working at Cabania Don Panos we achieved in 2003 the first cloning of Brangus breed cattle. That lead to our interest in cloning horses.

7. I am a polo player, horse breeder and enthusiast who is interested in the development of polo horse bloodlines. I have known Mr. Cambiaso for many years.

8. Mr. Cambiaso asked for my opinion in 2009 about a proposal that Mr. Alan Meeker had sent him.

9. That proposal was about the possibility of cloning a horse. I remember that we had a meeting with Mr. Meeker, and a representative of the Viagen firm for the purpose of exchanging information on cloning.

10. After that meeting, I remember that in La Dolfina´s facilities, in the city of Cañuelas, Buenos Aires Province, Argentina, some tissue samples were taken ( in order to try to clone ) various horses owned by Mr. Cambiaso and Dolfina SA.

11. These tissue and DNA samples were obtained from Mr. Cambiaso and La Dolfina's horses sometime in 2009.

12. From that moment, I began my contact with both Mr. Cambiaso and Mr. Meeker which led to the formation of "Crestview Genetics SRL" in Argentina to develop a cloning company to clone other parties' horses as well as to produce a select and limited number of clones of Cambiaso and La Dolfina horses, which were not intended for sale to the public.

13. Mr. Cambiaso and I discussed and agreed that he and La Dolfina should not lose control of the clones and they were sold outright, which would dilute La Dolfina and Mr. Cambiaso's carefully developed and prized bloodlines.  Mr. Meeker agreed with us and had admitted to me and Mr. Cambiaso repeatedly that selling the clones especially prized La Dolfina clones is a bad business idea and Mr. Meeker further stated to Mr. Cambiaso and myself that Mr. Meeker never intended to sell such clones into the public market.

14. Relying on Mr. Meeker's statements to me that Mr. Meeker would not sell clones to the public of Cambiaso and La Dolfina horses,  I began to negotiate with Mr. Meeker and Mr. Cambiaso to build a cloning facility in Argentina to provide cloning services to third parties and to also provide the ownership of any created clones to that New Company we were forming.

15. That agreement was reached while the International Polo Club Tournament (IPC) was taking place in Wellington, Palm Beach County, Florida on February/March 2011 at the IPC facility. So we created CRESTVIEW GENETICS ARGENTINA SRL.

16. The agreement between Mr. Cambiaso, Mr. Meeker and myself was to maintain ownership of the clones produced (all were transferred to CRESTVIEW GENETICS ARGENTINA S.R.L.) and the provision of cloning services to third parties.

17. The contributions of partners Mr. Meeker and Mr. Cambiaso were, to my understanding, based on a prior 2009 agreement between them which allowed, one of Mr. Meeker's companies or himself, very limited conditions for sampling for cloning, but not for sale, of Mr. Cambiaso or La Dolfina's famous polo horses: "CUARTETERA", "LAPA", "SMALL PERSON", "AIKEN CURA" and "COLIBRI". By the time we were organizing Crestview Genetics Argentina SRL, those horses were already cloned and were intended by all the parties for use by Mr. Cambiaso and La Dolfina.

18. None of the parties, including Mr. Meeker, intended nor took the position then that the 2009 Agreement clones were owned by Mr. Meeker or any of his companies, or that Mr. Meeker or any of his companies had the unlimited right to produce or to sell clones from those horses.

19. My contribution to the Argentina venture was to pay Mr. Meeker 50% of the costs he had incurred for the production of the remaining clones and embryos, plus 50% of Mr. Meeker's payment to Mr. Cambiaso in the agreement signed between them prior. I made this payment based on this meeting and discussion in Wellington by wire transfer. Mr. Meeker accepted the payments with no disagreement. **Attachment 1.**

20. We all intended everything concerning the prior 2009 agreement between Mr. Meeker and Mr. Cambiaso to be terminated by my payment to Mr. Meeker and formation of the Argentine SRL entity, which would take up the cloning business. I paid $1,533,000 to Mr. Meeker in exchange for his agreement to terminate that 2009 Agreement and instead start the SRL business with me. My understanding that part of this money was to reimburse Mr. Meeker for any money he paid Mr. Cambiaso or La Dolfina for genetic samples of their polo horses. Mr. Meeker accepted the payment from me under these terms without complaint, reservation or objection.

