**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NOS. 21-81066-CIV-CANNON**
**20-82231-CIV-CANNON/Reinhart**

**CRESTVIEW FARM, L.L.C,**

      Plaintiff,

v.

**ADOLFO CAMBIASO, LA DOLFINA, S.A.,**
**and LA DOLFINA, S.A., LLC,**

      Defendants.

_____ /

**LA DOLFINA S.A., LLC, a Florida**
**Limited liability company, and**
**ADOLFO CAMBIASO, individually,**

      Plaintiffs,

v.

**D. ALAN MEEKER, individually,**
**a/k/a ALAN MEEKER or DAVID**
**ALAN MEEKER, CRESTVIEW**
**FARM, LLC, a Texas Limited Liability**
**Company, and CRESTVIEW**
**GENETICS, LLC, a Nevada limited**
**Liability company,**

      Defendants.

_____ /

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ........................................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 1

PROCEDURAL BACKGROUND ................................................................................................. 3

ARGUMENT ................................................................................................................................. 5

I.       THE AMENDED COMPLAINT FAILS TO STATE A CLAIM .................................... 5

    A.       Legal Standard .................................................................................................... 5

    B.       The SAC Should Be Dismissed for Impermissible Shotgun Pleading ............... 6

    C.       The Parties' Contracts Preclude Plaintiffs' Claims ............................................ 8

        1.       The 2009 Agreement is a valid, enforceable contract ............................ 8

        2.       The Parties' contracts preclude Plaintiffs' federal claims ................... 10

        3.       The Parties' contracts preclude Plaintiffs' state law claims ................ 12

    D.       Plaintiffs Have Failed to State a Claim Under the Lanham Act ........................ 15

        1.       Plaintiffs lack standing to assert the Lanham Act claims ..................... 15

        2.       Plaintiffs have not plausibly pled any protected mark ......................... 16

        3.       Plaintiffs' false advertising claims fail for other reasons .................... 17

        4.       Plaintiffs' false association claims also fail for other reasons ............. 19

        5.       Plaintiffs' False Association – Celebrity Status claim also fails for other reasons ........ 22

        6.       Plaintiffs' False Designation of Origin – Reverse Passing Off claim also fails for other reasons ........ 24

    E.       Plaintiffs Have Failed to State a Claim Under the DTSA ................................. 25

        1.       Only an "owner" has standing to bring suit under the DTSA ............... 25

        2.       Plaintiffs have failed to allege a cognizable secret under the DTSA .... 27

    F.       Plaintiffs' State Law Claims Should Also Be Dismissed ................................. 29

II.      THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION. ......................................... 35

CONCLUSION ............................................................................................................................ 35

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

WEST\295888501.3

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acosta v. Dist. Bd. of Trustees of Miami-Dade Cmty. Coll.*
905 So. 2d 226 (Fla. 3d DCA 2005) ......................................................................... 8, 9

*Adams v. Bell Partners, Inc.*
138 So. 3d 1054 (Fla. 4th DCA 2014) ........................................................................ 14

*Advanced Res. Int'l, Inc. v. Tri-Star Petroleum Co.*
4 F.3d 327 (4th Cir. 1993) .......................................................................................... 22

*Affiliated Hosp. Prod. v. Merdel Game Mfg. Co.*
513 F.2d 1183 (2d Cir. 1975) ..................................................................................... 11

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .................................................................................................... 29

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ...................................................................................................... 5

*Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.*
707 F. App'x 576 (11th Cir. 2017) ....................................................................... 16, 17

*Bodum USA, Inc. v. La Cafetiere, Inc.*
No. 07 C 6302, 2009 WL 804050 (N.D. Ill. Mar. 24, 2009), *aff'd,* 621 F.3d 624
(7th Cir. 2010) ............................................................................................................ 11

*Cairns v. Franklin Mint Co.*
292 F.3d 1139 (9th Cir. 2002) .................................................................................... 22

*Cardenas v. Toyota Motor Corp.*
418 F. Supp. 3d 1090 (S.D. Fla. 2019) ...................................................................... 33

*Chiron v. Isram Wholesale Tours & Travel Ltd.*
519 So. 2d 1102 (Fla. Dist. Ct. App. 1988) ............................................................... 34

*Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*
508 F.3d 641 (11th Cir. 2007) .................................................................................... 24

*Dastar Corp. v. Twentieth Century Fox Film Corp.*
539 U.S. 23 (2003) ...................................................................................................... 24

*Democratic Republic of Congo v. Air Gap Grp., LLC*
No. 12-20607-CIV, 2013 WL 3223688 (S.D. Fla. June 24, 2013) ............................. 31

*Duty Free Americas, Inc. v. Estee Lauder Cos.*
   797 F.3d 1248 (11th Cir. 2015) ..................................................................................5, 6

*Feingold v. Budner*
   No. 08-80539-CIV, 2008 WL 4610031 (S.D. Fla. Oct. 10, 2008) ...............................30

*Giovo v. McDonald*
   791 So. 2d 38 (Fla. 2d DCA 2001) ...............................................................................9

*Gold, Vann & White, P.A. v. Friedenstab*
   831 So. 2d 692 (Fla. 4th DCA 2002) .............................................................................9

*Greenberg v. Miami Children's Hosp. Research Inst., Inc.*
   264 F. Supp. 2d 1064 (S.D. Fla. 2003) .........................................................................15

*Griffin Indus., Inc. v. Irvin*
   496 F.3d 1189 (11th Cir. 2007) ..............................................................................8, 16

*Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*
   910 F.3d 1186 (11th Cir. 2018) ...................................................................................17

*Hopper v. Solvay Pharms., Inc.*
   588 F.3d 1318 (11th Cir. 2009) .....................................................................................7

*IT Strategies Grp., Inc. v. Allday Consulting Grp., LLC*
   CV 13-60014-CIV, 2014 WL 11531625 (S.D. Fla. July 17, 2014) ...........................21

*Jackson v. Robinhood Markets, Inc.*
   No. 21-CV-02304-LB, 2021 WL 2435307 (N.D. Cal. June 15, 2021) ......................23

*John Wiley & Sons, Inc v. DRK Photo*
   882 F.3d 394 (2d Cir. 2018) ........................................................................................26

*Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*
   796 F.3d 576 (6th Cir. 2015) .......................................................................................18

*Landham v. Lewis Galoob Toys, Inc.*
   227 F.3d 619 (6th Cir. 2000) .......................................................................................22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
   572 U.S. 118 (2014) .....................................................................................................15

*Lopez v. ML #3, LLC*
   607 F. Supp. 2d 1310 (N.D. Fla. 2009) .......................................................................35

*LynkUs Commc'ns, Inc. v. WebMD Corp.*
   965 So. 2d 1161 (Fla. 2d DCA 2007) ..........................................................................32

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

*M.C. Dean, Inc. v. City of Miami Beach, Fla.*
    199 F. Supp. 3d 1349 (S.D. Fla. 2016) ......................................................................... 34

*Magluta v. Samples*
    256 F.3d 1282 (11th Cir. 2001) ..................................................................................... 7

*Mandala v. Tire Stickers, LLC*
    829 F. App'x 896 (11th Cir. 2020) ................................................................................ 6

*Martino v. Wal-Mart Stores, Inc.*
    908 So. 2d 342 (Fla. 2005) ........................................................................................... 34

*Moriber v. Dreiling*
    194 So. 3d 369 (Fla. 3d DCA 2016) ............................................................................. 31

*Parker v. Petrovics*
    No. 2:19-CV-00699-RDP, 2020 WL 3972761 (N.D. Ala. July 14, 2020) .................... 26

*Parks LLC v. Tyson Foods, Inc.*
    863 F.3d 220 (3d Cir. 2017) .......................................................................................... 18

*Pearson's Pharm., Inc. v. Express Scripts, Inc.*
    378 F. App'x 934 (11th Cir. 2010) ................................................................................ 9

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.*
    619 F. Supp. 2d 1260 (M.D. Fla. 2009) ....................................................................... 8

*Prima Tek II, L.L.C. v. A-Roo Co.*
    222 F.3d 1372 (Fed. Cir. 2000) .................................................................................... 26

*Roboserve, Ltd. v. Tom's Foods, Inc.*
    940 F.2d 1441 (11th Cir. 1991) .................................................................................... 28

*Rodriguez v. Scott*
    775 F. App'x 599 (11th Cir. 2019) ................................................................................ 6

*Rosa v. Amoco Oil Co.*
    262 F. Supp. 2d 1364 (S.D. Fla. 2003) ........................................................................ 32

*Royal Indem. Co. v. Knott*
    101 Fla. 1495, 136 So. 474 (1931) ............................................................................... 34

*S&W Air Vac Sys., Inc. v. Dep't of Rev.*
    697 So. 2d 1313 (Fla. App. 1997) ................................................................................ 14

*Schlumberger Tech. Corp. v. Swanson*
    959 S.W.2d 171 (Tex. 1997) ......................................................................................... 34

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

*Sentry Data Systems, Inc. v. CVS Health*
    361 F.Supp.3d 1279 (S.D. Fla. 2018) ........................................................ 27

*Serra-Cruz v. Carnival Corp.*
    400 F. Supp. 3d 1364 (S.D. Fla. 2019) ...................................................... 33

*SIG, Inc. v. AT & T Digital Life, Inc.*
    971 F. Supp. 2d 1178 (S.D. Fla. 2013) ........................................................ 7

*Suntree Techs., Inc. v. Ecosense Int'l*
    802 F. Supp. 2d 1273 (M.D. Fla. 2011) ...................................................... 24

*Tana v. Dantanna's*
    611 F.3d 767 (11th Cir. 2010) ............................................................. 21, 22

*Tartell v. S. Fla. Sinus & Allergy Ctr., Inc.*
    790 F.3d 1253 (11th Cir. 2015) ................................................................ 21

*Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.*
    850 So. 2d 536 (Fla. 5th DCA 2003) .................................................... 31, 34

*Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*
    300 S.W.3d 348 (Tex. App.—Dallas 2009, pet. denied) ............................ 14

*Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*
    915 F. Supp. 360 (S.D. Fla. 1996), *aff'd sub nom. Tire Kingdom v. Morgan Tire*
    *& Auto*, 136 F.3d 139 (11th Cir. 1998) ................................................ 17, 18

*TracFone Wireless, Inc. v. Hernandez*
    196 F. Supp. 3d 1289 (S.D. Fla. 2016) ...................................................... 14

*Trevino v. Ortega*
    969 S.W.2d 950 (Tex. 1998) .................................................................... 34

*Tropic Ocean Airways, Inc. v. Floyd*
    598 F. App'x 608 (11th Cir. 2014) ........................................................... 21

*Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*
    683 F.3d 1266 (11th Cir. 2012) ................................................................ 22

*Waits v. Frito-Lay, Inc.*
    978 F.2d 1093 (9th Cir. 1992) .................................................................. 22

*Webster v. Dean Guitars*
    955 F.3d 1270 (11th Cir. 2020) .......................................................... 19, 20

*Weiland v. Palm Beach Cty. Sheriff's Office*
    792 F.3d 1313 (11th Cir. 2015) .................................................................. 8

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

*Yeyille v. Miami Dade Cnty. Pub. Schs.*
   643 F. App'x 882 (11th Cir. 2016)...........................................................................6, 7

**STATUTES**

15 U.S.C. § 1125 .....................................................................................................16

15 U.S.C. § 1125(a) .................................................................................................15

15 U.S.C. § 1125(a)(1)(A) .................................................................................15, 19

15 U.S.C. § 1125(a)(1)(B) .......................................................................................17

18 U.S.C. § 1836(a) .................................................................................................27

18 U.S.C. § 1836(b)(1) .....................................................................................25, 26

18 U.S.C. §§ 1836(b)(1), 1839(4) ..........................................................................26

18 U.S.C. § 1839(3) ...........................................................................................27, 28

28 U.S.C. § 1367(c)(3) .............................................................................................35

35 U.S.C. § 281 .......................................................................................................26

Claim Under the Lanham Act ...................................................................................15

Copyright Act ...........................................................................................................26

Defend Trade Secrets Act ..........................................................................................1

Federal Lanham Act .................................................................................................13

Fla. Stat. § 95.11(3)(a), (j), (l) & (p) .......................................................................30

Florida Uniform Trade Secrets Act ..........................................................................34

Lanham Act § 43(a) ..................................................................................................22

Patent Act .................................................................................................................26

Tex. Civ. Prac. & Rem. Code § 16.004 ....................................................................30

**OTHER AUTHORITIES**

8 Am. Jur. 2d Bailments § 28 ...................................................................................14

Black's Law Dictionary 669 (8th ed. 2005) ............................................................27

Fed. R. Civ. P. 12(b)(1) ..............................................................................................1

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Federal Rule of Civil Procedure 9(b)'s ..................................................................................... 6, 7

MEGAN L. TOWNSLEY, *Is There Any Body Out There? A Call for A New Body of Law to Protect Individual Ownership Interests in Tissue Samples Used in Medical Research*, 54 WASHBURN L.J. 683, 704 (2015) ........................................................................... 27

Rule 8 ...................................................................................................................................... 1

Rule 9(b) ............................................................................................................................ 7, 33

Rule 12(b)(6) ..................................................................................................................... 5, 29

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(6), Crestview Genetics, LLC ("**Genetics**"), Crestview Farm, LLC ("**Farm**"), and David Alan Meeker ("**Mr. Meeker**," and together with Genetics and Farm, the "**Crestview Defendants**") file this motion to dismiss the Second Amended Complaint ("**SAC**") of La Dolfina S.A., LLC ("**La Dolfina Sub**")[1] and Adolfo Cambiaso ("**Mr. Cambiaso**").

## INTRODUCTION

Plaintiffs fail to state a claim upon which relief can be granted. The SAC alleges only rambling, conclusory statements collectively against all three Crestview Defendants. This fails to meet Rule 8's plausibility and "short and plain statement" standards and constitutes impermissible "shotgun pleading." Further, Plaintiffs' federal claims under the Lanham Act and the Defend Trade Secrets Act (DTSA) fail because, among other things, they do not adequately allege any false or misleading statement and do not, as a matter of law, allege any protected mark or trade secret. Moreover, Plaintiffs' federal (and certain state law) claims are foreclosed by Plaintiffs' own contractual agreements. Without these legally invalid federal claims, dismissal of Plaintiffs' lawsuit as a whole is warranted.

Further, Plaintiffs' state law claims cannot survive for another reason. Plaintiffs allege invalid legal theories and otherwise fail to plausibly plead their claims. Several of Plaintiffs' "claims" are not claims at all but remedies or just general legal theories. Accordingly, the Court should dismiss Plaintiffs' SAC or, in the alternative, dismiss each of those claims that are deficient.

## FACTUAL BACKGROUND

This matter involves two horse cloning and breeding businesses and their multi-decade misfortune of attempting to do business with Adolfo Cambiaso.

---

[1] References to non-party La Dolfina S.A. or La Dolfina refer to La Dolfina Sub's alleged parent, which allegedly "assigned" its interest in the claims at issue in this litigation to La Dolfina Sub.

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

**The 2009 Agreement.** In 2009, Farm and Mr. Cambiaso entered into a Horse Cloning Agreement (the "**2009 Agreement**") that gave Farm the complete and exclusive license to the horses and the right to clone such horses, which Mr. Cambiaso represented he personally owned, in exchange for $1,000,000 and four cloned foals. (*See* SAC Ex. 1.) The 2009 Agreement (1) represents that Mr. Cambiaso "is the owner of certain mares" whose tissue Farm was to clone; (2) "grant[ed] [Farm] complete and exclusive licensing rights in and to the mare[s] and all cloned foals"; and (3) granted Farm the right to "identify the name of the original animal and [Mr. Cambiaso] to potential purchasers[,]" even before a "mutually acceptable" endorsement program was developed. (*Id.*) Mr. Cambiaso's unambiguous representations about his ownership now appear to have been false. He now argues that he did *not* personally own one or some of the horses; instead certain of the horses were surreptitiously registered in the name of his Argentinian polo business, La Dolfina S.A.. (*see, e.g.*, ECF Doc. No. 134 ¶ 54, 63, 106.) Mr. Cambiaso also registered another horse in the name of La Dolfina S.A., even though a third party owns it. (*See* SAC Ex. 11 ¶¶ 8–20.) The Crestview Defendants are still working to unravel all of Mr. Cambiaso's misrepresentations, breaches of the 2009 Agreement, and additional bad acts described below.

**The Genetics SRL Venture.** Subsequent to the 2009 Agreement, Farm assigned the right to possess certain clones to Genetics—a different business venture with different ownership—while retaining all unassigned clones and related rights. (*See* SAC ¶¶ 17, 74, 76, & 78.) In 2011, Genetics, Mr. Cambiaso, and a third party in Argentina entered a separate business called Crestview Genetics Argentina, S.R.L. related to cloning and breeding. (SAC ¶¶ 6, 8, & 13.) Nonetheless, Mr. Cambiaso himself or through La Dolfina bred numerous horses in Argentina using clones or horses that neither he nor La Dolfina had any right to breed.

**The 2019 Agreement.** Mr. Cambiaso's surreptitious activities have been difficult to untangle. In an attempt to clear up some of the issues, Mr. Cambiaso, La Dolfina S.A., and Genetics executed

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

a letter agreement in 2019 (the "**2019 Agreement**"). (SAC ¶ 14.) Farm was not a party to this agreement either. The 2019 Agreement, among other things, provides Genetics with rights to a yearly set of foals. The 2019 Agreement also recognizes Genetics' ownership of the clone Storm Cat 02, subject to a license agreement with a third party that was expressly made an exhibit to the 2019 Agreement (and Cambiaso initialed each page of that exhibit). (*See* SAC Ex. 4.)

**The Purchase and Sale Agreement.** In 2020, Farm informed Mr. Cambiaso of a purchaser and a pending sale for Cuartetera clones developed under the 2009 Agreement. Mr. Cambiaso nonetheless claims that Farm has no rights under the 2009 Agreement. While Mr. Cambiaso pleads allegations regarding a "Secret Cloning Agreement," his own SAC admits that the relevant November 9, 2020 Horse Purchase and Sale Agreement (the "**Horse PSA**") was not a secret, and Farm informed Plaintiffs of the sale of three Cuartetera clones under the 2009 Agreement before litigation commenced. (SAC Ex. 17 at p. 1.) The Horse PSA is attached to the SAC as Exhibit 5.

**Plaintiffs' Breaches and the Ensuing Litigation.** Mr. Cambiaso and La Dolfina failed to honor the 2009 Agreement and 2019 Agreement, refusing to recognize the Crestview Defendants' rights under them, and now brazenly mischaracterizing the terms of them in the SAC. Mr. Cambiaso has instead continued to simply take horses, breed them without rights to do so, refuse to provide any of the foals, or do any of the things he promised in the 2019 Agreement. When the Crestview Defendants started to challenge these breaches of the 2019 Agreement, Mr. Cambiaso filed this lawsuit—after Farm had already filed suit in federal court in Texas.

## PROCEDURAL BACKGROUND

Despite the prior pending action in the Northern District of Texas filed by Farm on December 3, 2020, Plaintiffs brought this second-filed action on December 8 based on alleged diversity between the parties. (ECF Doc. No. 1.) The Crestview Defendants promptly filed a Motion to Dismiss for lack of both subject matter and personal jurisdiction. (ECF Doc. No. 18.) The Motion pointed out that no

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

diversity exists between the parties. (*See id.*) After a December 21 hearing, the Court ordered Plaintiffs to respond to the points raised in the Crestview Defendants' Motion by December 24. (ECF Doc. No. 21.)

Instead, among numerous other documents, Plaintiffs filed their First Amended Complaint. The First Amended Complaint abandoned diversity jurisdiction and instead relied on the alleged existence of federal question and supplemental jurisdiction. The Crestview Defendants timely moved to dismiss the First Amended Complaint for lack of personal jurisdiction and for failure to state a claim. (ECF Doc. No. 29 ¶ 6 (setting Jan. 14, 2021 deadline to respond to FAC); (ECF Doc. No. 37 (motion to dismiss FAC filed Jan. 14, 2021).) On June 16, 2021, in an Omnibus Order, the Court denied Plaintiffs' request for injunctive relief, denied the motion to dismiss for lack of personal jurisdiction, and ordered the Crestview Defendants to re-file their 12(b)(6) motion to dismiss for further consideration by the Court. (ECF Doc. No. 81 ¶¶ 1, 11–12.)

On August 11, 2021, Plaintiffs filed the SAC, adding two non-Crestview defendants and two new Lanham Act claims against the Crestview Defendants. (ECF Doc. No. 122.) In total, Plaintiffs have now asserted **twenty-two** different counts across 150 pages of largely repetitive, conclusory, and inscrutable allegations. The Crestview Defendants move to dismiss.

Plaintiffs filed the SAC on August 11, 2021. The SAC is just as inscrutable as Plaintiffs' prior pleading, despite ballooning to 619 paragraphs spanning 150 pages.

