UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 20-82231-CIV-CANNON/Reinhart

LA DOLFINA S.A., LLC,
a Florida limited liability company, and
ADOLFO CAMBIASO, individually,

      Plaintiffs,

v.

D. ALAN MEEKER, individually,
a/k/a ALAN MEEKER or
DAVID ALAN MEEKER,
CRESTVIEW FARM, LLC,
a Texas limited liability company,
CRESTVIEW GENETICS, LLC,
a Nevada limited liability company,
PARK PLACE POLO TEAM CORPORATION,
a Florida corporation, and
PARK PLACE POLO FIELDS CORPORATION,
a Florida corporation,

      Defendants.

_____/

**DEFENDANTS PARK PLACE POLO TEAM CORPORATION AND PARK PLACE POLO FIELDS CORPORATION'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction), 12(b)(6) (failure to state a claim), and 12(b)(7) (failure to join an indispensable party), defendants Park Place Polo Team Corporation ("Park Place Team") and Park Place Polo Fields Corporation ("Park Place Fields") (collectively, the "Park Place Defendants"), by counsel, respectfully move the Court to enter an Order dismissing them from this action.

As set forth more fully below in the incorporated Memorandum of Law, all the claims alleged against the Park Place Defendants should be dismissed for the following reasons:

1.      In their Second Amended Complaint (the "Complaint"), plaintiffs seek, among other things, declaratory, injunctive, and other equitable relief against the Park Place Defendants, based on an allegation that the Park Place Defendants purchased the three (3) cloned polo ponies at issue herein, together with the rights to seven (7) additional clones.  (*See*, *e.g.*, Compl. ¶¶ 18-19).  However, this allegation is wholly undermined by the Horse Purchase and Sale Agreement (the "Horse Sale Agreement") attached to the Complaint as Exhibit 5, which clearly reveals that a British Virgin Islands entity, Pegasus Rider Limited ("Pegasus Rider"), in fact purchased the disputed clones.  Plaintiffs cannot avoid the controlling language of this exhibit by alleging, without any support or further explanation, that Pegasus Rider somehow acted as an "agent" of the Park Place Defendants.  Even assuming *arguendo* that Pegasus Rider signed the November 2020 Horse Sale Agreement as an agent for the Park Place Defendants (which it did not), Pegasus Rider, as a signatory to the contract by which defendant Crestview Farm, LLC ("Crestview Farm") sold the subject clones, is an indispensable party pursuant to Rule 19, Fed. R. Civ. P.

2.      In violation of Rule 8, Fed. R. Civ. P., plaintiffs' 147-page Complaint improperly commingles allegations and claims against multiple defendants and should therefore be dismissed as an impermissible shotgun pleading.

3.      Plaintiffs' claims under the Lanham Act and the Defend Trade Secrets Act ("DTSA") are legally insufficient and should be dismissed.  Without these federal law claims, this Court lacks subject matter jurisdiction, and dismissal of the entire case is warranted.

4.      Plaintiffs' state-law claims are also deficient as a matter of law.  Plaintiffs allege claims based on inapplicable legal theories and/or fail to allege the requisite elements of each claim.  Moreover, plaintiffs' claims for "preliminary and permanent injunctions" (Counts I and XX) and "spoliation of evidence" (Count XXI) are remedies and not cognizable causes of action.

## MEMORANDUM OF LAW

### I.    INTRODUCTION

Despite the Complaint's extraordinary length, the core dispute in this action is simple and straightforward.  Plaintiffs and defendants Crestview Farm, Crestview Genetics, LLC ("Crestview Genetics"), and D. Alan Meeker ("Mr. Meeker") (collectively, the "Crestview Defendants") in these consolidated actions ask this Court to determine their respective rights and obligations under certain agreements involving the licensing and use of equine genetic material to clone horses, including which of them has the right to possess and/or sell the resulting cloned horses.

In 2009, Crestview Farm and plaintiff Adolfo Cambiaso ("Cambiaso") entered into a Horse Cloning Agreement (the "2009 Crestview Agreement") whereby Crestview Farm was permitted to select genetic material from four horses owned by Cambiaso for the purpose of cloning horses. (Compl. Ex. 1).  The 2009 Crestview Agreement expressly provides that Crestview Farm has "complete and exclusive licensing rights in and to [Cambiaso's] mare[s] and all cloned foals" and that Crestview Farm has the right to "identify the name of the original animal and [Cambiaso] to potential purchasers." (*Id.*)

In November 2020, Crestview Farm entered into the Horse Sale Agreement with Pegasus Rider, whereby Crestview Farm sold to Pegasus Rider three cloned horses and the option to purchase seven additional clones. (Compl. Ex. 5).  In the Horse Sale Agreement, Crestview Farm represents and warrants that pursuant to the 2009 Crestview Agreement, Crestview Farm has "an exclusive license to clone certain horses owned by Adolfo Cambiaso, including a mare by the name of Cuartetera, and sell those clones for [Crestview Farm's] own account." (*Id.*)

