# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

**CASE NO. 20-82231-CIV-AMC/BER**
**(21-81066-CIV-AMC/BER consolidated)**

**LA DOLFINA S.A., LLC,**
**a Florida Limited liability company, and**
**ADOLFO CAMBIASO, individually,**

       **Plaintiffs,**

**v.**

**D. ALAN MEEKER, individually,**
**a/k/a ALAN MEEKER,**
**a/k/a DAVID ALAN MEEKER,**
**CRESTVIEW FARM, LLC,**
**a Texas limited liability company, and**
**CRESTVIEW GENETICS, LLC,**
**a Nevada limited liability company,**
**PARK PLACE POLO TEAM CORPORATION,**
**a Florida corporation, and**
**PARK PLACE POLO FIELDS CORPORATION,**
**a Florida corporation,**

       **Defendants.**

_____

**CRESTVIEW FARM, L.L.C,**

       **Plaintiff,**

**v.**

**ADOLFO CAMBIASO, LA DOLFINA, S.A., and**
**LA DOLFINA, S.A., LLC,**
       **Defendants and**
       **Counterclaim/Third Party Complaint Plaintiffs,**

**v.**

**CRESTVIEW FARM, L.L.C.,**
       **Counterclaim Defendant, and**
**D. ALAN MEEKER and CRESTVIEW GENETICS,**
       **Third Party Defendants.**

_____

1

## AMENDED MOTION OF THE MOVING PARTIES AND THIRD PARTY TO DISMISS CRESTVIEW GENETICS' AMENDED COUNTERCLAIM

Pursuant to Rules 12(b)(1), 12(b)(6), 12(g)(1), and 12(h)(1)(B)(ii), 12(b)(3), 8(a) and 9(g), and 28 U.S.C. § 1332, the Moving Parties Adolfo Cambiaso, and La Dolfina S.A., LLC (collectively, "Plaintiffs") and third party La Dolfina, S.A., (all collectively the "Moving Parties") respectfully submit this Motion to Dismiss the Amended Counterclaim [DE 223] of Crestview Genetics LLC ("Genetics"). This motion has been amended as to L.R. 7.1.

### Summary of the Argument

The Amended Counterclaim should be dismissed because of the numerous specific deficiencies of the Amended Counterclaim, any one of which merit dismissal. Those deficiencies include: (1) as a threshold matter, Genetics has not yet filed an Answer, and therefore, pursuant to Rule 13, Genetics is procedurally barred from bringing this premature Counterclaim at this time; (2) under Rule 12(b)(6), the Intercorporate Conspiracy Doctrine bars the conspiracy claim; (3) also under Rule 12(b)(6), the Independent Tort Doctrine bars the tort claims; (4) the pleading is a shotgun pleading because it repeats all allegations in all claims and commingles parties; and (5) the "Prayer for Relief" common to all counts [DE 223 * 21-22] seeks remedies that are not permissible by law or properly plead under Rules 8(a) and 9(g) for some counts. For all of these grounds, this Response is therefore filed before any further response is made to the Amended Counterclaim.[1]

---

[1] To the extent the Court does not dismiss the Counterclaim for the inherent defects of that pleading (failure to state threshold amount and shotgun pleading), the instant Motion nevertheless suspends the answer obligation of The Moving Parties with respect to responding to any of the Counterclaims not specifically addressed herein. *Raptor LLC v. Odebrecht Constr., Inc.*, No. 17-21509-CIV, 2018 WL 11352677, at *1 (S.D. Fla. Jan. 10, 2018) "[A] party need not file an answer while a partial motion to dismiss is pending" (quoting *Ferk v. Mitchell*, No. 14-21916-CIV, 2014 WL 7369646, at *1, n.1 (S.D. Fla. Dec. 29, 2014); Taylor v. Pekerol, No. 5:14-CV-96, 2016 WL 7985259, at *1 (N.D. Fla. Mar. 10, 2016)); *Beaulieu v. Bd. of Trustees of Univ. of W. Fla.*, No. 3:07-cv-30, 2007 WL 2020161, at *2 (N.D. Fla. Jul 9, 2007) (collecting cases); see also 5B *Wright*

Additionally, (5) The Moving Parties move under Rule 12(g)(1) for the Court to deny as moot Genetics' previously-filed Motion to Dismiss [DE 37], to the extent it was based upon subject matter jurisdictional challenges, because pursuant to Rule 12(h)(1)(B)(ii), Genetics has now waived any such challenge to the subject matter jurisdiction of this Court by bringing the Amended Counterclaim seeking affirmative relief from this Court.[2] The Court should dismiss the Amended Counterclaim without prejudice to Genetics bringing this action in state Court in Palm Beach County, Florida. The Court has determined that Genetics is subject to personal jurisdiction in Florida, and has found the locus of the personal jurisdiction over Genetics in Florida to be centered in Palm Beach County, Florida.

