**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

**CASE NO. 20-cv-82231-CIV-CANNON/Reinhart**

**LA DOLFINA S.A., LLC, a Florida
limited liability company, and
ADOLFO CAMBIASO, individually,**

      *Plaintiffs*,

**v.**

**D. ALAN MEEKER, individually,
a/k/a ALAN MEEKER or DAVID
ALAN MEEKER, CRESTVIEW
FARM, LLC, a Texas limited liability
company, and CRESTVIEW
GENETICS, LLC, a Nevada limited
liability company,**

      *Defendants*.

_____

**CRESTVIEW DEFENDANTS' SUPPLEMENTAL BRIEFING ON
<u>SUMMARY JUDGMENT</u>**

Pursuant to the Court's Order Requiring Supplemental Briefing on Summary Judgment (ECF No. 340), Crestview Genetics, LLC ("**Genetics**"), Crestview Farm, LLC ("**Farm**"), and David Alan Meeker ("**Meeker**," and together with Genetics and Farm, the "**Crestview Defendants**") hereby file this supplemental briefing on summary judgment.

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................................1

II.    LEGAL STANDARD.........................................................................................................2

III.   THE 2009 AGREEMENT IS, AND ALWAYS HAS BEEN, A NON-
ILLUSORY, ENFORCEABLE CONTRACT....................................................................3

       A.     The 2009 Agreement imposed obligations on both parties. ...................................3

       B.     The plain language of the 2009 Agreement permits both parties to sue and
collect.....................................................................................................................4

       C.     If exercised, the termination clause of Paragraph 8 provides for a mutual,
not unilateral, release of obligations. ....................................................................8

       D.     Both parties intended to enter into a valid and enforceable agreement, not
an illusory one.......................................................................................................8

       E.     The parties' performance of the 2009 Agreement further evinces its
validity. ...............................................................................................................10

IV.   OUTCOME OF THE COURT'S RULING ON VALIDITY OF THE 2009
AGREEMENT.................................................................................................................11

CONCLUSION.............................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bonner v. City of Prichard, Ala.*,
   661 F.2d 1206 (11th Cir. 1981) (en banc) ............................................................3

*Brevard County Fair Ass'n, Inc. v. Cocoa Expo, Inc.*,
   832 So. 2d 147 (Fla. 5th DCA 2002) ..................................................................10

*CC-Aventura, Inc. v. The Weitz Co., LLC*,
   No. 06–21598–CIV, 2009 WL 3326806 (S.D. Fla., Oct. 9, 2009) .........................7

*City of Orlando v. Murphy*,
   84 F.2d 531 (5th Cir. 1936) ...................................................................................3

*Conboy v. Black Diamond Props., Inc.*,
   No. 5:08-cv-236-Oc-35GRJ, 2010 WL 11628662 (M.D. Fla. Feb. 1, 2010) .........5

*Corenswet, Inc. v. Amana Refrigeration, Inc.*,
   594 F.2d 129 (5th Cir. 1979) .................................................................................4

*Diversified Enters. Inc. v. West*,
   141 So.2d 27 (Fla. 2d DCA 1962) ..........................................................................3

*Flagship Resort Dev. Corp. v. Interval Int'l, Inc.*,
   28 So.3d 915 (Fla. 3d DCA 2010) ..................................................................11, 12

*GE Med. Sys. S.C.S. v. SYMX Healthcare Corp.*,
   No. 18-20922, 2021 WL 821433 (S.D. Fla. Mar. 4, 2021) ..................................10

*Gold, Vann & White, P.A. v. Friedenstab*,
   831 So.2d 692 (Fla. 4th DCA 2002) ...................................................................4, 5

*Golden v. Mobil Oil Corp.*,
   882 F.2d 490 (11th Cir. 1989) ................................................................................7

*Hirsch v. Jupiter Golf Club LLC*,
   232 F.Supp.3d 1243 (S.D. Fla. 2017) .....................................................................6

*Infinity Transp. III LLC v. XPO Intermodal, Inc.*,
   304 F. Supp. 3d 1320 (N.D. Ga. 2018) ...................................................................6

*James v. Gulf Life Ins. Co.*,
   66 So.2d 62 (Fla. 1953) ......................................................................................3, 8

*Kel Homes, LLC v. Burris*,
   933 So. 2d 699 (Fla. 2d DCA 2006) .......................................................................6

*Key v. Bank of America, N.A.*,
   No.19-23020-CIV-WILLIAMS, 2020 WL 13261139 (S.D. Fla. Nov. 25, 2020)....................6

*Le Noir v. McDaniel*,
   80 Fla. 500, 86 So. 435 (Fla. 1920) .......................................................................11

*M & G Polymers USA, LLC v. Tackett*,
   574 U.S. 427 (2015).................................................................................3, 4, 8

*Martinair Holland, N.V. v. Benihana, Inc.*,
   780 F. App'x 772 (11th Cir. 2019) .......................................................................6

*MidlevelU, Inc. v. ACI Info. Grp.*,
   989 F.3d 1205 (11th Cir. 2021) .......................................................................14

