**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 20-82231-CIV-CANNON/Reinhart**

**LA DOLFINA S.A., LLC**, and
**ADOLFO CAMBIASO,**

      Plaintiffs/Counter-Defendants,

v.

**D. ALAN MEEKER**,
**CRESTVIEW FARM LLC**,
and **CRESTVIEW GENETICS LLC**,

      Defendants/Counter-Plaintiffs

v.

**LA DOLFINA S.A.**

      Counter-Claimant/Counter-Defendant.
_____/

## COURT'S DRAFT FINAL INSTRUCTIONS TO THE JURY
### (Pre-Final Charge Conference)

Members of the jury:

It is my duty to instruct you on the rules of law that you must use in deciding

this case.  When I have finished, you will go to the jury room and begin your

discussions, sometimes called deliberations.

The plaintiffs in this case are Adolfo Cambiaso, La Dolfina S.A., LLC, and

La Dolfina, S.A.  Throughout these instructions, these parties will be referred to

collectively as "Plaintiffs," but will also be referred to individually by their respective names where applicable.

The defendants in this case are David Alan Meeker, Crestview Farm, LLC ("Crestview Farm"), and Crestview Genetics, LLC ("Crestview Genetics"). Throughout these instructions, these parties will be referred to collectively as "Defendants," but will also be referred to individually by their respective names where applicable. Although Plaintiffs bring claims against all three Defendants, the counterclaims in this case are brought only by Crestview Genetics against Plaintiffs.

**Official English Translation / Interpretation**

You heard and saw testimony in the Spanish language during this trial.

You must consider evidence provided through only the official court translators when a witness used a translator to testify.  It is important that all jurors consider the same evidence.  So even if some of you know Spanish, you must accept the English translation provided and disregard any different meaning.

You should not hold the use of an interpreter against any witness.

## Use of Depositions

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions.  A court reporter is present and records the questions and answers.

The depositions of the following individuals were presented to you by video and/or transcript:

- Robert Jornayvaz (taken on May 23, 2022, and June 30, 2022)

- Blake Russell (taken on March 29, 2022)

- Dan Meeker (taken on November 17, 2021)

Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court. For the deposition you heard via transcript only, do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

### The Duty to Follow Instructions – Corporate Party Involved

Your decision must be based only on the evidence presented here.  You must not be influenced in any way either by sympathy for or prejudice against anyone.

You must follow the law as I explain it—even if you do not agree with the law—and you must follow all of my instructions as a whole.  You must not single out or disregard any of the instructions on the law.

Certain parties in this case are corporate entities, including La Dolfina S.A. (an Argentine corporation) and Crestview Genetics LLC, Crestview Farm LLC, and La Dolfina S.A. LLC (limited liability companies).  The fact that a corporate entity is involved as a party must not affect your decision in any way.  A corporate entity and all other persons stand equal before the law and must be dealt with as equals in a court of justice.  When a corporate entity is involved, of course, it may act only through people as its agents, employees, officers, directors, managers, or members; and, in general, a corporate entity is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

## Consideration of Direct and Circumstantial Evidence;
## Argument of Counsel; Comments by Court

As I said before, you must consider only the evidence that I have admitted in the case.  Evidence includes the testimony of witnesses and the exhibits admitted. But anything the lawyers say is not evidence and isn't binding on you.

You should not assume from anything I have said that I have any opinion about any factual issue in this case.  Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence, you may use reasoning and common sense to make deductions and reach conclusions.  You should not be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact.  There is no legal difference in the weight you may give to either direct or circumstantial evidence.

## Credibility of Witnesses

When I say you must consider all of the evidence, I don't mean that you must accept all the evidence as true or accurate.  You should decide whether you believe what each witness had to say, and how important that testimony was.  In making that decision, you may believe or disbelieve any witness, in whole or in part.  The number of witnesses testifying concerning a particular point does not necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

- Did the witness impress you as one who was telling the truth?

- Did the witness have any particular reason not to tell the truth?

- Did the witness have a personal interest in the outcome of the case?

- Did the witness seem to have a good memory?

- Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

- Did the witness appear to understand the questions clearly and answer them directly?

- Did the witness's testimony differ from other testimony or other evidence?

## Impeachment of Witnesses Because of Inconsistent Statements

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact.  And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it.  People naturally tend to forget some things or remember them inaccurately.  So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

## Expert Witnesses

When scientific, technical or other specialized knowledge might be helpful,  a person who has special training or experience in that field is allowed to state an opinion about the matter. The usual rule is that fact witnesses can testify only to those facts about which he has personal knowledge.  If a witness is providing expert testimony, he is allowed to testify as to facts about which he does not have personal knowledge.  When a witness is a hybrid fact and expert witness, he can rely on facts about which she does not have personal knowledge only when she is testifying in her expert capacity.

You are not required to accept an expert witness's opinion.  As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

When a witness is being paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution  the testimony of such witness where court testimony is given with regularity and represents a significant portion of the witness's income.

**Responsibility for Proof – Plaintiffs' Claims and Defendant Crestview
Genetics' Counterclaims – Preponderance of the Evidence**

In this case, it is the responsibility of the party bringing any claim or counterclaim to prove every essential part of its claim or counterclaim by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the party's claim or counterclaim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the party making that claim or contention.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Plaintiffs' claims by a preponderance of the evidence, you should find for Defendants as to that claim. If

the proof fails to establish any part of Defendant Crestview Genetics' counterclaims, you should find for Plaintiffs as to that counterclaim.

## Responsibility for Proof – Affirmative Defenses – Preponderance of the Evidence

In this case, both Plaintiffs and Defendants assert affirmative defenses. Even if Plaintiffs prove a claim by a preponderance of the evidence, Defendants can prevail on that claim if Defendants prove an affirmative defense for that claim by a preponderance of the evidence. Alternatively, if Defendant Crestview Genetics proves a counterclaim by a preponderance of the evidence, Plaintiffs can prevail on that counterclaim if Plaintiffs prove an affirmative defense for that counterclaim by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that Defendants do not have to disprove Plaintiffs' claims, but if Defendants raise an affirmative defense, the only way Defendants can prevail on that specific defense is if Defendants prove that defense by a preponderance of the evidence. Equally, Plaintiffs do not have to disprove Defendant Crestview Genetics' counterclaims, but if Plaintiffs raise an affirmative defense to Defendant Crestview Genetics' counterclaims, the only way Plaintiffs can prevail on that specific defense is if Plaintiffs prove that defense by a preponderance of the evidence.