21. As a business model, the three partners to the SRL all agreed on the conceptual unviability of selling a clone as the basis of our business dealings. We use to say that "we have to be careful not to kill the goose that lays the golden eggs".

22. Beyond the aforementioned, to my contribution it was added an investment to equipment in the new laboratory and the transfer to CRESTVIEW GENETICS ARGENTINA SRL, the cloning protocol that was my property.

23. CRESTVIEW GENETICS ARGENTINA SRL worked until 2019, when we all decided to disband the company.

24. I find it surprising Mr. Meeker's sale of three clones of "Cuartetera", because he had only been given, under the various agreements, a very limited custody of cells and/or clone embryos of Mr. Cambiaso and La Dolfina horses. Mr. Meeker never received ownership rights in any of the underlying, original horses, nor in their clones.

25. It was clear to all of us after the experience of Cuartetera clone B002 auction that the business direction had changed, and the Mr. Cambiaso and Mr. Meeker abandoned their

5

business model of cloning horses for sale to the market. Instead, we focused on providing cloning services to other parties who may have been interested in cloning their own blood lines.

26. I am aware from the minute records of Crestview Genetics SRL that it was always the intent of the parties to keep out of the public domain the specific genetic material of these clones. **Attachment 2.-**

27. Because of our discussions in Wellington, Palm Beach County, Florida and my reimbursement of the money paid to Mr. Meeker, I am shocked that Mr. Meeker is now asserting that he has a right to sell La Dolfina clones and has actually sold three Cuartetera clones. This behavior is completely contrary to Mr. Meeker's many statements and affirmations that selling clones of the La Dolfina and Cambiaso bloodlines was a terrible idea.

28. It was clear to me that based on our meetings and my payment to Mr. Meeker of $1,533,000 that the idea of developing and marketing La Dolfina or Cambiaso horse clones to the public was not supported by Mr. Meeker. Mr. Meeker did not ever say to me after my $1,533,000 payment that Mr. Meeker had a right to, or that he intended to sell clones of Mr. Cambiaso or La Dolfina horses for Mr. Meeker's personal benefit.

29. Mr. Meeker also received for his own profit the first money income of CRESTVIEW GENETICS ARGENTINA SRL, that was a $250.000 payment from a third party, Mr. Matar Al Dhaheri, for the cloning of his horse "Sharif." I now understand Mr. Matar, though a U.A.E. entity, is claimed to be a member of Mr. Meeker's Crestview Genetics, LLC.

30. Recognizing the agreement and trust and friendship at the time between myself, Mr. Cambiaso and Mr. Meeker that had been generated between the three of us, when we met in June 27, 2017, we nominated Mr. Cambiaso and his son "Poroto" as the only professional players that may play any horse owned by CRESTVIEW GENETICS ARGENTINA SRL.

6

31. From that agreement in 2017, Mr. Meeker again acknowledged to me and Mr. Cambiaso that he would protect the Cambiaso and La Dolfina's horses, protect those clone genetics and would not sell the clones. He also agreed again that only with our collective approval could he modify the concept and agreement of not selling these clones. **See Attachment 2.**

32. Mr. Meeker is a feature in the polo scene at Wellington, Florida and the International Polo Club there. I now Mr. Meeker was there during the season and many other seasons. For 10 years between 2010 and 2020, at least once every season, Mr. Meeker met with me or Mr. Cambiaso in Wellington to discuss the cloning business of Crestview Argentina SRL, and his interests involving Mr. Cambiaso and myself . At these meetings, we discussed cloning and breeding and Mr. Meeker's interest in the Argentinian business with me and Mr. Cambiaso, as well as the Cuartetera clones that Mr. Cambiaso was paying for under the 2019 agreement.