The SAC, however, drops Plaintiffs' time-barred fraudulent inducement claim relating to the 2009 Agreement in favor of a different theory aimed at invalidating the 2009 Agreement and predicated on a new document—the so-called 2011 Quota Holder Agreement. (SAC Ex. 2.) However, the Quota Holder Agreement (*i.e.*, the shareholder agreement of Crestview Genetics Argentina S.R.L.) is nothing more than a corporate governance document describing the formation of a new entity. (*See* SAC Ex. 2.) Contrary to Plaintiffs' conclusory allegations, the 2011 Quota Holder

4

Agreement does not mention, let alone "novate," the 2009 Agreement. Nor could it, as Farm is not a party to it. Further, Section 8.13, titled "Outside Activities," expressly permits shareholders to hold similar and even competing business interests. Plaintiffs have also included an Affidavit of Julio Ernesto Gutierrez Conte (SAC Ex. 14)—the third member of the now-defunct Quota Holder Agreement. The Gutierrez "Affidavit" attempts to alter the express, written terms of the 2009 Agreement and the 2011 Quota Holder Agreement, even though the SAC does not allege ambiguity as to any of the operative agreements involved in this case.

The Crestview Defendants now move to dismiss the SAC. Plaintiffs amended their complaint in an effort keep their case alive and added yet more spurious federal claims that are nothing more than their original state claims in disguise. At bottom, Plaintiffs are attempting to evade the express terms of the parties' agreements.

## ARGUMENT

## I.  THE AMENDED COMPLAINT FAILS TO STATE A CLAIM.

### A.  Legal Standard.

In resolving a motion to dismiss under Rule 12(b)(6), a court "accepts the allegations in the complaint as true," unless contradicted by appended exhibits, and construes the allegations "in the light most favorable to the plaintiff." *Duty Free Americas, Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1262 (11th Cir. 2015). A merely conclusory or implausible complaint, however, will not pass muster. Courts afford "no presumption of truth to legal conclusions and recitations of the basic elements of a cause of action." *Id.* (citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007) ("a formulaic recitation of the elements of a cause of action will not do[.]"). Instead, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. … This plausibility standard is met only where the facts alleged enable the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and this

5

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

inference rises "above the speculative level." *Duty Free Americas*, 797 F.3d at 1262 (cleaned up). When a claim rests on allegations of fraud, the plaintiff "must state with particularity the circumstances constituting fraud or mistake." *Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 901–902 (11th Cir. 2020) (holding that Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies to Lanham Act claims).

### B.     The SAC Should Be Dismissed for Impermissible Shotgun Pleading.

Plaintiffs cannot state a claim by attempting to impute the purported acts of one Crestview Defendant to all Crestview Defendants through conclusory allegations of collective misconduct or agency. The Eleventh Circuit has repeatedly condemned "shotgun pleading"—*i.e.*, long and rambling allegations that do not give defendants adequate notice of the claims against them and the grounds upon which each claim rests. *Rodriguez v. Scott*, 775 F. App'x 599, 602 (11th Cir. 2019). This Court should do the same.

The SAC asserts "multiple claims against multiple defendants without specifying which applies to which." *Yeyille v. Miami Dade Cnty. Pub. Schs.*, 643 F. App'x 882, 884 (11th Cir. 2016). The SAC charges all three Crestview Defendants with every count, and it is replete with collective allegations against all Defendants without distinguishing among them. (*See, e.g.*, SAC ¶ 147 ("The Crestview Defendants had and have no intention of honoring those representations or the contractual terms to which Plaintiffs eventually agreed."); *id.* ¶ 268 ("The Crestview Defendants have removed, unauthorized, equine genetic material belonging to Plaintiffs … ."); *id.* ¶ 326 ("Defendants intended to misappropriate the genetic material from select La Dolfina Cuartetera and create and sell unauthorized clones therefrom. Defendants hid this intent from Plaintiffs during the negotiation and execution of the 2019 Side Letter Agreement."); *id.* ¶ 355 ("Under the 2009 and 2019 Agreements, Defendants represented that they possessed and were experienced in the use of advanced

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

biotechnologies in the cloning of horses and Plaintiffs relied upon Defendants and their expertise.").[2])
As a result, the SAC purports to allege breaches of contract and related theories against Defendants
that are not even parties to the underlying agreements. (*E.g.*, Counts IV, V, VI, and VII.) These are
only a few examples.

The Crestview Defendants are distinct legal entities and operate as such. (*E.g.*, SAC ¶¶ 74 &
78 (acknowledging Mr. Meeker is not a member of either Farm or Genetics, and Farm and Genetics
have separate ownership structures).) Shotgun pleading is impermissible, and the SAC should be
dismissed on this basis. *Magluta v. Samples,* 256 F.3d 1282, 1284–85 (11th Cir. 2001) (ordering
district court to strike impermissible shotgun pleading where complaint charged each defendant with
every count and was replete with allegations that "the defendants" engaged in certain conduct, making
no distinction between them). *See also Yeyille,* 643 F. App'x at 884–85.

Shotgun pleading is particularly inappropriate where, as here, Plaintiffs have asserted claims
sounding in fraud or based on alleged fraudulent conduct. (*E.g.,* SAC Count V (fraudulent
inducement), VIII (breach of fiduciary duties), XIII, XIV, XV, and XVI (Lanham Act), XVII (DTSA),
and XXI and XXII (spoliation).) Rule 9(b) requires claims sounding in fraud to be pleaded with
particularity. Such claims must be accompanied by factual allegations setting forth the time, location,
speaker, and substance of the alleged misrepresentations. *Hopper v. Solvay Pharms., Inc.,* 588 F.3d
1318, 1324 (11th Cir. 2009). Thus, for each Defendant, Plaintiffs must plead and describe "the time,
place, or content of any false representations" allegedly made by each such person or such entity's
specific representative. *SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1197–98 (S.D.
Fla. 2013) (dismissing claim for failure to provide specificity and explain how statements were false).
"Group pleading" or "shotgun pleading" cannot satisfy Rule 9(b)'s heightened pleading standard.

---

[2] Indeed, this is a mischaracterization of terms in the contract. The 2009 Agreement merely provides that "Crestview
[Farm] is currently involved in the use of advanced biotechnologies in the cloning or horses," and did not make any
representations as to its skill, expertise, or advanced experience in the field. (SAC Ex. 1, p. 1).

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

*Weiland v. Palm Beach Cty. Sheriff's Office,* 792 F.3d 1313, 1323 & nn. 13–15 (11th Cir. 2015). This is because the complaint must "inform each defendant of the nature of his alleged participation in … [the alleged] fraud." *Pierson v. Orlando Reg'l Healthcare Sys., Inc.,* 619 F. Supp. 2d 1260, 1287 (M.D. Fla. 2009). Because Plaintiffs' pleading lacks "specific allegations with respect to the separate Defendants," it should be dismissed. *Id.*

### C.      The Parties' Contracts Preclude Plaintiffs' Claims.

Plaintiffs' federal and state claims are legally invalid, as shown on the face of the SAC and the appended exhibits, which the Court can consider on a motion to dismiss. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007). The plain terms of the contracts attached here— including the 2009 Agreement—require dismissal of Plaintiffs' claims. *Id.*

### 1.      The 2009 Agreement is a valid, enforceable contract.

Plaintiffs claim, ***eleven years after the fact***, that the 2009 Agreement was void as a matter of law from its inception.[3] Specifically, they argue that the 2009 Agreement failed for lack of definiteness because it allegedly does not include adequate terms regarding (i) a final sales price or terms for the potential sale of any clones pursuant to the Agreement, (ii) the endorsement marketing provision, or (iii) the production of additional "second edition" clones. (SAC ¶ 288).[4] However, contrary to Plaintiffs' assertions, a contract is not void for lack of definiteness so long as it contains certain essential terms. *Acosta v. Dist. Bd. of Trustees of Miami-Dade Cmty. Coll.*, 905 So. 2d 226, 228 (Fla. 3d DCA 2005). The essential terms of any particular contract will "vary widely according

---

[3] Plaintiffs' First Amended Complaint originally claimed that the 2009 Agreement was voidable based on fraudulent inducement. Defendants rightfully pointed out in their motion to dismiss that this claim was time-barred by the statute of limitations. (ECF Doc. No. 87 at 8). Plaintiffs have since dropped these allegations from their SAC.

[4] Plaintiffs additionally claim the 2009 Agreement failed because "Farm never acquired the cloning technology so as to be able to produce the clones." (SAC ¶ 3). Not only have Plaintiffs failed to provide any factual detail regarding this allegation, it is also legally irrelevant to whether the contract was a valid agreement at its inception. Nothing in the 2009 Agreement required Crestview Farm to acquire cloning technology as a condition precedent to the validity or enforceability of the contract. Thus, the alleged failure to "acquire" cloning technology, which is not even a term of the agreement, would not void the contract as Plaintiffs argue.

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

to the nature and complexity of [the] transaction and will be evaluated on a case by case basis." *Id.* Generally, however, the terms of the contract must include the terms specified in the offer to make the contract. *Giovo v. McDonald*, 791 So. 2d 38, 40 (Fla. 2d DCA 2001). Most courts hold that price terms are essential. *See, e.g.*, *Acosta*, 905 So. 2d at 228.

The 2009 Agreement contains sufficiently definite essential terms regarding the duties to be performed and the consideration to be paid by both parties pursuant to the 2009 Agreement. The Agreement states that "in consideration of the payment of Ten Dollars ($10.00) and other good and valuable consideration, including the mutual covenants and agreements set forth herein, the parties hereby agree as follows[.]" (SAC Ex. 1 § 1); *see Gold, Vann & White, P.A. v. Friedenstab*, 831 So. 2d 692, 696 (Fla. 4th DCA 2002) ("A promise, or payment, no matter how slight, can constitute sufficient consideration for a contract.").  One such mutual covenant was the promise by Crestview Farm to pay Adolfo Cambiaso $250,000 per mare for the selection and extraction of genetic material. The selection of these mares was subject to Crestview Farms' "reasonable approval." (ECF Doc. No. 122-1 ¶ 1). This type of consent right is present in innumerable contracts. *See, e.g., Pearson's Pharm., Inc. v. Express Scripts, Inc.*, 378 F. App'x 934, 937 (11th Cir. 2010) (explaining that "[a] contract may provide for one party to exercise substantial discretion" because "businesses are free to negotiate the terms of their contract," and therefore "courts recognize a party may retain discretion because parties are expected to impose obligations and extract benefits that inure to their benefit" (citations omitted)). These terms are definite and set an express price for the transaction.