After obtaining copies of the Horse Sale Agreement and related Bill of Sale on June 17, 2021 (*See* Compl. ¶ 18), plaintiffs sought leave to amend to "join additional parties implicated by"

3

the newly received documents. [ECF No. 117].  But instead of seeking relief against Pegasus Rider, which is expressly identified as the sole purchaser in the Horse Sale Agreement and Bill of Sale, plaintiffs named the Park Place Defendants, neither of which is a signatory to (or even mentioned in) the Horse Sale Agreement, based on plaintiffs' conclusory and unfounded allegation that Pegasus Rider is an agent of Park Place Polo Team. (*See, e.g.,* Compl. ¶ 18, 43, 83, 205).  The Court need not accept this false allegation as true for purposes of this Motion to Dismiss. *See Megaval Enterprises, Ltd. v. Bank of Am., N.A.*, No. 14-cv-20909, 2014 WL 12609318, *5 (S.D. Fla. Oct. 8, 2014) ("Rather, [plaintiff's] allegations regarding the purported agency relationship . . . are wholly conclusory statements and legal conclusions, which the Court need not accept as true" for the purposes of a motion to dismiss.)

Given plaintiffs' convenient fiction of an unevidenced agency relationship, the claims against the Park Place Defendants are baseless and should be dismissed.  Prior to filing their Complaint, plaintiffs served voluminous subpoenas *duces tecum* on a number of nonparties, including both the Park Place entities.  The subpoenas directed to the Park Place entities each contained 37 separate document requests to which the Park Place entities fully responded.  Even so, plaintiffs do not, and cannot, allege any facts sufficient to support their conclusory allegation that Pegasus Rider acted as an agent.  Thus, plaintiffs fail to adequately allege any connection between either of the Park Place Defendants and the Horse Sale Agreement underlying the claims against the Park Place Defendants.  Indeed, there is no such agency allegation concerning Park Place Fields; as a result, the claims against Park Place Fields are entirely baseless and should be dismissed for this reason alone.

Plaintiffs' Complaint inexplicably seeks to have the Park Place Defendants turn over possession and/or ownership of the cloned horses to plaintiffs, yet fails to name Pegasus Rider,

4

which undoubtedly asserts ownership of the cloned horses pursuant to the Horse Sale Agreement and Bill of Sale.  Plaintiffs compound this pleading deficiency by improperly alleging multiple claims against multiple defendants without specifying which claims apply to which defendants. As a result, plaintiffs' Complaint is an impermissible shotgun pleading.

Additionally, where, as here, plaintiffs' federal-law claims fail to state a claim upon which relief can be granted, and only state-law claims would remain, the Court should dismiss the entire case for lack of subject matter jurisdiction.  Even if this Court has subject matter jurisdiction (which it does not), plaintiffs fail to state a claim upon which relief can be granted against the Park Place Defendants in Count I (preliminary and permanent injunction), Count II (replevin), Count III (declaratory judgment), Count IX (unjust enrichment), Count X (conversion), Count XII (constructive trust), Count XX (preliminary and permanent injunction), and Count XXI (spoliation of evidence), the only counts attempting to allege claims against the Park Place Defendants.

## II.     THE CLAIMS ALLEGED AGAINST THE PARK PLACE DEFENDANTS SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO NAME INDISPENSABLE PARTIES

Rule 19, Fed. R. Civ. P., provides a two-part test for determining whether a party is "indispensable," such that the action cannot proceed in the party's absence. *See Tracfone Wireless, Inc. v. US/Intelicom, Inc.*, 202 F.R.D. 321, 323 (S.D. Fla. 2001). First, the court must determine whether joinder of the absent non-party is required.  *Id.*  A party is required "if (a) in that person's absence, the court cannot accord complete relief among existing parties, or (b) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1). "If the absent party is 'required,' then the court must enter an order joining that party to the action if joinder is 'feasible.'" *See Humana Pharmacy Sols., Inc. v.*

*Michelin*, No. 20-cv-81361-AMC, 2021 WL 3403950, at *3 (S.D. Fla. June 15, 2021) (Cannon, J.)  "An absent party's joinder is not feasible where joinder would defeat the court's subject matter jurisdiction; where the absent party is not subject to the court's personal jurisdiction; or where the absent party properly objects to the venue of the action." *Id.*  If joinder is not feasible, the court proceeds with the second part of the Rule 19 test to "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Fed. R. Civ. P. 19(b).