### Argument

### I.      General Considerations.

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662(2009). A complaint or counterclaim "must . . . contain sufficient factual

---

*& Miller, Fed. Prac. & Proc.* § 1346 (3d ed.) ("[T]he filing of a motion that only addresses only part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion.").

[2] Defendants are wrong when they assert [DE 223 *¶5] that the Court previously decided subject matter jurisdiction over the Counterclaim or the underlying Amended Complaint. In the prior Order of the Court on June 21, 2021, in DE 81, the Court did not make any determination as to the subject matter jurisdiction of this Court, because that Order determined only personal jurisdiction was proper in Florida over Genetics. [addressed at ¶ 11 of that Order]. The underlying motion the Court was addressing, Genetics' Motion to Dismiss [DE 37], was specifically based only upon challenges to personal jurisdiction and Rule 12(b)(6) arguments. However, to the extent there is any continuing challenge to the subject matter jurisdiction of this Court by Genetics based upon a contention that the Plaintiffs' federal question claims are purportedly deficient, the Court should now deny as moot the balance of Genetics' previously-filed Motion to Dismiss because of the waiver by Genetics and its owner Farm in requesting affirmative relief before this Court. [DE 223 *20, Prayer for Relief].

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly,* 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.,* 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993)).

## II.     Specific Deficiencies of the Amended Counterclaim Which Support Dismissal.

### 1.     The Amended Counterclaim Is Procedurally Premature.

"Rule 13 provides that a counterclaim, whether compulsory or permissive, must be raised in 'a pleading' by a 'pleader.' A counterclaim is not one of the pleadings recognized under Rule 7(a); therefore, ***if a defendant seeks to assert a counterclaim, it must do so in its answer***." *Bibb Cty. Sch. Dist. v. Dallemand*, No. 5:16-CV-549 (MTT), 2019 WL 1519299, at *3 (M.D. Ga. Apr. 8, 2019) [citation omitted, emphasis added].   Herein, Genetics has yet to file an Answer, having chosen to file a Motion to dismiss the Second Amended Complaint [DE 122].   Therefore, unless and until an Answer is filed to the Second Amended Complaint under Rule 13, the Amended Counterclaim is premature.   While the Amended Counterclaim purports to be a pleading, it has been filed as a standalone pleading document, which is not permitted under Rules 13 and 7(a) of the Federal Rules of Civil Procedure.   *Bib,* supra.   Therefore, Genetics' Amended Counterclaim is premature and should be dismissed in its entirety.

### 2.     The Intercorporate Conspiracy Doctrine Bars Count VI as a Matter of Law.

Count VI alleges that at all of the Moving Parties conspired to perpetrate the tort of conversion by the wrongful taking of Storm Cat 02. [DE 223 ¶¶ 62–66].   The Amended Counterclaim alleges that Cambiaso owns La Dolfina and "at all relevant times, Cambiaso was acting both on his own behalf and on behalf of and as primary agent for La Dolfina." [DE 223 ¶¶

9, 31]. By conflating and commingling all of the Moving Parties together in the Amended Counterclaim, Genetics is specifically ascribing and attributing the acts and omissions of each of the Moving Parties to the other. By doing so, however, Genetics has pled itself into the bar of the Intercorporate Conspiracy Doctrine.

"The intercorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actions necessary for the formation of a conspiracy. Simply put, under the doctrine, "**a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.**" *McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc) [emphasis added]. "The doctrine is based on the nature of a conspiracy and the legal conception of a corporation. It is by axiomatic that a conspiracy requires a meeting of the minds between two or more persons to accomplish a common and unlawful plan. However, under basic agency principles, the acts of a corporation's agents are considered to be those of a single legal actor. Therefore, just as it is not legally possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself." *Id.* [citations omitted].

Count VI of the Amended Counterclaim, as pled, ascribes all the acts of the Counterclaim-Defendants to one another, but alleges that all of those individual actors were agents of La Dolfina. [DE 223 ¶¶ 9, 31, 62-66]. Genetics has thus pled right into the bar of the Intercorporate Conspiracy Doctrine because a company cannot conspire with its employees and agents. The doctrine stems from basic agency principles that "attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor." *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 603 (5th Cir. 1981); *see also United States v. Hartley, 678 F.2d 961,*

*970* (11th Cir. 1982). "According to the intracorporate conspiracy doctrine.... a civil conspiracy claim will not succeed where the only members of the alleged conspiracy are a corporation and/or its officers.... This is because the actions of corporate agents, acting within the scope of their employment, *are attributed to the corporation itself, thereby negating the multiplicity of actions* needed for a conspiracy." *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc*., 302 F. Supp. 3d 1319, 1325-26 (M.D. Fla. 2016). [emphasis added].