*Mosher v. Anderson*,
   817 So. 2d 812 (Fla. 2002).......................................................................14

*Pier 1 Cruise Experts v. Revelex Corp.*,
   929 F.3d 1334 (11th Cir. 2019) .......................................................................4, 5, 6

*Ponce Dev. Co. v. Espino*,
   449 So.2d 317 (Fla. 3d DCA 1984) .......................................................................11

*Scott v. Rolling Hills Place, Inc.*,
   688 So.2d 937 (Fla. 5th DCA 1996) .......................................................................10

*Slater v. Energy Servs. Grp. Intern., Inc.*,
   634 F.3d 1326 (11th Cir. 2011) .......................................................................5

*Stock Equip. Co., a Unit of Gen. Signal Corp. v. Tenn. Valley Auth.*,
   906 F.2d 583 (11th Cir. 1990) .......................................................................8

*U.S. C.F.T.C. v. S. Trust Metals, Inc.*,
   2017 WL 2875427 (S.D. Fla. May 15, 2017) .......................................................................14

*Wright & Seaton, Inc. v. Prescott*,
   420 So.2d 623 (Fla. 4th DCA 1982) .......................................................................11

## Other Authorities

Merriam-Webster Dictionary.com, https://www.merriam-
   webster.com/dictionary/further (last visited Feb. 14, 2023)....................................................8

For the reasons previously briefed and as discussed further below, the Crestview Defendants respectfully ask the Court grant Crestview Defendants' Motion for Summary Judgment (ECF No. 321) with respect to the claims raised in the Third Amended Complaint ("**TAC**") (ECF No. 303) and the separate Counterclaim ("**Plaintiffs' Counterclaim**") (ECF No. 134) filed by La Dolfina S.A., LLC and Adolfo Cambiaso ("**Cambiaso**," and together with La Dolfina S.A., LLC, the "**Plaintiffs**"), as well as the affirmative defenses raised by Plaintiffs in response to Farm's and Genetics's Counterclaims (ECF No. 309) and deny Plaintiffs' Motion for Partial Summary Judgment (ECF No. 317).

## I.      INTRODUCTION

On February 10, 2023, the Court issued an Order Requiring Supplemental Briefing on Summary Judgment (the "**Order**"). (ECF No. 340.) The Court asked two questions.

*First*, "what effect, if any, does Crestview's reservation of absolute discretion to terminate the cloning program at any time have on the parties' respective positions regarding the illusory or non-illusory nature of the 2009 Agreement[?]" (*Id.*) The answer to the first question is straightforward—none, no effect. (*See* Section II-III, *supra*.)

In 2009, Farm and Cambiaso entered the **2009 Agreement**. Paragraph 8 of the 2009 Agreement reads in its entirety:

> Neither party to this Agreement makes any warranties or representations to the other regarding the tissue samples or the likelihood of success of the cloning program to be undertaken hereunder. Accordingly, should the cloning program be unsuccessful, neither party will have any further liability or obligation to the other. Crestview further reserves the right to terminate the cloning program at any time in its sole discretion without further liability or obligation to Owner.

(2009 Agreement ¶ 8.)

The last sentence of this provision does not (and cannot) render the 2009 Agreement illusory for the following reasons: (1) only promises that impose no obligation at all can be deemed

illusory; (2) the termination right provides bilateral relief; (3) under the plain language of the provision, the parties would retain the right to sue for prior breaches after termination of a cloning program; (4) it would defy the intent of the parties and the agreement's purpose; and (5) the performance of the 2009 Agreement cured any alleged defect. Accordingly, the last sentence of Paragraph 8 further demonstrates that the 2009 Agreement is not illusory.

*Second*, the Court asked, "how the Court's ruling on the validity of the 2009 Agreement will affect the other claims and affirmative defenses raised by the parties in their respective pleadings[?]" (*Id.*) The answer to the second question is set forth below. (*See* Section IV, *supra*.) In general, a ruling that the 2009 Agreement is illusory might affect some of the claims and affirmative defenses that solely relate to the 2009 Agreement. Otherwise, it would have no effect.

## II.    LEGAL STANDARD

As the Supreme Court has explained, the "illusory promises doctrine . . . instructs courts to avoid constructions of contracts that would render promises illusory." *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 440 (2015). This principle is well-established in American law. *See James v. Gulf Life Ins. Co.*, 66 So.2d 62, 63 (Fla. 1953) ("Where the language of an agreement is … susceptible of two constructions, one of which makes it fair, customary, [] while the other makes it inequitable, [] the interpretation which makes a rational and probable agreement must be preferred."); *City of Orlando v. Murphy*, 84 F.2d 531, 534 (5th Cir. 1936)[1] ("[W]hen possible, a contract should receive such construction as will uphold it, rather than render it nugatory."). The law assumes that parties have made an agreement for some lawful, enforceable purpose, and courts should not apply a strained or unusual meaning so as to render it unenforceable. *See Diversified Enters. Inc. v. West*, 141 So.2d 27, 30 (Fla. 2d DCA 1962).