**Duty to Deliberate**

Your verdict must be unanimous—in other words, you must all agree.  Your deliberations are secret, and you will never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors.  So, you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong.  But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges—judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

**Limiting Instruction – 2009 Horse Cloning Contract or "2009 Agreement"**

During the course of this trial, you heard witnesses and lawyers refer to something called the "2009 Horse Cloning Contract," also referred to as the "2009 Agreement."  I instruct you that, in connection with legal proceedings in this case, the Court previously ruled, in 2023, that the 2009 Agreement was void and unenforceable as a matter of law because it lacked certain essential terms required to form a binding contract under Florida law.  That means that the 2009 Agreement was not binding on the parties; it did not create any legal rights or impose any legal obligations on the parties; and you will not be asked in this case to evaluate any claim for breach of that 2009 Agreement.  Nevertheless, despite the legal unenforceability of the 2009 Agreement, I want to advise you that you will be hearing evidence throughout this trial about the 2009 Agreement, and you may consider that evidence as relevant in your evaluation of the claims and affirmative defenses in dispute, consistent with this instruction.

## Overview of Plaintiffs' Claims

I will now instruct you on the claims that Plaintiffs bring against Defendants. As you will see below, not all of Plaintiffs' claims are brought against all Defendants, so please be mindful of the parties involved in each claim.

Plaintiffs' five claims, listed here, will be explained in greater detail throughout these instructions:

- Breach of Contract (2019 Side Letter Agreement) – Plaintiffs against Crestview Genetics

- Breach of Bailment Contract (2019 Side Letter Agreement) – Plaintiffs against Crestview Genetics

- Unjust Enrichment – Plaintiffs against Crestview Farm and Mr. Meeker

- Violation of the Federal Defend Trade Secrets Act – Plaintiffs against all Defendants

- Misappropriation of Trade Secrets Under the Florida Uniform Secrets Act – Plaintiffs against all Defendants

As I previously instructed you, to prevail on these claims, Plaintiffs must establish each element of each claim by a preponderance of the evidence.

**Breach of Contract (2019 Side Letter Agreement)**
**Plaintiffs Against Crestview Genetics**

To establish their breach of contract claim, Plaintiffs must prove all of the following:

1.    Mr. Cambiaso, La Dolfina S.A., and Crestview Genetics entered into a contract, the 2019 Side Letter Agreement.  This element is undisputed, and you should accept it as proven.

2.    Mr. Cambiaso and La Dolfina S.A. did all, or substantially all, of the essential things which the 2019 Side Letter Agreement required them to do, or they were excused from doing those things.

3.    All conditions required by the contract for Crestview Genetics' performance had occurred.  This element is undisputed, and you should accept it as proven.

4.    Crestview Genetics did things that the contract prohibited them from doing and these prohibitions were essential to the contract.  Specifically, Plaintiffs allege that Crestview Genetics (a) failed to keep equine tissue and genetic material for the exclusive use of Mr. Cambiaso and La Dolfina S.A.; (b) produced and sold Cuartetera clones to a third party without authorization; (c) failed to return to Plaintiffs the clones produced under the 2019 Side Letter Agreement; and (d) violated the provision requiring Cuartetera clones be played only on a La

16

Dolfina-branded team.  Any one of these alleged breaches is sufficient to establish this element of the claim.  Plaintiffs do not need to establish all four alleged breaches.

    5.    Plaintiffs were damaged by these actions.

If you find that any one or more of these elements has not been proven, then your verdict must be for Crestview Genetics on this claim.

If, however, you find that all of these elements have been proven, then you must consider whether Crestview Genetics has proven one of its affirmative defenses on this claim.  Crestview Genetics contends that Plaintiffs' breach of contract claim for the 2019 Side Letter Agreement fails because of the following affirmative defenses: (i) estoppel; (ii) Plaintiffs committed a prior material breach of the 2019 Side Letter Agreement (first breach defense); (iii) failure of consideration; and (iv) unclean hands.  Explanations of each of these affirmative defenses are provided further in the instructions.

**Breach of Bailment Contract (2019 Side Letter Agreement) –
Plaintiffs Against Crestview Genetics – Introduction**

Plaintiffs also claim that the 2019 Side Letter Agreement created a bailment. A bailment is a contractual agreement between two parties, under which the owner of property (the bailor) delivers the property to the bailee, so that the bailee has the temporary right to exclusive use and possession of the bailor's property. Plaintiffs allege that, as bailors, Mr. Cambiaso and La Dolfina S.A. delivered the genetic material and equine tissue to Crestview Genetics, the bailee, for Crestview Genetics' temporary use and possession.

Plaintiffs claim that Crestview Genetics breached this contract by exceeding the scope of its authorized bailment. Specifically, Plaintiffs allege that (a) Crestview Genetics misappropriated Plaintiffs' genetic material; (b) sold three Cuartetera clones to a third party; (c) provided the third party an option to purchase seven more Cuartetera clones; and (d) granted the third party a right to create its own Cuartetera clones. Plaintiffs also contend that they were damaged by these breaches.

Crestview Genetics denies that it breached a bailment agreement, and it has asserted affirmative defenses listed below.

**Breach of Bailment Contract (2019 Side Letter Agreement) –
Plaintiffs Against Crestview Genetics – Essential Factual Elements**

To establish a breach of bailment contract claim, Plaintiffs must prove all of the following:

1.     Mr. Cambiaso, La Dolfina S.A., and Crestview Genetics entered into a contract, the 2019 Side Letter Agreement.  This element is undisputed, and you should accept it as proven.

2.     Under the 2019 Side Letter Agreement, Mr. Cambiaso and La Dolfina S.A. delivered the genetic material and equine tissue to Crestview Genetics with the right to exclusive use and possession of the item for the period of the bailment.

3.     Under the 2019 Side Letter Agreement, Crestview Genetics received a benefit in exchange for the bailment.

4.     Mr. Cambiaso and La Dolfina S.A. did all, or substantially all, of the essential things which the 2019 Side Letter Agreement required them to do, or they were excused from doing those things.

5.     All conditions required by the contract for Crestview Genetics' performance had occurred.  This element is undisputed, and you should accept it as proven.