33. What is remarkable is that never once in that decade of meetings during the Florida polo seasons did Mr. Meeker state that he believed that the 2009 Agreement was in effect, or that he had a right to clone and sell La Dolfina clones to competitors as he has done with the clones sold to the Park Place team or those other clones he tried to sell to the La Natividad team of Mr. Castagnola.

34. Mr. Cambiaso and I relied on and believed Mr. Meeker's initial and continuous statements those years that selling Cambiaso or La Dolfina horse clones was not intended to be the business model amongst all of us. I am aware Mr. Meeker made similar statements to the global media, which I relied on because they were consistent with his private statements to me. Never once did he state that Crestview Farms had any rights or licenses to sell Cuartetera clones.

35. Mr. Meeker was in Florida extensively during each polo season. He kept a home there, moved horses there, discussed his cloning business there, and reached an agreement in Wellington for me to repay $1,150,000 to him on behalf of Mr. Cambiaso as we launched CRESTVIEW GENETICS ARGENTINA SRL. To suggest that Mr. Meeker was a stranger to Florida or had no contact with the state of Florida is completely untrue.

Pursuant to 28 U.S.C. § 1746 I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Julio Ernesto Gutierrez Conte

Date: January 21, 2021

# ATTACHMENT 1

**From:** Gutierrez Ernesto [mailto:EGutierrez@aa2000.com.ar]
**Sent:** Monday, March 14, 2011 8:20 AM
**To:** Alan Meeker
**Subject:**

Dear Alan,

Sory about the delay , but you was a visionary. I start a world war againt my wife.
As we spoke days ago, I agree in the final cost of production for the clones in U$D 2.150.000.-

About the payment of the due balance,

| | |
|---|---|
| Cash | U$D 550.000.- |
| 60 days | U$D 250.000.- |
| 120 days | U$D 200.000.- |

During the first two years, you take 100% of the total net income for Crestview Arg. operations. (I agree on Adolfito´s Portion).
In case this doesn't pay your favor for U$D 1.150.000.-, I will take care for the difference. Its important for you to know that I'm willing to guarantee at all times, the total amount by means of any instrument you should consider convenient.

I 've already paid off the start up costs for around U$D 400.000.- I will be supporting these too, by myself.

If you are on board with this propousal, we must find the best way to do it.

Abrazos
Ernesto

# ATTACHMENT 2



*Sellado en Blanco*



```
                    SAM 2000
                    Arba
            Agencia de Recaudación B.A.
                    Tasas
                  Administrativas
            BANCO DE LA PCIA. DE BUENOS AIRES
Sucursal:    4019
Fecha: 04/11/2011   Terminal:00000954
Cajero: 00034745    Hora:       15:36
Transaccion Online: Trans.:  00026731
                              00000000
Ident. Doc.:         DNI 1
Tipo Operación:      01
Fecha Operacion:     04/11/2011
Nro.Control:         *058 - 000455

TOTAL A PAGAR    :           15,00
FORMA PAGO       :         Efectivo
*************************************
* LA PRESENTE INTERVENCION          *
* ES LA UNICA CONSTANCIA            *
* DE PAGO VALIDA-                   *
*************************************
VERSION:0001.0001.0274
T:0007 F:C:008
```

**Dirección Provincial de Personas Jurídicas**   Ministerio de **Justicia** — **Buenos Aires LA PROVINCIA**

| | |
|---|---|
| **MATRICULA:** 105477 | **LEGAJO:** 185413 |
| **ENTIDAD:** CRESTVIEW GENETICS ARGENTINA S.R.L. | |
| **DOMICILIO:** Calle: 48 | **Nro.:** 877 |
| Piso: 1   Dto.: 108   Medio:   C.P.: | |
| **PARTIDO:** LA PLATA - LA PLATA | |

**LIBRO:** ACTAS DE REUNION DE SOCIOS Nº 1 (UNO)
**FOLIOS:** CIEN (100)
**OBSERVACIONES:**

**DEPARTAMENTO RUBRICA DE LIBROS:** LA PLATA, MIÉRCOLES 9 DE NOVIEMBRE DE 2011

Operador: ABAGAGLI - Fecha: 10/11/2011



Notaria Mónica Alcira RIVERO
Directora de Registro
Direc. Pcial. de Pers. Jurid.