The terms Plaintiffs identify as lacking sufficient definiteness are either not essential or are sufficiently definite despite Plaintiffs' allegations. Paragraph 1 of the 2009 Agreement binds Cambiaso to grant complete and exclusive licensing rights in the mares and all cloned foals to Crestview Farm, and paragraph 3 permits Crestview Farm to market the name of the original animal from which each clone is derived to potential purchasers. (SAC Ex. 1 §§ 1, 3.) Each of these

9

provisions constitutes a promise by Cambiaso to do something in exchange for Crestview Farm's payment of valuable consideration. (*Id.*)

Further, paragraph 4 of the 2009 Agreement provides that Cambiaso and Crestview would jointly agree at a later date regarding the final sales price and terms of any potential contracts for the sale of clones. (SAC Ex. 1 § 4.) Despite Plaintiffs' contention, this is not the operative price term for this contract. Rather, the operative price term is the $250,000 per mare to be paid by Crestview Farm in exchange for the right to obtain each mare's genetic material. (SAC Ex. 1 § 1.) The final price in any future sale of clones to third parties was subject to a set minimum acceptable price. (SAC Ex. 1 § 4.) The fact that the parties were to agree in good faith on a price for potential *future* sales of clones does not render the agreement void. (*Id.*)

Additionally, paragraph 5 of the 2009 Agreement provides that "[i]f Crestview determines it wishes to clone a 'limited second edition,' Owner and Crestview will mutually so agree." (SAC Ex. 1 § 5). This provision gave Crestview Farm the option to elect to create a "limited second edition" in the future. Such an option is permissible. In any event, this ancillary term cannot invalidate the remainder of the agreement, which is clear, definite, and supported by consideration.

### 2.     The Parties' contracts preclude Plaintiffs' federal claims.

Plaintiffs' federal claims are merely dressed-up contract claims, as each depends upon the enforceability and content of the parties' agreements. Indeed, the core notion of Plaintiffs' DTSA and Lanham Act claims is that Defendants improperly used genetic material and/or names of mares to make and sell cloned foals when "none of the Agreements" grant Defendants the right to do so. (SAC ¶¶ 412, 548.) Rather, Plaintiffs base their purported Lanham and DTSA violations on the notions that (1) Defendants had no contractual right to possess or use the genetic tissue of certain mares (SAC ¶ 519); (2) Defendants used in violation of the contract some unidentified "mark" (presumably, the mares' names) to advertise and sell cloned foals (SAC ¶¶ 410–415); and (3) Defendants implicitly

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

suggested that La Dolfina SA endorsed the sales by using such "mark." (SAC ¶¶ 444–45). But the 2009 Agreement granted those precise rights:

> Owner [Cambiaso] agrees to **allow Crestview to select four mares** from Owner's stock **for the propose of extracting tissue samples for cloning**. … **Owner agrees to, and does hereby, grant Crestview complete and exclusive licensing rights in and to the mares and all cloned foals**. …
>
> **Owner agrees to provide the cryogenically maintained tissue samples of Aiken Currah to Crestview**. … If Aiken Currah is successfully cloned, Owner shall also receive one foal clone of Aiken Currah and **fifty percent (50%) of the net proceeds of all sales of such clones**. …
>
> Owner and Crestview agree to negotiate in good faith to establish a mutually acceptable program for the endorsement and marketing of clones **… . Pending any such agreement Crestview shall be entitled to identify the name of the original animal and Owner to potential purchasers**.
>
> Upon the successfully production of clones, **Owner will use its commercially reasonable best efforts to market the first three clones of each cloned animal for sale** with Owner's client base or others, with a minimum sales price of US$250,000. …

(SAC Ex. 1 §§ 1, 2, 3 & 4 (emphasis added)). In short, the 2009 Agreement refutes each of the conclusory allegations Plaintiffs advance in their belated federal claims.

The 2019 Agreement similarly refutes Plaintiffs' federal claims. The 2019 Agreement granted Crestview Genetics "breeding, cloning, trademark, and licensing rights [as to] each of the [defined set of] Clones." (SAC Ex. 4, p. 3). It further gave Defendants the right to fertilize the genetic material of Clones and implant them to produce "Live Foals." (*Id.* p. 3, § 3.)

A federal claim cannot be used to evade the express terms of a contract. *E.g.*, *Bodum USA, Inc. v. La Cafetiere, Inc.*, No. 07 C 6302, 2009 WL 804050, at *3 (N.D. Ill. Mar. 24, 2009), *aff'd*, 621 F.3d 624 (7th Cir. 2010) ("[A]n activity authorized by contract cannot constitute a 'false designation of origin, false or misleading description of fact, or false or misleading representation of fact,' violative of the Lanham Act." (quoting 15 U.S.C. § 1125(a)(1)); *Affiliated Hosp. Prod. v. Merdel Game Mfg. Co.*, 513 F.2d 1183, 1186 (2d Cir. 1975) (holding under federal trademark law that where

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

an "agreement controls the rights of the respective parties in the use of" the mark, and "[a]bsent grounds for rescission," a claimant "has only the right to compensatory damages for breach of the agreement."). Here, the 2009 and 2019 Agreements, by their express terms, permit Farm and Genetics, respectively, to obtain tissue samples from Cambiaso's horses and to subsequently make clones from that tissue using the names of the mares from which they were cloned. These terms preclude *all* of Plaintiffs' federal claims, and they should be dismissed.

### 3. The Parties' contracts preclude Plaintiffs' state law claims.

Plaintiffs' state law claims are similarly barred based on the express terms of the 2009 and 2019 Agreements. As noted above, Plaintiffs' claims center largely around the Crestview Defendants' allegedly unauthorized use of genetic material. However, both the 2009 and 2019 Agreements expressly gave the Crestview Defendants the right to utilize genetic material from horses owned by Plaintiffs and, ultimately, to sell clones produced from the same. (SAC Ex. 1 §§ 1–3, 6; SAC Ex. 4, pp. 3–4.) Plaintiffs have failed to plausibly plead that the Crestview Defendants' conduct exceeded their rights under these contracts. Accordingly, Plaintiffs claims for breach of contract, breach of bailment contract, and conversion must be dismissed.

#### a.  *Breach of Contract*

Plaintiffs have failed to plausibly allege breach of contract as to the 2009 Agreement or 2019 Agreement. Plaintiffs have conclusorily alleged that Defendants (1) "creat[ed] unauthorized clones of Cuartetera" and (2) "unilaterally s[old] and set[] all prices and terms of such sales of the unauthorized clones of Cuartetera … without any knowledge or consent by Mr. Cambiaso or La Dolfina." (SAC ¶ 311). For example, in paragraph 104, Plaintiffs claim that Plaintiffs "did not mutually agree with Defendants as to either the production, endorsement, marketing, sales and terms of sale of clones of horses belonging to Mr. Cambiaso or La Dolfina." (SAC ¶ 104.) Similarly, as to the 2019 Side Letter Agreement, Plaintiffs conclusorily allege the Crestview Defendants' "continuing

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

[and] unauthorized production and sale of Cuartetera clones by Meeker by and through Crestview Farm to persons and entities other than Mar. Cambiaso or La Dolfina." (SAC ¶ 337.) Buried elsewhere in the more than 600 paragraphs of allegations in Plaintiffs' complaint—specifically, in the section regarding Plaintiffs' federal Lanham Act claims—Plaintiffs alleged that Defendant created and sold three "unauthorized clones of Cuartetera." (SAC ¶ 175). However, the 2009 Agreement permits the cloning and sale of selected horses, one of which was Cuartetera (*see* SAC Ex. 1 § 1; SAC Ex. 4, pp. 3, 6), and the SAC fails to plausibly allege how these Cuartetera clones are "unauthorized" and their sale unpermitted.[5]

Plaintiffs' bare allegations devoid of any facts in support are insufficient to state a cause of action for breach of contract here as to either the 2009 Agreement or the 2019 Agreement. To reiterate, both the 2009 Agreement and the 2019 Agreement permit the cloning of Plaintiffs' horses' genetic material and the sale of such clones under certain conditions. And Plaintiffs have failed to plead the ways specifically and plausibly in which Defendants allegedly breached or otherwise exceeded the terms of these contracts. Accordingly, Plaintiffs' claims for breach of contract as to the 2009 and 2019 Agreements should be dismissed.

### b.    *Breach of Bailment Contract*

For similar reasons, Plaintiffs' claims for breach of bailment contracts (SAC ¶¶ 346–353) should be dismissed. Neither the 2009 Agreement nor the 2019 Agreement created a bailment contract. Under the 2009 Agreement, Farm paid Mr. Cambiaso $250,000 per mare for tissue extracted; Plaintiffs did not pay Farm to hold that tissue temporarily. The 2019 Agreement is similar. At most, paragraph 5 of the 2019 Agreement merely "represents that [Crestview Genetics] ***currently***

---

[5] Indeed, a comparison of the 2009 Agreement to the 2019 Agreement shows Cuartetera must be among the horses the parties agreed to allow Farm to clone. Otherwise, Farm could not have assigned the right to that horse to Genetics, such that both Cambiaso and La Dolfina agreed that Genetics was allowed to create certain Cuartetera clones under the 2019 Agreement.

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

***has*** custody of cells in cryogenic storage originating from horses belonging to [Cambiaso] or [La Dolfina]." (SAC Ex. 4, p. 4, § 5); *see Adams v. Bell Partners, Inc.*, 138 So. 3d 1054, 1058 (Fla. 4th DCA 2014) (emphasis added) (defining bailment as "a contractual relationship among parties in which the subject matter of the relationship is ***delivered temporarily to and accepted by*** one other than the owner"). Further, this putative "bailment" was "at no cost to [Cambiaso] or [La Dolfina]," evidencing that this provision was ancillary to the main thrust of the 2019 Agreement—the use of genetic material for the cloning of horses and the eventual sale of such clones—and did not transform it into a contract for bailment.[6]

c.  *Conversion*

Additionally, and for similar reasons, Plaintiffs' claim for conversion fails. A cause of action for conversion requires that a defendant (1) ***wrongfully*** assert an act of dominion over the property of another that is (2) inconsistent with their ownership therein. *See TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1299 (S.D. Fla. 2016); *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 366 (Tex. App.—Dallas 2009, pet. denied). Much like their breach of contract claims, Plaintiffs' conversion claims hinge on the allegation that "Defendants exceeded the scope of their authorized use of Plaintiffs' equine genetic material and clones therefrom." (SAC ¶ 372.) For the reasons expressed above, Plaintiffs have failed to plausibly plead that the Crestview Defendants exceeded their "authorized use" under the plain terms of the 2009 and 2019 Agreement. It is notable that nowhere do Plaintiffs allege that any Crestview Defendant was wrongfully in possession of any genetic material, just that they used it in a way that Plaintiffs blandly assert was beyond the scope permitted under the parties' agreements. Plaintiffs have

---

[6] Finally, Plaintiffs' bailment allegation is disproven by their own pleadings elsewhere. A bailment "leaves no residue of control in the bailor as to how the bailed property is to be handled," but Plaintiffs maintain they retained extensive control. 8 Am. Jur. 2d Bailments § 28; *see S&W Air Vac Sys., Inc. v. Dep't of Rev.*, 697 So. 2d 1313, 1315 (Fla. App. 1997) (noting that a "chief feature[] of bailments is the degree to which possession, custody and control of the subject matter is surrendered by the bailor to the bailee").