A.     **Pegasus Rider is a Required Party**

Plaintiffs' allegations regarding the ownership of the cloned horses are inherently inconsistent. *Compare* Compl. ¶¶ 18, 86(g) (alleging that the three horses were sold to Park Place Team), *and* Compl. ¶¶ 123, 236 (alleging that the three horses were sold to the "Park Place Polo Defendants"), *with* Compl. ¶¶ 175, 177 (alleging that the three horses were sold to Pegasus Rider), *and* Compl. ¶¶ 366, 371 (alleging that the three horses were sold to "Borodin / Pegasus"). However, Exhibit 5 to the Complaint, comprised of the Horse Sale Agreement and related Bill of Sale, clearly shows that Pegasus Rider purchased the horses. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.")  Because Pegasus Rider is the owner of the cloned horses at issue and a signatory to the Horse Sale Agreement that plaintiffs seek to invalidate, Pegasus Rider is a required party and must be joined as a defendant.[1/]

---

[1/]     Plaintiffs appear to concede that the purchaser of the cloned horses is a "necessary" party. *See* Notice by Plaintiff Regarding Public Filing of Exhibits [ECF No. 140] ("Defendants sold not just 3, but actually 10 clones of Cuartetera in the last year to parties, the Park Place Polo entities, which entities are now named ***as necessary parties*** in the Second Amended Complaint.") (emphasis added). As addressed above, it is Pegasus Rider, not any "Park Place Polo" entity, that purchased the cloned horses and is therefore a necessary party. (Compl. Ex. 5).

59634038;4

In Count III, plaintiffs seek a broad declaratory judgment concerning the Horse Sale Agreement and any amendments thereto, including a declaration that the Horse Sale Agreement is "void *ab initio*, novated, breached, or otherwise invalid." *See* Compl. Count I, *ad damnum* clause. Plaintiffs' requested declaration(s) directly impact the rights of all signatories to the Horse Sale Agreement, but plaintiffs nonetheless fail to join Pegasus Rider – a signatory to the Horse Sale Agreement and the purchaser of the horses at issue – even though it is indisputable that Pegasus Rider's rights would be adversely impacted by the relief sought. Thus, Pegasus Rider is required to be joined as a party to plaintiffs' declaratory judgment claim (Count III). *See Krigel v. Anthony M. Livoti, Jr., P.A.*, No. 05-61012-CIV, 2006 WL 8431512, *4 (S.D. Fla. June 22, 2006) (holding that policy beneficiaries were required parties to plaintiff's declaratory judgment claim where the beneficiaries' rights would be extinguished if the court granted plaintiff's requested relief); *Kinsale Ins. Co. v. Pultegroup, Inc.*, No. 4:19-cv-544-MW/MAF, 2020 WL 7629312, *1 (N.D. Fla. Apr. 15, 2020) (holding that non-parties were required parties to plaintiff's declaratory judgment claim because the non-parties had "adverse legal interests . . . [that] would be prejudiced if the case were allowed to progress without them."); *see also Raimbeault v. Accurate Mach. & Tool, LLC*, 302 F.R.D. 675, 682 (S.D. Fla. 2014) ("In cases challenging the enforceability or validity of a contract, joinder of all parties to that contract will typically be required.")

Similarly, Pegasus Rider is a required party to plaintiffs' claims for injunctive relief (Counts I and XX), replevin (Count II), unjust enrichment/disgorgement (Count IX), conversion (Count X), constructive trust (Count XII), and spoliation of evidence (Count XXI). Each of these counts concerns the possession, location, and/or ownership of the cloned horses (*see* Compl. Counts I, II, IX, X, XII, XX, and XXI, *ad damnum* clauses), which necessarily impacts Pegasus Rider's rights as purchaser and owner of the subject horses under the Horse Sale Agreement.

Accordingly, Pegasus Rider is a required party for each of these counts.  *See Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1283 (S.D. Fla. 2013) (holding that the owner of the products and trademarks at issue was a required party pursuant to Rule 19 and must be joined for "just adjudication in this matter which seeks injunctive and declaratory relief"); *2 Montauk Highway LLC v. Glob. Partners LP*, 296 F.R.D. 94, 100 (E.D.N.Y. 2013) (holding that the owners of the personal property at issue are required parties to replevin and conversion claims).

> **B.     Pegasus Rider Cannot Be Joined Because the Court Lacks Personal Jurisdiction over Pegasus Rider**

Pegasus Rider is a required party, but its joinder is not possible because this Court lacks personal jurisdiction over Pegasus Rider. "The determination of whether a court has personal jurisdiction over a nonresident party involves a two-part analysis." *Barbachano v. Standard Chartered Bank Int'l (Americas) Ltd.*, No. 10-22961-CIV, 2014 WL 29595, *5 (S.D. Fla. Jan. 3, 2014).  First, the court must determine if either general jurisdiction or specific jurisdiction exists under Florida's long arm statute.  Fla. Stat. § 48.193; *Id.*  Second, the court must determine whether exercising jurisdiction over the defendants comports with due process. *Id.*  Neither portion of the two-part analysis is satisfied as to Pegasus Rider.

To be subject to general jurisdiction under Florida's long arm statute, a nonresident must be engaged in "substantial and not isolated activity within this state" such that the defendant is at home in Florida. *See* Fla. Stat. § 48.193(2). A corporate party is "at home" in only two places: "the place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018).  Pegasus Rider is not "at home" in Florida because it is incorporated in and has its principal place of business in the British Virgin Islands.  (*See* Compl. Ex 5).