While Florida courts recognize the 'personal stake' exception to the intra-corporate conspiracy doctrine", a corporate agent "must have acted in their personal interests, wholly and separately from the corporation." *Richard Bertram, Inc. v. Sterling Bank & Trust*, 820 So.2d 963, 966 (Fla. 4th DCA 2002)). [internal quotations omitted] (quoting *Microsoft Corp. v. Big Boy Distr. LLC*, 589 F. Supp. 2d 1308, 1323 (S.D. Fla. 2008). [emphasis added].   "[T]he personal stake exception (of the intra corporate conspiracy doctrine) *requires more than some incidental personal benefit* – the exception applies only 'where the corporate employees are shown to have been motivated *solely by personal bias*.'" *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc*., 302 F. Supp. 3d 1319, 1325-26 (M.D. Fla. 2016). "*The mere fact that one or two individuals own and control the stock structure of a corporation does not lead* inevitably to the conclusion that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders to the extent that the debts of the corporation should be imposed upon them personally." *Advertects v. Sawyer Indus., Inc.*, 84 So. 2d 21, 23 (Fla. 1955). [emphasis added].

Herein, Genetics does not plead any personal benefit, incidental or otherwise, with respect to the commingled claims.  The only relation amongst the Counterclaim-Defendants that is alleged is a bare-bones allegation of agency, which in fact defeats the claim because of the doctrine.  See, e.g. *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc*., 302 F. Supp. 3d 1319, 1325 (M.D. Fla. 2016)

("According to the intercorporate conspiracy doctrine, a civil conspiracy claim **will not succeed** where the only members of the alleged conspiracy are a corporation and/or its officers."). [emphasis added]. ***The same is true of a corporation's owners.*** See *Moody v. InTown Suites*, No. 1:04-CV-1198-TWT- AJB, 2006 WL 8431638, at *77–78 (N.D. Ga. 2006) [emphasis added].

Genetics has thus pled itself right into the bar of the Intercorporate Conspiracy Doctrine by pleading that (1) the only alleged members of this conspiracy are Mr. Cambiaso, La Dolfina, and the La Dolfina Sub, but that (2) Mr. Cambiaso is the owner of La Dolfina and its alleged primary agent; (3) La Dolfina Sub was "created" by Mr. Cambiaso and La Dolfina and acted together, as representative, agents and as co-parties of the relevant Agreements. [DE 223 ¶¶ 4, 9, 31, 72]. Conversely, there are no allegations that separate Mr. Cambiaso from the La Dolfina entities, such as allegations that Mr. Cambiaso acted outside the scope of his authority or for any independent purpose. Genetics instead avers that "at all relevant times, Cambiaso was acting both on his own behalf and on behalf of and as the primary agent for La Dolfina." [DE 223 ¶9]. Accepting Genetics' own allegations as true, as a matter of law, Mr. Cambiaso cannot conspire with either of the La Dolfina entities. *HRCC, Ltd.,* supra, *Moody,* supra.

The allegations of the Genetics Amended Counterclaim join La Dolfina and Mr. Cambiaso together as "members" of this "conspiracy" as entity and owner/agent.  [DE 223 ¶¶ 62-64]. Genetics thus pleads itself right into the bar of the doctrine, because Genetics pleads the actions of Mr. Cambiaso are as agent and owner of La Dolfina, thus attributed to the corporation itself.  With the operative pleading, the Amended Counterclaim, alleging what is essentially only one actor, the Counterclaim suffers the fatal flaws of lack of multiplicity of actors and actions, because the Intra-corporate Conspiracy Doctrine stems from basic agency principles that "attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single

legal actor." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981); *see also United States v. Hartley, 678 F.2d 961, 970* (11th Cir. 1982). "According to the intracorporate conspiracy doctrine…. a civil conspiracy claim will not succeed where the only members of the alleged conspiracy are a corporation and/or its officers…. This is because the actions of corporate agents, acting within the scope of their employment, ***are attributed to the corporation itself, thereby negating the multiplicity of actions*** needed for a conspiracy." *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 302 F. Supp. 3d 1319, 1325-26 (M.D. Fla. 2016). [emphasis added].

While Florida courts recognize the 'personal stake' exception to the intra-corporate conspiracy doctrine", a corporate agent "must have acted ***in their personal interests, wholly and separately from the corporation***." *Richard Bertram, Inc. v. Sterling Bank & Trust*, 820 So.2d 963, 966 (Fla. 4th DCA 2002)). [internal quotations omitted, emphasis added] (quoting *Microsoft Corp. v. Big Boy Distr. LLC*, 589 F. Supp. 2d 1308, 1323 (S.D. Fla. 2008). [emphasis added]. "[T]he personal stake exception (of the intra corporate conspiracy doctrine) ***requires more than some incidental personal benefit*** – the exception applies only 'where the corporate employees are shown to have been motivated ***solely by personal bias***.'" *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 302 F. Supp. 3d 1319, 1325-26 (M.D. Fla. 2016). "***The mere fact that one or two individuals own and control the stock structure of a corporation does not lead*** inevitably to the conclusion that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders to the extent that the debts of the corporation should be imposed upon them personally." *Advertects v. Sawyer Indus., Inc.*, 84 So. 2d 21, 23 (Fla. 1955). [emphasis added].