---

[1] The Eleventh Circuit recognizes Fifth Circuit decisions rendered prior to the close of business on September 30, 1981 as binding precedent. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

"[A] contract [is] illusory under Florida law, and thus incapable of supplying the necessary consideration" only "[w]hen 'one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor.'" *Pier 1 Cruise Experts v. Revelex Corp.*, 929 F.3d 1334, 1347 (11th Cir. 2019). But "a promise that is 'partly' illusory is by definition not illusory." *M & G Polymers USA, LLC*, 574 U.S. at 440. "Florida courts have held that 'to prevent the contract from being illusory,' the non-breaching party must have both '[t]he ability to sue for damages' and 'the ability to collect on the resulting judgment.'" *Pier 1 Cruise Experts*, 929 F.3d at 1347 (quoting *Fla. Dep't of Envtl. Prot. v. ContractPoint Fla. Parks, LLC*, 986 So.2d 1260, 1270 (Fla. 2008)). Courts and public policy do not "frown[] on any and all contract clauses permitting termination without cause" because "[s]uch clauses can have the salutary effect of permitting parties to end a soured relationship without consequent litigation." *Corenswet, Inc. v. Amana Refrigeration, Inc.*, 594 F.2d 129, 138 (5th Cir. 1979). Florida courts in particular "have enforced some pretty broad exculpatory clauses without suggesting that they rendered illusory or otherwise invalidated (or even undermined) the contracts in which they appeared." *Pier 1 Cruise Experts*, 929 F.3d at 1346.

## III.   THE 2009 AGREEMENT IS, AND ALWAYS HAS BEEN, A NON-ILLUSORY, ENFORCEABLE CONTRACT.

### A.   The 2009 Agreement imposed obligations on both parties.

Under Florida law, a contract is illusory only when it "appears on its face to be so insubstantial as to impose no obligation at all on the promisor." *Pier I Cruise Experts*, 929 F.3d at 1347. "It is not the province of a court to relieve one party of its contractual obligation on the basis of a judicial determination as to the sufficiency of recited consideration given for an obligation." *Gold, Vann & White, P.A. v. Friedenstab*, 831 So.2d 692, 696 (Fla. 4th DCA 2002) ("A promise, or payment, no matter how slight, can constitute sufficient consideration for a contract.") When an agreement recites that consideration has been provided, "sufficient consideration exist[s] in the

agreement" regardless of the amount actually provided. *Id.* Courts have held that an express recitation that "other good and valuable consideration [has been received], the receipt and adequacy of which is hereby acknowledged" is "more than sufficient legal consideration" for a contract, including option contracts giving one party rights. *See Conboy v. Black Diamond Props., Inc.*, No. 5:08-cv-236-Oc-35GRJ, 2010 WL 11628662, at *8 (M.D. Fla. Feb. 1, 2010).

The 2009 Agreement is backed by consideration for an obligation, and thus cannot be illusory. The 2009 Agreement states that "in consideration of the payment of Ten Dollars ($10.00) and other good and valuable consideration, including the mutual covenants and agreements set forth herein, the parties hereby agree as follows[.]" (2009 Agreement ¶ 1). Sufficient consideration for the 2009 Agreement exists on its face. Both parties were obligated to do something they were not already obligated to do. One such obligation was the promise by Farm to pay Cambiaso $250,000 per horse for the selection and extraction of genetic material. (2009 Agreement ¶ 1.) It is undisputed that Farm paid Cambiaso $1 million pursuant to Paragraph 1 of the 2009 Agreement and has also provided Cambiaso with one or more of the cloned foals produced from each of the subject horses. (ECF No. 319 ¶¶ 17-18, Joint Statement of Undisputed Facts ("**JSOF**").) Farm did so pursuant to the express terms of the 2009 Agreement. The 2009 Agreement contains numerous other contractual promises. Because the 2009 Agreement cannot be understood to impose "no obligation at all" on Farm or Cambiaso, it is not illusory. *Pier 1 Cruise Experts*, 929 F.3d at 1347.

**B.    The plain language of the 2009 Agreement permits both parties to sue and collect.**

The 2009 Agreement is also enforceable because, by its plain language, the termination right in Paragraph 8 applies solely to the *cloning program*, and not the 2009 Agreement as a whole. Under Florida law, "the plain meaning of a contract's language governs its interpretation." *Slater v. Energy Servs. Grp. Intern., Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011). Courts need not adopt

interpretations that are "unreasonable in light of the contract's plain language." *Martinair Holland, N.V. v. Benihana, Inc.,* 780 F. App'x 772, 775 (11th Cir. 2019); *Hirsch v. Jupiter Golf Club LLC*, 232 F.Supp.3d 1243, 1253–54 (S.D. Fla. 2017) ("[C]ourts must strive to interpret a contract in such a way as to give meaning to all provisions while doing violence to none").

Here, the 2009 Agreement cannot be considered illusory because its plain language permits both parties "the ability to sue for damages and the ability to collect on the resulting judgment." *Pier 1 Cruise Experts*, 929 F.3d at 1347.