6.     Crestview Genetics failed to exercise the duty of ordinary or reasonable care with the genetic material, meaning it failed to use the care that a reasonably

careful person would use under like circumstances.  In this case, the alleged failure to exercise reasonable care stems from Plaintiffs' claim that Crestview Genetics exceeded the scope of its authorized bailment as alleged in the above introductory instruction to this claim.

      7.     Mr. Cambiaso and La Dolfina S.A. were damaged by that failure.

If you find that any one or more of these elements has not been proven, then your verdict must be for Crestview Genetics.

If, however, you find that all of these elements have been proven, then you must consider whether Crestview Genetics has proven one of its affirmative defenses.  Crestview Genetics contends that Plaintiffs' breach of bailment contract claim fails because of the following affirmative defenses: (i) license; (ii) estoppel; (iii) Plaintiffs committed a prior material breach of the 2019 Side Letter Agreement (first breach defense); (iv) failure of consideration; and (v) unclean hands. Explanations of each of these affirmative defenses are provided further in the instructions.

**Unjust Enrichment – Plaintiffs Against Crestview Farm and Mr. Meeker**

Plaintiffs claim that Crestview Farm and Mr. Meeker wrongfully retain the benefits derived from Plaintiffs' equine genetic material provided in 2009 and clones created from that genetic material, as well as the clones' breeding and earning capacity. To establish this claim, Plaintiffs must prove all of the following:

1.     Mr. Cambiaso gave a benefit to Crestview Farm or Mr. Meeker or both in the form of equine tissue and the ability to make clones from that tissue in limited circumstances;

2.     Crestview Farm or Mr. Meeker or both knew of the benefit and voluntarily accepted or retained the benefit; and

3.     The circumstances are such that Crestview Farm or Mr. Meeker or both should, in all fairness, be required to return the tissue and any clones created with that tissue.

If you find that any one or more of the elements has not been proven, then your verdict must be for Crestview Farm or Mr. Meeker or both.

If, however, you find that all of these elements have been proven, then you must consider whether Crestview Farm or Mr. Meeker or both have proven one of their affirmative defenses. Crestview Farm and Mr. Meeker contend that Plaintiffs' unjust enrichment claim fails because of the following affirmative defenses:

(i) statute of limitations; (ii) estoppel; and (iii) unclean hands.  Explanations of these affirmative defenses are provided further in the instructions.

### Violation of the Federal Defend Trade Secrets Act –
### Plaintiffs against Defendants

The Federal Defend Trade Secrets Act prohibits the misappropriation of a valid trade secret related to a product or service used in, or intended for use in, interstate or foreign commerce.   In this case, Plaintiffs claim that Defendants misappropriated a trade secret belonging to Mr. Cambiaso and La Dolfina S.A.—the genetic material from Plaintiffs' horses.

To prove their claim under the Federal Defend Trade Secrets Act, Plaintiffs must prove the following facts by a preponderance of the evidence:

1. Mr. Cambiaso and La Dolfina S.A. own a valid trade secret.

2. The trade secret relates to a product or service used in, or intended for use in, interstate or foreign commerce; and

3. Defendants misappropriated that trade secret.

Plaintiffs claim that they own a trade secret in the form of the genetic material and equine tissue of Plaintiffs' horses. To prove that Plaintiffs own that genetic material, they must prove that the trade secret is their property.

Trade Secret. A trade secret may take many forms, including all forms and types of financial, business, scientific, technical, economic, or engineering information. A trade secret may include patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures,

programs, or codes.  A trade secret may be tangible or intangible.  A trade secret does not have to be stored, compiled, or memorialized.  But if it is, it does not have to be stored, compiled, or memorialized in any particular manner, such as physically, electronically, graphically, photographically, or in writing.

To qualify as a trade secret, Plaintiffs must prove the following by a preponderance of the evidence:

1. The genetic material, including the unique genetic code and the horses possessing that same genetic code, is not generally known to another person who can obtain economic value from the disclosure or use of the information;

2. Another person cannot readily discover the genetic material through proper means;

3. The genetic material derives independent economic value from not being known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information; and

4. Plaintiffs have taken reasonable steps to keep the trade secret, although absolute secrecy is not required.

Ownership.  The Federal Defend Trade Secrets Act defines "owner" as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed."

Interstate or Foreign Commerce.  Plaintiffs claim that the trade secret—genetic material including the unique genetic code—is a product used in, or intended for use in, interstate or foreign commerce.  Use or intended use of the product in interstate commerce means that the product involves travel, trade, transportation, or communication between a place in one state and a place in another state.  Use of the product in foreign commerce means that the product or service involves travel, trade, transportation, or communication between a place in the United States and a place outside of the United States.

Misappropriation.  Plaintiffs claim that Defendants acquired, disclosed, or used the trade secret without the right to do so.  This is called "misappropriation."

For Plaintiffs to prove that Defendants misappropriated the trade secret, Plaintiffs must prove the following by a preponderance of the evidence:

1. One or more of the Defendants acquired, disclosed, or used the trade secret without Plaintiffs' express or implied consent; and

2. Defendants knew or should have known that the trade secret:

   a. was derived from or through a third person who used improper means to acquire the trade secret;

25

b.  was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

c.  was derived from or through a third person who was under a duty to maintain the secrecy of or limit the use the trade secret.

"Improper means" may include theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy, and espionage through electronic or other means.

Each act of acquiring, disclosing, or using the trade secret may constitute a separate act of misappropriation.

"Express consent" is consent that is clearly and unmistakably stated.  "Implied consent" is consent that is inferred from one's conduct rather than from one's direct expression.

If you find that any one or more of the elements has not been proven, then your verdict must be for Defendants.

If, however, you find that all of these elements have been proven, then you must consider whether Defendants have proven one of the following affirmative defenses: (i) statute of limitations; (ii) license; (iii) estoppel; and (iv) unclean hands. Explanations of each of these affirmative defenses are provided further in the instructions.

### Misappropriation of Trade Secrets Under Florida Uniform Secrets Act – Plaintiffs against Defendants

Plaintiffs claim that Defendants misappropriated a trade secret possessed by Mr. Cambiaso and La Dolfina S.A.

To prove that Mr. Cambiaso and La Dolfina S.A. possessed a trade secret, they must prove that:

1.   Mr. Cambiaso and La Dolfina S.A. possessed genetic material, including unique genetic code, that:

      a.  derived actual or potential independent economic value from not being generally known to other person who could obtain value from its disclosure or use; and

      b.  was not readily ascertainable by proper means by other persons.