Escaneado con CamScanner

### ACTA DE REUNION DE SOCIOS N° 8:

En la ciudad de La Plata, a los 29 días del mes de junio de 2017, siendo las 10 horas se reúnen los socios de Crestview Genetics Argentina SRL, en su sede social de Calle 48 n° 877, piso 1 oficina 108. En uso de la palabra el Gerente General Fermín Gutierrez Conte, expone que ha convocado a la reunión para el tratamiento de los siguientes puntos: "Consideración acerca del otorgamiento de uso profesional exclusivo e irrevocable de equinos clones, cuya propiedad se encuentre en un todo o en parte en cabeza de "Crestview Genetics Argentina S.R.L.", y cuya genética provenga de "La Dolfina S.A." y/o del Sr. Adolfo Cambiaso; a este último y a Adolfo Cambiaso (h) (DNI 46.960.812). Asimismo deberá considerarse la obligatoriedad de contar con la aprobación del Sr. Adolfo Cambiaso para cualquier operación de venta total y/o parcial de clones cuya sangre provenga de "La Dolfina S.A." y/o del nombrado. Toma la palabra el Sr. Federico Farina en su calidad de apoderado del socio Adolfo Cambiaso (DNI N° 24.564.301) y expone la necesidad de mantener irrevocablemente en persona de su poderdante y la de su hijo Adolfo Cambiaso (DNI 46.960.812) la exclusividad de uso deportivo profesional de todos los equinos de propiedad de Crestview Genetics Argentina S.A., cuya sangre provenga de "La Dolfina S.A. y/o del Sr. Cambiaso, ello por cuanto la modificación de ésta condición podría terminar en una depreciación del propio giro de la empresa y del socio. En esa línea, también expone la necesidad de condicionar irrevocablemente a su aprobación personal la venta total y/o parcial de cualquier ejemplar existente o a crearse en un futuro o de cuotas partes de la presente sociedad, por idénticos motivos.

Tras una breve deliberación y por unanimidad los socios resuelven aceptar la moción propuesta por el apoderado del Sr. Cambiaso.

No habiendo más asuntos que tratar se da por finalizada la reunión siendo las 11 horas.

FERMIN GUTIERREZ CONTE
P/SOCIO ERNESTO GUTIERREZ CONTE

Federico Farina
P/SOCIO ADOLFO CAMBIASO

FERMIN GUTIERREZ CONTE
GERENTE

X CV LLC

Escaneado con CamScanner

**TRADUCCIÓN PÚBLICA – PUBLIC TRANSLATION**

(Text written in Spanish without its translation, see original).-------------------------------

(Oval seal) PROVINCIAL BOARD OF LEGAL ENTITIES – Province of Buenos Aires

Provincial Board of Legal Entities --------------------------------------------------------------

Department of Justice ----------------------------------------------------------------------------

(Coat of arms) Buenos Aires – THE PROVINCE ------------------------------------------------

LICENSE: 105477. ---------------------------------------------------------------------------------

FILE: 185413. --------------------------------------------------------------------------------------

ENTITY: "CRESTVIEW GENETICS ARGENTINA S.R.L."------------------------------------

DOMICILE: Street: 48. Number: 877. Floor: 1st. Apartment: 108. --------------------------

DISTRICT: LA PLATA – LA PLATA.----------------------------------------------------------------

MINUTES´ BOOK: MEMBERS´ MEETING NUMBER 1 (ONE).----------------------------

FOLIOS: ONE HUNDRED (100).-----------------------------------------------------------------

DEPARTMENT OF BOOKS SIGNATURES: LA PLATA, WEDNESDAY, NOVEMBER 9TH, 2011. -------------------------------------------------------------------------

Operator: ABAGAGLI – Date: November 10th, 2011. -----------------------------------------