14

failed to allege facts sufficient to support their conversion claim, making this equally conclusory. (*See* SAC ¶¶ 370–376). Additionally, the Eleventh Circuit, applying Florida law, has rejected the notion of a cause of action for conversion with respect to tissue samples of other genetic material. *See Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064, 1075 (S.D. Fla. 2003). This claim should be similarly dismissed.

### D.       Plaintiffs Have Failed to State a Claim Under the Lanham Act.

Foreseeing the demise of their contract claims, and trying to manufacture federal question jurisdiction, Plaintiffs attempt to allege four claims under the Lanham Act. *See* 15 U.S.C. § 1125(a). With materially identical allegations, Plaintiffs allege "false advertising," "false association," "false endorsement," and "reverse passing off," the latter two of which are really subspecies of false association. *See* 15 U.S.C. § 1125(a)(1)(A). Each of these claims fail.

#### 1.       Plaintiffs lack standing to assert the Lanham Act claims.

To state a claim under the Lanham Act, a plaintiff must plead (and ultimately prove) an "injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014). Plaintiffs' allegations fail. Neither Cambiaso nor La Dolfina Sub have alleged a concrete, particularized "injury to a commercial interest in sales or business reputation," fairly traceable to the Crestview Defendants' conduct, and redressable by the Court. That party, if anyone, would be La Dolfina S.A. It is impossible for La Dolfina Sub to have been injured—it was created for litigation purposes only *after* it filed the original complaint in this action—and Plaintiffs have not pleaded that it has any commercial operations at all. Nor have Plaintiffs plausibly pleaded or demonstrated that any representation by the Crestview Defendants has proximately caused injury to Plaintiffs. This showing is "not made when the [alleged] decision produces injuries to a fellow commercial actor that in turn affect the plaintiff." *Id.* at 133–34. Because Plaintiffs' allegations rely at most on derivative

CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

injuries, Plaintiffs lack statutory standing to bring their Lanham Act claims, and this Court need go no further.[7]

### 2.        Plaintiffs have not plausibly pled any protected mark.

Plaintiffs' claims for false advertising and false association under 15 U.S.C. § 1125 fail for the same initial reason—Plaintiffs have failed to plead any protected mark. To establish either variety of claim, Plaintiffs bear the burden to plead and establish a valid trademark, even if unregistered. *Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.*, 707 F. App'x 576, 579–80 (11th Cir. 2017). Here, Plaintiffs nowhere identify the "mark" on which they rely or the basis for which such unidentified "mark" is enforceable. The Eleventh Circuit has dismissed Lanham Act claims when even more specific allegations regarding an alleged unregistered mark existed. *See id.* (affirming dismissal where party failed to allege an enforceable unregistered mark).

Further, Plaintiffs have failed to adequately allege that they have a right to exclude the Crestview Defendants from using any mark. To the extent Plaintiffs identify any potential "mark," it is (presumably) the names of particular mares and/or their owner. Even assuming those "names" are enforceable marks, the 2009 Agreement—which governs the parties' relationship—contains an express agreement to the contrary. *See Griffin*, 496 F.3d at 1205–06. As noted, the 2009 Agreement explicitly states that "**Crestview [Farm] shall be entitled to identify the name of the original animal and Owner to potential purchasers**" and that Farm shall have "**complete and exclusive licensing rights in and to the mare and all cloned foals.**" (SAC Ex. 1 §§ 1, 3 (emphasis added).) Thus, Plaintiffs fail to plausibly plead the existence of a valid mark.

---

[7] Plaintiffs allege that La Dolfina Sub is the "assignee" of "La Dolfina, S.A.," but they do not identify what was assigned, other than "claims." (SAC Ex. 11, ¶ 2.)

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

### 3. Plaintiffs' false advertising claims fail for other reasons.

Plaintiffs' false advertising claims also fail because Plaintiffs never alleged any false or misleading representation by the Crestview Defendants. To state a claim for false advertising, a party must plead a "*false or misleading*" representation that "*misrepresents* the nature, characteristics, qualities, or geographic origin" of a product. *Black Diamond*, 707 F. App'x at 580 (emphasis in original). To establish the "false or misleading statement" element of the claim, the plaintiff must plead and prove that "the statements at issue were either (1) commercial claims that are literally false as a factual matter, or (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or are likely to deceive consumers." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018) (citation and quotation marks omitted). An omission of fact is not actionable unless, "at minimum," the omission renders the affirmative advertisement "materially misleading." *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 915 F. Supp. 360, 366 (S.D. Fla. 1996), *aff'd sub nom. Tire Kingdom v. Morgan Tire & Auto*, 136 F.3d 139 (11th Cir. 1998). Plaintiffs fail to satisfy these standards.

<blockquote>a.     *Plaintiffs' alleged representations do not regard the "nature, characteristics, qualities, or geographic origin" of any product.*</blockquote>

Initially, none of the challenged statements say anything of the "nature, characteristics, qualities, or geographic origin" of Plaintiffs' products or business. *See* 15 U.S.C. § 1125(a)(1)(B). Plaintiffs purport to rely on the Crestview Defendants' statements marketing clones of particular horses for sale. (*E.g.*, SAC ¶¶ 409–411 ("You should buy one of my new Colibri or Aiken Cura clones!").) These statements cannot support a false advertising claim because they say nothing of the "nature, characteristics, qualities, or geographic origin" of Plaintiffs' products or business.

Plaintiffs' bare pleading that the Crestview Defendants' offers of sale somehow misrepresented Plaintiffs' products or business is unavailing. Plaintiffs contend that the Crestview

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

Defendants impliedly misrepresented that the clones had been made and marketed on the sole authority of the Crestview Defendants, and thereby misrepresent and diminish the nature, characteristics, and qualities of Plaintiffs' horses and commercial activities and ultimate authority over Plaintiffs' polo horse bloodlines. (SAC ¶ 427.) This allegation is deficient because it stacks implausible inference upon implausible inference, when even one implausible inference is fatal: a plaintiff "cannot state a claim under the Lanham Act by attributing inferences to an otherwise clear advertisement." *Tire Kingdom, Inc.*, 136 F.3d at 366–67. Here, the Crestview Defendants' offers for sale say nothing regarding the "characteristics or qualities" of Plaintiffs' horses. Because Plaintiffs fail to plead a misrepresentation, this Court should dismiss the claim. *See, e.g.*, *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 227 & n.8 (3d Cir. 2017) (dismissing claim for lack of any comment about the product's quality or geographic origin); *Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*, 796 F.3d 576, 590 (6th Cir. 2015).

b.     *The challenged representations are true.*

The identified statements also cannot support Plaintiffs' false advertising claim because the statements are true. As noted, the statements represent that the Crestview Defendants are or have marketed clones of particular polo horses on a couple occasions directly to individual potential buyers. (SAC ¶¶ 411–14.) Far from being "literally false" or misleading, under Plaintiffs' own allegations, those statements are *entirely true*.

In conclusory fashion, Plaintiffs contend that the representations are false or misleading because they represent that the Crestview Defendants have Plaintiffs' "authorization" to market and sell the clones. (*Id.* ¶ 414.) In fact, Farm *does* have express contractual authority—it acquired "complete and exclusive licensing rights in and to the mare and all cloned foals," and it has the express right to "identify the name of the original animal and [Mr. Cambiaso] to potential purchasers. (SAC Ex. 1 §§ 1, 3.) But, regardless, (1) the comments do not address authority, and (2) representations of

18

"authority" are not comments on the "nature, characteristic, quality, or geographic origin" of Defendants' products or business. The alleged comments do not support a false advertising claim.

The Eleventh Circuit rejected a false advertising claim in similar circumstances. *Webster v. Dean Guitars*, 955 F.3d 1270, 1277 (11th Cir. 2020). In *Webster*, the plaintiff (Webster) alleged that the defendant, a guitar manufacturer, falsely advertised that Webster endorsed a "reissue" guitar by distributing videos of Webster explaining "his involvement in the creation" of a famous guitar upon which the "reissue" guitar was based. *Id.* The Eleventh Circuit disagreed, noting that "[n]one of the videos stated that Webster was promoting or selling the [] reissues"; the videos instead "accurately show Webster describing his part in the history of" the famous guitar. *Id.* The same is true here. "None of [the challenged statements] stated that" Plaintiffs were "promoting or selling" or authorizing the clones; the statements instead accurately identified the donor horse. *Id.* The challenged statements therefore cannot support a false advertising claim as a matter of law.

### 4. Plaintiffs' false association claims also fail for other reasons.

#### a. *Plaintiffs have failed to plead any actionable misrepresentation to support their false association claims.*

Plaintiffs' false association claims fail for similar reasons. To state a claim for false association, a plaintiff must identify a "false or misleading" representation that "deceive[s]" as to a plaintiff's "affiliation, connection, or association" with a product or service. 15 U.S.C. § 1125(a)(1)(A). In other words, a plaintiff must plead and show a "likelihood of customer confusion, mistake, or deception as to the origin, sponsorship, or approval of goods being sold." *Webster*, 955 F.3d at 1278. Plaintiffs have failed to state a claim under these standards.

As with the false advertising claim, Plaintiffs allege that by marketing the clones on a limited basis and naming the originating ponies, the Crestview Defendants misrepresented that "Plaintiffs have endorsed Defendants as authorized sellers of" the clones. (SAC ¶¶ 444–45.) But none of the

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

identified statements state or imply that Plaintiffs endorse the Crestview Defendants. Nor does the mere mention of "Cuartetera, Aiken Cura," etc. *imply* that Plaintiffs endorse the Crestview Defendants' sales. The statements instead do one thing—they truthfully identify the originating mare, which Farm has a specific contractual right to name in any event. *See supra*.