For the Court to exercise specific personal jurisdiction, the nonresident must have done one of the enumerated acts in Florida's long arm statute (*i.e.,* breach a contract in Florida, commit a tort in Florida, or operate a business in Florida) and the cause of action must arise from said act(s). *JMA, Inc. v. Biotronik SE & Co. KG*, No. 12-cv-23466, 2013 WL 1402322, *3 (S.D. Fla. Apr. 5, 2013). Here, Pegasus Rider, a British Virgin Islands entity, contracted with Crestview Farm, a Texas entity, to purchase three cloned horses located in South Carolina. (Compl. Ex. 5). There are no allegations in the Complaint that would support a finding that Pegasus Rider breached a contract in Florida, committed a tort in Florida, or operated a business in Florida. Accordingly, Pegasus Rider is not subject to specific personal jurisdiction under the Florida long arm statute.

Even if plaintiffs could satisfy Florida's long arm statute as to Pegasus Rider (which they cannot), Pegasus Rider lacks sufficient minimum contacts with Florida to satisfy the "more restrictive due process" requirements. *See Fincantieri-Cantieri Navali Italiani S.p.A. v. Yuzwa*, 241 So. 3d 938, 943 (Fla. 3d DCA 2018). At most, the Complaint indicates that the cloned horses at issue were temporarily located in Florida for approximately one month before being returned to a more suitable location in South Carolina. (Compl. ¶¶ 186-87). The fact that Pegasus Rider's personal property (the horses) was temporarily located in Florida is insufficient to constitute the requisite minimum contacts necessary to subject Pegasus Rider to jurisdiction.

### C.   Counts I, II, III, IX, X, XII, XX, and XXI of the Complaint Cannot Properly Proceed without Pegasus Rider and Should be Dismissed

Because Pegasus Rider is a required party over which this Court lacks personal jurisdiction, the Court must determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). In so doing, the Court must consider "(1) how prejudicial a judgment would be to the nonjoined and joined parties, (2) whether the prejudice could be lessened depending on the relief fashioned, (3) whether the

judgment without joinder would be adequate, and (4) whether the plaintiff would have any alternative remedies were the case dismissed for nonjoinder." *Tracfone,* 202 F.R.D. at 323. These factors compel dismissal of Counts I, II, III, IX, X, XII, XX, and XXI of the Complaint.[2]

The crux of plaintiffs' claims is that the Crestview Defendants used genetic material from plaintiffs' horse(s) to make and sell cloned horses without authorization. Accordingly, plaintiffs' seek to "quiet title" to the cloned horses, free and clear of any claim to ownership by Pegasus Rider or any other individuals or entities. It would be ineffectual, inadequate – and candidly, prejudicial to the *plaintiffs* – if plaintiffs litigated the case to judgment without joining Pegasus Rider, as title to the horses cannot truly be conveyed to plaintiffs, or otherwise "quieted," without Pegasus Rider's presence as a party to the litigation. *See D'Amico v. Doe*, No. 3:03-cv-2164, 2005 WL 850961,*4 (D. Conn. Jan. 20, 2005) (holding that Rule 19(b) factors weighed in favor of dismissal of plaintiff's declaratory judgment claim to quiet title to paintings purportedly sold without authorization because any judgment obtained without the required party, who claimed he owned and had the right to sell the paintings, would be inadequate and ineffectual). Because Pegasus Rider is a party to the Horse Sale Agreement, by which it acquired ownership rights to the subject clones, there is no means by which the Court might lessen or avoid the clear prejudice that Pegasus Rider would incur if this action proceeds without Pegasus Rider as a named defendant. *See Tracfone*, 202 F.R.D. at 324.

Moreover, plaintiffs have alternate remedies if the claims against the Park Place Defendants are dismissed for nonjoinder. Plaintiffs can continue to litigate any surviving claims

---

[2]    The portion of plaintiffs' declaratory judgment claim (Count III) regarding the 2009 Crestview Agreement and the 2019 Crestview Agreement does not involve Pegasus Rider and thus does not require dismissal. However, all the claims against the Park Place Defendants involve Pegasus Rider's rights and should therefore be dismissed for failure to join an indispensable party.

against the Crestview Defendants, and if plaintiffs obtain a favorable judgment on those threshold

issues (*e.g.*, whether the cloned horses were sold without authorization), plaintiffs may then pursue

appropriate claims against Pegasus Rider regarding possession and/or ownership of the cloned

horses in a court of competent jurisdiction over Pegasus Rider.  Thus, equity and good conscience

require that this Court dismiss Counts I, II, III, IX, X, XII, XX, and XXI.  *Id.* (granting motion to

dismiss for failure to add indispensable party because "in equity and good conscience," the action

could not proceed without the owner of the patent at issue); *D'Amico*, 2005 WL 850961 at *6.