Further, the Amended Counterclaim fails to allege any facts that Mr. Cambiaso had any personal interest that was separate and apart from that of the La Dolfina entity. Therefore, Genetics cannot avail itself of the personal interest exception to the intercorporate conspiracy doctrine. See

*Richard Bertram, Inc. v. Sterling Bank & Trust*, 820 So.2d 963, 966 (Fla. 4th DCA 2002)). Indeed, Genetics specifically does not plead that Mr. Cambiaso acted in his personal interest, wholly and separately from La Dolfina, and instead avers that at all times relevant, Mr. Cambiaso acted as agent for and on behalf of La Dolfina. [DE 223 ¶9].

Finally, as discussed herein below, because the Independent Tort Doctrine bars the torts underlying the alleged conspiracy, the conspiracy claim itself fails.  Under Florida law, in order to state a viable claim for civil conspiracy, a plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Smith v. Jackson*, No. 16-81454-CIV-MARRA (S.D. Fla. Mar. 19, 2017) (quoting *Phillip Morris USA, Inc. v. Russo*, 175 So. 3d 681, 686 n.9 (Fla. 2015) (citing *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997).  A civil conspiracy derives from the underlying claim that forms the basis of the conspiracy, accordingly ***a claim that is found not to be actionable cannot serve as the basis for a conspiracy claim***. *Smith v. Jackson*, No. 16-81454-CIV-MARRA (S.D. Fla. Mar. 19, 2017) [emphasis added] (citing *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007); *Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1353 (S.D. Fla. 2005) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999). However, if the underlying tort is not actionable, then the conspiracy claim which rests upon that non-actionable tort also fails as a matter of law. *Smith v. Jackson*, supra.

Consequently, accepting all of the allegations of the Amended Counterclaim, expressly stated as true Count VI is barred by a matter of law by the Intercorporate Conspiracy Doctrine, as well as by the Independent Tort Doctrine.

3.   **The Independent Tort Doctrine Bars Counts VII and VIII as a Matter of Law.**

Florida's independent tort doctrine, which is alive and well, "prohibits claims *in tort for damages, which are the same as for breach of contract* so as to prevent plaintiffs from recovering *duplicative damages* for the same wrongdoing." *Perez v. Scottsdale Ins. Co*., No. 19-22761, 2019 WL 5457746, *4 (S.D. Fla. Oct. 24, 2019) [emphasis added];  *Freeman v. Sharpe Res. Corp.,* No. 6:12-cv-1584-Orl-22TBS, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013).  "The conclusion that Plaintiff's claims *are not independent causes of action* can be supported *since the facts necessary to prove that Defendant breached the Parties' agreement are the same facts necessary to prove all of Plaintiff's tort claims*." *See Exportaciones Textiles, S.A. De C.V. v. Orange Clothing Co.*, No. 09-CV-22967, 2010 WL 1257710, at *3 (S.D. Fla. Mar. 29, 2010). *See also HTC Leleu Family Trust v. Piper Aircraft, Inc.,* Case No. 1:12-cv-21118-KMM (S.D.Fla. Oct. 11, 2012) [emphasis added].

Pursuant to the independent tort doctrine, "to set forth a claim in tort between parties in contractual privity, a party must allege action beyond and independent of breach of contract that amounts to an independent tort." *Reagan Wireless Corp. v. Apto Sols., Inc.*, No. 18-cv-61147-BLOOM/Valle, 2018 WL 4901127, at *3 (S.D. Fla. Oct. 9, 2018) (quoting *Kay v. Ingenio, Filiate De Loto-Quebec, Inc.*, No. 13-61687-CIV, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014)). Simply stated, a tort claim must be independent from any breach of contract claim. *Prewitt Enters, LLC v. Tommy Constantine Racing, LLC*, 185 So. 3d 566, 569 (Fla. 4th DCA 2016). Derived from fundamental contract principles, the doctrine ensures that parties in contractual privity cannot recast causes of action that are otherwise breach of contract claims as tort claims. *S. Wind Aviation, LLC v. Cessna Aircraft Co.*, No. 6:12-cv-1376-Orl-22DAB, 2014 WL 12570958, at *5 (M.D. Fla. July 15, 2014).

a.     **The Tort Claims Allege Only Failure of Contract Performance.**

*All* of the allegations that Genetics plead to support their fraudulent inducement claims concern the alleged lack of performance of the Moving Parties under the relevant contracts. [DE 223 ¶¶67-69;71-73]. Specifically, Genetics alleges that the Moving Parties undertook certain acts during the execution and performance of the 2019 Agreement, such as the Moving Parties "accepted Genetics was the sole owner" of Storm Cat 02 and the 62 horses identified therein. [DE 223 ¶¶ 68, 72]. The Amended Counterclaim alleges that the Moving Parties did not perform as contemplated by the Agreement by failing to register these horses in Genetics' name. [DE 223 ¶¶ 68, 72]. These are all contract-based allegations, not actions sustaining independent torts. *Reagan Wireless Corp.*, supra.