***First***, Paragraph 8 of the 2009 Agreement contains a right to discontinue a *cloning program*, not a right to terminate the 2009 Agreement. The specific language states that Farm has the "right to terminate the cloning program," not to terminate "this Agreement." According to longstanding principles of contract interpretation, the absence of the words "this Agreement" from the last sentence of Paragraph 8 is dispositive as to its meaning. *See Kel Homes, LLC v. Burris*, 933 So. 2d 699, 703 (Fla. 2d DCA 2006) ("[T]he use of different terms in paragraphs 24 and 28 tends to indicate that a different meaning was intended. As a general proposition, the use of different language in different contractual provisions strongly implies that a different meaning was intended."); *Infinity Transp. III LLC v. XPO Intermodal, Inc.*, 304 F. Supp. 3d 1320, 1327 (N.D. Ga. 2018) (when interpreting the plain language of the contract, "'[T]his Agreement' does mean something different from its 'contents'"); *Key v. Bank of America, N.A.*, No.19-23020-CIV-WILLIAMS, 2020 WL 13261139, at *6 (S.D. Fla. Nov. 25, 2020) (refusing request "to read the word 'only' into a sentence where it does not exist, while ignoring the subsequent sentence").

Paragraph 8 of the 2009 Agreement provides that "Crestview further reserves the right to ***terminate the cloning program*** at any time in its sole and absolute discretion without further liability or obligation to owner." (2009 Agreement ¶ 8 (emphasis added)). The subject of the termination is not the 2009 Agreement, rather it is "the cloning program." Had the parties intended

to create a right to terminate the 2009 Agreement, they would have used those words. And the parties demonstrated they knew how to refer to the 2009 Agreement as a whole when they wanted to. Not only is the "Agreement" a term defined in the opening paragraph of the 2009 Agreement, but also, there are numerous references to "this Agreement" throughout the 2009 Agreement. (*See* 2009 Agreement ¶ 8 ("Neither party to ***this Agreement*** makes any warranties or representations to the other regarding the tissue samples or the likelihood of success of the cloning program to be undertaken hereunder); ¶ 9 ("***This Agreement*** may be executed in any number of counterparts … .") (emphasis added).) In fact, the parties used the phrase "this Agreement" in the sentence that immediately precedes the termination language in Paragraph 8 of the 2009 Agreement. They did not use it in the final sentence.

This distinction matters. While the 2009 Agreement did provide for the creation of a cloning program, it contains other obligations. Prominent among them was Cambiaso's obligation to provide genetic material to Farm in exchange for payment of $250,000 and the creation of a clone for Cambiaso. Additionally, while termination of the cloning program would permit Farm to discontinue the cloning program if it were unsuccessful, it would not relieve Farm of the obligation to pay for the genetic material if Cambiaso had already delivered it. In other words, the termination right is *not* an exculpatory clause for the entire contract—any claims for breach of the 2009 Agreement would survive the termination of the cloning program.

***Second***, the plain language of Paragraph 8 of the 2009 Agreement does not foreclose the ability for either party to sue.[2] (*See* 2009 Agreement ¶ 8 ("Accordingly, should the cloning program be unsuccessful, neither party will have any ***further*** liability or obligation to the other. Crestview

---

[2] "Limitation-of-liability provisions are enforceable even if they are not mutual and limit the purchaser's potential recovery," *CC-Aventura, Inc. v. The Weitz Co., LLC*, No. 06–21598–CIV, 2009 WL 3326806, at *4 (S.D. Fla., Oct. 9, 2009), so long as they do not "prevent ***all*** recovery of damages." *Golden v. Mobil Oil Corp.*, 882 F.2d 490, 494 (11th Cir. 1989) (emphasis added).

further reserves the right to terminate the cloning program at any time in its sole discretion without *further* liability or obligation to Owner.") (emphasis added).) Both clauses must be interpreted by giving effect to the accompanying modifier, "further." Based on the commonly understood dictionary use, the word "further" means "additional" or "to a greater degree or extent." Merriam-Webster Dictionary.com, https://www.merriam-webster.com/dictionary/further (last visited Feb. 14, 2023).[3] This means that only 'additional' liabilities or obligations are limited for both parties— not ones that already exist as of the time of the termination of the cloning program. *See Stock Equip. Co., a Unit of Gen. Signal Corp. v. Tenn. Valley Auth.*, 906 F.2d 583, 592 (11th Cir. 1990) ("The cancellation clause acknowledged the two-step nature of the contract—i.e., first design, then build—by providing that TVA could cancel the contract after reviewing Aerojet's designs 'without further liability or obligation.'")

Moreover, not only is this the plain meaning of the 2009 Agreement, even if there were multiple interpretations, the Court would be required to reject any other interpretation that rendered the 2009 Agreement unenforceable. When a court is contemplating dual interpretations, the court must choose the construction that upholds the agreement as non-illusory and enforceable. *See M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 440 (2015); *James v. Gulf Life Ins. Co.*, 66 So.2d 62, 63 (Fla. 1953). Here, the Court must choose the interpretation of the qualifier "further" that renders the 2009 Agreement enforceable.