2.   Plaintiffs took reasonable steps, under the circumstances, to maintain the secrecy of the trade secret.

If you find that Plaintiffs proved that they had a trade secret, then Plaintiffs must further establish that the trade secret was misappropriated by proving the following misappropriation:

One or more of the Defendants disclosed or used Plaintiffs' trade secret without Plaintiffs' express or implied consent at a time when Defendants knew or

had reason to know that they acquired the trade secret under circumstances where they had a duty to maintain its secrecy or limit its use.

If you find that any one or more of the elements has not been proven, then your verdict must be for Defendants.

If, however, you find that all of these elements have been proven, then you must consider whether Defendants have proven one of their affirmative defenses: (i) statute of limitations; (ii) license; (iii) estoppel; and (iv) unclean hands. Explanations of each of these affirmative defenses are provided further in the instructions.

## Overview of Defendants' Affirmative Defenses

I will now instruct you on the affirmative defenses that Defendants raise in response to Plaintiffs' claims. As I previously instructed you, to prevail on these affirmative defenses, Defendants must establish each element of the defense by a preponderance of the evidence.

### Affirmative Defense – Statute of Limitations – Asserted as to Plaintiffs' Claims for Unjust Enrichment, for Violations of the Federal Defend Trade Secrets Act, and for Florida's Uniform Secrets Act

Defendants claim that Plaintiffs' lawsuit was not filed within the time set by law.

Federal Defend Trade Secrets Act and Florida Uniform Trade Secrets Act.  A claim under the Federal Defend Trade Secrets Act or the Florida Uniform Trade Secrets Act must be filed within three years after the claimed misappropriation occurred.  To succeed on this defense, Defendants must prove that the claimed misappropriation of Plaintiffs' trade secret(s) occurred before December 8, 2017. The law considers a continuing misappropriation as a single misappropriation. Therefore, you should determine whether the claimed misappropriation is a single misappropriation that began before or after December 8, 2017.

However, the lawsuit was still filed on time if Plaintiffs prove that, before December 8, 2017, Plaintiffs did not discover, nor with reasonable diligence should have discovered, the claimed misappropriation of Plaintiffs' trade secret.

Unjust Enrichment. To establish a statute of limitations defense as to Plaintiffs' Unjust Enrichment claim, Mr. Meeker and Crestview Farm must prove that any inequitable retention of a benefit conferred upon Mr. Meeker and Crestview Farm, if one in fact occurred, occurred before December 8, 2016, which is four years before Plaintiffs filed their complaint.

**Affirmative Defense – First Breach – Applies to Plaintiffs' Breach of Contract Claim (2019 Side Letter Agreement) and Plaintiffs' Breach of Bailment Contract Claim (2019 Side Letter Agreement)**

As a defense to Plaintiffs' claims that Crestview Genetics breached the 2019 Side Letter Agreement, Crestview Genetics asserts the affirmative defense of first breach. Under Florida law, if a party breaches a contract, the non-breaching party is excused from its obligations under the contract. Crestview Genetics claims that Plaintiffs first breached the 2019 Side Letter Agreement, so Crestview Genetics was excused from its obligations under that contract and cannot be liable for breaching it. To establish the defense of first breach, Crestview Genetics must establish each of the following elements:

1. Mr. Cambiaso or La Dolfina S.A. or both breached the contract first; and

2. That breach was material or substantial, meaning it goes to the "essence of the contract" as opposed to the mere failure to perform some minor part of the contract.

If Crestview Genetics proves each element of this affirmative defense, then it has established first breach, and your verdict must be for Crestview Genetics on Plaintiffs' claims for breach of contract (2019 Side Letter Agreement) and breach of bailment contract (2019 Side Letter Agreement).

**Affirmative Defense – Failure of Consideration – Applies to Plaintiffs' Breach of Contract Claim (2019 Side Letter Agreement) and Plaintiffs' Breach of Bailment Contract Claim (2019 Side Letter Agreement)**

As a defense to Plaintiffs' claims that Crestview Genetics breached the 2019 Side Letter Agreement, Crestview Genetics asserts that there was a failure of consideration under that agreement.  Specifically, Crestview Genetics claims that Plaintiffs failed to fully perform under the 2019 Side Letter Agreement by not transferring horses and a parcel of land to Crestview Genetics.

To create a binding contract under Florida law, there must have been consideration between the parties.  Thus, to succeed on this defense, Crestview Genetics must prove that Plaintiffs neglected, refused, or failed to perform the consideration agreed upon in the 2019 Side Letter Agreement.

If Crestview Genetics succeeds in proving that Plaintiffs failed to furnish the consideration agreed upon in the 2019 Side Letter Agreement, then it has established failure of consideration, and your verdict must be for Crestview Genetics on Plaintiffs' claims for Breach of Contract (2019 Side Letter Agreement) and Breach of Bailment Contract (2019 Side Letter Agreement).

**Affirmative Defense – License – Applies to Plaintiffs' Breach of Contract Claim (2019 Side Letter Agreement), Plaintiffs' Breach of Bailment Contract Claim (2019 Side Letter Agreement); and Plaintiffs' Claims for Violation of the Federal Defend Trade Secrets Act and Florida's Uniform Secrets Act**

Crestview Farm and Crestview Genetics have asserted the affirmative defense of the existence of a license agreement between Crestview Farm and Crestview Genetics and Mr. Cambiaso.  An owner of a good may grant another person the right to exercise any of the exclusive rights comprised in the good.  One way to grant such rights is by license agreement.  A license is essentially a written or oral promise by the licensor not to sue the licensee for the licensee's use or exercise of licensor's exclusive rights in the good(s) at issue and can be either express or implied.

An express license is a license where the parties themselves expressly agree either orally or in writing on the specific terms of the license.  By contrast, an implied license will be inferred by law where the parties do not have an express agreement, but their conduct indicates that some license is to be extended between them.