(Oval seal) PROVINCIAL BOARD OF LEGAL ENTITIES – Province of Buenos Aires

(There follows a signed seal) Mónica Alcira RIVERO, Notary Public – Registration Head – Provincial Board of Legal Entities.-----------------------------------

-----------------------------------------------------------------------------------------------------------

**MINUTES OF MEMBERS´ MEETING NUMBER 8:** -------------------------------------

In the city of La Plata, on June 29th, 2017, at 10 o´ clock, "Crestview Genetics Argentina SRL"´s members meet at their headquarters located at Street 48 number

877, 1st floor, office 108. The General Manager Mr. Fermín Gutierrez Conte takes the floor and sets forth that he has called a meeting to deal with the following points on the agenda: "Consideration of the grant of exclusive and irrevocable professional use of equine clones, the property of which is totally or partially under charge of "Crestview Genetics Argentina S.R.L.", and the genetics of which comes from "La Dolfina S.A." and/or Mr. Adolfo Cambiaso; to the latter and to Adolfo Cambiaso (junior) (National Identity Document 46,960,812). Furthermore, the obligation to have Mr. Adolfo Cambiaso´s approval of any operation of total and/or partial sales of clones the blood of which comes from "La Dolfina S.A." and/or the above mentioned must be considered. Mr. Federico Farina takes the floor in his capacity as the proxy of member Adolfo Cambiaso (National Identity Document Number 24,564,301) and sets forth the need to irrevocably retain in the person of his principal and his son, Adolfo Cambiaso (National Identity Document 46,960,812), the exclusive professional sportive use of all the horses which are the property of "Crestview Genetics Argentina S.A.", the blood of which comes from "La Dolfina S.A." and/or Mr. Cambiaso, that is why the modification of such condition might bring about a depreciation of the line of business of the firm and that of his member. Along this line, he sets forth the need to irrevocably condition to his personal approval, the total and/or partial sale of any existing specimen or any to be created in future or sale of any quota shares of this company, for the reasons already set forth. -----------------------------------------------------------------------------------
After a short debate it was unanimously decided by the members to accept the motion set forth by Mr. Cambiaso´s proxy (Mr. Federico Farina).--------------------------

(Ilegible signature) Fermin Gutierrez Conte, on behalf of Ernesto Gutierrez Conte Member. --------------------------------------------------------------------------------------------------

(Ilegible signature) Fermin Gutierrez Conte, Manager.------------------------------------------

(Ilegible signature) Federico Farina, on behalf of Member Adolfo Cambiaso ------------

-----------------------------------------------------------------------------------------------------------------

ES TRADUCCIÓN FIEL AL INGLÉS DEL DOCUMENTO ADJUNTO REDACTADO EN IDIOMA NACIONAL QUE TUVE A LA VISTA Y AL CUAL ME REMITO. ESTA TRADUCCIÓN CONSTA DE 3 PÁGINAS Y HA SIDO FIRMADA POR MARGARITA A. MOSCHETTI, TRADUCTORA PÚBLICA DEL IDIOMA INGLÉS. MAT. TOMO IX – FOLIO 215 – CABA – INSCRIPCIÓN C.T.P.C.B.A. NÚMERO 2358. BUENOS AIRES, 19 DE ENERO DE 2021.-------------------------------

THIS IS A TRUE TRANSLATION INTO ENGLISH OF THE DOCUMENT ATTACHED HERETO WRITTEN IN SPANISH THAT I HAVE HAD BEFORE ME. THIS TRANSLATION CONSISTS OF 3 PAGES AND IT HAS BEEN SIGNED BY MARGARITA A. MOSCHETTI, ENGLISH PUBLIC TRANSLATOR. LICENSE: BOOK IX – FOLIO 215 – CABA – C.T.P.C.B.A. REGISTRATION NUMBER 2358. BUENOS AIRES, JANUARY 19TH, 2021. ---------------------------------------------------------

MOSCHETTI Margarita Ana

Firmado digitalmente por MOSCHETTI Margarita Ana
Fecha: 2021.01.19 16:44:41 -03'00'