Again, *Webster* is instructive. There, like here, Webster's false association claim was materially identical to his false advertising claim. Webster complained that "given his notoriety … , the mention of his name near or in relation to the [reissued guitars] must have caused consumers to mistakenly believe that he endorsed the sale of the reissues." *Webster*, 955 F.3d at 1278. The Eleventh Circuit disagreed, holding that "we do not just assume a likelihood of customer confusion when a mark is used in the proximity of advertising for a product, especially when a legitimate use of that mark is clear from context." *Id.*

The same outcome is required here. Plaintiffs' allegation is no different from Webster's— Plaintiffs allege that the horses at issue "are known throughout the polo industry," and so "[i]t is reasonable that no one would represent that they had for sale clones originating from such horses unless" Plaintiffs endorsed the sale. (SAC ¶ 445.) But like in *Webster*, the mere "mention" of the clones' donor's names does not assert or imply that Plaintiffs endorse the Crestview Defendants or support any ground for customer confusion. Nor have Plaintiffs alleged that any customers or prospects *were* confused. The allegations here are even more limited than *Webster*, given that the purported "marketing" was never disseminated via mass media or otherwise to the general public. At bottom, Plaintiffs are really asking the Court to hold that the Crestview Defendants owed a duty to affirmatively state that Plaintiffs do *not* endorse the sales. No authority supports Plaintiffs' position, and the Court should reject Plaintiffs' defective theory.

      b.   *Plaintiffs have failed to allege the polo horses' names have the requisite secondary meaning.*

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

Even assuming Plaintiffs could overcome the lack of any statement representing or implying endorsement, Plaintiffs have failed to plead any protected mark. As noted, Plaintiffs do not identify any mark at all. To the extent a "mark" may be inferred from Plaintiffs' imprecision, Plaintiffs appear to suggest that the relevant marks are the mares' *names*. In the Eleventh Circuit, however, "[n]ames— both surnames and first names—are regarded as descriptive terms and therefore one who claims federal trademark rights in a name must prove that the name has acquired a secondary meaning." *Tana v. Dantanna's*, 611 F.3d 767, 774 (11th Cir. 2010). "A name has acquired secondary meaning when the primary significance of the term in the minds of the consuming public *is not the product but the producer*." *Tartell v. S. Fla. Sinus & Allergy Ctr., Inc.*, 790 F.3d 1253, 1257 (11th Cir. 2015) (emphasis added). In other words, a plaintiff must plead and prove that "consumers no longer associate the mark with the product, but instead associate the mark with the business." *IT Strategies Grp., Inc. v. Allday Consulting Grp., LLC*, CV 13-60014-CIV, 2014 WL 11531625, at *1 (S.D. Fla. July 17, 2014).

Plaintiffs have not pleaded that the referenced mares' names have any secondary meaning, which alone is dispositive. *See, e.g.*, *Tropic Ocean Airways, Inc. v. Floyd*, 598 F. App'x 608, 611–13 (11th Cir. 2014) (affirming dismissal where plaintiff (more than here) alleged secondary meaning but supported it only with "conclusory" allegations). The mark that denotes Plaintiffs' business instead is La Dolfina, the name under which Plaintiffs' alleged assignor has long publicly operated. *See, e.g., Tartell*, 790 F.3d at 1258–59 (doctor's name, "Dr. Tartell," did not have secondary meaning for doctor's services, in part because "Dr. Tartell practiced under the name 'South Florida Sinus and Allergy Center' for over a decade, and so his name "was not the primary mark by which his services were identified"). Thus, Plaintiffs' SAC at best pleads that the several polo horses' names identify the horses, *i.e.*, the *product*, but that is insufficient to prove that the names bear a secondary meaning of *La Dolfina*, itself. Because Plaintiffs have not alleged a secondary meaning, this Court should

21

dismiss the Lanham Act claims for failure to state a claim. And again, the 2009 Agreement explicitly licenses and grants the right to Farm to use these names.

     **5.     Plaintiffs' False Association – Celebrity Status claim also fails for other reasons.**

Plaintiffs' Count XV for "False Association – Celebrity Status" fails for the same reasons discussed above. As an initial matter, Count XV appears to be a false endorsement claim under the Lanham Act, which makes it entirely duplicative of Plaintiffs' other Lanham Act claims. *See, e.g., Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1278 (11th Cir. 2012) ("[W]e have never treated false endorsement and trademark infringement claims as distinct under the Lanham Act."); *Tana v. Dantanna's*, 611 F.3d 767, 777 n. 9 (11th Cir. 2010) ("[W]e have ... never recognized a separate claim of false endorsement, distinct from trademark infringement under § 43(a) ...."); *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 626 (6th Cir. 2000) ("A false designation of origin claim ... under § 43(a) of the Lanham Act ... is equivalent to a false association or endorsement claim ... .").

     The touchstone for a Lanham Act false endorsement claim is whether the public is likely to be deceived by a purported false association. *See Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002) ("Under the law of false endorsement, likelihood of customer confusion is the determinative issue."). Courts have recognized a § 43(a) injury in this context "where the plaintiffs' voices, uniforms, likenesses, published words, or names were used in such a way as to deceive the public into believing that they endorsed, sponsored, or approved of the defendant's product." *Advanced Res. Int'l, Inc. v. Tri-Star Petroleum Co.*, 4 F.3d 327, 334 (4th Cir. 1993). In an action for false endorsement, the plaintiff must plausibly allege and prove the likelihood of consumer confusion as to the origin, approval, or endorsement of the product. *See Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110 n. 9 (9th Cir. 1992). The byzantine allegations contained in the SAC fail to do so.

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

In addition to the alleged "misrepresentations" discussed *supra*, Plaintiffs merely allege that "[t]he [Horse PSA] establishes that the Crestview Defendants falsely claimed ... that the ten Cuartetera clones were free and clear of any claims by Mr. Cambiaso." (SAC ¶ 500.) Plaintiffs further claim that Section 8.1, which grants a limited license to the purchaser thereunder, also constitutes a false endorsement by Cambiaso and/or non-party La Dolfina. (SAC ¶ 501.) From there, Plaintiffs conclude that "[t]hese false and fraudulent assertions that Mr. Cambiaso and La Dolfina … had approved or endorsed these putative sales are a misuse and wrongful appropriation of Mr. Cambiaso's persona and La Dolfina's powerful and valuable brand." (SAC ¶ 503.) These statements are conclusory and implausible.

The challenged "statements" in Section 6 of the Horse PSA were, in fact, true. And in no way would any reasonable person interpret them as asserting or even implying an endorsement. (*See* SAC Ex. 5 § 6.3 ("To the best of [Farm's] knowledge, the Cloned Horses are (and/or will be) free and clear of any claims of Cambiaso."); *id.* § 6.1 ("As of the Effective Date, … Cambiaso has not sent [Farm] notice of any breach of [2009 Agreement] … .").) As shown in the SAC, the Effective Date of the Horse PSA was November 9, 2020—nearly a month before litigation commenced in this case. (SAC Ex. 5.) Thus, the statements were neither false nor misleading, and no reasonable person would interpret these representations as an "endorsement" by Cambiaso and/or non-party La Dolfina. Further, Section 8.1 of the Horse PSA does not mention Cambiaso or La Dolfina whatsoever. Thus, there could hardly be any express or implied "endorsement." In any event, the 2009 Agreement expressly provides that "Crestview shall be entitled to identify the name of the original animal and Owner to potential purchasers." (SAC Ex. 1 § 3.)

The lack of any plausible allegations that the public would perceive these statements as a celebrity endorsement is fatal. *See, e.g., Jackson v. Robinhood Markets, Inc.*, No. 21-CV-02304-LB, 2021 WL 2435307, at *4 (N.D. Cal. June 15, 2021) (dismissing similar "celebrity status" claim under

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

the Lanham Act where plaintiff "did not plausibly allege that the use of his identity was endorsement, which means that he does not have standing"). Count XV must be dismissed.

> **6.     Plaintiffs' False Designation of Origin – Reverse Passing Off claim also fails for other reasons.**

Plaintiffs' Count XVI for "False Designation of Origin – Reverse Passing Off" fails for the same reasons discussed above and is likewise duplicative of the other Lanham Act claims. "Reverse passing off" occurs when a producer of goods or services "misrepresents someone else's goods or services as his own." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n. 1 (2003). To state a claim on their reverse passing off claim, Plaintiffs must plausibly allege "(1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." *Suntree Techs., Inc. v. Ecosense Int'l*, 802 F. Supp. 2d 1273, 1283–84 (M.D. Fla. 2011). In the context of a reverse passing off claim, the "likelihood-of-confusion inquiry" is limited to "defendant's intent" and "actual confusion." *Id.*; *see also Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 651 (11th Cir. 2007) ("[R]ecovery under the Lanham Act requires, at a minimum, that confusion, mistake, or deception be likely, not merely possible."). Count XVI fails to satisfy any of these elements. The "false representations" alleged here are identical to those alleged in Count XV and are fatally flawed for the same reasons.

Additionally, Plaintiffs do not allege that they cloned the horses at issue in this dispute. (SAC ¶¶ 37, 57, 106.) Moreover, the 2009 Agreement specifically grants Farm the right to market clones. (SAC Ex. 1 § 1 ("[Cambiaso] agrees to allow [Farm] to select four mares from [Cambiaso's] stock for the purpose of extracting tissue samples for cloning. … [Cambiaso] agrees to, and does hereby, grant [Farm] complete and exclusive licensing rights in and to the mare[s] and all cloned foals."); *id.*

§ 3 ("Crestview shall be entitled to identify the name of the original animal and Owner to potential purchasers."); *see also id.* § 4 ("Owner [Cambiaso] will use its commercially reasonable best efforts to market the first three clones of each cloned animal for sale with Owner's client base or others").) And as discussed above, Plaintiffs have not pleaded any plausible harm.

Nor have Plaintiffs plausibly pleaded any false designation as to the origin of any clones. Indeed, the 2009 Agreement is attached to the Horse PSA. (*See* SAC Ex. 5.) And while Farm truthfully attests in the November 9, 2020 Horse PSA that Cambiaso had not asserted any claims against Farm with respect to the 2009 Agreement, the Horse PSA clearly contemplates that Cambiaso and/or La Dolfina might attempt to do so in the future. (*E.g.*, SAC ¶ 31 ("Further, under that escrow structure, Park Place Polo Team, … was required to pay the costs of defense of any claims by Mr. Cambiaso / La Dolfina once the $250,000 was escrow was exhausted.").) Plaintiffs have not pleaded that any allegedly false designations of origin for the clones were widely disseminated to the public. Aside from conclusory allegations that merely parrot the elements of a claim for reverse passing off, Plaintiffs have failed to allege how any actions taken by the Crestview Defendants are likely to confuse the public market. Put simply, Plaintiffs are attempting to fit a square peg into a round hole. For these reasons, Count XVI must be dismissed.

### E.      Plaintiffs Have Failed to State a Claim Under the DTSA.

Plaintiffs' DTSA claim also fails to state a claim under the applicable pleading standard.