### III.   THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED AS AN IMPROPER SHOTGUN PLEADING

Far from "a short and plain statement of claim" with "simple, concise, and direct terms," as

required by Rule 8, Fed. R. Civ. P., plaintiffs' Complaint contains 619 numbered paragraphs

spanning 147 pages. Despite its (unnecessary) length and repetitive allegations, the Complaint

improperly asserts "multiple claims against multiple defendants without specifying which applies

to which." *Yeyille v. Miami Dade Cty. Pub. Sch.*, 643 F. App'x 882, 884 (11th Cir. 2016).  As a

result, plaintiffs' Complaint is an impermissible shotgun pleading that should be dismissed. *Id.*

("The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the

defendants adequate notice of the claims against them and the grounds upon which each claim

rests.")

For example, on the first page of the Complaint, plaintiffs collectively define Park Place

Team and Park Place Fields as the "Park Place Polo Defendants." Plaintiffs then repeatedly (and

confusingly) use the defined term "Park Place Polo Defendants" interchangeably with other

undefined terms, thereby rendering it impossible to discern the alleged actions taken and/or

transactions entered into by each defendant. *See* Compl. ¶¶ 285, 409, 446 ("Park Place Polo

entities" or "Park Place Polo Entities"); Compl. ¶¶ 83, 185, 188, 197, 235, 243, 246, 254, 257, 269,

11

281, 302 ("Park Place Defendants"); Compl. ¶¶ 86(h), 143, 223, 258-59, 303, 419, 447, 496, 500-01, 520, 547-48, 593 ("Park Place Polo"); Compl. ¶¶ 264, 279, 281, 398, 448-53, 522, 524-25, 544 ("Park Place"). Plaintiffs further compound the confusion by including irrelevant allegations about a non-party entity named "Park Place Polo, Ltd." (Compl. ¶¶ 176, 216, 218-19).

Plaintiffs' imprecise allegations and sporadic use of defined terms create ambiguities as to which claims are asserted against which defendants. For instance, the first paragraph of plaintiffs' Lanham Act – False Advertising claim (Count XIII) indicates that the claim is asserted against the "Crestview Defendants" [defined by plaintiffs to include Mr. Meeker, Crestview Farm, and Crestview Genetics]. (Compl. ¶ 391). However, various other paragraphs within Count XIII include allegations against "Defendants," which is not a defined term. (Compl. ¶¶ 396, 397, 405, 410, 415, 417, 419, 421-30, 433-34, 438). Additionally, in the *ad damnum* clause for Count XIII, plaintiffs "demand judgment and relief against the Crestview Defendants, jointly and severally, ***and respectfully requests*** [sic] ***judgment against Defendants*** . . . .", arguably (and improperly) expanding the claim to include all defendants. (Compl. at p. 108) (emphasis added). Similarly, in Count X (conversion), plaintiffs purport to allege the claim against "all Defendants" (*see* Compl. ¶ 370), but fail to include any substantive allegations about the Park Place Defendants and/or how the Park Place Defendants purportedly converted plaintiffs' property. Plaintiffs continue this pattern of amorphous, inconsistent, and confusing allegations throughout the Complaint, including, without limitation, in Counts XI, XIV, XV, XVI, XVII, XVIII, and XIX. Thus, it is unclear whether these (and other) claims are alleged against all defendants, against just the Crestview Defendants, or against some other combination of defendants.

Plaintiffs exacerbate this pleading deficiency by repeating and realleging paragraphs 1 through 265 in each of these counts. (*See, e.g.,* Compl. ¶¶ 266, 287, 370). By so doing, plaintiffs

12

incorporate paragraphs relating to 14 other counts against 3 other defendants, none of which concern the Park Place Defendants.  Because plaintiffs' Complaint asserts "multiple claims against multiple defendants without specifying which applies to which" and fails to "give defendants adequate notice of the claims against them," the Complaint constitutes an impermissible shotgun pleading. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (affirming dismissal of the complaint as an improper shotgun pleading where the complaint reincorporated all 146 paragraphs of "General Factual Allegations" into each count and was "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged"); *Yeyille*, 643 F. App'x at 884 (dismissing plaintiff's 148-page "cumbersome, confusing complaint[]" as an improper shotgun pleading).

## IV.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION

### A.   Plaintiffs' Federal-Law Claims Fail and, as a Result, Plaintiffs' Remaining State-Law Claims Should be Dismissed

As discussed above, plaintiffs' ambiguous allegations make it impossible for the Court and defendants to discern precisely which claims are alleged against which defendants. To the extent that plaintiffs are asserting Lanham Act and DTSA claims against the Park Place Defendants, however, these claims should be dismissed for all the reasons articulated in the Crestview Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (the "Crestview Motion to Dismiss") [ECF No. 144], which the Park Place Defendants adopt and incorporate herein as applicable. Upon proper dismissal of these federal claims (Counts XIII through XVII, inclusive), this Court would lack subject matter jurisdiction over the remaining state-law claims. "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without

prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Rosario v. Miami-Dade Cty.*, 490 F. Supp. 2d 1213, 1227 (S.D. Fla. 2007) (dismissing plaintiffs' remaining state-law claims after determining that plaintiffs failed to state a § 1983 claim under federal law).[3/]