By dressing up contract-based allegations into specious tort claims, Genetics has again pled itself out of claims as a matter of law. See e.g., *Premix-Marbletite Mfg. Corp v. SKW Chems Inc.*, 145 F. Supp. 2d 1348, 1358 (S.D. Fla. 2001) (stating that "when the actions complained of relate directly to the subject matter of the parties' agreement, or are interwoven with the agreement, no independent tort exists and the economic loss rule applies"); *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So.2d 74, 78 (Fla. Dist. Ct. App. 1997) (stating that when the misrepresentation is "inseparable from the essence of the parties' agreement, the economic loss rule applies"). For clarity, the tort claims of the Amended Counterclaim are barred because "the misrepresentations alleged ***here are in the performance of the contract and cannot be considered independent so as to constitute an exception to the rule.***" *Perez*, 2019 WL 5457746, at *3 (quoting *Kelly*, 2018 WL 3126750, at *2). [emphasis added]. In the case *sub judice*, the alleged failure by La Dolfina or Mr. Cambiaso to register horses in Genetics' name, despite allegedly contrary contractual assurances, goes to the issue of any lack of performance *vel non* of the relevant contracts, but does not constitute an independent tort. *Id.* See, e.g.: DE 223 ¶¶ 24, 26.

The torts of Amended Counterclaims must be dismissed as a matter of law because, under the Independent Tort Doctrine, Counts VII and VIII (all sounding in fraudulent inducement) are indistinguishable from the contract-based Counts I, II, II, IV and IX, and thus are not independent torts.[3]

### b.    The Tort Claims Seek the Same Damages as the Contract Claims.

Further, both tort claims fail for another reason: they seek the same measure of damages as the breach of contract claims [see DE 223 *20-21 "Prayer for Relief"] common to all counts of the Amended Counterclaim.  The identical claims for damages in the tort claims as are found in the contract claims are additional indices that the tort claims are not distinguishable and independent from the breach of contract claims because Florida courts link this economic loss with **breach of contract claims**, and **not** with claims of tortious acts. *See, e.g., Casa Clara Condominium Assoc. v. Charley Toppino & Sons, Inc.,* 620 So. 2d 1244, 1246 (Fla.1993) ("***In other words, economic losses are 'disappointed economic expectations,' which are protected by contract law, rather than tort law.***") [emphasis added].

In Florida, post-*Tiara Condominium* (*Tiara Condominium Association v. Marsh & McLennan Companies*, 110 So. 3d 399, 409 (Fla. 2013)), fraud-based tort claims **seeking the same economic damages as breach of contract claims continue to be barred** by the Independent Tort Doctrine.[4] See *In re Takata Airbag Prod, Liab. Litig.,* 193 F. Supp. 3d 1324, 1338-1339 (S.D. Fla.

---

[3] It further bears repeating that because these torts fail as a matter of law, then the conspiracy claim which relies upon one or the other tort claim also fails as a matter of law. *Smith v. Jackson*, supra; *Smith v. Jackson*, No. 16-81454-CIV-MARRA (S.D. Fla. Mar. 19, 2017) [emphasis added] (citing *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007); *Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1353 (S.D. Fla. 2005) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999).

[4] For clarity, Judge Pariente in her concurrence, confirmed that the general application of the Independent Tort Doctrine was preserved when the Economic Loss Rule was contracted back to products liability case by *Tiara*, supra. (" The majority's conclusion that the economic loss rule is

2016) (where the action for fraud *depends upon precisely the same allegations as a warranty claim*—i.e., a claim the product failed to work as promised.") [italics as cited by *Cardenas,* below], cited by *Cardenas v. Toyota Motor Corp*., 418 F. Supp. 3d 1090, 1104 (S.D. Fla. 2019) and holding:

> Like *In re Takata,* Cardenas seeks economic loss damages for his "fraud or fraudulent concealment" claim, **which alleges precisely what his breach of warranty claim alleges**—that his Toyota Camry did not work as promised. [fn omitted] Therefore, the Court finds that **the economic loss rule bars Cardenas's "fraud or fraudulent concealment" claim under Florida law**. *See id.*; *see also Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1224-25 (S.D. Fla. 2017) (following *In re Takata* and dismissing fraudulent concealment claims under the Florida economic loss rule). [bold emphasis added].

Herein, the tort claims share the common "Prayer for Relief" [DE 223 *20-21] with the contract claims. Thus, the tort claims should be dismissed because those claims are again indistinguishable and lack independence from the contract claims because the tort claims seek the same measure of damages. *Id.*

### c.   The Fraudulent Inducement Claims are Also Barred by the Independent Tort Doctrine Because the the Alleged Misrepresentations Were Set Forth In the Relevant Contracts.