Because the 2009 Agreement is an enforceable contract that imposes obligations on both parties and permits either party to sue for prior breach, it cannot be considered an illusory contract. For these reasons, to "read the [2009 Agreement] as a whole" and give effect to the plain language of the 2009 Agreement, the cloning program termination clause cannot be interpreted to allow

---

[3] This definition has remained unchanged across the parties' lifetimes. *See* Webster's Third Int'l Dict. (1965 Ed.) ("further" defined as "going or extending beyond what exists. Additional.")

termination of the entire 2009 Agreement. (ECF No. 340) Such a strained reading would fly in the face of contract interpretation's basic tenets.

### C. If exercised, the termination clause of Paragraph 8 provides for a mutual, not unilateral, release of obligations.

Moreover, the last sentence of Paragraph 8 is not a unilateral exculpatory clause. Although Farm has never terminated the cloning program established under the 2009 Agreement, if it had, that would have resulted in a *mutual* release of obligations. That is, the provision does not operate to unilaterally relieve Farm of liability. To the contrary, if the cloning program were terminated, while Farm would no longer be required to create clones, Cambiaso would also no longer be required to perform certain actions, such as marketing those animals for sale. (*See* 2009 Agreement ¶ 3 ("Upon the successful production of one or more clones, Owner and Crestview agree to negotiate in good faith to establish a mutually acceptable program providing for the endorsement and marketing of clones … "); ¶ 4 ("Upon the successful production of the clones, Owner will use its commercially reasonable best efforts to market the first three clones of each cloned animal for sale with Owner's client base or others … ").) Further, Farm's exercise of the right in the last sentence of Paragraph 8 of the 2009 Agreement would not result in a complete loss to Cambiaso. Quite the contrary—Cambiaso would still have the $1 million that Farm paid him as well as one free clone of each selected horse cloned under the 2009 Agreement. (*See* ECF No. 321-2, Cambiaso I at 75:14-24, 78:11-79:25.)

In the event of a termination of the cloning program, Cambiaso would no longer have to engage in efforts to market and endorse the clones. The 2009 Agreement did not create a unilateral right to relieve Farm of its obligations while leaving Cambiaso on the hook.

### D. Both parties intended to enter into a valid and enforceable agreement, not an illusory one.

A lawful interpretation and construction of the termination provision in the light of the

entire agreement and the surrounding context requires the 2009 Agreement to be a binding, valid agreement. "[U]nder Florida law, courts apply the contract principle known as the 'rule of validity,' which holds that in the interpretation of contracts judges will presume that the parties intended a binding, valid agreement." *GE Med. Sys. S.C.S. v. SYMX Healthcare Corp.*, No. 18-20922, 2021 WL 821433, at *12 n.10 (S.D. Fla. Mar. 4, 2021). "Parties' interpretations of their own contract will be followed unless contrary to law." *Scott v. Rolling Hills Place, Inc.*, 688 So.2d 937, 939 (Fla. 5th DCA 1996). "[T]he conduct of the parties in their course of dealings" should guide the court "to determine the meaning of a contract." *Brevard County Fair Ass'n, Inc. v. Cocoa Expo, Inc.*, 832 So. 2d 147, 151 (Fla. 5th DCA 2002).

Here, the undisputed facts and evidence establish that the parties intended for the 2009 Agreement to form a binding, enforceable contract. Both individually and as the 30(b)(6) representative for La Dolfina and La Dolfina Sub, Cambiaso testified to his intent to bound by the contract he signed and the specific terms of Paragraph 8 of the 2009 Agreement. (*See* Cambiaso I at 66:8-14, 113:13-114:5.)

In context, the relative weighing of rights and risks in the 2009 Agreement make sense. Because Farm made significant investment and bore all the financial risk and burden of producing all clones pursuant to the 2009 Agreement, it was prudent for Farm to assess the cost-benefit of the cloning program in the event it proved to be nonviable. This was especially true in 2009, when cloning was a relatively risky venture with a success rate of about 10 percent. (ECF No. 321-1 ¶ 25, Meeker Decl.) The fact that cloning polo ponies was virtually unheard of at that time amplified the risk. (*Id.*) To account for that risk, Farm negotiated certain protections in the 2009 Agreement, one being Farm's discretionary authority under Paragraph 8. Farm made a contemplated gamble. Under the 2009 Agreement, Farm paid Cambiaso a substantial licensing fee of $250,000 per horse to obtain genetic material of certain horses and the complete and exclusive licensing rights of all

clones as well as the original horse. Farm provided one clone of each of the horses cloned to Cambiaso, and it bore all risk associated with the cloning program. (2009 Agreement ¶ 1.) The right to discontinue the cloning program would allow Farm to avoid further losses if the cloning program turned out to be unsuccessful or uneconomical. The parties' intent and post-execution conduct of the 2009 Agreement are further evidence that it is a binding, enforceable contract.