**Affirmative Defense – Unclean Hands – Asserted as to All of Plaintiffs' Claims**

Defendants have raised the defense of unclean hands.  To establish this defense, Defendants must prove by a preponderance of the evidence that:

1. Plaintiffs' committed an unconscionable act or engaged in reprehensible conduct;

2. Plaintiffs' unconscionable acts or reprehensible conduct was directly related to the claims Plaintiffs have asserted; and

3. Defendants were injured by Plaintiffs' unconscionable acts or reprehensible conduct.

**Affirmative Defense – Estoppel – Asserted as to all of Plaintiffs' Claims**

Crestview Farm has raised the defense of equitable estoppel.  To establish this defense, Crestview Farm must prove all of the following:

1. Plaintiffs were aware of Crestview Farm's understanding of its continuing rights under the 2009 Agreement, but—despite being aware of Crestview Farm's understanding—Plaintiffs remained silent about Crestview Farm's possession and use of equine genetic material and the production of clones using such genetic material;

2. Crestview Farm relied in good faith upon Plaintiffs' inaction or silence; and

3. Crestview Farm's reliance on Plaintiffs' inaction or silence caused Crestview Farm to change their position for the worse.

## Overview of Defendants' Counterclaims

I will now instruct you on the counterclaims that Defendants make against Plaintiffs.  Of all three Defendants, only Crestview Genetics brings counterclaims against Plaintiffs.  As I previously instructed you, to prevail on their counterclaims, Crestview Genetics must establish each element of the counterclaim by a preponderance of the evidence.   Crestview Genetics' five counterclaims, listed below, will be explained in greater detail later in these instructions:

- Breach of Contract Counterclaim (2019 Side Letter Agreement): Failure to Provide Oocytes and Semen – Crestview Genetics against Plaintiffs.

- Breach of Contract Counterclaim (2019 Side Letter Agreement): Failure to Transfer Land – Crestview Genetics against Plaintiffs.

- Breach of Contract Counterclaim (2019 Side Letter Agreement): Wrongful Registration of Storm Cat 02 – Crestview Genetics against Plaintiffs.

- Breach of Bailment Contract Counterclaim (2019 Side Letter Agreement) – Crestview Genetics against Plaintiffs.

- Breach of Contract (2019 Settlement Agreement) – Crestview Genetics against Plaintiffs.

36

## Piercing the Corporate Veil / Alter Ego

A limited liability company is a legal entity separate from its owner.  An owner can be an individual.  The owner is not liable for the acts of the limited liability company unless there is a piercing of the corporate veil.  In this case, Crestview Genetics seek to "pierce the corporate veil" between Mr. Cambiaso and La Dolfina S.A.  Crestview Genetics also seeks to pierce the veil between Mr. Cambiaso and La Dolfina S.A. LLC.  In that way, Crestview Genetics seeks to impose obligations upon Mr. Cambiaso that otherwise would be owing, if at all, solely from La Dolfina S.A. or La Dolfina S.A. LLC.

In order to pierce the corporate veil and hold Mr. Cambiaso liable for the obligations of La Dolfina S.A. or La Dolfina S.A. LLC, Crestview Genetics must show that:

1.   Mr. Cambiaso dominated and controlled La Dolfina S.A. or La Dolfina S.A. LLC or both such that:

   a.  La Dolfina S.A.'s or La Dolfina S.A. LLC's separate identity was not sufficiently maintained, and

   b.  La Dolfina S.A. or La Dolfina S.A. LLC lacked an existence independent from Mr. Cambiaso; and

2.   The corporate form of La Dolfina S.A. or La Dolfina S.A. LLC was used for a fraudulent or improper purpose; and

3.    Crestview Genetics was harmed by the fraudulent or improper use of the corporate form of La Dolfina S.A. or La Dolfina S.A. LLC.

**Breach of Contract Counterclaim**
**(2019 Side Letter Agreement; Failure to Provide Oocytes and Semen)**
**Crestview Genetics Against Plaintiffs**

To recover damages for its breach of contract counterclaim against Plaintiffs, Crestview Genetics must prove all of the following:

1. Crestview Genetics, Mr. Cambiaso, and La Dolfina S.A. entered into a contract, the 2019 Side Letter Agreement. This element is undisputed, and you should accept it as proven.

2. Crestview Genetics did all, or substantially all, of the essential things which the 2019 Side Letter Agreement required it to do, or Crestview Genetics was excused from doing those things.

3. All conditions required by the contract for Mr. Cambiaso and La Dolfina S.A.'s performance had occurred. This element is undisputed, and you should accept it as proven.

4. Mr. Cambiaso or La Dolfina S.A. did things that the contract prohibited them from doing and those prohibitions were essential to the contract. Specifically, Crestview Genetics alleges that Mr. Cambiaso and La Dolfina, S.A., breached the 2019 Side Letter Agreement by failing to provide any oocytes or any semen for fertilizing them.

5. Crestview Genetics was damaged by these actions.

If you find that any one or more of these elements has not been proven, then your verdict must be for Plaintiffs on this claim.  Plaintiffs deny that they breached the 2019 Side Letter Agreement, or that Section 3 required them to provide Crestview Genetics oocytes and semen instead of live foals.

If, however, you find that all of these elements have been proved, then you must consider whether Plaintiffs have proven one of their affirmative defenses on this counterclaim.  Plaintiffs contend that Crestview Genetics' breach of contract counterclaim fails because of the following affirmative defenses: (i) first breach, (ii) force majeure, (iii) waiver; and (iv) ratification to mitigate damages. Explanations of each of these affirmative defenses are provided further in the instructions.

**Breach of Contract Counterclaim**
**(2019 Side Letter Agreement; Failure to Transfer Land)**
**Crestview Genetics Against Plaintiffs**

To recover damages for its breach of contract counterclaim against Plaintiffs, Crestview Genetics must prove all of the following:

1.     Crestview Genetics, Mr. Cambiaso, and La Dolfina S.A. entered into a contract, the 2019 Side Letter Agreement.  This element is undisputed, and you should accept it as proven.

2.     Crestview Genetics did all, or substantially all, of the essential things which the 2019 Side Letter Agreement required it to do, or Crestview Genetics was excused from doing those things.

3.     All conditions required by the contract for Mr. Cambiaso and La Dolfina S.A.'s performance had occurred.  This element is undisputed, and you should accept it as proven.

4.     Mr. Cambiaso or La Dolfina S.A. did things that the contract prohibited them from doing and those prohibitions were essential to the contract.  Specifically, Crestview Genetics alleges that Mr. Cambiaso and La Dolfina, S.A., breached the 2019 Side Letter Agreement by failing to transfer the agreed-to parcel of land.

5.     Crestview Genetics was damaged by these actions.

If you find that any one or more of these elements has not been proven, then your verdict must be for Plaintiffs on this claim.