#### 1.      Only an "owner" has standing to bring suit under the DTSA.

The DTSA provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action …" 18 U.S.C. § 1836(b)(1). According to the SAC, non-party La Dolfina S.A. owns the alleged trade secrets at issue. (SAC Ex. 11 ¶¶ 8–20.) In turn, Cambiaso is a part owner of non-party La Dolfina S.A., while Plaintiff La Dolfina Sub is allegedly the assignee of claims held by La Dolfina S.A. (SAC Ex. 11 ¶ 2.) Thus, Cambiaso and La Dolfina Sub lack standing.

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

When Congress creates a private right of action for an owner of intellectual property, non-owner assignees of claims lack standing. For example, the Patent Act provides that a "patentee" may bring a federal claim for patent infringement. *See* 35 U.S.C. § 281. By expressly reserving such action to the patent owner, purported assignees of patent claims lack standing to assert the statutory claim. *See, e.g., Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1381 (Fed. Cir. 2000) (holding that "[s]tanding to sue for infringement depends entirely on the putative plaintiff's proprietary interest in the patent, not on any contractual arrangements among the parties regarding who may sue … ."). Courts have extended this same reasoning to the Copyright Act. *See, e.g., John Wiley & Sons, Inc v. DRK Photo,* 882 F.3d 394 (2d Cir. 2018) (holding that because only a copyright "owner" may sue for infringement, a mere assignee of copyright claims cannot).

Similarly, Congress restricted private actions under the DTSA to "owners," and that statutory language controls. 18 U.S.C. § 1836(b)(1). Additionally, the DTSA's subject matter and language favor interpreting it in accord with the Patent and Copyright Acts. Indeed, all three Acts address intellectual property claims, an area that traditionally bars statutory standing to mere assignees of claims. Congress reinforced this interpretation by expressly reserving the claim to "[a]n owner of a trade secret…," which it explicitly defined as those with legal or equitable title to, or a license in, the secret. 18 U.S.C. §§ 1836(b)(1), 1839(4). *See generally Parker v. Petrovics*, No. 2:19-CV-00699-RDP, 2020 WL 3972761, at *4 (N.D. Ala. July 14, 2020) (recognizing that DTSA requires as an element that plaintiff is the "owner" of the asserted trade secret.) In short, just as with other similar Acts, "by identifying who may bring suit under the" DTSA, Congress signaled that others may not. *See John Wiley,* 882 F.3d at 405. While Plaintiffs have engaged in a shell game regarding horse ownership dating back to the 2009 Agreement (alleging Cambiaso was the "Owner" of all horses), they now affirmatively assert that La Dolfina S.A. is the owner of the horses at issue. (SAC Ex. 11 ¶¶ 8–20.) Thus, the other Plaintiffs lack standing to pursue this claim.

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

### 2. Plaintiffs have failed to allege a cognizable secret under the DTSA.

Plaintiffs' DTSA claim also fails because they have not alleged any trade secret to support the claim as a matter of law. Attempting to manufacture a federal claim, Plaintiffs allege that the Crestview Defendants misused "equine genetic material …, which Plaintiff considered trade secrets[.]" (SAC ¶ 539.) Plaintiffs' mere belief that the genetic material is a trade secret fails.

To state a claim under the DTSA, a plaintiff bears the burden to plead (and ultimately prove) that it possesses a "trade secret." *Sentry Data Systems, Inc. v. CVS Health*, 361 F.Supp.3d 1279, 1293 (S.D. Fla. 2018); *see* 18 U.S.C. § 1836(a). As a matter of law, "genetic material" is not a "trade secret." Genetic tissue is a naturally occurring raw biological material that does not constitute "financial, business, scientific, technical, economic, or engineering information." 18 U.S.C. § 1839(3). Indeed, each of the exemplar trade secrets—"patterns, plans, compilations, program devices, formulas, prototypes, methods, techniques, processes, procedures, programs, [and] codes"—requires human input and innovation. Defendants have found no authority in any jurisdiction that classifies naturally occurring genetic tissue as a "trade secret."[8] Instructive secondary authority rejects that notion. *See* MEGAN L. TOWNSLEY, *Is There Any Body Out There? A Call for A New Body of Law to Protect Individual Ownership Interests in Tissue Samples Used in Medical Research*, 54 WASHBURN L.J. 683, 704 (2015) ("[I]ntellectual property law provides no protection" for "tangible genetic samples"; "instead, it offers certain rights and protection for innovative creations"); Black's Law Dictionary 669 (8th ed. 2005) ("copyrights, patents, trade secrets, and trademark" protect "commercially valuable products of the human intellect").

Plaintiffs' DTSA claim thus asks the Court to expand intellectual property law to recognize rights in raw genetic material in a contract dispute where the federal claims have been interposed

---

[8] For obvious reasons, policy concerns abound. If animal tissue is a trade secret, why not human tissue? Similarly, how is one to protect "genetic material" when animals and humans shed tissue on a daily basis?

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

simply to bootstrap federal-question jurisdiction. Neither the DTSA nor any precept of intellectual property law supports this novel request. Because Plaintiffs cannot assert any legal basis for extending trade secret protections to natural equine genetic tissue or DNA, Plaintiffs' conclusory assertion that such tissue or DNA constitutes a "trade secret" should be dismissed.

Even if natural genetic material could constitute a trade secret, Plaintiffs have still failed to allege a viable, plausible DTSA claim because they have filed to plead that they took any reasonable measures to protect their purported trade secrets, and their pleadings conclusively establish that they took no such measures. *See* 18 U.S.C. § 1839(3) (providing that alleged trade secret owners must have "taken reasonable measures to keep such information secret"). With the 2009 Agreement, Mr. Cambiaso granted Farm the right to collect horse tissue samples for the express purpose of marketing and selling clones produced therefrom. The 2009 Agreement, importantly, contains *no* provision requiring that Farm keep the tissue confidential, and it recognizes that Farm will sell clones to third parties. Indeed, the 2009 Agreement specifically contemplated the collection of tissue by Farm and the sale of cloned foals to third parties, with no restrictions to protect dissemination of their genetic material. (SAC Ex. 1 §§ 1, 3 & 4.)

Moreover, Plaintiffs' pleadings (and the *Vanity Fair* article attached) further prove that, in 2010, Farm and Cambiaso offered a clone at auction for $800,000 with no restrictions on the use of its tissue or cloning (SAC Ex. 25, p. 7.) If the clone, which necessarily included its genetic material, was sold at auction, then Plaintiffs abandoned any right to trade secret protection. *Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1454 (11th Cir. 1991) (once placed in the public domain, any "reasonable expectation of secrecy" or trade secret protection is destroyed). And while Plaintiffs now imply that an auction participant suggested that Farm and Mr. Cambiaso should *not* sell clones to the public without restrictions, the fact remains that the 2009 Agreement contained no protections and

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

imposed no confidentiality duties on Farm. Because Plaintiffs cannot plausibly allege that the genetic material is a trade secret, their DTSA claim fails.

**F.      Plaintiffs' State Law Claims Should Also Be Dismissed.**

Plaintiffs' claims should be dismissed because, rather than pleading facts from which the Court could conclude the Crestview Defendants are liable for the conduct alleged, Plaintiffs instead plead scattershot, irrelevant, repetitive, formulaic, and conclusory allegations that apprise the parties and the Court of nothing. Under Rule 12(b)(6) standards, the Court must determine whether Plaintiffs have stated claims for relief that are plausible on the face of the SAC. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–69 (2009).

Here, Plaintiffs' reliance on conclusory allegations, irrelevant matters, and formulaic recitations of elements causes of action are too numerous to brief. (*See generally* SAC ¶¶ 266–582.) By way of example, Plaintiffs dedicate significant space to describing allegations against certain Defendants in an unrelated case (which the parties settled with neither admitting fault; *see* SAC Ex. 16) only to conclusorily assert that "it appears history is repeating itself." (SAC ¶ 168.) Plaintiffs also astonishingly claim that they "have come to understand that at the time of the 2019 [] Agreement, Meeker and Crestview Genetics did not actually own Storm Cat 02 and its genetic material, but the Crestview Defendants in fact only possessed a very limited license to use, on a very restrictive schedule, the Storm Cat 02 clone" (SAC ¶ 137), *despite the fact that the license agreement Plaintiffs claim to have had no knowledge of was incorporated into and attached to the 2019 Agreement—and each page of each such attachment was initialed by Cambiaso on behalf of himself and La Dolfina.* (*See* SAC Ex. 4.) A fair reading of the SAC makes it difficult, if not impossible, to discern what misconduct Plaintiffs allege and under what legal theories.

By way of further example, Plaintiffs attempt to base numerous claims on purported "misrepresentations" and "false advertisements" allegedly attributable to "Defendants" based on

29

descriptive articles published in the press. *E.g.,* SAC Exs. 25, 26, 27. Plaintiffs also cite an article in *Vanity Fair* magazine. SAC ¶¶ 161, Ex. 15. On their face, these articles are nothing more than journalistic pieces profiling Mr. Meeker's **and** Mr. Cambiaso's then **joint efforts** to clone championship horses. They bear no relation to Plaintiffs' legal claims. Elsewhere, Plaintiffs merely recite formulaic elements of various causes of action without any reference to the contractual language that specifically permits Defendants to take the actions complained of, as detailed above. Plaintiffs' scattershot, conclusory, and irrelevant allegations warrant dismissal of the SAC.

**Plaintiffs' Counts I, III, and XX are remedies, not claims.** Counts I and XX seek a Preliminary and Permanent Injunction (SAC ¶¶ 266–76, 583–90) and Count III seeks Declaratory Judgment (SAC ¶¶ 287–305). However, none of these are causes of action, but rather *remedies*. Neither of these "claims" can stand on their own, and, therefore, they must be dismissed. *Feingold v. Budner*, No. 08-80539-CIV, 2008 WL 4610031, at *2 (S.D. Fla. Oct. 10, 2008) ("Count III is a claim for 'declaratory and preliminary injunctive relief.' Declaratory judgments and injunctions are equitable remedies, not causes of action. A plaintiff must prevail on an underlying claim in order to be entitled to either form of relief … . Thus, Count III must be dismissed[.]").

**Plaintiffs' fraudulent inducement claim is not based on actionable representations.**

Plaintiffs' Count V is for "Fraudulent Inducement, Concealment and Misrepresentation Regarding the 2019 Agreement." Plaintiff has dropped its fraudulent inducement claim as to the 2009 Agreement, presumably because it was time barred by the applicable statute of limitations. (FAC ¶¶ 130–38); *see* Fla. Stat. § 95.11(3)(a), (j), (l) & (p); Tex. Civ. Prac. & Rem. Code § 16.004.