**B.    Plaintiffs' Replevin Claim Should be Dismissed for Lack of Subject Matter Jurisdiction Because the Court Lacks *In Rem* Jurisdiction over the Property at Issue**

Plaintiffs' replevin claim (Count II) also should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P.  Under Florida law, "replevin is a possessory action that requires *in rem* jurisdiction over the subject matter."  *Prou v. Giarla*, 62 F. Supp. 3d 1365, 1378 (S.D. Fla. 2014).  Thus, "an action for replevin cannot be successfully maintained unless the property is within the state and subject to the jurisdiction of its courts."  *Id.*

Here, plaintiffs' replevin count seeks a writ requiring that the "three Cuartetera clones B01, B02, and B03 presently in the possession and control of the Park Place [sic]" be immediately turned over to plaintiffs. (Compl. ¶ 279; Count II, *ad damnum* clause). Yet plaintiffs allege that these cloned horses are in South Carolina, not Florida. (Compl. ¶¶ 187, 584).  Accepting this allegation as true, plaintiffs do not, and cannot, properly allege *in rem* jurisdiction over the cloned horses.  Accordingly, plaintiffs' replevin claim must be dismissed for lack of subject matter jurisdiction.  *See Prou*, 62 F. Supp. 3d at 1378 (dismissing plaintiff's replevin claim for lack of subject matter jurisdiction because the court did not have *in rem* jurisdiction over the property at issue, which plaintiff alleged was in California).

---

[3/]      Contrary to plaintiffs' allegation that this "Court also has original subject matter jurisdiction pursuant to 22 [sic] U.S.C. §§ 2201 and 2202" (Compl. ¶ 90), "[a]n action under the Declaratory Judgment Act, does not, of itself, confer jurisdiction upon the federal courts; therefore, a suit brought under the Act must state some independent source of jurisdiction, such as the existence of diversity or the presentation of a federal question." *Sellers v. Nationwide Mut. Fire Ins. Co.*, 968 F.3d 1267, 1273 (11th Cir. 2020).

V.   **THE COMPLAINT FAILS TO STATE ANY CAUSE OF
      ACTION AGAINST THE PARK PLACE DEFENDANTS**

Despite plaintiffs' actual knowledge that Pegasus Rider is the purchaser and owner of the subject clones pursuant to the Horse Sale Agreement (*see* Compl. Ex. 5), plaintiffs purposely fail to include Pegasus Rider as a defendant. Instead, plaintiffs name the Park Place Defendants, even though neither of the Park Place Defendants is a party to the Horse Sale Agreement and, accordingly, neither of them has any ownership interest or possessory rights in the subject clones. In any event, all plaintiffs' claims against the Park Place Defendants are legally deficient, as explained further below, and should be dismissed.

A.   **Plaintiffs Fail to State a Claim for Unjust Enrichment
      (Count IX) Against the Park Place Defendants**

Plaintiffs' unjust enrichment claim fails because plaintiffs do not, and cannot, allege that they conferred a direct benefit on the Park Place Defendants. A "claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant, (2) the defendant voluntarily accepted and retained that benefit, and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Cutler v. Voya Fin., Inc.*, No. 18-cv-20723, 2018 WL 4410202, *10 (S.D. Fla. Aug. 23, 2018), *report and recommendation adopted,* 2018 WL 7627867 (S.D. Fla. Oct. 26, 2018). "No unjust enrichment claim is actionable unless a plaintiff has conferred a *direct benefit* on the defendant." *Id.* (emphasis in the original). "A benefit that a defendant gains that does not come directly from the plaintiff does not give rise to a claim for unjust enrichment." *Id.*

Here, plaintiffs did not confer a direct benefit on the Park Place Defendants because the cloned horses did "not come directly from the plaintiff[s]." *Id.* Leaving aside the fact that neither of the Park Place Defendants purchased or owns the subject clones, the cloned horses were

15

purchased and received (by Pegasus  Rider) from Crestview Farm, not plaintiffs. (Compl. Ex. 5)
Even if present ownership of the cloned horses constitutes a direct benefit from plaintiffs (which
the Park Place Defendants expressly deny), Pegasus Rider – and not the Park Place Defendants –
is the present owner of the horses, as evidenced by the exhibits attached to plaintiffs' Complaint,
and thus any benefit from the cloned horses was conveyed to Pegasus Rider, not the Park Place
Defendants. Accordingly, plaintiffs' unjust enrichment claim against the Park Place Defendants is
deficient as a matter of law and should be dismissed.  *See Peoples Nat. Bank of Com. v. First
Union Nat. Bank of Fla., N.A.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996) (dismissing an unjust
enrichment claim because any benefit conferred on defendants did not come directly from the
plaintiff).