Where contracts set forth the relevant alleged misrepresentation, courts in this District have previously rejected attempts to dress-up a contract claim under the guise of a fraudulent inducement claim. See, e.g.: *Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364, 1366-67 (S.D. Fla. 2003) ("statements or misrepresentations made to induce an individual to enter a contract*, if later contained within the terms of the actual contract*, cannot constitute a basis on which to bring a fraud claim."[emphasis added]. *See also Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*,

---

limited to the products liability context does not undermine Florida's contract law or provide for an expansion in viable tort claims. …. For example, in order to bring a valid tort claim, *a party still must demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim*."). [emphasis added].

208 F. Supp. 2d 1310, 1319 (S.D. Fla. 2002) ("In essence, [Plaintiff] claims that [Defendant] made misrepresentations to [Plaintiff] that later *were incorporated into the parties' agreements* and that [Defendant] *never intended to follow through with these agreements*. . . . Because the statements allegedly made by [Defendant] to induce [Plaintiff] to enter into the contracts also *were embodied in the contracts*, the claim for fraudulent inducement is barred by the economic loss rule.") [citation omitted]; *Hillcrest Pacific Corp. v. Yamamura*, 727 So.2d 1053, 1056 (Fla. 4th DCA 1999) ("A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered . . . in a later written contract."). Consequently, as a matter of law, the fraudulent inducement claims are barred by the Independent Tort Doctrine. See also *Vanmoor v. King*, 2006 WL 8432493 (S.D. Fla. 2006) citing *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.,* 208 F. Supp. 2d 1310, 1318-1319 (S.D. Fla. 2002) (applying Florida law); *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.,* 694 So.2d 74, 77 (Fla. 3rd DCA 1997) ("Where the only alleged misrepresentation concerns the heart of the parties' agreement, simply applying the label of 'fraudulent inducement' . . . will not suffice to subvert the sound policy rationales of the economic loss doctrine.").

In the case *sub judice,* the Amended Counterclaim asserts that the Moving Parties "falsely represented *in those agreements*" that the Moving Parties accepted Genetics as the owner of the horses at issue. (Amended Counterclaim at ¶¶ 84 [emphasis added].    Accepting the truth of those allegations does not save Genetics from the fatal flaw here in the Amended Counterclaim: *Genetics alleges the source of the misrepresentations were in the Agreements* themselves.  [DE 223 ¶¶ 62-70]. Such allegations pled the Amended Counterclaim directly into the bar of the Independent Tort Doctrine and dismissal is appropriate for this reason as well.

Genetics thus has failed to state independent claims fraudulent inducement, and Counts VII and VIII should accordingly be dismissed.

**4.      The Fraudulent Inducement Claims Fail For Lack of Justifiable Reliance.**

Even if the fraudulent inducement claims were not barred as a matter of law by the Independent Tort Doctrine, those claims still fail because they do not plead justifiable reliance upon the allegedly false statements. In Florida, to establish a claim of fraudulent inducement a plaintiff must prove: (1) the defendant made a false statement regarding a material fact; (2) the defendant knew that the statement was false when he made it or made the statement without knowing of its truth or falsity; (3) the defendant intended that the plaintiff rely on the false statement; and (4) the plaintiff ***justifiably relied*** on the false statement to his detriment. *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004); *see also Sena v. Pereira*, 179 So.3d 433, 435–36 (Fla. 4th DCA 2015). Genetics has not pled justifiable reliance in its claims for fraudulent inducement. [DE 223 ¶¶ 68-70, 71-74].   This failure to plead the requisite element of justifiable reliance is fatal to the fraudulent inducement claims of the Amended Counterclaim, which should be dismissed for this reason as well.

**5.      The Amended Counterclaim is a Shotgun Pleading.**

**a.      Each Count Repeats and Realleges All Prior Paragraphs.**

***Each*** of Genetics' ten counts begins with this sentence: "Genetics re-alleges and incorporates the allegations contained **in the preceding paragraphs** as if fully set forth herein." [emphasis added]. (Each Amended Counterclaim begins at ¶¶ 33, 41, 48, 56, 63, 72, 78, 83, 89, 95, 106.)   As a consequence, "***each count adopts the allegations of all preceding counts.***" *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1321-1322, (11th Cir. 2015). [emphasis added].  In the Eleventh Circuit that is a "mortal," not a trivial defect, which mandates dismissal. *Id.*  The Eleventh Circuit has "identified four rough types or categories of shotgun pleadings." *Id.*

at 1321. "The most common type—by a long shot—is a complaint containing multiple counts *where each count adopts the allegations of all preceding counts*, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* (emphasis added).[5] The Eleventh Circuit calls this type of shotgun pleading "the mortal sin of re-alleging all preceding counts." *Id.* at 1322.

### b.    Each Count Fails to Distinguish Amongst the Moving Parties.

The Amended Counterclaim is further fatally deficient because none of the Counts distinguish as to which Defendant (or all) each given Count applies, merely stating Genetics "re-alleges" without any specificity as against who or which Defendant(s) the Count is alleged.  These are the third and fourth types of venal sins the Eleventh Circuit in *Wieland* has admonished require dismissal:

> The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.  Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which defendant(s) are responsible for which acts or omissions, or which of the defendant(s) the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests. [footnotes omitted, emphasis added].