### E.     The parties' performance of the 2009 Agreement further evinces its validity.

Not only was there ample consideration to validate the 2009 Agreement, but the parties' subsequent performance further demonstrates its enforceability. Under Florida law, "[e]ven assuming a lack of mutuality of obligation at the inception of the contract, such defect may be cured by the subsequent conduct of the parties." *Flagship Resort Dev. Corp. v. Interval Int'l, Inc.*, 28 So.3d 915, 921 (Fla. 3d DCA 2010); *accord Wright & Seaton, Inc. v. Prescott*, 420 So.2d 623, 627 (Fla. 4th DCA 1982) (a promise lacking mutuality at its inception becomes binding on the promisor after performance by the promisee); *see also Ponce Dev. Co. v. Espino*, 449 So.2d 317, 319 (Fla. 3d DCA 1984); *Le Noir v. McDaniel*, 80 Fla. 500, 86 So. 435 (Fla. 1920) (lack of mutuality is no defense in the case of a contract which, although unenforceable at its inception because of such defect, is executed by performance of the promisor, thus becoming binding on the parties). "[L]ess-than-full or substantial performance" is "sufficient to cure a lack of mutuality of obligation." *Flagship Resort Dev. Corp.*, 28 So.3d at 922.

It is undisputed that the parties have performed numerous provisions of the 2009 Agreement over a period of years. After execution of the 2009 Agreement, Farm paid Cambiaso the sum of $1 million and Farm paid all cloning-related expenses "without cost or obligation to Owner." (2009 Agreement ¶ 7; ECF No. 319 ¶ 17, JSOF.) Cambiaso then provided Farm with tissue samples from the following horses: Cuartetera, Colibrí, Lapa, Small Person, and Aiken Curah. (*Id.* ¶ 18) Farm then proceeded to contract with a third-party cloning lab, ViaGen, to

produce clones of these horses at Farm's sole expense and risk. (ECF No. 321-1 ¶ 10, Meeker Decl.) Between approximately 2009 and 2010, ViaGen produced ten "first limited edition" clones of the horse Cuartetera. (*Id.* ¶ 11.) In November of 2010, one of these Cuartetera clones was sold to third parties for $800,000 at a public auction hosted by Cambiaso and La Dolfina. (ECF No. 319 ¶ 19, JSOF.) Following this auction (which was the mechanism used for setting the market price), Cambiaso and Farm agreed that the terms and price of this sale would be acceptable under the 2009 Agreement and that additional clones of Cuartetera should be produced. (ECF No. 321-2, Meeker I at 12:15-15:6, 22:11-26:7.) Pursuant to Paragraph 5 of the 2009 Agreement, Farm began to produce "second limited edition" of ten Cuartetera clones. (ECF No. 321-1 ¶¶ 13, 16, Meeker Decl.) In 2020, Farm sold three of the "second edition" clones of Cuartetera to Pegasus Rider Limited for $800,000 each, with an option for 7 more. (*Id.*; ECF No. 319 ¶¶ 37-39, JSOF.) Thus, both Cambiaso and Farm have taken steps required by the 2009 Agreement, although Cambiaso has certainly breached some of the contract's terms as fully described in prior briefing.

For these reasons, any alleged defect in the 2009 Agreement would have been cured by the parties' extensive performance over the course of a decade. To now find the 2009 Agreement illusory, after both parties performed would defy logic and be contrary to the parties' actions and intent. *See Flagship Resort Dev. Corp.*, 28 So.3d at 922 n.6 ("It defies logic to conclude that the renewed [agreement] is illusory where the initial term of the [agreement] has already been fully performed and the language of the [agreement] has not changed.")

## IV.    OUTCOME OF THE COURT'S RULING ON VALIDITY OF THE 2009 AGREEMENT.

As ordered by the Court, the Crestview Defendants specify the effect of the Court's ruling as to the non-illusory nature of the 2009 Agreement on each of the parties' claims and affirmative defenses (*See* ECF No. 340 (citing ECF Nos. 303, 309, 310)):

| Plaintiffs' Third Amended Complaint (ECF 303)[4] | | |
|---|---|---|
| **Claims (p. 76)** | **Non-Illusory** | **Illusory** |
| Declaratory Judgment – Failure to Agree on Material Terms, Invalidity, Novation or Extinguishment of the 2009 Agreement (¶¶ 257-83) | Dismissed as to arguments that the 2009 Agreement is illusory. The Court would have to rule on Plaintiffs' other contentions. | Moot. |
| Breach of the 2009 Agreement (¶¶ 284-97) | None. | Moot. |
| Breach of Contract Regarding the 2019 Side Letter Agreement (¶¶ 298-310) | None. | None. |
| Breach of Bailment Contracts Regarding the 2009 Agreement and 2019 Side Letter Agreement (¶¶ 311-19) | None. The 2009 Agreement and 2019 Side Letter Agreements are not bailment agreements. *See* ECF 321 at 30-31. | Moot as to the 2009 Agreement. No effect as to the 2019 Side Letter Agreement. |
| Unjust Enrichment (¶¶ 320-27) | None. A claim for unjust enrichment fails as a matter of law if the parties have a valid contract covering the same subject matter as the unjust enrichment claim. *See* ECF 321 at 31-32. | None. Plaintiffs' allegations are contrary to uncontroverted evidence. Farm paid $1M to Cambiaso, provided a free clone of each horse subject to the 2009 Agreement, and bore all cloning expenses. *See* ECF 321 at 31-32. |
| Equitable Accounting (¶¶ 328-33) | None. Because the Court has already ruled that Plaintiffs failed to plausibly allege the existence of a fiduciary relationship, Plaintiffs must establish an extensive or complex account exists and a remedy at law is inadequate. They have done neither. *See* ECF 321 at 32-34. | None. Because the Court has already ruled that Plaintiffs failed to plausibly allege the existence of a fiduciary relationship, Plaintiffs must establish an extensive or complex account exists and a remedy at law is inadequate. They have done neither. *See* ECF 321 at 32-34. |
| Plaintiffs' federal and state trade secrets claims (¶¶ 334-83) | None. Plaintiffs' federal and state trade secret claims. fail independent of the 2009 Agreement's validity. Naturally occurring genetic tissue has not been classified as a trade secret in any jurisdiction. Additionally, | None. Plaintiffs' federal and state trade secret claims each fail independent of the 2009 Agreement's validity. Naturally occurring genetic tissue has not been classified as a trade secret in any jurisdiction. Additionally, Plaintiffs have no evidence that |