41

If, however, you find that all of these elements have been proved, then you must consider whether Plaintiffs have proven one of their affirmative defenses on this counterclaim.  Plaintiffs contend that Crestview Genetics' breach of contract counterclaim fails because of the following affirmative defenses: (i) first breach, (ii) force majeure, (iii) waiver, and (iv) ratification.  Explanations of each of these affirmative defenses are provided further in the instructions.

**Breach of Contract Counterclaim**
**(2019 Side Letter Agreement; Storm Cat 02)**
**Crestview Genetics Against Plaintiffs**

To recover damages for its breach of contract counterclaim against Plaintiffs, Crestview Genetics must prove all of the following:

1.    Crestview Genetics, Mr. Cambiaso, and La Dolfina S.A. entered into a contract, the 2019 Side Letter Agreement.  This element is undisputed, and you should accept it as proven.

2.    Crestview Genetics did all, or substantially all, of the essential things which the 2019 Side Letter Agreement required it to do, or Crestview Genetics was excused from doing those things.

3.    All conditions required by the contract for Mr. Cambiaso and La Dolfina S.A.'s performance had occurred.  This element is undisputed, and you should accept it as proven.

4.    Mr. Cambiaso or La Dolfina S.A. did things that the contract prohibited them from doing and those prohibitions were essential to the contract.  Specifically, Crestview Genetics alleges that Mr. Cambiaso and La Dolfina, S.A., breached the 2019 Side Letter Agreement by wrongfully registering Storm Cat 02 in the name of La Dolfina as an owner, claiming ownership over Storm Cat 02, and refusing to transfer possession and custody of Storm Cat 02.  Any one of these alleged breaches is sufficient to establish this element of this counterclaim.

5.     Crestview Genetics was damaged by these actions.

If you find that any one or more of these elements has not been proven, then your verdict must be for Plaintiffs on this claim.

If, however, you find that all of these elements have been proven, then you must consider whether Plaintiffs have proven one of their affirmative defenses on this counterclaim.  Plaintiffs contend that Crestview Genetics' breach of contract counterclaim fails because of the following affirmative defenses: (i) first breach, (ii) force majeure, (iii) waiver, and (iv) ratification.  Explanations of each of these affirmative defenses are provided further in the instructions.

**Breach of Bailment Contract Counterclaim**
**(2019 Side Letter Agreement)**
**Crestview Genetics Against Plaintiffs – Introduction**

Crestview Genetics also claims that the 2019 Side Letter Agreement created a bailment. A bailment is a contractual agreement between two parties, under which the owner of property (the bailor) delivers the property to the bailee, so that the bailee has the temporary right to exclusive use and possession of the bailor's property. Crestview Genetics alleges that, as bailor, it left Storm Cat 02 with Mr. Cambiaso and La Dolfina S.A., the bailees, for their temporary exclusive use and possession.

Crestview Genetics claims that Mr. Cambiaso and La Dolfina S.A. breached this contract by exceeding the scope of the authorized bailment. Specifically, Crestview Genetics alleges that Mr. Cambiaso and La Dolfina S.A. registered Storm Cat 02 in the name of La Dolfina S.A. and produced foals from Storm Cat 02 without producing any for Crestview Genetics. Crestview Genetics also contends that those breaches resulted in damages.

Plaintiffs deny that they breached a bailment agreement, and they assert several affirmative defenses listed below.

**Breach of Bailment Contract Counterclaim**
**(2019 Side Letter Agreement)**
**Crestview Genetics Against Plaintiffs – Essential Factual Elements**

To recover damages from Plaintiffs under this claim, Crestview Genetics must prove all of the following:

1.      Crestview Genetics entered into the 2019 Side Letter Agreement with Mr. Cambiaso and La Dolfina S.A.  This element is undisputed, and you should accept it as proven.

2.      Under the 2019 Side Letter Agreement, Crestview Genetics delivered Storm Cat 02 to Mr. Cambiaso and La Dolfina S.A. for their temporary, exclusive use and possession for the period of the bailment.

3.      Under the 2019 Side Letter Agreement, Mr. Cambiaso and La Dolfina S.A. received a benefit in exchange for the bailment.

4.      Crestview Genetics did all, or substantially all, of the essential things which the 2019 Side Letter Agreement required it to do, or it was excused from doing those things.

5.      All conditions required by the contract for Mr. Cambiaso and La Dolfina S.A.'s performance had occurred.  This element is undisputed, and you should accept it as proven.

6.      Mr. Cambiaso and La Dolfina S.A. failed to exercise the duty of ordinary or reasonable care with Storm Cat 02, meaning they failed to use the care

46

that a reasonably careful person would use under like circumstances. In this case, the alleged failure to exercise reasonable care stems from Crestview Genetics' claim that Mr. Cambiaso and La Dolfina, S.A. exceeded the scope of their authorized bailment as alleged in the introductory instruction to this claim.

7.      Crestview Genetics was damaged by that failure.

If you find that any one or more of these elements has not been proved, then your verdict must be for Plaintiffs on Crestview Genetics' breach of bailment contract for the 2019 Side Letter Agreement.

If, however, you find that all of these elements have been proved, then you must consider whether Plaintiffs have proven one of their affirmative defenses. Plaintiffs contend that Crestview Genetics' breach of contract claims fail because of the following affirmative defenses: (i) first breach, (ii) force majeure, (iii) waiver, and (iv) ratification. Explanations of each of these affirmative defenses are provided further in the instructions.

### Breach of Contract Counterclaim
### (2019 Settlement Agreement)
### Crestview Genetics Against Plaintiffs

To recover damages for its breach of contract counterclaim, Crestview Genetics must prove all of the following:

1.    Mr. Cambiaso entered into the 2019 Settlement Agreement with Crestview Genetics.  This element is undisputed, and you should accept it as proven.

2.    Crestview Genetics did all, or substantially all, of the essential things which the 2019 Settlements Agreement required it to do, or Crestview Genetics was excused from doing those things.

3.    All conditions required by the contract for Mr. Cambiaso's performance had occurred.  This element is undisputed, and you should accept it as proven.