Plaintiff now fails to state a claim for fraudulent inducement as to the 2019 Agreement. To make out a claim for fraudulent inducement, a plaintiff must plead that defendant (1) made a false statement concerning a material fact; (2) with the knowledge that the representation is false; (3) and with the intention that the representation induce plaintiff to act on it; (4) resulting in injury to the

plaintiff, who acted in reliance on the representation. *Moriber v. Dreiling*, 194 So. 3d 369, 373 (Fla. 3d DCA 2016). An *omission* may support a claim for fraudulent inducement only where the defendant has a duty to disclose the information because of some fiduciary or other relationship of trust or confidence between the parties. *Democratic Republic of Congo v. Air Gap Grp., LLC*, No. 12-20607-CIV, 2013 WL 3223688, at \*3 (S.D. Fla. June 24, 2013) (citing *Cola v. Allstate Ins. Co.*, 131 F. App'x 134, 136 (11th Cir. 2005)).

Here, Plaintiffs have alleged three potential bases for fraudulent inducement of the 2019 Agreement, each of which fails as a matter of law. First, Plaintiffs claim that Defendants "covenanted and promised to restrict possession and distribution of the Cambiaso / La Dolfina horse clones to the parties and no one else." (SAC ¶ 323). Second, and relatedly, Plaintiffs claim that Defendants "intended to misappropriate the genetic material from select La Dolfina Cuartetera [sic] and create and sell unauthorized clones therefrom … [and] hid this intent from Plaintiffs during the negotiation and execution of the 2019 Agreement." (SAC ¶ 326). Third, Plaintiffs claim that "the Crestview Defendants hid from Mr. Cambiaso the fact that those Defendants considered the 2009 Agreement to be still active and in force." (SAC ¶ 327).

Plaintiffs' second and third allegations are not proper bases for fraudulent inducement because they relate to an ***omission***, rather than an affirmative, false statement of fact. Where, as here, the claim involves parties to a contract negotiating at arms-length, no fiduciary or other relationship of trust or confidence exists. *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 541 (Fla. 5th DCA 2003) ("When the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other."). Accordingly, as alleged in the SAC, a claim for fraudulent inducement based on the alleged failure to disclose a fact cannot stand. *See Air Gap*, 2013 WL 3223688, at \*3.

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

Moreover, in addition to the Crestview Defendants having no obligation to disclose their belief that the 2009 Agreement was still valid, Plaintiffs' allegation that they *did not know* the 2009 Agreement was in force is an impossibility. The 2019 Agreement clearly states that, at the time of its formation, Crestview Genetics was already in possession of certain cells originating from Plaintiffs' horses. (SAC Ex. 4, p. 3, § 5). The only way this could have occurred is if Crestview Farm had assigned its rights to those clones produced as of that time under the 2009 Agreement to Crestview Genetics and those rights continued as of the date of the 2019 Agreement. Therefore, this provision itself evidenced Crestview Genetics' belief that the 2009 Agreement was still in force. Plaintiffs Cambiaso and La Dolfina should have been aware of this fact. Thus, paragraph 5 of the 2019 Agreement plainly negates Plaintiffs' fraudulent inducement claim.

Further, Plaintiffs' first allegation is also not a proper basis for fraudulent inducement. Plaintiffs' claim that Defendants "covenanted and promised" to do something under the 2019 Agreement is simply a restatement of their breach of contract claim and an attempt to impermissibly transform that claim into another, duplicitous claim sounding in tort. *See Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364, 1366 (S.D. Fla. 2003) (compiling cases) ("[S]tatements or misrepresentations made to induce an individual to enter a contract, if later contained within the terms of the actual contract, cannot constitute a basis on which to bring a fraud claim."); *LynkUs Commc'ns, Inc. v. WebMD Corp.*, 965 So. 2d 1161, 1167 (Fla. 2d DCA 2007) (omitting internal quotations) ("The alleged misrepresentations relate to the breaching party's performance of the contract and do not establish a basis for an independent cause of action in tort for fraudulent inducement."). For the reasons expressed above, Plaintiffs' three alleged bases for fraudulent inducement are legally insufficient to support their claim. Accordingly, Plaintiffs' claim for fraudulent inducement as to the 2019 Agreement must be dismissed.

**Plaintiffs have failed to plead their fraudulent inducement claim with particularity.**

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Moreover, Plaintiffs have also failed to plead fraudulent inducement with sufficient particularity as required by Rule 9(b). Fed. R. Civ. P. 9(b) ("a party must state with particularity the circumstances constituting fraud or mistake"). This means that the party must set forth in their complaint "precisely what statements were made in what documents or oral representations." *Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1364, 1369 (S.D. Fla. 2019). In other words, plaintiff must "plead the who, what, when, where, and how pertaining to the underlying fraud." *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1098 (S.D. Fla. 2019).

Plaintiffs' allegations in Count V fall woefully short of the "particularity" required by Rule 9(b). Plaintiffs have conclusorily alleged, without further support, that Meeker, on some unspecified date, promised "on behalf of himself and Crestview Genetics" that he and Crestview Genetics would uphold various provisions contained in the 2019 Agreement. (SAC ¶ 142; *see also id.* ¶¶ 323, 326). This amounts to nothing more than a mere recitation of the provisions of the 2019 Agreement—a bare attempt to elevate Plaintiffs' breach of contract claim into a fraudulent inducement claim. Additionally, these allegations fail to demonstrate exactly *what* was communicated to Plaintiffs to "induce" them into believing that Crestview Genetics would or would not take some specified action that would "uphold" the 2019 Agreement.

Plaintiffs have also claimed that the Crestview Defendants "hid from Mr. Cambiaso the fact that those Defendants considered the 2009 Agreement to be still active and in force." (SAC ¶ 327). This allegation similarly fails to describe with particularly the individuals who allegedly hid this fact from Mr. Cambiaso, how they did so, and when. Moreover, it fails to specify precisely what information *should have been* disclosed to alert Mr. Cambiaso to the fact that Defendants believed the 2009 Agreement to still be in force.

**Plaintiffs fail to state a claim for breach of fiduciary duty.** Plaintiffs' breach of fiduciary duty claim (Count VIII) fails because Plaintiffs have not pleaded any facts that would, if true, establish

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

that a fiduciary duty existed. (*See* SAC ¶¶ 354–361.) Plaintiffs' claim arises entirely out of the parties' contractual negotiations. It is well-established that when "parties are dealing at arm's length, a fiduciary relationship does not exist[.]" *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 541 (Fla. Dist. Ct. App. 2003); *see Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997). The Crestview Defendants' purported claim to be "equine cloning experts" does not plausibly create a fiduciary relationship, particularly when Mr. Cambiaso is the world's number one ranked polo player. (*See* SAC ¶ 67, 355.) Further, Plaintiffs themselves argue Meeker was not an expert. (SAC ¶ 96). Thus, no fiduciary relationship existed.

**Plaintiffs fail to state a claim for equitable accounting.** Plaintiffs have similarly failed to state a claim for equitable accounting (Count XI). (SAC ¶¶ 377–83.) Equitable accounting claims are available only when a plaintiff has established that a fiduciary relationship exists and an "extensive or complicated account[]" exists. *Chiron v. Isram Wholesale Tours & Travel Ltd.*, 519 So. 2d 1102, 1103 (Fla. Dist. Ct. App. 1988); *Royal Indem. Co. v. Knott*, 101 Fla. 1495, 1507, 136 So. 474, 478 (1931). Plaintiffs have failed to plausibly plead either predicate, so this also fails.

**Plaintiffs fail to state claims under the Florida Uniform Trade Secrets Act.** Plaintiffs have failed to state claims under the Florida Uniform Trade Secrets Act (Counts XVIII and XIX) for the same reasons set forth above as to the DTSA claim. (SAC ¶¶ 553–82); *see, e.g.*, *M.C. Dean, Inc. v. City of Miami Beach, Fla.*, 199 F. Supp. 3d 1349, 1354 (S.D. Fla. 2016) (noting that FUTSA and DTSA have materially identical elements and analyzing claims in tandem). Count XIX also fails for the same reasons as Plaintiffs' Lanham Act claims, discussed above.

**Plaintiffs' spoliation "claims."** Plaintiffs' spoliation of evidence "claims" in Counts XXI and XXII fail because there is no independent cause of action for spoliation. (SAC ¶¶ 591–619); *Martino v. Wal-Mart Stores, Inc.,* 908 So. 2d 342, 346–47 (Fla. 2005); *Trevino v. Ortega*, 969 S.W.2d 950, 951–52 (Tex. 1998). Thus, the "claims" must be dismissed.

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

## II.     THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION.

Plaintiffs initially claimed jurisdiction based on a faulty assertion of diversity. Once exposed, they hurriedly recast their claims in the ill-fitting terms of the Lanham Act and DTSA to cling to federal jurisdiction. As shown above, that fails, leaving the Court with only supplemental jurisdiction. Under 28 U.S.C. § 1367(c)(3), a federal court may decline supplemental jurisdiction over state law claims when it has "dismissed all claims over which it has original jurisdiction." When that dismissal occurs at the outset of the litigation, courts "ordinarily" decline to retain jurisdiction. *Lopez v. ML #3, LLC*, 607 F. Supp. 2d 1310, 1314 (N.D. Fla. 2009) (citing *Carnegie-Mellon Univ. Cohill*, 484 U.S. 343, 350 (1988)). Because Plaintiffs have failed to state a federal claim, the Court should decline to exercise jurisdiction and dismiss Plaintiffs' state law claims.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss this case for failure to state a claim and, as a result, for lack of federal jurisdiction.

Dated: August 25, 2021                          Respectfully submitted,

**DLA PIPER LLP (US)**

By:     *Ryan D. O'Quinn*
        Ryan D. O'Quinn (FBN 513857)
        ryan.oquinn@dlapiper.com
        Maia Sevilla-Sharon (FBN 123929)
        maia.sevillasharon@dlapiper.com
        **DLA Piper LLP (US)**
        200 South Biscayne Blvd. Suite 2500
        Miami, FL 33131
        Telephone: (305) 423-8553

        Jason Lewis (admitted *pro hac vice*)
        jason.lewis@dlapiper.com
        James C. Bookhout (admitted *pro hac vice*)
        james.bookhout@dlapiper.com
        **DLA Piper LLP (US)**
        1900 N. Pearl Street

35

Dallas, TX 75201
Telephone: 214 -743-4549
**NASON YEAGER GERSON
HARRIS & FUMERO, P.A.**

Gary Woodfield (FBN 0563102)
660 U. S. Highway One, Third Floor
North Palm Beach, FL 33408
Telephone: (561) 627-8100
gwoodfield@haileshaw.com

***Counsel for Crestview Farm, LLC, Crestview
Genetics, LLC, and Alan Meeker***

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or plaintiff either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Ryan D. O'Quinn*
Ryan D. O'Quinn

**CRESTVIEW DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
WEST\295888501.3