**B.      Plaintiffs' Conversion Claim (Count X) Fails Because
Plaintiffs Do Not Allege a Wrongful Act of Dominion Over
<u>Property of Another and/or a Demand for Return of the Property</u>**

"Under Florida law, the elements of conversion are (1) an act of dominion wrongfully
asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *TracFone
Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1299 (S.D. Fla. 2016).  "[T]he essence of an
action for conversion is not the acquisition of property by the wrongdoer . . . but rather the refusal
to surrender the possession of the subject personalty after demand for possession by one entitled
thereto." *Alton v. Liberty Med. Supply, Inc.*, No. 07-cv-14094, 2007 WL 9702560, *2 (S.D. Fla.
Sept. 21, 2007), *report and recommendation adopted,*  2007 WL 9702607 (S.D. Fla. Oct. 23,
2007).  Thus, a "demand [by the plaintiff to the defendant] is an essential element [in any claim
for conversion] and failure to make such a demand or allege the futility of doing so is fatal." *Id*.

Plaintiffs do not include any substantive allegation in Count X regarding the Park Place
Defendants and/or how they purportedly converted plaintiffs' property.  Indeed, by plaintiffs' own

admission, Cuartetera, the horse that was cloned, is owned by La Dolfina S.A., a non-party, not by plaintiffs. (Compl. Ex. 11, ¶ 9).  For these reasons alone, plaintiffs' conversion claim against the Park Place Defendants should be dismissed. *See Magluta*, 256 F.3d at 1284. Moreover, even assuming that plaintiffs are alleging that the Park Place Defendants converted and possess the cloned horses, plaintiffs fail to allege that this constitutes "an act of dominion wrongfully asserted" over plaintiffs' property.

In addition, plaintiffs fail to allege that they made any demand for the return of the cloned horses or that such a demand would be futile, as necessary to plead a claim for conversion. *See Alton*, 2007 WL 9702560 at *2 (granting defendants' motion to dismiss plaintiffs' conversion claim because plaintiffs failed to plead demand or the futility of making a demand); *Catano v. Capuano*, No. 18-20223-CIV, 2020 WL 639406, at *11 (S.D. Fla. Feb. 11, 2020) (granting defendant's motion to dismiss the conversion claim because plaintiff failed to allege demand for the return of the purportedly converted property, which is "an essential element of [plaintiff's] conversion claim").

### C.      Plaintiffs' Constructive Trust Claim (Count XII) Should Be Dismissed Because Plaintiffs Have Adequate Remedies at Law

Where, as here, a plaintiff has an adequate remedy at law, no claim for constructive trust can exist. *See CSC Holdings, Inc. v. Kimtron, Inc.*, 47 F. Supp. 2d 1361, 1365 (S.D. Fla. 1999); *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1296 (S.D. Fla. 2007). The crux of all of plaintiffs' claims is that the Crestview Defendants were granted certain rights under the 2009 Crestview Agreement and/or the 2019 Crestview Agreement to use plaintiffs' equine genetic material and/or the name(s) of plaintiffs' horses, but the Crestview Defendants exceeded the scope of the authorized uses. (Compl. ¶ 385).  As plaintiffs' Complaint makes clear, plaintiffs have adequate remedies at law – namely, monetary damages for any breach(es) of contract and/or

17

statutory violation(s) by the Crestview Defendants.  Indeed, plaintiffs assert that they have sold clones themselves, thereby establishing a market value for similar clones.  The fact that plaintiffs belatedly concluded that selling clones might dilute their competitive advantage, or that plaintiffs "may be concerned that such damages would not be sufficient or may be difficult to collect" are not a proper basis for imposition of a constructive trust.  *CSC Holdings,* 47 F. Supp. 2d at 1365; *see also* Compl. ¶ 309 ("The imposition of such a constructive trust is to serve as a method of securing Defendants' performance . . . .").  Accordingly, plaintiffs' constructive trust claim is deficient as a matter of law and should be dismissed.  *Id.* (dismissing plaintiff's constructive trust claim because plaintiff had adequate remedies at law); *Garcia*, 528 F. Supp. 2d at 1296 (dismissing plaintiffs' constructive trust claim with prejudice because plaintiffs had an adequate remedy at law and thus were "not entitled to seek a constructive trust.")

### D.    Plaintiffs Fail to State a Declaratory Judgment Claim Against the Park Place Defendants

Plaintiffs cannot allege a declaratory judgment claim against the Park Place Defendants because the Park Place Defendants are not parties to the contracts about which plaintiffs seek a declaration.  In Count III of the Complaint, plaintiffs seek a declaratory judgment regarding the parties' rights under, and/or the validity of, both the 2009 Crestview Contract and the Horse Sale Agreement.[4]  Because the Park Place Defendants are not parties to either of these contracts, any declaratory relief against the Park Place Defendants would not "serve a useful purpose in clarifying and settling" the rights of the actual parties to these contracts.  *See Bestoso v. BBVA Compass*

---

[4]    This is yet another example of how plaintiffs' Complaint is an impermissible shotgun pleading, as plaintiffs have failed to "separate each cause of action or claim for relief into a different count" (*i.e.*, one count seeking a declaratory judgment against the parties to the 2009 Crestview Contract, and a separate count seeking a declaratory judgment as to the Horse Sale Agreement). *See Yeyille*, 643 F. App'x at 884.