Consequently, the Amended Counterclaim should be dismissed in its entirety.

### 6.    The Common "Prayer for Relief" Seeks Remedies Improper to Some Counts.

Genetics   asserts only one omnibus "Prayer for Relief" for all ten (10) counts of the Amended Counterclaim. [DE 223 *21-22].  However, one prayer for relief does not properly fit all counts.   For example, in paragraph 9 of the prayer, Genetics seeks punitive damages, however punitive damages are not available for the contract claims. *Griffith v. Shamrock Village, Inc.*, 94

---

[5] In so doing, they violate "either Rule 8(a)(2), or Rule 10(b), or both." Id. at 1320.

So. 2d 854, 858 (Fla. 1957) ("The general rule is that punitive damages are not recoverable for breach of contract, irrespective of the motive of defendant."); *TRG Desert Inn Venture, Ltd. v. Berezovsky*, 194 So. 3d 516, 519-20, n.3 (Fla. 3d DCA 2016) (citing *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.,* 687 So. 2d 821, 822- 23 (Fla. 1996)) ("Florida's independent tort rule precludes the recovery of punitive damages for a breach of contract claim unless the claimant has asserted a tort independent of the alleged breach of contract.")[6]

As well, Genetics seeks punitive damages without having pled the requisite wanton and reckless conduct, rising above a speculative level, sufficient for an award of such damages. Rules 8(a), 9(g). See also *Turner v. Wester*, No. 5:20-cv-199-MCR-MJF, 2021 WL 1564324, at *4 (N.D. Fla. Apr. 21, 2021) ("[T]he pleading of damages is governed by federal rules …."). Specifically, 9(g) provides that "[i]f an item of special damage is claimed, it must be specifically stated." Genetics seeks "exemplary and/or punitive damages", but the Amended Counterclaim does not set forth allegations sufficient to support the demand.

Further, in paragraph 8 of the prayer, Genetics improperly seeks recovery of attorneys' fees for litigating this case in *Texas* state court, which clearly is not the court of venue of the Amended Counterclaim. Genetics also seeks specific performance under paragraphs 2 through 6 of the prayer, but Genetics has not pled all of the elements for specific performance for the contract claims for which they seek the remedy (which also is a basis to dismiss those claims). A decree of specific performance is an equitable remedy "not granted as a matter of right or grace but as a matter of sound judicial discretion" governed by legal and equitable principles. *Humphrys v.*

---

[6] Genetics should not be allowed to recover under a tort theory when Genetics has pled that the parties' relationship is governed by contract. See Griffith, supra. See also Lewis v. Guthartz, 428 So. 2d 222, 223 (Fla. 1982) ("[i]t is now a well-settled rule in Florida that punitive damages are not recoverable in a breach of contract action, absent an accompanying independent tort.").

*Jarrell,* 104 So. 2d 404, 410 (Fla. 2d DCA 1958). Specific performance shall only be granted when (1) the plaintiff is clearly entitled to it, (2) there is no adequate remedy at law, and (3) the judge believes that justice requires it. *Mrahunec v. Fausti,* 385 Pa. 64, 121 A.2d 878, 880 (1956). Genetics seeks actual, compensatory, punitive and exemplary damages in paragraph 9 of its common "Prayer for Relief," and therefore Genetics has pled there is an adequate remedy at law.

For these fatal deficiencies in the omnibus prayer for relief, the Amended Counterclaim should as well be dismissed.

### 7.   The Counterclaim Fails to Plead the Requisite Elements to Pierce the Corporate Forms.

A corporation is a legal entity, a fictional person, capable of entering contracts and doing business in its own right.  The purpose of this fiction is to limit the liability of the corporation's owners, whether they be individuals or other corporations.  Florida courts will not easily disregard this fiction. See *Roberts' Fish Farm v. Spencer,* 153 So.2d 718, 721 (Fla. 1963).  It is black letter law in Florida that to disregard this corporate fiction and hold the corporation's owners liable, to "pierce the corporate veil", Plaintiffs must initially plead, and later prove, that:

> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;
>
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
>
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Gasparini v. Pordomingo,* 972 So.2d 1053, 1055 (3rd DCA 2008) [citation omitted] [emphasis added] omitted); see also 8A Fla. Jur.2d Business Relationships § 13 (2008).

In the Counterclaim, there are no allegations that the actions of Mr. Cambiaso as an individual, in his creation or handling of the corporation or his alter ego, were done with the intent

to defraud Plaintiffs. *Steinhardt v. Banks*, 511 So. 2d 336, 339 (4th DCA 1987).   Therefore, Plaintiffs have pleaded none of the requisite elements to pierce the corporate veil in their commingled pleadings. *Id.*

> **a. The Amended Counterclaim Should Be Dismissed As Against Mr. Cambiaso, individually.**

Across all of the allegations and claims of the Complaint, Plaintiffs have not made any sufficient allegations of the grounds for disregarding the corporate form of Andy Kocher LLC. The three (3) elements to pierce the corporate veil are required in the ***conjunctive***, not the alternative. *Robert's Fish Farm*, supra, 153 So.2d at 721.   Plaintiffs do not allege any of those elements, let alone all three (3) of those elements.