---

[4] La Dolfina S.A., LLC and Cambiaso still have counterclaims pending as result of the transfer and consolidation of Farm's action it filed in the Northern District of Texas (No. 4:20-cv-01288-O). (ECF No. 134.) These counterclaims are all duplicative of the Plaintiffs' claims against the Crestview Defendants in the TAC. (*See* ECF No. 299.) Thus, the effect of the Court's ruling on the validity of the 2009 Agreement would have the same effect on both pleadings.

| | Plaintiffs have no evidence that establishes essential elements of these claims. Plaintiffs have neither demonstrated the requisite efforts toward secrecy, nor demonstrated Defendants "misappropriated" the equine genetic material at issue. The 2009 Agreement gave express written permission to Farm. Cambiaso also manifested consent to Farm's use. *See* ECF 321 at 34-36 | establishes essential elements of these claims. Plaintiffs have neither demonstrated the requisite efforts toward secrecy, nor demonstrated Defendants "misappropriated" the equine genetic material at issue. Farm still received written permission from Cambiaso in the 2009 Agreement. There is no legal requirement that permission be in the form of a contract. Cambiaso also demonstrated affirmative consent to Farm's use. *See* ECF 321 at 34-36 |
|---|---|---|
| **Defendants' Answer, Affirmative Defenses & Counterclaims to the TAC (ECF 309)** | | |
| **Affirmative Defenses (p. 32)** | **Non-Illusory** | **Illusory** |
| Failure to State a Claim (¶384) | None. TAC states claims or defenses that are not legally cognizable. | None. TAC states claims or defenses that are not legally cognizable. |
| License (¶¶ 385-91) | None. | None. *See MidlevelU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1215 (11th Cir. 2021). |
| Adequate Remedy at Law (¶¶ 392-93) | None. | None. |
| Estoppel (¶¶ 394-98) | None. | None. |
| Laches (¶¶ 399-402) | None. | None. |
| Statute of Limitations (¶¶ 403-06) | None. | None. *See Mosher v. Anderson*, 817 So. 2d 812, 814 (Fla. 2002). |
| Plaintiffs' Prior Material Breach (¶¶ 407-12) | None. | Moot, in part, as it relates to Plaintiffs' breaches of the 2009 Agreement. |
| Failure of Consideration (¶¶ 413-14) | None. | None. |
| Unclean Hands (¶¶415-16) | None. | None. |
| No Alter Ego (¶¶ 417-21) | None. | None. |
| **Farm Counterclaim (p. 38)** | | |
| Breach of Contract (¶¶ 34-38) | If the Court were to find the 2009 Agreement illusory on a theory never previously pleaded by either party (*see generally* ECF 303), it would require that the Court invoke its equitable powers. Otherwise, the result would be a gratuitous payment of $1M, numerous cloning expenses, and a free first clone of the horses pursuant to the 2009 Agreement, to Cambiaso from Farm for no consideration. The Court's "power to grant restitution" for unjust enrichment, promissory estoppel, and quantum meruit is "firmly established." *U.S. C.F.T.C. v. S. Trust Metals, Inc.*, 2017 WL 2875427, at *5 (S.D. Fla. May 15, 2017). | |