4.    Mr. Cambiaso did things that the contract prohibited them from doing and those prohibitions were essential to the contract.  Specifically, Crestview Genetics claims that Mr. Cambiaso breached this contract by (i) registering horses named Raptada and Small Anthus as owned by La Dolfina S.A. in an Argentine horse registry, and (ii) preventing Crestview Genetics from updating, in the same Argentine registry, the registration of horses named Raptada, Small Anthus, Corsair, Tap Air, Very Small, Tribuna, Smallart, Rugby, Fast Dancer, Raptada, Small Anthus, and Violinista. Crestview Genetics alleges that those breaches

48

resulted in damages.  Any one of these alleged breaches is sufficient to establish this element of the claim.  Crestview Genetics does not need to establish both breaches. The parties agree that Mr. Cambiaso transferred custody of all of these horses to Crestview Genetics or its nominee.  This counterclaim relates only to whether Mr. Cambiaso failed to assist Crestview Genetics in updating the registration of those horses.

     5.     Crestview Genetics was damaged by that action.

If you find that any one or more of the elements has not been proved, then your verdict must be for Plaintiffs on this counterclaim.

If, however, you find that all of these elements have been proven, then you must consider whether Plaintiffs have proven one of their affirmative defenses. Plaintiffs contends that Crestview Genetics' breach of contract counterclaim fails because of the following affirmative defenses: (i) failure to mitigate damages; (ii) estoppel; and (iii) unclean hands.  Explanations of each of these affirmative defenses are provided further in the instructions.

**Overview of Plaintiffs' Affirmative Defenses**

I will now instruct you on the affirmative defenses that Plaintiffs raise in response to Crestview Genetics' counterclaims. As I previously instructed you, to prevail on these affirmative defenses, Plaintiffs must establish each element of the claim by a preponderance of the evidence.

**Affirmative Defense – First Breach – Applies to all Three of Crestview Genetics' Breach of Contract Counterclaims (2019 Side Letter Agreement) and Crestview Genetics' Breach of Bailment Contract Claim (2019 Side Letter Agreement)**

As a defense to Crestview Genetics' counterclaims that Mr. Cambiaso and La Dolfina S.A. breached the contract (2019 Side Letter Agreement) and breached the bailment contract (2019 Side Letter Agreement), Plaintiffs assert the affirmative defense of first breach.  Under Florida law, if a party breaches a contract, the non-breaching party is excused from its obligations under the contract.  Plaintiffs claim that Crestview Genetics first breached the 2019 Side Letter Agreement, so Plaintiffs were excused from their obligations under that contract and cannot be liable for breaching it.  To establish the defense of first breach, Plaintiffs must establish each of the following elements:

1. Crestview Genetics breached the contract first by:

    a. failing to keep equine tissue and genetic material for the exclusive use of Mr. Cambiaso and La Dolfina S.A.;

    b. producing and selling Cuartetera clones to a third party without authorization;

    c. failing to return to Plaintiffs the clones produced under the 2019 Side Letter Agreement; and/or

    d.  violating the provision requiring Cuartetera clones be played only on a La Dolfina-branded team; and

2. That breach was material or substantial, meaning it goes to the "essence of the contract" as opposed to the mere failure to perform some minor part of the contract.

If Plaintiffs prove each element of this affirmative defense, then they have established first breach, and your verdict must be for Plaintiffs on Crestview Genetics' claims for breach of the 2019 Side Letter Agreement.

**Affirmative Defense – Force Majeure – Applies to All Three of Crestview Genetics' Breach of Contract Counterclaims (2019 Side Letter Agreement) and Crestview Genetics' Breach of Bailment Contract Claim (2019 Side Letter Agreement)**

As a defense to Crestview Genetics' counterclaims that Mr. Cambiaso and La Dolfina S.A. breached the contract (2019 Side Letter Agreement) and breached the bailment contract (2019 Side Letter Agreement), Plaintiffs assert the affirmative defense of force majeure.  Plaintiffs have raised the defense of force majeure and contend that delay in performing under the 2019 Side Letter Agreement was caused by the COVID-19 pandemic.

The 2019 Side Letter Agreement excuses any failure to perform or delay of its performance caused by "an act of force majeure."  And the contract defines "force majeure," as including "plague, [] disease, [] interference by civil or military authorities, [and] compliance with the laws, orders or policies of any governmental authority."

To establish the affirmative defense of "force majeure," Plaintiffs must prove:

1.     The event was beyond their control;

2.     The event was not anticipated on the date of the agreement; and

3.     The event prevented Mr. Cambiaso and La Dolfina S.A. from performing their obligations.

If Plaintiffs prove each element of this affirmative defense, then they have established force majeure, and your verdict must be for Plaintiffs on Crestview Genetics' claims for breach of contract (2019 Side Letter Agreement) and breach of bailment contract (2019 Side Letter Agreement).

### Affirmative Defense – Waiver – Applies to Crestview Genetics' Breach of Contract Counterclaim (2019 Side Letter Agreement; Failure to Transfer Land)

As a defense to Crestview Genetics' counterclaim that Mr. Cambiaso and La Dolfina, S.A., breached the 2019 Side Letter Agreement by failing to transfer a parcel of land at the La Dolfina Polo Ranch to Crestview Farm, Plaintiffs assert the affirmative defense of waiver.

Plaintiffs claim that Mr. Cambiaso did not have to transfer a free parcel of land at the La Dolfina Polo Ranch to Crestview Farm because Crestview Genetics gave up its right to have Mr. Cambiaso perform this obligation. This is called a "waiver."

To establish the defense of waiver, Plaintiffs must prove all of the following:

1.    Crestview Genetics' right to have Mr. Cambiaso transfer the land to Crestview Farm actually existed;

2.    Crestview Genetics knew or should have known it had the right to have Mr. Cambiaso transfer the land to Crestview Farm;

3.    Crestview Genetics freely and intentionally gave up its right to have Mr. Cambiaso deliver the land to Crestview Farm.

A waiver may be oral or written or may arise from conduct which shows that Crestview Genetics gave up that right.  Proof of the elements of waiver may thus be either express or implied.

If Plaintiffs prove that Crestview Genetics gave up its right to have Mr. Cambiaso deliver the land, then Mr. Cambiaso was not required to do so, and your verdict must be for Plaintiffs on Crestview Genetics' claim that they breached the 2019 Side Letter Agreement by failing to transfer land to Crestview Farm.