*Bank*, No. 17-cv-60884, 2017 WL 5634936, *5 (S.D. Fla. July 25, 2017).  Plaintiffs therefore fail

to state a viable declaratory judgment claim against the Park Place Defendants. *See AICON 58-18*

*Corp. v. King Ocean Servs., Ltd.*, No. 17-CV-61513-WPD, 2018 WL 6522190, *2 (S.D. Fla. Jan.

12, 2018) (granting motion to dismiss declaratory judgment claim because the defendant was not

a party to the subject contract).

### E.   Plaintiffs' Spoliation "Claim" Fails Because There is No Independent Cause of Action for Spoliation and, Moreover, Plaintiffs Do Not Allege Destruction or Loss of any Evidence

Florida does not recognize an independent cause of action for spoliation of evidence. *See,*

*e.g., Debose v. Univ. of S. Fla.*, 178 F. Supp. 3d 1258, 1274 (M.D. Fla. 2016) (citing *Martino v.*

*Wal-Mart Stores, Inc.,* 908 So. 2d 342, 345 (Fla. 2005)).  For this reason alone, Count XXI of

plaintiffs' Complaint should be dismissed with prejudice. *See id.* (dismissing plaintiff's spoliation

of evidence claim *with prejudice*).

Even if spoliation of evidence were an independent cause of action (which it is not),

plaintiffs fail to allege that the Park Place Defendants destroyed or lost any evidence. *See Tarpley*

*v. Miami-Dade Cty., Fla.*, No. 15-cv-20997, 2015 WL 13554983, at *3 (S.D. Fla. Oct. 14, 2015)

("Spoliation is the intentional destruction, mutilation, alteration, or concealment of evidence.").

The evidence at issue in plaintiffs' spoliation claim is the three cloned horses, which plaintiffs

assert is relevant to "prove that Defendants did sell clones of Plaintiffs' renowned Cuartetera."

(Compl. ¶ 596). Yet plaintiffs do not, and cannot, allege that the cloned horses are lost or destroyed.

Plaintiffs only allege that the horses are in South Carolina, not Florida. (Compl. ¶¶ 593-94)[5/]  The

fact that the horses are not in plaintiffs' preferred location does not constitute the destruction or

---

[5/]    The horses were purchased in South Carolina and currently reside there because South
Carolina has more favorable conditions for the development of young horses. (Compl. Ex. 5).

loss of evidence. *See Perciavalle v. Carnival Corp.*, No. 12-cv-20996, 2012 WL 2412179, *2 (S.D. Fla. June 26, 2012) (holding that plaintiff failed to allege that defendant actually destroyed or lost evidence, as defendant's failure to disclose certain names prior to discovery was "not equivalent to destroying evidence"). Thus, plaintiffs' spoliation of evidence claim should be dismissed. *Id.*

### F.      Plaintiffs' Claims for Injunctive Relief are Remedies, Not Causes of Action

In Counts I and XX, plaintiffs attempt to allege claims for preliminary and permanent injunctions.  However, "injunctive relief is a remedy, not an independent cause of action." *See Humana*, 2021 WL 3403950 at *3 (Cannon, J.)  Therefore, Counts I and XX cannot stand on their own and should be dismissed.  *See id.* (dismissing "independent, substantive claim for preliminary and permanent injunctive relief"); *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1288 (M.D. Fla. 2009), *aff'd*, 451 Fed. App'x 862 (11th Cir. 2012) (dismissing count of plaintiff's complaint requesting a permanent injunction).

## VI.      CONCLUSION

Based on the foregoing, the Park Place Defendants respectfully request that the Court enter an Order (i) dismissing all claims alleged against the Park Place Defendant, and (ii) granting the Park Place Defendants such other and further relief as the Court deems appropriate.

Respectfully submitted,

Dated:  September 21, 2021

**AKERMAN LLP**
777 South Flagler Drive
Suite 1100 West Tower
West Palm Beach, Florida  33401
Telephone:           (561) 653-5000
Facsimile:           (561) 659-6313
Primary E-mail:      robert.chaskes@akerman.com
Secondary E-mail:    bria.rios@akerman.com
Primary E-mail:      noelle.pankey@akerman.com
Secondary E-mail:    beatrice.terrell@akerman.com

By: */s/Robert I. Chaskes*
    ROBERT I. CHASKES
    Florida Bar No. 0102271
    NOELLE P. PANKEY
    Florida Bar No. 0044727

    *Counsel for Park Place Polo Team Corporation*
    *and Park Place Polo Fields Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 21, 2021, I caused the foregoing document to be electronically filed with the Clerk of Court using CM/ECF, and that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/Robert I. Chaskes*
Robert I. Chaskes

59634038;4