For example, Plaintiffs do not allege the misuse of the LLC entity.  Only certain types of misuse of the corporate entity form will allow piercing of the corporate form. *Steinhardt,* supra, 511 So. 2d at 339, provides a cogent summary of the circumstances under which a court should do so.  The Fourth DCA in *Steinhardt* explains that:

> Florida decisions uniformly hold that courts will look through the screen of corporate entity to the individuals who compose it in cases in which the corporation was a **mere device or sham** to accomplish some ulterior purpose, or is a **mere instrumentality or agent** of another corporation or individual owning all or most of its stock, or where the **purpose is to evade** some statute or to accomplish some **fraud or illegal purpose**, or where the corporation was employed by the stockholders for **fraudulent or misleading purposes,** was organized or used to mislead creditors or to **perpetuate a fraud** upon them, or to evade existing personal liability.

With respect to Mr. Cambiaso, there was not even an allegation that the actions of Mr. Cambiaso as an individual, in his handling of  La Dolfina entities, were done with the intent to defraud Plaintiffs or for any of the other reasons set forth in *Steinhardt,* supra, 511 So. 2d at 338. Therefore, the Complaint, which alleges against Mr. Cambiaso in his individual capacity, should

be dismissed against Mr. Cambiaso individually.

Respectfully submitted,

CHAPMAN LAW GROUP, PLC

*Avery S. Chapman*
Avery S. Chapman, Esq.
FL Bar No. 517321
Grace De la Gueronniere
FL Bar No. 1021673
12008 South Shore Blvd.
Suite 105
Wellington, Florida 33414

WHEELER TRIGG O'DONNELL LLP
Habib Nasrullah, Esq.
Admitted pro hac vice
Harry Dorcy, Esq.
Admitted pro hac vice
370 17th Street, Suite 4500
Denver, Colorado 80202
Tel: (303) 244-1800
nasrullah@wtotrial.com
dorcy@wtotrial.com

*Counsel for Plaintiffs La Dolfina S.A. LLC*

## <u>Certificate of Service</u>

I HEREBY CERTIFY that on the date appearing on the first page of this document, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system, which will then serve all counsel of record or pro se parties on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

CHAPMAN LAW GROUP, PLC

*Avery S. Chapman*
Avery S. Chapman, Esq.

**Service List**
La Dolfina, S.A., LLC, et al. v. D. Alan Meeker, et al.
CASE NO. 9:20-cv-82231-AMC/BER

Gary A. Woodfield
Nason Yeager Gerson Harris & Fumero, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
561-686-3307
Email: gwoodfield@nasonyeager.com, bpetroni@haileshaw.com, sdaversa@nasonyeager.com
*Counsel for Defendant David Alan Meeker, Defendant Crestview Genetics, LLC, and Defendant Crestview Farm, LLC.*

Ryan Dwight O'Quinn
DLA Piper LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131
305-423-8553
Email: ryan.oquinn@dlapiper.com , javier.rodriguez@dlapiper.com
*Counsel for Defendant David Alan Meeker, Defendant Crestview Genetics, LLC, and Defendant Crestview Farm, LLC.*

Caitlyn Elizabeth Hubbard, Esq.
William N. Warren, Esq.
Kelly Hart & Hallman
201 Main Street, Suite 2500
Fort Worth, TX 76102
817-332-2500
Email: caitlyn.hubbard@kellyhart.com, bill.warren@kellyhart.com
*Counsel for Defendant David Alan Meeker and Defendant Crestview Farm, LLC.*

David E. Keltner, Esq.
Kelly Hart & Hallman
201 Main Street, Suite 2500
Fort Worth, TX 76102
817-332-2500
Email: david.keltner@kellyhart.com

*Counsel for Defendant Crestview Farm, LLC.*

Susan Becker Yoffee
Haile Shaw & Pfaffenberger
660 U.S. Highway One, Third Floor
North Palm Beach, FL 33408
561-627-8100
Email: syoffee@hsplaw.com
*Counsel for Defendant Crestview Farm LLC.*

James C. Bookhout, Esq.
Jason S. Lewis, Esq.
DLA Piper LLP (US)
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201
(214) 743-4549
Email: james.bookhout@dlapiper.com, jason.lewis@dlapiper.com
*Counsel for Defendant Alan David Meeker, Defendant Crestview Genetics, LLC, and Defendant Crestview Farm, LLC.*

Robert I. Chaskes, Esq.
Noelle P. Pankey, Esq.
AKERMAN LLP
777 South Flagler Drive Suite
1100 West Tower
West Palm Beach, Florida  33401
(561) 653-5000
robert.chaskes@akerman.com
noelle.pankey@akerman.com
*Counsel for Defendant Park Place Polo Team Corporation, and Defendant Park Place Polo Fields Corporation.*