| Dec. Judgment (¶¶ 39-43) | None. | As stated above. |
|---|---|---|
| **Genetics Counterclaim (p. 52)** | | |
| Genetics alleges six counterclaims (¶¶ 32-76). Because Genetics is not a party to the 2009 Agreement, the Court's ruling on the validity of the 2009 Agreement does not affect those claims. | | |
| **Answer &Affirmative Defenses of Plaintiffs to Counterclaims of Defendants (ECF 310)** | | |
| **Affirmative Defenses to Farm Counterclaim (p. 16)** | **Non-Illusory** | **Illusory** |
| Novation of the 2009 Agreement (¶¶ 1-2) | None. Farm is not a party to the 2011 Quota Holders, nor the 2019 Agreements. *See* ECF 321 at 37-38. | Moot. |
| Failure of Conditions Precedent to Form 2009 Agreement (¶ 3) | Moot. If the 2009 Agreement was non-illusory, then it was formed. *See* ECF 321 at 40. | Moot. |
| Failure of Performance of the 2009 Agreement (¶4) | None. Failure of performance is not an affirmative defense. *See* ECF 321 at 48. | Moot. |
| Illusory Nature of the 2009 Agreement (¶ 5) | Issue at hand. | Issue at hand. |
| Estoppel (¶¶ 6-16) | None. Failed to plead with particularity. *See* ECF 321 at 39. | None. Failed to plead with particularity. *See* ECF 321 at 39. |
| First Breach of the 2009 Agreement (¶¶ 17-22) | None. | Moot. |
| Limited License under the 2009 Agreement (¶¶ 23-26) | None. | Moot. |
| Novation of the 2009 Agreement by the 2019 Side Letter and Settlement Agreement (¶¶ 27-33) | None. Farm is not a party to the 2011 Quota Holders, nor the 2019 Agreements. *See* ECF 321 at 37-38. | Moot. |
| Breach of Novation Agreement (¶¶ 34-41) | None. Farm is not a party to the 2011 Quota Holders, nor the 2019 Agreements. *See* ECF 321 at 25-29. | None. Farm is not a party to the 2011 Quota Holders, nor the 2019 Agreements. *See* ECF 321 at 25-29. |
| Accord & Satisfaction (¶¶ 42-45) | None. Farm is not a party to the 2011 Quota Holders, nor the 2019 Agreements. *See* ECF 321 at 25-29. | Moot. |
| Waiver (¶¶ 46-47) | None. Waiver occurs only by express agreement or unequivocal acts evincing an intent to waive. *See* ECF 321 at 45. | Moot. |
| Laches (¶¶ 48-50) | None. | Moot. |
| Statute of Limitation (¶¶ 51-54) | None. | Moot. |

| Ratification (¶¶ 55-57) | None. Ratification cannot be procured by fraud. *See* ECF 321 at 40-41. | Moot. |
|---|---|---|
| Unclean Hands (¶¶ 58-68) | None. Unclean hands is not adequately pleaded when based on an express contract. *See* ECF 321 at 39. | Moot. |
| Duplicative Declaratory Judgment Action (¶¶ 69-71) | None. | None. |
| Set-Off (¶ 72) | None. | Moot. |
| Absence of Actual Damages (¶ 73) | None. Not an affirmative defense. *See* ECF 321 at 48. | Moot. |
| Unjust Enrichment (¶¶ 74-75) | None. | None. |
| No Basis for Attorneys' Fees (¶76) | None. Not an affirmative defense. *See* ECF 321 at 48 | Moot. |
| Prior Settlement (¶¶ 77-81) | None. Farm is not a party to the 2011 Quota Holders, nor the 2019 Agreements. *See* ECF 321 at 37-38. | Moot. |
| Statute of Frauds (¶¶ 82-86) | None. The 2009 Agreement cannot fall within the statute of frauds. *See* ECF 321 at 42-43. | Moot. |
| Failure to Mitigate Damages (¶¶ 87-92) | None. A demand was made by Genetics to Plaintiffs. *See* ECF 321 at 43. | Moot. |
| Abandonment (¶ 93) | None. Silence cannot constitute abandonment. *See* ECF 321 at 38. | Moot. |
| **Affirmative Defenses to Genetics' Counterclaims (p. 55)** | | |
| Plaintiffs allege seventeen affirmative defenses to Genetics' counterclaims. (¶¶ 1-57) Because Genetics is not a party to the 2009 Agreement, the Court's ruling on the validity of the 2009 Agreement does not affect the affirmative defenses to Genetics' counterclaims. | | |

## CONCLUSION

The Crestview Defendants respectfully request that this Court grant their request for summary judgment as set forth in Crestview Defendants' Motion for Summary Judgment (ECF No. 321) and deny Plaintiffs' Motion for Partial Summary Judgment (ECF No. 317).

Dated: February 22, 2023

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Maia Sevilla Sharon*
Maia Sevilla-Sharon (FBN 123929)
maia.sevillasharon@dlapiper.com
DLA Piper LLP (US)
200 S. Biscayne Blvd., Suite 2500
Miami, FL 33131
(305) 423-8500

Jason Lewis (admitted *pro hac vice)*
jason.lewis@dlapiper.com
James C. Bookhout (admitted *pro hac vice)*
james.bookhout@dlapiper.com
DLA Piper LLP (US)
1900 N. Pearl Street
Dallas, TX 75201
(214) 743-4549

**NASON YEAGER GERSON
HARRIS & FUMERO, P.A.**
Gary Woodfield (FBN 0563102)
gwoodfield@haileshaw.com
660 U. S. Highway One, Third Floor
North Palm Beach, FL 33408
(561) 627-8100

*Counsel for Crestview Farm, LLC, Crestview
Genetics, LLC, and Alan Meeker*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 22, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or plaintiff either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Maia Sevilla Sharon*
Maia Sevilla-Sharon