**Affirmative Defense – Waiver – Applies to Crestview Genetics' Breach of Contract Counterclaim (2019 Side Letter Agreement; Storm Cat 02)**

As a defense to Crestview Genetics' counterclaim that Mr. Cambiaso and La Dolfina S.A. breached the 2019 Side Letter Agreement by wrongfully registering Storm Cat 02 in the name of La Dolfina S.A. and by producing foals of Storm Cat 02 without producing any for Crestview Genetics, Plaintiffs assert the affirmative defense of waiver.

Plaintiffs claim that Mr. Cambiaso and La Dolfina S.A. did not violate the contract because Crestview Genetics gave up its right to have Mr. Cambiaso and La Dolfina S.A. perform this obligation.  This is called a "waiver."

To establish the defense of waiver, Plaintiffs must prove all of the following:

1.     Crestview Genetics had the right (1) to have Storm Cat 02 registered solely in Crestview Genetics' name or (2) to receive foals from Storm Cat 02 from Mr. Cambiaso and La Dolfina S.A.;

2.     Crestview Genetics knew or should have known of those rights;

3.     Crestview Genetics freely and intentionally gave up those rights.

A waiver may be oral or written or may arise from conduct which shows that Crestview Genetics gave up that right.

If Mr. Cambiaso and La Dolfina prove that Crestview Genetics gave up its right to register Storm Cat 02 solely in its name or to receive foals of Storm Cat 02

from La Dolfina, then La Dolfina was not required to perform those duties under the contract, and your verdict must be for Plaintiffs on Crestview Genetics' claim that they breached the 2019 Side Letter Agreement with respect only to Storm Cat 02's registration or foals.

**Affirmative Defense – Ratification – Applies to Crestview Genetics' Breach of Contract Counterclaim (2019 Side Letter Agreement; Storm Cat 02)**

As a defense to Crestview Genetics' counterclaim that Mr. Cambiaso and La Dolfina S.A. breached the 2019 Side Letter Agreement by wrongfully registering Storm Cat 02 and by producing foals without producing any for Crestview Genetics, Plaintiffs assert the affirmative defense of ratification.

Plaintiffs deny that they breached the contract when they (i) registered Storm Cat 02 in La Dolfina S.A.'s name or (ii) produced foals without producing any for Crestview Genetics; however, if the jury finds that Mr. Cambiaso or La Dolfina S.A. did breach the contract, Plaintiffs must prove the following to establish the defense of ratification:

1. Crestview Genetics knew that La Dolfina S.A. (i) registered Storm Cat 02 in La Dolfina S.A.'s name or (ii) produced foals without producing any for Crestview Genetics;

2. Crestview knew that it could reject the contract because of acts (i) or (ii); and

3. Crestview Genetics accepted acts (i) or (ii).

If Plaintiffs prove that Crestview Genetics ratified Mr. Cambiaso's and La Dolfina S.A.'s actions, then your verdict must be for Plaintiffs on Crestview Genetics' counterclaim that they breached the 2019 Side Letter Agreement by

wrongfully registering Storm Cat 02 in the name of La Dolfina as an owner and claiming ownership over Storm Cat 02.

**Affirmative Defense – Unclean Hands – Applies to Crestview Genetics'
Breach of Contract Counterclaim (2019 Settlement Agreement)**

Plaintiffs have raised the defense of unclean hands.  To establish this defense,

Plaintiffs must prove by a preponderance of the evidence that:

1. Crestview Genetics committed an unconscionable act or engaged in reprehensible conduct;

2. Crestview Genetics' unconscionable acts or reprehensible conduct was directly related to the claim Crestview Genetics has asserted; and

3. Plaintiffs were injured by Crestview Genetics' unconscionable acts or reprehensible conduct.

**Introduction to Contract Damages**

If you find for Plaintiffs on any of Plaintiffs' claims, you will not consider the matter of damages because Plaintiffs do not seek monetary relief in this action.  But, if you find for Crestview Genetics on any of Crestview Genetics' counterclaims, you should award Crestview Genetics an amount of money that the greater weight of the evidence shows will fairly and adequately compensate Crestview Genetics for its damages on that counterclaim.  You shall consider the following type(s) of damages:

a. Compensatory damages: Compensatory damages is that amount of money that will put Crestview Genetics in as good a position as it would have been in if Plaintiffs had not breached the contract in question on that counterclaim, and which naturally result from that breach.

**Lost Profits**

To be entitled to recover lost profits, Crestview Genetics must prove both of the following:

1. Mr. Cambiaso or La Dolfina S.A.'s actions caused Crestview Genetics to lose profits; and

2. Crestview Genetics can establish the amount of their lost profits with reasonable certainty.

For Crestview Genetics to establish the amount of its lost profits with reasonable certainty, it must prove that a reasonable person would be satisfied that the amount of lost profits which it may be entitled to recover is not simply the result of speculation or guessing. Instead, Crestview Genetics must prove that there is some standard by which the amount of lost profits may be established. Crestview Genetics does not have to be able to prove that the amount of lost profits can be calculated with mathematical precision as long as it has shown there is a reasonable basis for determining the amount of the loss.

**Present Cash Value of Future Profits**

Any amount of damages which you award for future damages should be reduced to its present money value and only the present money value of these future damages should be included in your verdict.

The present money value of future damages is the sum of money needed now which, together with what that sum will earn in the future, will compensate Crestview Genetics for these damages as they are actually experienced in future years.

**Nominal Damages**

If you decide that Mr. Cambiaso or La Dolfina S.A. breached the contract but also that Crestview Genetics did not prove any loss or damage, you may still award Crestview Genetics nominal damages such as one dollar.

**Mitigation of Damages**

If Mr. Cambiaso and La Dolfina S.A. breached the 2019 Side Letter Agreement and the breach caused damages, Crestview Genetics is not entitled to recover for those damages which Mr. Cambiaso and La Dolfina S.A. prove Crestview Genetics could have avoided with reasonable efforts or expenditures. You should consider the reasonableness of Crestview Genetics' efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue burden.

If Crestview Genetics made reasonable efforts to avoid the damages caused by the breach, then your award should include reasonable amounts that it spent for this purpose.

**Explanation of Foreperson; Explanation of Verdict Forms**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience, and I will explain that to you in a moment.

Take the verdict form with you to the jury room.  When you have all agreed on the verdict, your foreperson must fill in the form, sign it and date it.  Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer.  The court security officer will bring it to me, and I'll respond as promptly as possible—either in writing or by talking to you in the courtroom.  Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response.  But I caution you not to tell me how many jurors have voted one way or the other at that time.  That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

Thank you for your time and attention.